**UNITED STATES BANKRUPTCY COURT**　　　　　　**NOT FOR PUBLICATION**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------x
　　　　　　　　　　　　　　　　　　:
In re:　　　　　　　　　　　　　　　:　　　　　Chapter 7
　　　　　　　　　　　　　　　　　　:
Michael Grabis,　　　　　　　　　　 :　　　　　Case No. 13-10669-JLG
　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　Debtor.　　:
　　　　　　　　　　　　　　　　　　:
------------------------------------------------------x
　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　:
Michael Grabis,　　　　　　　　　　 :
　　　　　　　　　　　　　　　　　　:　　　　　Adv. Pro. No. 15-01420-JLG
　　　　　　　　　　　　Plaintiff,　 :
　　　　　　　　　　　　　　　　　　:
v.　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　:
Navient Solutions, LLC, *et al.*,　 :
　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　Defendants.　:
　　　　　　　　　　　　　　　　　　:
------------------------------------------------------x

## MEMORANDUM DECISION GRANTING
## DEPARTMENT OF EDUCATION'S MOTION TO DISMISS

**A P P E A R A N C E S:**

MICHAEL GRABIS
1 Hays Drive
Morristown, NJ 07960

*Plaintiff-Debtor, pro se*

JOON H. KIM
Acting United States Attorney for the Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007
By:　　Dominika Tarczynska, Esq., Assistant United States Attorney

*Attorneys for Defendant-U.S. Department of Education*

Michael Grabis, the debtor herein (the "**Debtor**"), reopened his no-asset chapter 7 case to seek an order discharging his student loan indebtedness pursuant to section 523(a)(8) of the Bankruptcy Code, 11 U.S.C. § 523(a)(8). He commenced this adversary proceeding to obtain that relief and has named the Department of Education ("**DOE**"), among others, as a defendant in his Third Complaint (as defined below). The matter before the Court is DOE's motion to dismiss the complaint.[1] The Debtor opposes the motion.[2] For the reasons stated herein, the motion is GRANTED.

## Jurisdiction

This Court has jurisdiction over the motion pursuant to 28 U.S.C. §§ 1334(a) and 157(a) and the Amended Standing Order of Referral of Cases to Bankruptcy Judges of the United States District Court for the Southern District of New York (M-431), dated January 31, 2102 (Preska, C.J.). This is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

## Facts[3]

### Background

On March 5, 2013, the Debtor, through counsel, filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code in this Court. *See* ECF No. 1.[4] In his petition, the Debtor represented that: (i) he had fewer than 50 creditors; (ii) the estimated value of his assets was less

---

[1]    *See* Notice of Motion, Memorandum of Law In Support of the Department of Education's Motion to Dismiss and the Declaration of Lola Hom (the "**Hom Declaration**") [AP ECF No. 102]; Reply Memorandum of Law In Support of the Department of Education's Motion to Dismiss [AP ECF No. 106]. As used herein, "AP ECF No." refers to a document filed of record in the Debtor's adversary proceeding (15-01420 (JLG)).

[2]    *See* Response to Department of Education on being defendant/request for dismissal [AP ECF No. 105] (the "**Debtor's Response**").

[3]    The facts are not in dispute.

[4]    "ECF No." refers to a document filed of record in the Debtor's chapter 7 case (13-10669 (JLG)).

than $50,000; and (iii) his liabilities exceeded $100,000, but were less than $500,000.  In

addition, he estimated the value of his personal property at $11,631.00, and reported that he did

not hold any "contingent and unliquidated claims of [any] nature, including tax refunds,

counterclaims of the debtor, and rights to setoff claims."  In the list of "Creditors Holding

Unsecured Nonpriority Claims" accompanying his petition, the Debtor included six claims held

by Sallie Mae totaling approximately $161,781.[5]  Plaintiff did not list any amounts as due and

owing to DOE, although he included DOE on the creditor matrix.[6]  DOE did not file a proof of

claim in the Debtor's case.  On April 8, 2013, Roy Babitt, Esq., in his capacity as the chapter 7

trustee of the Debtor's estate, issued his "Report of No Distribution" in the chapter 7 case.  *See*

---

[5]    The Sallie Mae claims are, as follows:

| | |
|---|---|
| Installment account opened 06/05: | $57,765.00 |
| Installment account opened 10/99: | $32,003.00 |
| Installment account opened 09/01: | $31,184.00 |
| Installment account opened 10/00: | $23,762.00 |
| Installment account opened 01/99: | $ 8,862.00 |
| Installment account opened 03/99: | $ 8,205.00 |

[6]    The Debtor listed DOE in his creditors matrix, as follows:

US Dept[.] Of Education
ATTN: BORROWERS SERVICE DEPT
Po Box 5609
Greenville, TX 75403

ECF No. 6.[7]  On June 11, 2013, the Court (Peck, J.)[8] entered a "Discharge of Debtor Order of

Final Decree," and closed the case.  ECF No. 8.

On July 31, 2013, the Debtor filed a *pro se* motion to reopen his bankruptcy case in order

to file an adversary proceeding to seek discharge of his student loan debt.  *See* ECF No. 10

("**Reopen Motion**").[9]  In doing so, the Debtor, acting *pro se*, also asked the Court to waive the

filing fee to reopen the case.  *See* ECF No. 11 (the "**Fee Waiver Motion**").  Judge Peck granted

the Reopen Motion, but denied the Fee Waiver Motion, without prejudice.  Accordingly, by

order dated August 27, 2013, Judge Peck directed that "the case shall be reopened upon payment

of the appropriate fee by the Debtor or further order of the Court after a renewed request for

waiver of such fee for cause shown."  *See* ECF No. 12.  On December 10, 2013, the Debtor filed

---

[7]   The Report of No Distribution reads, as follows:

> I, Roy Babitt, having been appointed trustee of the estate of the above-named debtor(s), report that I have neither received any property nor paid any money on account of this estate; that I have made a diligent inquiry into the financial affairs of the debtor(s) and the location of the property belonging to the estate; and that there is no property available for distribution from the estate over and above that exempted by law. Pursuant to Fed R Bank P 5009, I hereby certify that the estate of the above-named debtor(s) has been fully administered. I request that I be discharged from any further duties as trustee. Key information about this case as reported in schedules filed by the debtor(s) or otherwise found in the case record: This case was pending for 1 months. Assets Abandoned (without deducting any secured claims): $ 0.00, Assets Exempt: $ 11631.09, Claims Scheduled: $ 193272.24, Claims Asserted: Not Applicable, Claims scheduled to be discharged without payment (without deducting the value of collateral or debts excepted from discharge): $ 193272.24.

ECF No. 6.

[8]   The case originally was assigned to Judge James Peck.  After Judge Peck retired from the bench, the case was reassigned to Judge Garrity.

[9]   In support of the Reopen Motion, the Debtor stated, in part:

> I, Michael Grabis, am making a motion to reopen my bankruptcy petition under Chapter 7 originally filed on 3/6/2013 and closed on 6/11/2013. I am making this motion in order to file an adversary pursuant to discharge of student loan debts. I was not instructed in my previous hearing that I would not have the opportunity to challenge these debts or that a separate motion or that filing of an adversary would be required for any consideration of discharge.

ECF No. 10.

(i) a *pro se* motion renewing his request to reopen the case to file an adversary complaint (the "**Second Reopen Motion**") [ECF No. 13];[10] and (ii) a *pro se* motion renewing his request to waive the fee to reopen the case (the "**Second Fee Waiver Motion**") [ECF No. 14]. Judge Peck denied the Second Reopen Motion as moot, and denied the Second Fee Waiver Motion without prejudice. *See* ECF No. 15.

On December 15, 2015, the Debtor commenced this adversary proceeding by filing a complaint for the discharge of his student loans pursuant to section 523(a)(8) of the Bankruptcy Code. *See* AP ECF No. 1. Without limitation, in support of the complaint, the Debtor alleged, in substance, that while pursuing an undergraduate degree in business, he borrowed close to $100,000 in both federal and private student loans, that such indebtedness had grown to more than $180,000, and that repayment of that indebtedness presented an undue hardship to him in his effort to obtain a "fresh start" through his bankruptcy case. *See* Complaint at 1. In the complaint, the Debtor named the following defendants: Sallie Mae Servicing ("**Sallie Mae**"), Navient Solutions, Inc. ("**Navient**"), Lafayette College and the University of Vermont ("**UVM**"). *Id.* As the holder of the private student loans, Navient filed an answer to the complaint. *See* AP ECF No. 4 (the "**Navient Answer**").[11] The Educational Credit Management Corporation ("**ECMC**") filed an answer to the complaint. *See* AP ECF No. 6. In it, ECMC asserted that in its capacity as a federal student loan guarantor in the Federal Family Education Loan Program ("**FFELP**"), it holds an interest in two consolidation loans owed by the Debtor, each of which was disbursed on or about June 24, 2005, in the original principal amounts of $19,934 and

---

[10]     The request in support of the Second Reopen Motion is identical to that set forth in the Reopen Motion.

[11]     In part, and in substance, in its answer, Navient admitted that the Debtor was indebted to Navient on account of five "private" educational loans, with an aggregate balance, including principal, interest and fees, in excess of $119,095.39. *See* Navient Answer ¶ 1.

$30,096, respectively (the "**Consolidation Loans**").  *See id*. n.1.  It maintained that the Debtor is

seeking to have the Consolidation Loans declared dischargeable in this adversary proceeding and

that when the action was commenced, US Bank ELT Brazos ELA Inc., as the lender of the

Consolidation Loans, filed a claim under the guarantees of the underlying promissory notes with

the guarantor, USA Funds, Inc. ("**USAF**").  *Id.*  It contended that by agreement, USAF assigned

to ECMC for defense, its student loan accounts that are in bankruptcy.  Thus, ECMC asserted

that it is the proper party in interest in this lawsuit with respect to the Consolidation Loans.  *Id.*

On March 1, 2016, ECMC filed a motion pursuant to Fed. R. Civ. P. 24(a) and (b), as made

applicable herein by Bankruptcy Rule 7024, to intervene in this adversary proceeding.  *See* AP

ECF No. 11.   In support of its motion ECMC submitted a declaration of an ECMC Litigation

Specialist (the "**ECMC Declaration**"), who explained that when the Debtor filed the adversary

proceeding, the Consolidation Loans were transferred to ECMC by operation of law and that

ECMC holds all right, title and interest in the two Consolidation Loans.  *See* AP ECF No. 11-2,

¶¶ 2-5.[12]   The Debtor opposed the motion.  *See* AP ECF No. 13.  After hearing argument on

---

[12]    In part, the ECMC Declaration states, as follows:

> 2. ECMC is a Minnesota not-for-profit corporation and guaranty agency created under the direction
> of the U.S. Department of Education to provide guaranty services pursuant to the Federal Family
> Education Loan Program ("FFELP"). Under FFELP, lenders use their own funds to make loans to
> students attending postsecondary institutions. These loans are guaranteed by guaranty agencies and
> insured by the federal government. *See* 20 U.S.C. § 1078(a)-(c). In its role as a guarantor under
> FFELP, ECMC accepts the transfer of title to certain student loan accounts on which the student
> loan borrower has filed for bankruptcy or when a debtor has filed an adversary proceeding seeking
> discharge of his/her student loans for undue hardship.

> 3. Attached hereto as Exhibit A is a true copy of the Federal Consolidation Loan Application and
> Promissory Note executed by Plaintiff, Michael R. Grabis ("Plaintiff"), on March 1, 2005 (the
> "Note"). Pursuant to the Note, Plaintiff consolidated the student loans listed therein into two (2)
> consolidation loans under FFELP (the "Consolidation Loans").

> 4. Subsequently, Sallie Mae Servicing, the servicer of the Consolidation Loan, issued a Loan
> Consolidation Disclosure Statement and Repayment Schedule, notifying Plaintiff that the lender of
> the Consolidation Loans was USB as Trustee Trinity HEA, and the guarantor was United Student
> Aid Funds ("USAF"). . . .

ECMC's motion, and by order dated March 24, 2016, the Court granted ECMC's motion to intervene.  *See* AP ECF No. 16.

On April 15, 2016, the Debtor filed an amended complaint that added DOE, but dropped UVM, as defendants.  *See* AP ECF No. 18.[13]  At that time, the Debtor failed to request that a summons be issued with respect to DOE and failed to serve DOE with the complaint.  On September 25, 2017, the Debtor filed the "Third Adversary Complaint for Discharge of Student Loans" against Sallie Mae, Navient, Lafayette College, DOE, and ECMC.  *See* AP ECF No. 84 (the "**Third Complaint**").  The Debtor effected service of that complaint on DOE and on October 18, 2017, the DOE, through its counsel, filed a notice of appearance herein.  *See* AP ECF No. 88.

<u>The Third Complaint</u>

The Debtor explains that he filed this adversary proceeding "as an addition to my core bankruptcy proceeding to discharge my student loans under [Bankruptcy] Rule 4007(b), 11 U.S.C [§] 523 (a)(8), as per my rights to a 'fresh start' under the U.S. Bankruptcy Code."  Third Compl. at 2.  He alleges that there are two reasons why this Court should grant him such relief.  First, he says that he is entitled to "the full discharge of the unqualified private loan portion of my debt

---

5. Upon Plaintiffs default under the Consolidation Loans, the lender made a claim under the guaranty with USAF, which took assignment of them. Subsequently, when Plaintiff filed [this] adversary proceeding, the Consolidation Loans were transferred to ECMC by operation of law; *See* letter from Joni M.- Anderson of USA Funds, dated January 31, 2016, a true copy of which is attached hereto as Exhibit C. Accordingly, ECMC holds all right, title, and interest in the Consolidation Loans.

ECMC Decl. ¶¶ 2-5.

[13]    By Stipulation of Dismissal dated February 29, 2016, UVM released and forgave, in its entirety, the Debtor's unpaid student account of $846.35, and agreed that it would take no further action to collect that debt.  In turn, the Debtor dismissed the UVM from the adversary proceeding, with prejudice.  *See* AP ECF No. 15.

and full discharge of my federal debt, both [sic] under section 523(a)(8) of the [B]ankruptcy

[C]ode[,]" because

> [u]nder the standard tests for discharge of student loans I have made a good faith
> effort to repay my loans, I am currently unable and will be unable to repay the loans
> for a considerable period, and I have not been able to maintain a minimal standard
> of living as defined by the poverty guidelines.

*Id*. To that end, he asks this Court

> to recognize that the size and nature of my debt make my case fundamentally
> different from any guidelines decided under the Brunner case standard which dealt
> with federal student loans for graduate education under $15,000 dollars close to 30
> years ago in an economic environment far different from today. My debt is largely
> unqualified private student loans which are dischargeable under the [B]ankruptcy
> [C]ode. The Southern District of New York has jurisdiction of the Brunner
> standard.

*Id*. Second, he maintains that he is entitled to relief under section 523(a)(8) to redress the harm

caused to him by the defendants. He says that "I believe that my degree issuing college and

lenders did not act in good faith in the origination and servicing of my student loans and, in fact,

acted to collude, embezzle, and purposely defraud me as a student borrower." *Id*. at 1-2. Thus,

as an alternative, and in addition to, his *Brunner* based arguments, he asserts that "I am alleging

fraud, breach of contract, and unjust enrichment in my defense of repayment." *Id.*

The Third Complaint does not rest on those allegations or on the Debtor's claim for relief

under section 523(a)(8). In addition, the Debtor is asking for damages that he says he has

suffered by reason of the defendants' fraud. He maintains that although he is "seeking the full

discharge of the unqualified private loan portion of my debt and my federal debt, both [sic] under

sections 523(a)(8) of the [B]ankruptcy [C]ode[,] [t]he fraud that occurred also caused damage to

me personally and I am asking the court to grant damages from these parties to pay towards the

debt and personal costs incurred as a result of the fraud." *Id*. at 2. To that end, and as relevant to

the motion, the Debtor alleges that DOE, "as the primary overseer of my loan programs, was also

- 7 -

derelict in its duties to protect my rights as a borrower and to keep me informed on any matters related to my debt." *Id.* at 5. Specifically, he asserts that "in and around 2004 and well after my graduation from college, Sallie Mae knowingly acted to alter the terms of my loans by communicating without my knowledge to the U.S. Department of Education and Congressional officials to remove bankruptcy rights afforded to me under the [B]ankruptcy [C]ode and included in the original covenant of my borrowing agreement." *Id.* He maintains that "[i]n allowing Sallie Mae to negotiate new terms without my knowledge, the Department of Education also created a precarious and damaging situation for me personally." *Id.* Thus, he maintains that "the integrity of my loans and the terms governing its service have been destroyed." *Id.* He asks this Court "to recognize these serious factors in granting a discharge of my private loans and any further damages from . . . the Department of Education that are viewed as appropriate." *Id.* Further, the Debtor alleges that DOE "also failed to make clear that the US Government had already determined certain levels of student loan debt as toxic and prohibitive to certain careers including any job that requires a security clearance." *Id.* He asserts that in his career search he has found "that certain jobs I applied and would qualify for have been blocked by my student loan debt[,]" and that "[t]his fact has created a damaging situation where possible gainful employment has been removed as a possibility." *Id.* He says that since he has "reached the age limit in the application process for some of these jobs, he is asking this Court "to instruct the Department of Education [to] act in good faith in granting a waiver or assisting in procuring a waiver in this regard." *Id.* at 6.

In response to the Third Complaint, DOE filed this motion to dismiss.[14]

---

[14]    At an October 27, 2017 status conference in this action, DOE advised that it intended to move to dismiss the case on the grounds that it is not a proper party to the litigation because it does not hold a claim against the Debtor, and to dismiss the fraud claim on the grounds that the Court lacks subject matter jurisdiction over those claims and because, in any event, DOE has not waived its sovereign immunity for such claims. At the Court's request, in

Discussion

There are two components to DOE's motion. First, DOE contends, among other things,

that pursuant to Fed. R. Civ. P. 21, it should be deleted as a party to the Debtor's claim for relief

under section 523(a)(8), because it does not own any portion of the Debtor's student loan

indebtedness, and, as such, is not a proper party to that claim since it has no connection to the

relief that the Debtor is seeking. Second, it argues that the Debtor's fraud claim must be

dismissed pursuant to Fed. R. Civ. P. 12(b)(1), for lack of subject matter jurisdiction.[15]  The

Court will consider those arguments below.

Claim for Relief Under § 523(a)(8)

As noted previously, the Consolidation Loans were issued under FFELP.[16]  Under that

program "students attending eligible postsecondary schools may borrow money for tuition and

expenses from participating lenders, such as banks. These loans are insured by participating

'guaranty agencies' which, in turn, are reinsured by the Department of Education." *Calise*

*Beauty Sch., Inc. v. Riley,* 941 F. Supp. 425, 427 (S.D.N.Y. 1996).  DOE administers FFELP and

has promulgated appropriate regulations to carry out and enforce the FFELP program.  *College*

*Loan Corp. v. SLM Corp.*, 396 F.3d 588, 590 (4th Cir. 2005); *see generally* 34 C.F.R. §§

682.400 *et seq.* In essence, the program works as follows: (i) if a student fails to repay a FFELP

---

furtherance of settlement discussions among DOE and the Debtor, DOE provided the Debtor with a letter setting
forth the bases for its assertion that DOE should be dismissed from the Third Complaint.  *See* AP ECF No. 89.
During a November 16, 2017, conference, the Debtor advised that he intended to proceed with his litigation against
DOE, and on November 21, 2017, the Court entered a scheduling order for DOE's motion to dismiss.  AP ECF No.
99.

[15]    Fed. R. Civ. P. 12(b)(2) and 21 are made applicable to this adversary proceeding pursuant to Bankruptcy Rules
7012 and 7021, respectively.

[16]    FFELP was formerly known as the Guaranteed Student Loan Program and is authorized under Title IV, Part B
of the Higher Education Act of 1965, *as amended*, 20 U.S.C. § 1071, *et seq.*

loan, the lender submits all relevant records to the guaranty agency and requests reimbursement;

(ii) if that agency determines that the lender properly performed the servicing and collection

functions, the guarantying agency repays the lender for the outstanding balance on the loan; (iii)

that agency must then undertake its own collection efforts; and (iv) if those efforts are

unsuccessful, it can look to the DOE for repayment.  *See Calise Beauty Sch., Inc. v. Riley,* 941 F.

Supp. at 427 (citations omitted).  The regulations implementing FFELP are clear that FFELP

loans are neither issued nor held by DOE.  Rather, DOE acts as a reinsurer that, in certain

circumstances, must reimburse lenders for their losses.[17]

There is no question that the resolution of the Debtor's claim that his student loan

indebtedness is dischargeable under section 523(a)(8) is within the "core" jurisdiction of this

Court.  *See* 28 U.S.C. § 157(b)(2)(I).[18]  Actions to discharge student loan indebtedness, like this

one, are "premised on the res, not on the persona . . . [a] debtor does not seek money damages or

any affirmative relief . . . by seeking to discharge a debt . . . he seeks only a discharge of his

debts."  *Tennessee Student Assistance Corp. v. Hood*, 541 U.S. 440, 450 (2014).  Thus, the only

proper defendants in an action to determine the dischargeability of student loan indebtedness are

the parties who hold that indebtedness.  *See Himes v. Educ. Credit Mgmt. Corp. (In re Himes)*,

No. 00-80532, 2001 WL 34076414, at *1 (Bankr. C.D. Ill. Aug. 29, 2001) (finding that

"[g]enerally, the proper defendant to be named in the complaint is the holder of the student loan

as of the date the complaint is filed.") (citing *In re Bernal*, 207 F.3d 595 (9th Cir. 2000)).

---

[17]    For example, 34 F.R.R. § 682.402(k)(1)(i)(A) mandates that the DOE reimburse the guaranty agency "for its losses on bankruptcy claims paid to lenders after . . . [a] determination by the court that the loan is dischargeable under 11 U.S.C. 523(a)(8) with respect to a proceeding initiated under chapter 7 or chapter 11[.]"

[18]    That section states that "[c]ore proceedings include, but are not limited to  . . . determinations as to the dischargeability of particular debts."  28 U.S.C. § 157(b)(2)(I).

Rule 21 states in relevant part that "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." Fed. R. Civ. P. 21.  Courts have broad discretion to grant relief under this rule, "when doing so would serve the ends of justice and further the prompt and efficient disposition of the litigation." *City of Syracuse v. Onondaga County*, 464 F.3d \297, 308 (2d Cir. 2006) (quoting *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 214 F.R.D. 152, 154 (S.D.N.Y. 2003)).  In assessing the merits of DOE's request for relief under Rule 21, this Court can consider the Hom Declaration.  *See Cohn v. KeySpan Corp.,* 713 F. Supp. 2d 143, 153 (S.D.N.Y. 2010) ("In deciding a motion to drop a party pursuant to Rule 21, the Court may consider affidavits filed by the defendants challenging the allegations against them in the complaint.") (citation omitted). Ms. Hom's undisputed testimony is that ECMC, as guarantor, owns the Consolidation Loans, and that DOE does not own any loans for the Debtor.  *See* Hom Decl. ¶¶ 4- 6.[19]  Relief under Rule 21 dismissing a party from an action is especially appropriate "when there is clearly no right or basis of relief from a party."  *Barrundia v. City of New York*, No. 84 Civ. 6801, 1988 WL 96063, at *4 (S.D.N.Y. Sept. 8, 1988).  *See also Glendora v. Malone*, 917 F. Supp. 224, 227 n.3

---

[19]    In her declaration, Ms. Hom stated, in relevant part, as follows:

    4.    Based upon my review of the information contained in the [National Student Loan Database System ("NSLDS")], I have confirmed that the [DOE] does not hold any loans for Michael Grabis.

    5.    The information in the NSDLS indicates that Mr. Grabis has two consolidated Federal Family Education Loans ("FFEL") outstanding.  Loan 1 was disbursed in the amount of $19,934 on June 24, 2005.  Loan 2 was disbursed in the amount of $30,096 on June 24, 2005.  Both of these loans are currently held by the Transitional Guaranty Agency ("TGA").

    6.    It is my understanding that TGA has changed its name to [ECMC]; however, the NSLDA system still uses the TCA name.

Ms. Hom's declaration is consistent with the ECMC Declaration filed in support of the ECMC Motion to Intervene. *See supra*, n.12.

(S.D.N.Y. 1996) ("[T]he [C]ourt may rely on Rule 21 to delete parties that have no connection to

the claims asserted."). That is the case here. DOE is not a creditor of the Debtor and does not

own any of the student loans at issue in this adversary proceeding. It has no connection to the

relief the Debtor is seeking under section 523(a)(8), and as such, is not a proper party to that

claim for relief. Accordingly, the Court grants DOE's request for relief under Rule 21 and

dismisses it as a party to the Debtor's claim for relief under section 523(a)(8). *See Shank v.*

*Educ. Credit Mgmt. Corp. (In re Shank)*, No. 07-7087, 2008 WL 3166492, at *2 n.5 (Bankr. E.D.

Va. Aug. 5, 2008) (finding that because the DOE did not hold any of the debtor's loans, it had no

interest in the matter and it was just and efficient to dismiss it from the adversary proceeding

pursuant to Rule 21); *Aalabdulrasul v. ACS* (*In re Aalabdulrasul)*, No. 11-9089, 2012 WL

1597277, at *1–2 (Bankr. N.D. Iowa May 7, 2012) (granting defendant AES's motion to dismiss

under Rule 21 because AES is not the real party in interest where it does not have a proprietary

interest in any of the debtor's student loans and was merely acting as loan servicer in three of the

debtor's five co-signed student loans); *see also Gallagher v. Educ. Credit Mgmt. Corp. (In re*

*Gallagher)*, 333 B.R. 169, 173-74 (Bankr. D.N.H. 2005) (denying debtor's request to join

American Student Association Corporation ("**ASAC**") as defendant to action under § 523(a)(8)

where ASAC assigned underlying loan to ECMC and finding that "ASAC is not a proper party to

the instant case."); *In re Srinivasan*, Adv. No. 10-1545, 2010 WL 3633062 (Bankr. D.N.J. Sept.

7, 2010) (denying request for entry of default judgment against Sallie Mae in action under §

523(a)(8) where NSLDS report showed that Sallie Mae did not own underlying loan, because

"there is no debt due from the [debtor] to [Sallie Mae].").

The Court finds no merit to the Debtor's assertions to the contrary. The Debtor contends

that "ECMC is a debt collector, not a law firm for [DOE] and they have no right under the law to

intervene in this proceeding." Debtor's Resp. at 3. The Court previously ruled, over the

Debtor's objection, that ECMC is the federal student loan guaranty agency that holds title to the

Consolidation Loans and, as such, is a proper party defendant in this case. *See* AP ECF No. 16.

Moreover, in any event, where, as here, the Debtor is seeking the discharge of a FFELP loan on

the basis of undue hardship, applicable regulations mandate that ECMC, as the guarantor, defend

against the action. *See* 34 C.F.R. § 682.402(h)(1) (ii) & (i)(l)(ii)-(iv). The Debtor also contends

that DOE should remain a party to this action because there are financial consequences to DOE

whether or not he successfully discharges his student loan indebtedness. *See* Debtor's Resp. at

3.[20] That DOE may be indirectly benefitted if the Debtor begins making payments on account of

the loan simply does not vest DOE with an interest in the loan that it does not have. Moreover,

DOE's reimbursement obligations are not triggered, if at all, until after the completion of this

adversary proceeding. Further, those reimbursement obligations are between ECMC and DOE,

not DOE and the Debtor. *See* 34 C.F.R. § 682.402(k)(l)(i)(A). Finally, the Debtor argues that

DOE should remain a party to this action because ECMC did not hold the loans at the time he

commenced this adversary proceeding. Debtor's Resp. at 3.[21] However, that is irrelevant

---

[20]    Specifically, the Debtor asserts:

> The Department of Education also being deceptive in not describing its ongoing interest in my loans
> in the future. The Department of Education will collect revenue from my loans if and when I start
> paying again or if I do not. As they stated they reimburse any party in this case for judgement of
> relief in my favor. They will also collect revenue from seizing tax returns and social security benefits
> if I remain in default. Again, they are intentionally deceiving the court on this issue.

Debtor's Resp. at 3.

[21]    He says the following:

> The Department of Education admits in its response pleadings that it is an original creditor listed in
> my bankruptcy, that they have control and overall executive authority over the federal loans portion
> of my debt, and that they are paying or reimbursing ECMC to participate, and that ECMC did not
> intervene in the proceeding until after it was already filed. The DOE does not mention that Navient
> was the party that filed claim for all of my student loans when I filed the adversary proceeding and
> that Navient then simply transferred the federal portion of my debt to ECMC. The Department of

- 13 -

because at that time, the loans were held by USA Funds, the guaranty agency that took

assignment of the loans from the original lender after the Debtor defaulted, not DOE.  *See*

ECMC Declaration ¶¶ 3-5, *supra* n.12

Fraud Claim

As noted, in asserting his claim for relief under section 523(a)(8), the Debtor alleges both

that he is "alleging fraud, breach of contract, and unjust enrichment in my defense of

repayment[,]" and that "the fraud that occurred also caused damage to me personally and I am

asking the court to grant damages from these parties to pay towards the debt and personal costs

incurred as a result of the fraud."  Third Compl. at 2.  However, in his opposition to the motion,

the Debtor explained that

> I want to be clear that I have never meant my mention of fraud in this proceeding
> to mean a tort fraud charge. I simply mean to describe an IRS tax fraud that is
> happening and has happened in conjunction with the distribution and service of my
> debt that will show my true cost of attendance and that a large portion of my loans
> are beyond the cost of attendance and therefore unqualified and dischargeable under
> 523 (a) (8).

*Id.* at 2.  Thus, the Court understands that the Debtor is not seeking damages against DOE in the

Third Complaint.

However, to the extent the Debtor is asserting a fraud tort claim and seeking other

affirmative relief against DOE, the Court dismisses those claims for lack of subject matter

jurisdiction.  Pursuant to Rule 12(b)(1), a court can dismiss a complaint, or counts thereof, for

lack of subject matter jurisdiction.  *See* Fed. R. Civ. P. 12(b)(1).  On a Rule 12(b)(1) motion, the

---

Education was again being deceptive in not stating that Navient, who was and is a paid contractual
servicer of the Department of Education, claimed the entirety of my loans.

Debtor's Resp. at 3.

plaintiff carries the burden of establishing that the court has subject matter jurisdiction to

adjudicate his claims. *See Smith v. Masterson,* No. 05 Civ. 2897, 2006 WL 2883009, at *6

(S.D.N.Y. Sept. 29, 2006) ("The party asserting subject matter jurisdiction has the burden of

proving, by a preponderance of the evidence, that the court has subject matter jurisdiction."

(citing *Malik v. Meissner*, 82 F.3d 560, 562 (2d Cir. 1996))).   A *pro se* litigant "attempting to

bring a case in federal court must still comply with the relevant rules of procedural and

substantive law, including establishing that the court has subject matter jurisdiction over the

action." *Ally v. Sukkar*, 128 Fed.Appx. 194, 195 (2d Cir. 2005); *Traguth v. Zuck*, 710 F.2d 90,

95 (2d Cir. 1983) (noting that a *pro se* litigant is not exempt "from compliance with relevant

rules of procedural and substantive law").   Dismissal for lack of subject matter jurisdiction is

proper under Rule 12(b)(1) when the Court lacks statutory or constitutional authority to

adjudicate it.  *See Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  When assessing

a motion brought under Rule 12(b)(1), the Court may consider evidence outside of the pleadings.

*Id.; see also Barone v. United States*, No. 12 Civ. 4103 (LAK), 2014 WL 4467780, at *4

(S.D.N.Y. Sept. 10, 2014).

A bankruptcy court's jurisdiction "is grounded in, and limited by, statute."  *Celotex Corp.

v. Edwards*, 514 U.S. 300, 307 (1995).  *See also In re Fairfield Sentry*, 458 B.R. 665, 674

(S.D.N.Y. 2011) ("Subject matter jurisdiction over bankruptcy cases is a creature of statute.").

Pursuant to sections 157 and 1334 of title 28 of the United States Code, the Court has "core"

jurisdiction over all cases under title 11 and any or all proceedings "arising under" or "arising in"

title 11, and "non-core" jurisdiction over proceedings or matters "related to" a case under title

11.  *See* 28 U.S.C. §§ 157, 1334.  *See also In re Fairfield Sentry*, 458 B.R. at 674 ("bankruptcy

jurisdiction is divided into 'core' and 'non-core' jurisdiction.") (citations omitted); *Stern v. Marshall*, 564 U.S. 462, 474-76 (2011) (discussing core and non-core jurisdiction).

Proceedings that "arise under" the Bankruptcy Code are those "that clearly invoke substantive rights created by federal bankruptcy law." *MBNA Am. Bank, N.A.  v. Hill*, 436 F.3d 104, 108-09 (2d Cir. 2006).  *See also In re Adelphia Commc'ns Corp.*, 307 B.R. 404, 413 (Bankr. S.D.N.Y. 2004) (noting that "[a]rising under jurisdiction relates to federal question claims of a particular type—those federal questions that have their origin in title 11 of the United States Code (i.e., the Bankruptcy Code), and where relief is sought based upon a right created by title 11.") (internal quotation marks omitted) (footnote omitted).  In contrast, the focus of "arising in" jurisdiction is on matters that "are not based on any right expressly created by [T]itle 11, but nevertheless would have no existence outside of the bankruptcy." *Baker v. Simpson*, 613 F.3d 346, 351 (2d Cir. 2010) (quotations omitted).  Thus, "[a] claim arises in a bankruptcy proceeding if it would have no practical existence *but for* the bankruptcy." *Delaware Trust Co. v. Wilmington Trust, N.A.*, 534 B.R. 500, 511 (S.D.N.Y. 2015).  *See also Ames Dep't Stores Inc. v. Lumbermens Mut. Cas. Co. (In re Ames Dep't Stores, Inc.)*, 542 B.R. 121, 135 (Bankr. S.D.N.Y. 2015) (explaining that a claim "arises in" a bankruptcy case if the claim, by its very nature, "can only be brought in a bankruptcy case, because it has no existence outside of bankruptcy.").  The fiduciary fraud claim does not "arise under" the Bankruptcy Code because it is predicated on state or common law, not on rights originating in the Bankruptcy Code.  Nor does it "arise in" the Debtor's bankruptcy case because it is not a claim that can only be brought in a bankruptcy action.  Accordingly, the Court lacks core jurisdiction over the claim. *See, e.g., Krys v. Sugrue*, No. 08 Civ. 3086, 2008 WL 4700920 at *11 (S.D.N.Y. Oct. 23, 2008) (fraud claims not within court's core jurisdiction); *Maa -Sharda, Inc. v. First Citizens Bank & Trust,*

- 16 -

*Co. (In re Maa-Sharda, Inc.),* Bankr. No. 14-21380, Adv. P. No. 15-2003, 2015 WL 1598075, at

*5 (Bankr. W.D.N.Y. April 9, 2015) (state law "fraud on the court" cause of action not within

court's "core" jurisdiction).

Non-core proceedings are those that are not core "but that [are] otherwise related to a

case under title 11." *See* 28 U.S.C. § 157(c)(1); *see also Stern,* 564 U.S. at 477 ("The terms

'non-core' and 'related' are synonymous" (quoting *Collier on Bankruptcy* ¶ 3.02[2], p. 3-26, n. 5

(16th ed. 2010))).  "The test for determining whether litigation has a significant connection with

a pending bankruptcy [sufficient to confer bankruptcy jurisdiction] is whether its outcome might

have any conceivable effect on the bankruptcy estate." *Pfizer Inc. v. Law Offices of Peter G.*

*Angelos (In re Quigley Co., Inc.),* 676 F.3d 45, 53 (2d Cir. 2012) (internal quotation marks

omitted) (footnote omitted) (quoting *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 114 (2d Cir.

1992)).  *Accord Parmalat Capital Fin. Ltd. v. Bank of Am. Corp.*, 639 F.3d 572, 579 (2d Cir.

2011) ("[A] civil proceeding is 'related to' a title 11 case if the action's outcome might have any

conceivable effect on the bankrupt estate." (internal quotation marks omitted)).  Here, the Debtor

in seeking an award of damages, "to pay towards the debt and personal costs incurred as a result

of the fraud."  Third Compl. at 2.  Further, he is asking the Court "to instruct the Department of

Education [to] act in good faith in granting a waiver [of unspecified age-related job requirement]

or assisting in procuring a waiver in this regard." *Id.* at 6.  Resolution of those claims can have

no effect on the Debtor's estate and, as such, are outside the Court's non-core, related to

jurisdiction.

Moreover, and in any event, the Debtor is barred from asserting the fraud and other

claims for relief against DOE because it has not waived its sovereign immunity with respect to

such claims.  For that additional reason, this Court lacks subject matter jurisdiction over those

claims.  The doctrine of sovereign immunity bars suits against the United States and a federal

agency, like DOE, unless Congress has waived such immunity by statute.  *See Liffiton v. Keuker*,

850 F.2d 73, 77 (2d Cir. 1988) ("It is well settled that the United States is immune from suit

except where [C]ongress, by specific statute, has waived sovereign immunity.") (citation

omitted); *see also Diaz v. United States*, 517 F.3d 608, 611 (2d Cir. 2008) (noting that "absent a

waiver," the "principal of sovereign immunity . . . shields the federal government and its

agencies from suit.") (citations omitted).  "[T]he terms of [the United States'] consent to be sued

in any court define that court's jurisdiction to entertain the suit."  *United States v. Sherwood*, 312

U.S. 584, 586-87 (1941) (citations omitted); *see also United States v. Mitchell*, 463 U.S. 206,

212 (1983) ("It is axiomatic that the United States may not be sued without its consent and that

the existence of consent is a prerequisite for jurisdiction.") (footnote omitted).  Thus, because the

doctrine is "jurisdictional in nature," the Debtor bears the burden of establishing that its claims

against DOE fall within an applicable waiver.  *Makorova v. United States*, 201 F.3d 110, 113 (2d

Cir. 2003) (citations omitted*); see also Williams v. N.Y. City Housing Auth.*, No. 07-civ-7587,

2009 WL 804137, at *4 (S.D.N.Y. March 16, 2009) (stating that to defeat a motion to dismiss a

complaint based on sovereign immunity, "the plaintiff must identify a specific statue that waives

the sovereign immunity of the government for that type of claim.").  The Debtor has failed to

meet that burden.  He does not contend that Congress has specifically waived DOE's immunity

from suit with regard to the claims asserted against DOE in the Third Complaint, and the Court is

not aware of any such waiver.[22]  Rather, he asserts that because DOE filed an *amicus curiae*

---

[22]    In reaching that conclusion, the Court has considered two provisions in particular.  First, section 106 of the
Bankruptcy Code addresses the "deemed" waiver of sovereign immunity in bankruptcy cases.  Pursuant to section
106(a)(1), the sovereign immunity of a governmental unit like DOE is abrogated to the extent set forth in section
523 of the Bankruptcy Code.  11 U.S.C. § 106(a)(1).  However, that section makes no provision for the award of
damages or other relief to parties to a proceeding to determine an exception to discharge.  Thus, even if DOE was
properly named as a defendant with regard to the Debtor's request for relief under section 523(a)(8) (which it was
not), section 106(a) provides no basis for finding a waiver of DOE's immunity.  *Cf. In re Griffin*, 415 B.R. 64, 68

- 18 -

brief, at the request of the First Circuit Court of Appeals, in *Murphy v. ECMC* (*see* Order dated June 9, 2015, Case No. 14-1691 (1st Cir.) [Doc. #00116847467]), it is deemed to have waived its sovereign immunity in that case and, because of the similarity between this case and the *Murphy* case, DOE should be deemed to have waived sovereign immunity in this case. *See* Debtor's Resp. at 1-2. Thus, he asserts that the Court "must not allow [the] dismissal [of DOE from this adversary proceeding]." *Id.* 2. ("Furthermore, the fact that the Department of Education is arguing so intently to de dismissed when they know they have waived their immunity and intervened on recent similar cases is intentionally deceptive and the court must recognize this fact as well in refusing dismissal."). The Court finds no merit to that assertion. In submitting its *amicus curiae* brief, DOE did not waive its sovereign immunity in *Murphy. Cf. Jamul Action Comm. v. Stevens*, No. 2:13-CV-01920, 2014 WL 3853148, at *9 (E.D. Cal. Aug. 5, 2014) (declining to find that tribe had waived sovereign immunity based upon filing of *amicus curiae* brief). It has not otherwise waived its immunity herein.

### Conclusion

---

(Bankr. N.D.N.Y. 2002) ("Code § 106(a) expressly abrogates sovereign immunity of a governmental unit with respect to Code § 362 and an award of actual damages for its violation."). Further, section 106(c) provides for a waiver of sovereign immunity to permit a debtor to offset claims against a governmental unit that constitute estate property against the claims or interests filed on behalf of such governmental unity. 11 U.S.C. § 106(c). It is inapplicable here because DOE has not filed a claim in the case. Second, the Federal Tort Claims Act ("**FTCA**") provides the framework under which the United States has consented to suits involving common law tort or negligence claims. *See* 28 U.S.C. §§ 2671-80. *See also Done v. Wells Fargo, N.A.*, No. 12-CV-04296, 2013 WL 3785627, at *5 (E.D.N.Y. July 18, 2013) ("The FTCA is generally the exclusive avenue for a suit against the United States for damages resulting from the negligent or wrongful act of any employee within the scope of his or her employment.") (citation omitted). However, it provides no benefit to the Debtor because it excludes fraud claims from the scope of its coverage. *See* 28 U.S.C. § 2680(h). *See also Done v. Wells Fargo, N.A.*, No. 12-CV-04296, 2013 WL 3785627, at *5 (E.D.N.Y. July 18, 2013) (noting that Congress has expressly carved out fraud claims from the FTCA's coverage) (citing 28 U.S.C. § 2680(h); *Sanchez Tapia v. U.S.*, 338 F.2d 416 (2d Cir. 1964))); *see also Covington v. U.S. By & Through Dep't of Air Force*, 303 F. Supp. 1145, 1149 (N.D. Miss. 1969) ("All claims of fraud of any type are excluded from the operation of the Federal Tort Claims Act, and this would include both fraud in factum as well as in inducement, both actual and constructive fraud, intrinsic and extrinsic fraud, and other species of deceit or false representation. In the case at bar it was defendant's alleged misrepresentations which induced plaintiffs' reliance thereon, giving rise to their tort claim, and whether plaintiffs style their cause of action fraudulent inducement or otherwise, it still bottoms on alleged factual misrepresentations and is barred by [§] 2680(h).").

Based on the foregoing, pursuant to Fed. R. Civ. P. 21, the Court dismisses DOE as a party to the Debtor's claim for relief under section 523(a)(8) of the Bankruptcy Code.  To the extent that the Debtor is pursuing a fraud claim against DOE, the Court dismisses it and related claims pursuant to Fed. R. Civ. P. 12(b)(1), for lack of subject matter jurisdiction.

SETTLE ORDER ON NOTICE.


Dated: March 26, 2018
New York, New York


/s/ *James L. Garrity, Jr.*
HONORABLE JAMES L. GARRITY, JR.
UNITED STATES BANKRUPTCY JUDGE