NOT FOR PUBLICATION

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------x
                                                      :
In re:                                                :        Chapter 7
                                                      :
Michael Grabis,                                       :        Case No. 13-10669-JLG
                                                      :
                              Debtor.                 :
                                                      :
------------------------------------------------------x
                                                      :
Michael Grabis,                                       :
                                                      :        Adv. Pro. No. 15-01420-JLG
                              Plaintiff,              :
                                                      :
v.                                                    :
                                                      :
Navient Solutions, LLC, *et al.*,                     :
                                                      :
                              Defendants.             :
                                                      :
------------------------------------------------------x

**<u>APPEARANCES</u>:**

MICHAEL GRABIS
1 Hays Drive
Morristown, NJ 07960

*Plaintiff-Debtor, pro se*

PAUL J. HOOTEN
Paul J. Hooten & Associates
5505 Nesconset Highway, Suite 203
Mt. Sinai, NY 11706

*Attorney for Defendant-Navient Solutions, LLC*

KENNETH L. BAUM
167 Main Street
Hackensack, NJ 07601

*Attorney for Defendant-ECMC Inc.*

DOMINIKA TARCZYNSKA
86 Chambers Street, Third Floor
New York, New York 10007

*Attorney for Defendant-United States Department of Education*

JOSEPH LUBERTAZZI, JR.
SHEILA E. CALELLO, ESQ.
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102

*Attorneys for Defendant-Lafayette College*


# MEMORANDUM DECISION AND ORDER RESOLVING DEBTOR'S REQUEST FOR DOCUMENT DISCOVERY


## Introduction

In this adversary proceeding, Michael Grabis, the *pro se* chapter 7 debtor herein (the "Debtor"), is seeking a determination that his student loan indebtedness is not excepted from discharge under section 523(a)(8) of the Bankruptcy Code. The matter before the Court is the Debtor's request for leave to obtain document discovery from Navient Solutions, Inc. ("Navient"), the Department of Education (the "DOE") and Lafayette College ("Lafayette"). Navient is a defendant herein. The DOE and Lafayette were named defendants in the Debtor's complaint, but have been dismissed from this action by orders of this Court. The Debtor's discovery requests are embodied in three documents filed herein (referred to collectively as the "Discovery Motion.").[1]

---

[1]     Those documents are: (i) a document titled "Discovery Dispute – Request for Information" [AP ECF No. 103] (the "Initial Discovery Request"); (ii) a document titled "Discovery Request Simplified" [AP ECF No. 125] (the "Simplified Discovery Request"), and (iii) a document titled "Further Description of Previously Filed Amended Schedule and Supplemental Discovery Demand" [AP ECF No. 191] (the "Supplemental Discovery Request").

The DOE, Navient, and Lafayette object to the Discovery Motion. As discussed below, the Court rejects their contention that the Court should deny the motion, as untimely. Accordingly, the Court has considered the merits of the Discovery Motion. For the reasons set forth herein, the motion is GRANTED in part, and DENIED in part.

## Jurisdiction

This Court has jurisdiction over the Discovery Motion pursuant to 28 U.S.C. §§ 1334(a) and 157(a) and the Amended Standing Order of Referral of Cases to Bankruptcy Judges of the United States District Court for the Southern District of New York (M-431), dated January 31, 2012 (Preska, C.J.). This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

## Background

On March 5, 2013 (the "Petition Date"), the Debtor, through counsel, filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code in this Court. *See* ECF No. 1.[2] By order of the Court dated June 11, 2013, the Debtor received his discharge in bankruptcy, the chapter 7 trustee appointed to administer the Debtor's estate was discharged, and the case was closed. *See* ECF No. 8.

As of the Petition Date, the Debtor's unsecured indebtedness included debts on account of federal and private student loans (collectively, the "Student Loan Debt"), as follows:

(1)     The Educational Credit Management Corporation ("ECMC"), in its capacity as a federal student loan guarantor in the Federal Family Education Loan Program ("FFELP"), holds an interest in two consolidation loans owed by the Debtor, each of which was disbursed on or about June 24, 2005, in the original principal amounts of $19,934 and $30,096 (collectively, the "Consolidation Loans").

---

[2]   "ECF No. ___" refers to a document filed in the Debtor's chapter 7 case (No. 13-10669-JLG). "AP ECF No. ___" refers to a document filed in this adversary proceeding.

(2)     Navient is the holder of five private educational loans, with an aggregate
balance, including principal, interest and fees, of more than $119,095.39
(collectively, the "Private Loans").

In August 2013, the Debtor reopened his case, and on December 15, 2015, acting *pro se*,

he commenced this adversary proceeding by filing a complaint seeking a determination that his

Student Loan Debt is not excepted from discharge under section 523(a)(8) of the Bankruptcy

Code.  *See* AP ECF No. 1.  As filed, the complaint named Sallie Mae, Navient, Lafayette, and

the University of Vermont as defendants.  ECMC moved to intervene as a defendant, and over

the Debtor's objection, the Court granted ECMC leave to do so.  *See* AP ECF Nos. 11 (Motion to

Intervene); 16 (Order Granting Leave to Intervene).  With authorization of the Court, the Debtor

amended the complaint several times.  The operative complaint is the Debtor's "Third Adversary

Complaint for Discharge of Student Loans" (the "Third Complaint").  *See* AP ECF No. 84.  In

that complaint, the Debtor added the DOE as a named defendant.

In support of the Third Complaint, the Debtor asserts that he filed this adversary

proceeding "as an addition to my core bankruptcy proceeding to discharge my student loans

under [Bankruptcy] Rule 4007(b), 11 U.S.C[. §] 523 (a)(8), as per my rights to a 'fresh start'

under the U.S. Bankruptcy Code."  Third Complaint at 2.  He alleges that there are two reasons

why this Court should grant him such relief.  First, he says that he is entitled to "the full

discharge of the unqualified private loan portion of my debt and full discharge of my federal

debt, both under section 523(a)(8) of the [B]ankruptcy [C]ode[,]" because

[u]nder the standard tests for discharge of student loans I have made a good faith
effort to repay my loans, I am currently unable and will be unable to repay the loans
for a considerable period, and I have not been able to maintain a minimal standard
of living as defined by the poverty guidelines.

*Id*.  He asks this Court

3

to recognize that the size and nature of my debt make my case fundamentally
different from any guidelines decided under the Brunner case standard which dealt
with federal student loans for graduate education under $15,000 dollars close to 30
years ago in an economic environment far different from today. My debt is largely
unqualified private student loans which are dischargeable under the [B]ankruptcy
[C]ode. The Southern District of New York has jurisdiction of the Brunner
standard.

*Id*. Second, he maintains that he is entitled to relief under section 523(a)(8) to redress the harm

caused to him by the defendants. He says that "I believe that my degree issuing college and

lenders did not act in good faith in the origination and servicing of my student loans and, in fact,

acted to collude, embezzle, and purposely defraud me as a student borrower." *Id*. at 1-2. Thus,

in addition to his *Brunner* based arguments, he asserts that "I am alleging fraud, breach of

contract, and unjust enrichment in my defense of repayment." *Id*. at 2. The Debtor is asking for

damages that he says he has suffered by reason of the defendants' fraud. He maintains that

although he is "seeking the full discharge of the unqualified private loan portion of my debt and

my federal debt, both under sections 523(a)(8) of the [B]ankruptcy [C]ode[,] [t]he fraud that

occurred also caused damage to me personally and I am asking the court to grant damages from

these parties to pay towards the debt and personal costs incurred as a result of the fraud." *Id*.

Over the course of this litigation, the Debtor stipulated to dismiss the University of

Vermont from the action, and the Court granted motions to dismiss all claims that the Debtor

asserted against Lafayette, Sallie Mae and the DOE.[3] The Court also dismissed all claims

---

[3]    *See* Stipulation of Dismissal [of the University of Vermont] [AP ECF No. 15]; Order Granting Motion to
Dismiss the claims against Lafayette College [AP ECF No. 43]; Order Granting Navient Solutions, Inc.'s Motion to
Dismiss "Sallie Mae, Inc." as a Defendant in This Adversary Proceeding Pursuant to Fed. R. Civ. P. 21 and Fed. R.
Bankr. P. 7021 and to Dismiss All Claims for Relief in Plaintiff's Third Amended Complaint Not Based on 11
U.S.C. § 523(a)(8) Pursuant to Fed. R. Civ. P. 12(b)(1) & (6) and Fed. R. Bankr. P. 7012(b) [AP ECF No. 45];
Memorandum Decision Granting Department of Education's Motion To Dismiss [AP ECF No. 133].

against Navient that are not predicated on section 523(a)(8) of the Bankruptcy Code.[4]  As such,

the defendants remaining in this action are ECMC and Navient, and the matter at issue is

whether the Debtor is entitled to a determination that his Student Loan Debt is not excepted from

discharge under section 523(a)(8) of the Bankruptcy Code.

The following categories of educational loans are within the scope of section 523(a)(8):

(i)      educational benefit overpayments or loans made, insured, or guaranteed
         by a governmental unit;

(ii)     educational benefit overpayments or loans made under any program
         partially or fully funded by a governmental unit or nonprofit institution;

(iii)    obligations to repay funds received as an educational benefit,
         scholarship, or stipend; and

(iv)     any other educational loan that is a "qualified education loan" under
         section 221(d)(1) of the Internal Revenue Code, incurred by a debtor
         who is an individual.

11 U.S.C. § 523(a)(8).[5]  The first three loan categories fall under section 523(a)(8)(A), while the

last category is within the scope of section 523(a)(8)(B).  Those subsections are mutually

---

[4]    On June 22, 2016, among other things, Navient moved to dismiss all claims in the Third Complaint not based on
11 U.S.C. § 523(a)(8).  The Court heard arguments on the motion and granted it.  *See* AP ECF No. 45.

[5]    Section 523(a)(8) states:

   (a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

      (8) unless excepting such debt from discharge under this paragraph would impose an undue
      hardship on the debtor and the debtor's dependents, for—

         (A)(i) an educational benefit overpayment or loan made, insured, or
         guaranteed by a governmental unit, or made under any program funded in
         whole or in part by a governmental unit or nonprofit institution; or

         (ii) an obligation to repay funds received as an educational benefit,
         scholarship, or stipend; or

         (B) any other educational loan that is a qualified education loan, as defined
         in section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a
         debtor who is an individual[.]

exclusive. *See Campbell v. Citibank, N.A. (In re Campbell)*, 547 B.R. 49, 55 (Bankr. E.D.N.Y. 2016). Accordingly, for the Debtor to prove that his Student Loan Debt is not excepted from discharge, he must establish either (i) that the Consolidation Loans and Private Loans do not fall within the scope of section 523(a)(8)(A) or section 523(a)(8)(B); or (ii) that excepting such loans from discharge would impose an undue hardship on him. In *Brunner v. New York Higher Educ. Servs.*, 831 F.2d 395 (2d Cir. 1987) (*per curiam*), the Second Circuit established a three-prong test to determine if a debtor is eligible for an "undue hardship" discharge of its student loan debt. Under *Brunner*, the Debtor must prove:

(1)    that he cannot maintain, based on current income and expenses, a "minimal" standard of living for himself and his dependents if forced to repay the loans;

(2)    that additional circumstances exist indicating that this current state of affairs is likely to persist for a significant portion of the repayment period; and

(3)    that he has made good faith efforts to repay the loans.

*Id.* at 396. The Debtor must establish all three prongs of this test by a preponderance of the evidence. *See Davis v. Educ. Credit Mgmt. Corp. (In re Davis)*, 373 B.R. 241, 245 (Bankr. W.D.N.Y. 2007; *Garneau v. New York State Higher Educ. Servs. Corp. (In re Garneau)*, 122 B.R. 178, 180 (Bankr. W.D.N.Y. 1990).

At the hearing on this motion, Navient did not dispute the Debtor's assertion that the Private Loans are outside of the scope of section 523(a)(8)(A).[6] Thus, to prove that the Private

---

11 U.S.C. § 523(a)(8).

[6] At the hearing, the Debtor conceded that the Consolidation Loans fall within the scope of section 523(a)(8)(A). Thus, to show that those loans are not excepted from discharge, the Debtor must prove that excepting such loans from discharge would impose an undue hardship on him. In the Discovery Motion, the Debtor is focusing on the dischargeability of the Private Loan debt. He is not seeking discovery from ECMC regarding the Consolidation Loans.

Loans are not excepted from discharge, the Debtor must establish either that (i) the Private Loans

are not "qualified educational loans" incurred by an individual debtor under section

523(a)(8)(B), or (ii) under *Brunner*, it will be an undue hardship for him to repay that debt.

Section 523(a)(8) defines the term "qualified education loan" by reference to section 221 of the

Internal Revenue Code, 26 U.S.C. § 221.  Under that section, a "qualified education loan" is any

indebtedness incurred by the taxpayer solely to pay "qualified higher education expenses"—

> (A)    which are incurred on behalf of the taxpayer, the taxpayer's spouse, or any
> dependent of the taxpayer as of the time the indebtedness was incurred,

> (B)    which are paid or incurred within a reasonable period of time before or after the
> indebtedness is incurred, and

> (C)    which are attributable to education furnished during a period during which the
> recipient was an eligible student.

26 U.S.C. § 221(d)(1).  Section 221(d)(2) defines the term "qualified higher education expenses"

to mean the "cost of attendance (as defined in section 472 of the Higher Education Act of 1965,

20 U.S.C. 1087ll, as in effect on the day before the date of the enactment of the Taxpayer Relief

Act of 1997) at an eligible educational institution," reduced by educational expenses paid under

certain other programs.  26 U.S.C. § 221(d)(2).  In turn, section 472 of the Higher Education Act

includes the following categories of costs within the definition of "cost of attendance":

> (1) tuition and fees normally assessed a student carrying the same academic workload
> as determined by the institution, and including costs for rental or purchase of any
> equipment, materials, or supplies required of all students in the same course of study;
> [and]

> (2) an allowance for books, supplies, transportation, and miscellaneous personal
> expenses, including a reasonable allowance for the documented rental or purchase of a
> personal computer, for a student attending the institution on at least a halftime basis, as
> determined by the institution[.]

20 U.S.C. § 1087ll.

The Debtor contends that the Student Loan Debt is not excepted from discharge under section 523(a)(8) of the Bankruptcy Code because: (i) it will be an undue hardship for him to repay that indebtedness; and (ii) the Private Loans are not "qualified education loans." *See* Third Complaint at 2.  As support for the latter, and in furtherance of his request in the Discovery Motion[7] for document discovery from the DOE, Navient and Lafayette,[8] the Debtor makes the following arguments:[9]

    A.    <u>The Proceeds Of His Private Loans Were Not Applied To Expenses Associated
With "Teaching Or Instruction" As Defined In The "Cost of Attendance"
Definition Of 26 U.S.C. 221(d)(1) And Therefore Are  Not "School Certified"</u>

The Debtor contends that with the assistance of Sallie Mae, Lafayette and other colleges/universities forced him and other students to take out student loans in amounts that exceeded the students' "cost of attendance," as defined in 26 U.S.C. § 221 (d)(1). He says that in doing so, Lafayette was able to create a reserve fund, the proceeds of which it used to pay its school president and other administrators much higher salaries, as well as other expenses that are not associated with teaching and instruction or related to the normal cost of attendance.

As support, the Debtor asserts that when he requested funding, Sallie Mae would simply ask how much the Debtor needed, without any itemization, but then pay that amount directly to Lafayette.  He claims that a detailed review of a number of

---

[7]   In support of the Discovery Motion, the  Debtor also contends that the Student Loan Debt is not excepted from discharge under section 523(a)(8) because: (i) actions taken by ECMC, Navient, the DOE and Lafayette constitute a fundamental breach of contract, as well as fraud, that deems the loans dischargeable based on the no-asset discharge ruling previously entered in this case; and (ii) (a) the United States Constitution and Bankruptcy Code only provide an exemption from student loans for situations involving a certain period of time; and (b) the Debtor graduated over 15 years ago and according to the Bankruptcy Code, the Student Loan Debt is no longer governed by section 523(a)(8).  *See* Debtor's Supplemental Discovery Request at 1-2. The document requests at issue in the Discovery Motion do not bear on those arguments.  Accordingly, the Court will not consider them further in resolving the Discovery Motion.

[8]   As filed, the Debtor's Simplified Discovery Request included a request that ECMC produce:

       Any memoranda or directives ECMC has received from Sallie Mae/Navient or the DOE related to
       the handling or strategy of student loan bankruptcy filers, including any directives as to Grabis's
       case.

*See* Simplified Discovery Request at 4.  At the hearing on this matter, the Debtor confirmed that he is no longer seeking document production from ECMC.

[9]   In the three documents that comprise the Discovery Motion, the Debtor made a number of arguments in support of his request for leave to obtain document discovery from the DOE, Navient and Lafayette.  What follows is the Court's summary of those arguments, as distilled from those documents.

documents (including (i) Lafayette's methodology of calculating and administering grant funds during the period he attended the school, and, particularly, the "cost of attendance" numbers used for different students, and (ii) the publicly announced annual budget of financial aid grants during this time as well as (iii) the "estimated family contribution" number Lafayette calculated for him to use) will prove that his loans were not borrowed in conjunction with "cost of attendance" but rather for profit.

B.    Lafayette Engaged In Tax Fraud By Withholding Grant Money To Debtor and Others

The Debtor says that as an educational non-profit, Lafayette was required to distribute grant funds uniformly.  He contends that if Lafayette did not distribute the grants uniformly, it was required by tax law to report as taxable income any amount borrowed by a student not receiving uniform grant funds.  He maintains that: (i) Lafayette was financially profiting by withholding grants funds from certain students, including the Debtor; and (ii) Lafayette's annual financial reports for the years the Debtor attended the school will show that Lafayette did not pay any income taxes.

C.    Sallie Mae Aided The Tax Fraud Scheme

The Debtor maintains that a detailed review of Sallie Mae's communications with Lafayette and other schools, particularly through their sales teams, will show that Sallie Mae was pushing Lafayette and other schools to break tax laws and overcharge students.  He says that Sallie Mae not only participated in this tax fraud for profit scheme but also attempted to block borrowers from repaying their loans by setting impossibly high minimum payments and forcing borrowers into forbearance in order to generate higher loan balances and fees.  As support for that assertion, he says that several lawsuits were brought against Sallie Mae for doing this including by employees and former employees of Sallie Mae, and that one such case was brought by former employee Michael Zahara.

He also contends that Sallie Mae repeatedly loaned out funds it knew were dischargeable in bankruptcy but at the same time attempted to buy government influence to later deem the loans exempt from discharge under the 523(a)(8) provision.  He says that Sallie Mae continued to use backdoor and hidden communications with the United States House of Representatives and the DOE to create a "veneer" provision to the section 523(a)(8) exemptions to discharge, while fully knowing it was hiding facts such as the school certified vs non-school certified nature of the loans to the borrowers, including the Debtor, and attempting a secret renegotiation of terms of loan contracts already entered into, including the Debtor's contract.  He maintains that those actions display Sallie Mac's blatant attempt at fraud and illegal profiteering.

9

The DOE, Navient, and Lafayette object to the Discovery Motion.[10]

### Discussion

Rule 26 of the Federal Rules of Civil Procedure, as made applicable herein by

Bankruptcy Rule 7026, governs the scope of discovery and provides, in relevant part:

> Unless otherwise limited by court order, the scope of discovery is as follows:
> Parties may obtain discovery regarding any nonprivileged matter that is relevant to
> any party's claim or defense and proportional to the needs of the case, considering
> the importance of the issues at stake in the action, the amount in controversy, the
> parties' relative access to relevant information, the parties' resources, the
> importance of the discovery in resolving the issues, and whether the burden or
> expense of the proposed discovery outweighs its likely benefit. Information within
> this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). In 2015, the rule was amended to narrow the relevance required of

discovery requests and emphasize the proportionality factors in considering the scope of

discovery. *See* Fed. R. Civ. P. 26(b)(1) advisory committee's note (2015) ("The present

amendment restores the proportionality factors to their original place in defining the scope of

discovery. This change reinforces the Rule 26(g) obligation of the parties to consider these

factors in making discovery requests, responses, or objections.").[11] *See also Lozada v. Cty. of*

---

[10]   *See* Department of Education's Opposition to Plaintiffs' Discovery Motions [AP ECF No. 138] ("DOE's Simple Opposition"); Department of Education's Opposition to Plaintiff's Further Description of Previously Filed Amended Schedule and Supplemental Discovery Demand [AP ECF No. 196] ("DOE's Further Opposition"); Navient Solutions, LLC's Response to Plaintiff's Discovery Request Simplified [AP ECF No. 134] ("Navient's Simple Response"); Navient Solutions, LLC's Response to Plaintiff's Further Description of Previously Filed Amended Schedule and Supplemental Discovery Demand [AP ECF No. 195]; Non-Party Lafayette College's Objection to Plaintiff's Discovery Requests [AP ECF No. 172] ("Lafayette's Initial Objection"); Non-Party Lafayette College's Further Objections to Plaintiff's Discovery Requests [AP ECF No. 197] ("Lafayette's Further Objection").

[11]   Prior to the 2015 amendment, Rule 26(b)(1) read as follows:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain
> discovery regarding any nonprivileged matter that is relevant to any party's claim or defense—
> including the existence, description, nature, custody, condition, and location of any documents or
> other tangible things and the identity and location of persons who know of any discoverable matter.
> For good cause, the court may order discovery of any matter relevant to the subject matter involved

*Nassau*, No. CV 16-6302, 2017 WL 6514675, at *4 (E.D.N.Y. Dec. 20, 2017) (stating that "the current version of Rule 26 defines permissible discovery to consist of information that is, in addition to being relevant 'to any party's claim or defense,' also 'proportional to the needs of the case.'").  The term "relevant" is not defined in Rule 26, and courts often look to the definition of "relevant evidence" under Rule 401 of the Federal Rules of Evidence.[12]  *See, e.g.*, *O'Garra v. Northwell Health*, No. CV 16-2191, 2018 WL 502656, at *2 (E.D.N.Y. Jan. 22, 2018) ("Information 'is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action.'") *Cf. 6 Moore's Fed. Prac.* § 26.44[3][a] (3d ed. 2015) (noting that while Rule 26 does not define "relevant," "relevant evidence" is defined by FRE 401).  A trial court has broad discretion in determining the "relevance" of the requested discovery.  *See, e.g.*, *Homeward Residential, Inc. v. Sand Canyon Corp.*, No. 12-CV-5067, No. 12-CV-7319, 2017 WL 4676806, at *5 (S.D.N.Y. Oct. 17, 2017) ("A district court has wide latitude to determine the scope of discovery." (quoting *In re Agent Orange Prod. Liability Litig.*, 517 F.3d 76, 103 (2d Cir. 2008))); *Narayanan v. Sutherland Global Holdings Inc.*, 285 F. Supp. 3d 604, 610 (W.D.N.Y. 2018) ("Motions to compel are entrusted to the sound discretion of the district court … and a trial court enjoys wide discretion in its handling of pre-trial discovery.") (internal citations and quotation marks

---

in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. All discovery is subject to the limitations imposed by Rule 26(b)(2)(C).

Fed. R. Civ. P. 26(b)(1), as in effect November 30, 2015.

[12]    Federal Rule of Evidence 401 states:

Evidence is relevant if (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action.

Fed. R. Evid. 401.

omitted).  Whether the discovery sought is relevant to a claim or defense depends on the facts

and circumstances of the case.  *See, e.g.*, *Carl v. Edwards*, No. CV 16-3863, 2017 WL 4271443,

at *9 (E.D.N.Y. Sept. 25, 2017) (noting that the court must determine if the discovery sought is

"both relevant and proportional in light of the particular facts and circumstances of this case."

(citing Fed. R. Civ. P. 26(b)(1)); *Trevino v. Caliber Home Loans* (*In re Trevino*), 564 B.R. 890,

911–12 (Bankr. S.D. Tex. 2017) ("Specifically, Rule 26 provides that discovery sought must be

relevant to a claim and proportional given the specific circumstances of the case.").  *Cf. 6*

*Moore's Fed. Prac.* § 26.42[1] (3d ed. 2015) ("A court's determination of whether a discovery

request is 'relevant to any party's claim or defense' must look beyond the allegation of a claim or

defense to the controlling substantive law.").  "The burden of demonstrating relevance is on the

party seeking discovery."  *Republic of Turkey v. Christie's, Inc.*, 326 F.R.D. 394, 400 (S.D.N.Y.

2018); *see also Winfield v. City of New York*, No. 15 CV 05236, 2018 WL 840085, at *3

(S.D.N.Y. Feb. 12, 2018) ("The party moving to compel bears the initial burden of

demonstrating relevance and proportionality." (citing *Johnson v. J. Walter Thompson U.S.A.,*

*LLC*, No. 16-cv-1805 (JPO) (JCF), 2017 WL 3055098, at *2-3 (S.D.N.Y. July 18, 2017))).

Non-party discovery is governed by Rule 45 of the Federal Rules of Civil Procedure,

which is made applicable to this proceeding by Bankruptcy Rule 9016.  When discovery is

sought from third parties, the Court must also weigh the probative value of the information

against the burden of production on the non-party.  *See generally Concord Boat Corp. v.*

*Brunswick Corp.*, 169 F.R.D. 44, 48-49 (S.D.N.Y. 1996); *see also* Fed. R. Civ. P. 45(d)(1) &

(d)(2)(B)(ii) (stating that non-party status entitles parties to consideration regarding expense).

Whether a discovery request imposes an "undue burden" depends on factors including relevance,

the need of the party for the documents, the breadth of the document request, the time period

covered by the request, the particularity with which the documents are described, and the burden imposed. *See Concord Boat Corp.*, 169 F.R.D. at 49. Therefore, "to the extent a subpoena sweepingly pursues material with little apparent or likely relevance to the subject matters it runs the greater risk of being found overbroad and unreasonable." *Id.* at 50 (quoting *U.S. v. Int'l Bus. Machines Corp.*, 83 F.R.D. 97, 106-07 (S.D.N.Y. 1979).

On August 31, 2016, the Court entered a scheduling order calling for discovery herein to be completed by November 29, 2016 (i.e., 90 days after entry of the order). *See* AP ECF No. 44. None of the parties to the action sought to extend the discovery deadline and it was not extended. As a preliminary matter, Lafayette, the DOE and Navient all contend that the Court should deny the Debtor's request for discovery since he did not timely seek such discovery. In support of his request for leave to take discovery, the Debtor explains that he thought that the discovery deadline applied only to the defendants named in this adversary proceeding. He contends that he has complied with all the discovery requested of him and that "[i]t was [his] understanding that [he] would be afforded the same opportunity as the defendants to request information from them." *See* Simplified Discovery Request at 1. The Debtor is proceeding *pro se* and is actively pursuing this action. The Court credits the Debtor's assertion that he believed the discovery deadline was applicable to the defendants' discovery requests, and that he would be afforded the opportunity, if needed, to seek discovery later in this litigation against the defendants. Accordingly, the Court will consider the merits of the Discovery Motion.[13]

---

[13] The Debtor's document requests are spread throughout the three documents that comprise the Discovery Motion. In citing to those requests, the Court will not tie the document request to a particular document filed by the Debtor.

## Department of Education

The Debtor seeks the production of a wide range of documents from the DOE.[14]  A party

to an adversary proceeding in which the United States is not a party that seeks to obtain

documents from a federal agency for use in that adversary proceeding must follow the so-called

"*Touhy* regulations" applicable to that agency.  *See United States ex rel. Touhy v. Ragen*, 340

U.S. 462 (1951) (authorizing such regulations).[15]  A party seeking records in the custody of the

---

[14]  The document requests directed to the DOE are as follows:

>  Request 1.  Any and all inter-department emails, memoranda, or directives related to the DOE's handling of Sallie Mae's attempt to include private loans as exception to discharge "prior to 2004 – 2005 time period and after";

>  Request 2.  Any and all memoranda and directives given by the DOE to ECMC regarding handling student loan bankruptcy filings for the period 2002 to the present;

>  Request 3.  Any and all inter-department memoranda and directives related to federal student loan revenue financing of the Affordable Care Act;

>  Request 4.  Any inter-office communication between the DOE and Sallie Mae related to forbearance fees and management of borrower accounts and any borrower complaints discussed with Sallie Mae;

>  Request 5.  Any documentation on educational non-profit schools such as and including Lafayette College and their maintenance of cash reserves and any complaints of unjust tuition increases between 1997 and 2003; and

>  Request 6.  DOE internal and inter-departmental (including the Department of Justice, military branches or intelligence branches of government) memoranda between 1997 to the present, related to "dangerous or threatening or otherwise imperiling levels of debt" being accrued by student loan borrowers and notifications to borrowers or potential borrowers related to high levels of debt and its relation to imperiling future employment.

>  Supplemental Request 1.  DOE correspondence or announcement to private loan borrowers prior to BAPCPA that Sallie Mae had requested a change in the existing loan terms and changes to the Bankruptcy Code; and

>  Supplemental Request 2.  DOE communication with the House Committee on Education "during this period," specifically with John Boehner, Chris Coons, Ron Johnson, Vin Webber, Joe Biden, Tim Kaine, Hillary Clinton, and Bob Casey.

[15]  In *Touhy*, the Supreme Court reversed a contempt order entered by a federal district court against an FBI agent who had defied a deposition subpoena in accordance with a Department of Justice regulation issued under the Federal Housekeeping Statute, 5 U.S.C. § 301, which authorizes agencies to adopt regulations regarding "the conduct of [their] employees . . . and the custody, use, and preservation of [agency] records, papers, and property." The Court held that the contempt citation was improper because the Department's regulation, which gave the Attorney General the power to decide whether to comply with a subpoena, was valid, and the agent was simply obeying a lawful instruction from a superior.  The Court found it unnecessary "to consider the ultimate reach of the

DOE or information relating to those records must satisfy the regulations governing "Demands for Testimony or Records in Legal Proceedings" set forth at 34 C.F.R. §§ 8.1 – 8.5.  Briefly, those regulations provide that a demand for records must (1) be in writing, and (2) state the nature of the requested testimony or records, why the information sought is unavailable by any other means, and the reason why the release of the information would not be contrary to an interest of the Department or the United States.  *See* 34 C.F.R. § 8.3(a).  The demand for records must be served on "an employee who has custody of the records" with a copy simultaneously delivered to the General Counsel, U.S. Department of Education, Office of the General Counsel, 400 Maryland Avenue, SW., room 6E300, Lyndon Baines Johnson Building, Washington, DC 20202-2100.  34 C.F.R. § 8.3(b).

The DOE contends that the Court must deny the Debtor's request for document production from the DOE because he failed to comply with the *Touhy* regulations applicable to the DOE.  *See* DOE's Simple Opposition ¶¶ 4-8; DOE's Further Opposition  ¶¶ 5-8.  The Court agrees.  The Debtor served the Discovery Motion on the Office of the United States Attorney, for the Southern District of New York, as counsel to the DOE.  He did not serve it on either an employee of the DOE with custody of the information, or the Office of the General Counsel at the Department of Education, as required by the *Touhy* regulations described above.  *See, e.g.*, Debtor's Certificate of Service (attached to the Supplemental Discovery request) [AP ECF No. 191].  Moreover, in the Discovery Motion, he failed to state why the documents he seeks are unavailable by any other means, and why the production of those documents would not be contrary to an interest of the DOE or the United States.  *See* 34 C.F.R. § 8.3(a)(2).  For those reasons, the Court sustains the DOE's objection to the Discovery Motion, without prejudice to

---

authority of the Attorney General to refuse to produce at a court's order the government papers in his possession." 340 U.S. at 467.

the Debtor's right to renew such requests through the *Touhy* procedures applicable to the DOE.

*See Manzo v. Stanley Black & Decker, Inc.*, No. 13CV3963JFBSIL, 2017 WL 1194651, at *7

(E.D.N.Y. Mar. 30, 2017) (denying plaintiff's motion to compel production of documents against

the U.S. Department of Labor as premature where the plaintiff had not first made his request

through the *Touhy* regulations applicable to the DOL, and thus the DOL had not yet provided a

final determination as to the information sought).  In addition to seeking the production of

documents from the DOE,  in the Discovery Motion, the Debtor seeks the appointment of an IRS

Special Agent and the United States Trustee "to provide detailed definitions on some of the

terms [he has] put forth in this filing."  Supplemental Discovery Request at 4.  The Court lacks

the power to make such appointments and, as such, denies that request.  In any event, to the

extent that the Debtor is seeking discovery from the Internal Revenue Service or the Office of the

United States Trustee, the Court denies it, without prejudice to the Debtor's right to request the

information through the *Touhy* procedures applicable to the Department of Treasury/Internal

Revenue Service and the Department of Justice, respectfully.


### Navient[16]

The Discovery Motion includes 15 requests for document production from Navient.  The

Court groups them (each a "Navient Group") into requests seeking documents relating to:

    A.    The Debtor's account with Navient.[17]

---

[16]    Navient is the successor to Sallie Mae.  *See* Motion to Dismiss "Sallie Mae Servicing" as a Defendant in this Adversary Proceeding or in the Alternative for Summary Judgment Dismissing "Sallie Mae Servicing" as a Defendant in this Adversary Proceeding [AP ECF No. 10].  The Court treats the Debtor's request for documents from Sallie Mae as being directed to Navient, in that capacity.

[17]    The relevant document requests are:

B.      Instructions, including internal memoranda, directives and other training materials relating to Sallie Mae's advice to borrowers generally, relating to bankruptcy and Sallie Mae's collection of forbearance fees from borrowers.[18]

C.      Sallie Mae's alleged efforts to include private loans within the section 523(a)(8) exception to discharge.[19]

D.      Sallie Mae's communications with Lafayette College and other colleges/universities.[20]

---

Request 1.  Records of Grabis's borrowing, including information relating to forbearance, fees, and debt management solutions advised.

Request 10.  Copies of all Sallie Mae employees' emails or correspondence related to Grabis's account.

[18]  The relevant document requests are:

Request 2.  Specific instructions Sallie Mae gave to its debt counselors in advising private student loan borrower bankruptcy rights for the period 2000 – 2005, and any changes thereafter.

Request 3.  Specific instructions Sallie Mae gave to its debt counselors in appropriating and distributing forbearances to private student loan borrowers for the period 2000 – 2005.

Request 4.  Any and all intercompany memoranda, directives, and training manuals for the period 2002 – 2012, related to debt servicing employee's handling of borrowers, including, more specifically, statements and directives to debtors regarding bankruptcy rights and eligibility.

Request 5.  Any and all intercompany directives related to forbearances offered, including when and how and frequency offered, and applicable fees.

Request 6.  Copies of internal complaints by Sallie Mae employees related to forcing or manipulating borrowers into forbearance.

Request 7.  Any and all intercompany memoranda, directives, or projections of revenue/profit for the period 1995 – 2006, related to forbearance fees and establishing private student loans as exception to discharge.

Request 9.  Copies of any intercompany directives for the period 2002 – 2012, related to a strategy or policy advising or instructing borrowers with both private and federal student loans, on how to "stay current" and pay fees towards private loan balances rather than federal loan balances.

[19]  The relevant document requests are:

Request 8.  All communications for the period 1997 – 2006 between Sallie Mae and the DOE related to Sallie Mae's attempts to include private student loans as exception to discharge.

Supplemental Request 1.  Sallie Mae's instructions or requests to the House of Representative Committee on Education related to BAPCPA and John Boehner.

[20]  The relevant document requests are:

E.    Sallie Mae's legal filings in connection with the litigation brought against it by former employee Michael Zahara.[21]

<u>Navient Request A</u>.  The Debtor's account with Navient.

As noted previously, the Debtor contends that the Private Loan debt is not excepted from discharge under section 523(a)(8) of the Bankruptcy Code because it will be an undue hardship on the Debtor to repay that debt, and those loans are not "qualified education loans" under Section 523(a)(8)(B).  Documents relating to the Debtor's account with Navient that the Debtor identified in the document requests underlying Navient Request A are relevant to those issues, and Navient acknowledges as much.  In response to the Discovery Motion, Navient asserts, among other things, that it will "supply proof of the [Private Loan debt], the amount at issue, and any relevant payment history and related relevant documents at trial, or as part of a motion for summary judgment.  *See* Navient's Simple Response ¶ 10.  The Court directs Navient to deliver copies of those documents to the Debtor on or before December 28, 2018.  Moreover, the Court finds that communications, including documents, emails and correspondence, evidencing, encompassing or concerning information or advice that Sallie Mae/Navient provided to the

---

<u>Request 11</u>.  Copies of any documents, memoranda, correspondence, and "sales pitches" Sallie Mae sent to colleges and universities for the period 1995 – 2008 regarding their lending services and how those services might benefit the colleges.

<u>Request 12</u>.  Any correspondence between Lafayette and Sallie Mae between 1997 and 2005 related to lending and lending limits.

<u>Request 13</u>.  Any and all correspondence between Sallie Mae and Arthur Rothkopf "while president of Lafayette College."

[21]    The relevant document request is:

<u>Supplemental Request 2</u>.  Sallie Mae's legal filings with respect to former employee Michael Zahara and any record of complaints from Zahara or other internal employees relating to blocking or preventing borrower payments to increase their overall loan balance.

Debtor with respect to (i) forbearance, fees, and debt management, and (ii) the Private Loans, generally, are relevant to the Debtor's claims and defenses in this action.  Under the *Brunner* test for evaluating undue hardship, a debtor must establish, among other things, that he has made good faith efforts towards repayment of the loan(s) sought to be discharged.  The instructions or advice that Navient and/or Sallie Mae gave to the Debtor with respect to the repayment of the Private Loans, including, without limitation, matters concerning loan forbearance/forgiveness and repayment plans, may bear directly on that prong of the *Brunner* test.  *See J.P.Morgan Sec. LLC v. Mariano*, 1:17-cv-01080, 2018 WL 522339, at *2 (S.D.N.Y. Jan. 22, 2018) ("noting that "with respect to relevance, the scope of discovery in the federal courts is quite broad." (citing *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978))).  That aspect of the Debtor's document request is narrowly drawn.  It should not impose an undue burden on Navient to respond to it.  Accordingly, the Court directs Navient to deliver copies of those documents to the Debtor on or before December 28, 2018.[22]  The Court also directs Navient to produce to the Debtor any communications, including documents, evidencing Navient/Sallie Mae's calculation of the Debtor's "cost of attendance," as that term is defined in Section 523(a)(8)(B) of the Bankruptcy Code, at Lafayette for the period of 1998 through 2002.  That information is relevant to the Debtor's assertion that the Private Loans are not "qualified" education loans.  Those documents shall include, without limitation, correspondence (email or otherwise) between Navient/Sallie Mae and the Debtor or Lafayette, or any other third party, relating to the calculation of the Debtor's "cost of attendance."  Accordingly, the Court overrules Navient's objection to the document requests underlying Navient Request A and directs Navient to produce documents identified herein.

---

[22] The definitions set forth in Civil Rule 26.3 of the Local District Rules are applicable and incorporated herein.

19

<u>Navient Request B</u>.  Instructions, including internal memoranda, directives and other training materials relating to Sallie Mae's advice to borrowers generally, relating to bankruptcy and Sallie Mae's collection of forbearance fees from borrowers.

The Court sustains Navient's objection to this request.  The documents the Debtor is seeking relate to Sallie Mae's loan servicing operations generally, including advice the Sallie Mae gave to borrowers regarding bankruptcy, Sallie Mae's procedures relating to borrower forbearance agreements, and Sallie Mae's "strategy" for advising borrowers how to "stay current" on their federal loans and private loans.  Those documents do not satisfy the relevancy requirement in Rule 26(b)(i), because they will not provide evidence relating to either whether the Private Loans are "qualified education loans" or whether the Debtor is entiled to a hardship discharge.  *See generally Fed. Trade Comm'n v. Rensin*, 687 F. App'x 3, 6 (2nd Cir. 2017) (affirming district court's denial of discovery because the request for invoices was irrelevant to the issue of whether the defendants' misrepresentations "were of a kind usually relied upon by reasonable prudent persons.").

<u>Navient Request C</u>.  Sallie Mae's alleged efforts to include private loans within the section 523(a)(8) exception to discharge.

The Court sustains Navient's objection this request.  Sallie Mae's communications, if any, with the DOE for the period 1997- 2006 related to Sallie Mae's attempts to include private student loans as exceptions to discharge, and with the House of Representatives Committee on Education regarding BAPCA, has no bearing on whether the Student Loan Debt should be excepted from discharge.

<u>Navient Request D</u>.  Sallie Mae's communications with Lafayette College and other
colleges/universities.

The Court has determined that any communications between Lafayette and Sallie Mae
regarding the Debtor's "cost of attendance" during his four years at Lafayette are relevant to the
matters at issue herein.  However, correspondence between Sallie Mae and Lafayette during the
period of 1997 to 2005 relating to lending and lending limits, other than documents related to the
Debtor's "cost of attendance," are not relevant to this litigation.  Nor is correspondence between
Sallie Mae and Lafayette's president, except to the extent that it relates to the Debtor's cost of
attendance", or the "sales pitches" that Sallie Mae sent to colleges and universities during the
period 1995 – 2008 regarding their lending services and how those services might benefit the
colleges.  The Court sustains Navient's objection to the production of documents responsive to
those requests.

<u>Navient Request E</u>.  Sallie Mae's legal filings in connection with the litigation brought against it
by former employee Michael Zahara, and records of complaints from Zahara or other internal
employees relating to blocking or preventing borrower payments to increase their overall loan balance.

The Court sustains Navient's objection to the production of documents responsive to this
request.  Sallie Mae's legal filings with respect to litigation brought against it by Michael Zahara
are a matter of public record.  The Debtor can obtain those records on his own.  Moreover, in any
event, documents relating to that litigation, and to complaints from Zahara or other internal
employees relating to borrower payments are not relevant to whether the Private Loans should
not be excepted from discharge under section 523(a)(8).

**Lafayette College**

The Discovery Motion includes ten requests for document production from Lafayette.

The Court groups them into requests (each a "Lafayette Request"), seeking documents relating

to:

A.   The Debtor's personal record of financial aid with the college.[23]

B.   Any records of giving grants and financial aid to students "both in general and specific student records" for the period 1998 – 2014, and a "snapshot of what other borrowers received in grant money" versus the grant money the Debtor received for the years 1998 through 2002.[24]

C.   All records relating to Lafayette's cash and liquid investment reserves for the period 1995-2017, its federal tax filings for the period 1998 – 2005, and its annual report and financial statements" for the years 1998 through 2002.[25]

D.   Lafayette's institutional methodology for calculating grants, financial aid, cost of attendance, and estimated family contribution for the years 1998 through 2002.[26]

---

[23]   The request relevant to that issue is:

Request 4.  Records relating to Grabis's personal record of financial aid with the college.

[24]   The relevant document requests are:

Request 1.  Any records of giving grants and financial aid to students "both in general and specific student records" for the period 1998 – 2014.

Supplemental Request 5.  A "snapshot of what other borrowers received in grant money" versus the grant money the Debtor received for the years 1998 through 2002.

[25]   The relevant document requests are:

Request 2.  Any and all records related to Lafayette's federal tax filings for the period 1998 – 2005.

Request 3.  Any and all records of Lafayette's cash and liquid investment reserves for the period 1995 – 2017.

Supplemental Request 1.  Lafayette's "Annual report and financial statements" for the years 1998 through 2002.

[26]   The relevant document requests are:

Supplemental Request 2.  Lafayette's institutional methodology for calculating grants, financial aid, cost of attendance, and estimated family contribution ("EFC") for the years 1998 through 2002.

Supplemental Request 3.  Lafayette's institutional methodology for calculating EFC for the Debtor for the years 1998 through 2002.

E.      Any tuition reserve amount, defined as "an amount beyond or not used or applied to teaching and instruction costs" for the years 1998 through 2003, and what "Lafayette announced they had budgeted to pay out in financial aid" versus the amount of financial aid paid out during the years 1998 through 2002.[27]

Lafayette Request (A).  The Debtor's personal record of financial aid with the college.

After filing its Initial Objection to the Discovery Motion, Lafayette accessed its financial aid award database to review the Debtor's personal record of financial aid received while he was a student at Lafayette.  *See* Lafayette's Further Objection ¶ 12.  Lafayette contends that it has produced to the Debtor printouts from the database that include a breakdown of the Debtor's grants, student loans and estimated family contribution amounts for the 1998-1999, 1999-2000, 2000-2001 and 2001-2002 school years (the "Lafayette Production").  As such, it asserts, in effect, that the Lafayette Production contains all documents in its possession that are responsive to Lafayette Request (A).  *See id.*  The Debtor does not contend otherwise.  It is not clear to the Court whether the information provided by Lafayette to the Debtor in the Lafayette Production includes a calculation of the "cost of attendance" for the Debtor in each of the four years he attended Lafayette.  To the extent that the production did not include documents evidencing that calculation, the Court directs Lafayette to provide those documents to the Debtor on or before December 28, 2018.  The Debtor's request for documents responsive to Lafayette Request (A) is otherwise denied as moot.

---

[27]   The relevant document requests are:

> Supplemental Request 4.  Any tuition reserve amount, defined as "an amount beyond or not used or applied to teaching and instruction costs" for the years 1998 through 2003.
>
> Supplemental Request 6.  What "Lafayette announced they had budgeted to pay out in financial aid" versus the amount of financial aid paid out during the years 1998 through 2002.

Lafayette Request (B). Any records of giving grants and financial aid to students "both in general and specific student records" for the period 1998 – 2014, and a "snapshot of what other borrowers received in grant money" versus the grant money the Debtor received for the years 1998 through 2002.

The Debtor is not entitled to discovery of these documents because they are not relevant to the matters at issue in this action. As discussed above, to obtain a determination that his Student Loan Debt is not excepted from discharge, the Debtor must demonstrate that his Consolidation Loans and Private Loans are not within the scope of section 523(a)(8)(A) or section 523(a)(8)(B), or that it would be an undue hardship on him if those loans are not discharged. The financial aid records (including grant information) of other students at Lafayette for the period of 2002 – 2014[28] have no bearing on any of the *Brunner* factors in determining the Debtor's undue hardship, or on whether his Student Loan Debt falls within the indebtedness described in section 523(a)(8)(A) and section 523(a)(8)(B). *See Shim-Larkin v. City of New York*, No. 16-CV-6099 (AJN), 2018 WL 4636839, at *4 (S.D.N.Y. Sept. 27, 2018) (noting that discovery requests that seek information irrelevant to the case are outside the scope of discovery under Rule 26 and should not be permitted). Additionally, as noted by Lafayette, records relating to the financial aid sought and/or received by other Lafayette students and borrowers are protected education records under the Family Educational Rights and Privacy Act of 1974

---

[28] The Debtor attended Lafayette during the years 1998 – 2002. The Debtor provided no justification for the 12-year period (2002 – 2014) for which he seeks the financial records of "general and specific" students. Moreover, as noted in Lafayette's Initial Objection, there could be over 10,000 student records responsive to the Debtor's request. *See* Lafayette Initial Objection at 8, n.6. Thus, in addition to the lack of relevance and privacy issues of the documents sought, the request is also overbroad and vague, and would be costly to Lafayette, a non-party, to comply with. *See, e.g., Marlow v. Chesterfield Cty. School Bd.*, No. 3:10cv18-DWD, 2010 WL 3660770, at *4 (E.D. Va. Sept. 15, 2010) (denying plaintiff's discovery request for "copies of all emails to, or from, any [of defendant's] board member or employee related to nine (9) categories" because with 8,000 employees, "most of whom have no information relevant to the claims at issue, the request is also overly broad and places an undue burden on [defendant] for compliance.").

("FERPA"), 20 U.S.C. § 1232g; 34 CFR Part 99.[29]  FERPA applies to any school, such as

Lafayette, that receives funding under an applicable program of the DOE, and generally prohibits

the release by the school of such education records unless there is written consent from the

student or the student's parents.  *See* 20 U.S.C. § 1232g(b).  The purpose of FERPA is to

"protect [students'] right to privacy by limiting the transferability (and disclosure) of their

records without their consent."  *Rios v. Read*, 73 F.R.D. 589, 597 (E.D.N.Y. 1977) (quoting 120

Cong. Rec. S21497 (daily ed. Dec. 13, 1974) (joint remarks of Sen. Buckley and Sen. Pell)).

Thus, "a party seeking disclosure of education records protected by FERPA bears 'a significantly

heavier burden ... to justify disclosure than exists with respect to discovery of other kinds of

information. . . .'"  *Ragusa v. Malverne Union Free Sch. Dist.*, 549 F. Supp. 2d 288, 292

(E.D.N.Y. 2008) (citation omitted); *see also Alig-Mielcarek v. Jackson*, 286 F.R.D. 521, 526

(N.D. Ga. 2012) (same).  The Debtor has not met that burden.  *See, e.g., Marlow v. Chesterfield

Cty. School Bd.*, No. 3:10cv18-DWD, 2010 WL 3660770, at *4 (E.D. Va. Sept. 15, 2010)

(denying discovery of email correspondence within the scope of student records because of

privacy concerns under FERPA, burden of notification on producing party, and lack of relevance

of requested correspondence to plaintiff's claim "or any issue in the case").  Accordingly, the

Court sustains Lafayette's objection to the production of documents requested by the Debtor in

Lafayette Request (B).

---

[29]  The term "education records" means, except as may be provided otherwise in subparagraph (B), those records, files, documents, and other materials which—

   (i) contain information directly related to a student; and
   (ii) are maintained by an educational agency or institution or by a person acting for such agency or institution.

20 U.S.C. § 1232g(a)(4)(A).

Lafayette Request (C). All records relating to Lafayette's cash and liquid investment reserves for the period 1995-2017, its federal tax filings for the period 1998 – 2005, and its annual report and financial statements" for the years 1998 through 2002.

The Debtor's request for this category of documents pertaining to Lafayette's reserves, federal tax returns, annual reports, and financial statements, ranging from 1995 through 2017,[30] likewise fails to satisfy the relevancy standards under Rules 26 and 45 and warrants denial. Documents responsive to this request have no bearing on the Debtor's claim of undue hardship and his assertion that his Student Loan Debt are not of the types of loans described in section 523(a)(8). *See Solow v. Conseco, Inc.*, No. 06 Civ. 5988, 2008 WL 190340, at *4-5 (Jan. 18, 2008) (denying plaintiff's discovery request for financial documents of non-party for period 2003 – 2007 where "the Court fails to see the relevance" of the non-party's financial condition to the transaction at issue). To be sure, the Debtor admits that the purpose behind his request for Lafayette's financial information is not to support the grounds for dischargeability, but to prove his theory that Lafayette, like other colleges and universities across America, and in conjunction with the DOE, Sallie Mae, and ECMC, is engaged in a massive illegal tax fraud that profits from students. *See* Simplified Discovery Request at 3 ("In this particular request, I advise Lafayette College to refer to University of Wisconsin Madison's 2005 public record of admission of unjust and illegal tuition raising and cash reserve creation for purposes of profit. I am seeking records of Lafayette College's similar or mimicking of Wisconsin Madison's operations for profit."). To the extent that the Debtor is asserting claims for fraud, breach of fiduciary duties, and/or violations of U.S. tax laws by Lafayette, the Court has already dismissed such claims. *See* Order signed on 8/31/2016 Granting Motion to Dismiss the claims against Lafayette College [AP ECF

---

[30]   As with the Debtor's other requests, no explanation is given as to the relevance of the time period 1995 – 2017. Not only is a 22-year span patently beyond the years in which the Debtor was a matriculating student at Lafayette, but it is also grossly overbroad.

No. 43]; *see also* 8/25/16 Hr'g Tr. at 14:13-15:1.  The Debtor cannot now seek discovery of

documents as to claims which have already been dismissed.  *See, e.g.*, *Refco Grp. Ltd., LLC v.*

*Cantor Fitzgerald, L.P.*, No. 13-cv-1654, 2014 WL 5420225, at *7 (S.D.N.Y. Oct. 24, 2014)

(stating that "[w]hile relevance is broadly construed in the context of discovery, it is proper to

deny discovery of matter that is relevant only to claims or defenses that have been stricken."

(quoting *Treppel v. Biovail Corp.*, 233 F.R.D. 363, 375-76 (S.D.N.Y. 2006))).

Moreover, like the protected educational records, discovery of tax returns and financial

records implicate privacy concerns and there is a general policy against their production.  *See,*

*e.g.*, 6 *Moore's Fed. Prac.* § 26.45[1][b] (3d ed. 2015) ("Public policy disfavors disclosure of tax

returns, and courts should not require their production if the information sought is available from

another source.").[31]  *See also S.E.C. v. Garber*, 990 F. Supp. 2d 462, 465 (S.D.N.Y. 2014)

(noting that courts should exercise caution in ordering the production of tax returns because of

"the private nature of the sensitive information" and the "public interest in encouraging filing by

tax payers of complete and accurate returns" and collecting cases) (citations omitted).  Thus, a

party seeking the production of tax returns must satisfy a two-part test:  (1) the tax returns must

be relevant to the subject matter of the action, and (2) a compelling need must exist because the

information is not readily obtainable from a less intrusive source."  *Sadofsky v. Fiesta Prods.,*

*LLC*, 252 F.R.D. 143, 150 (E.D.N.Y. 2008) (citations omitted).  *Cf. Xiao Hong Zheng v. Perfect*

*Team Corp.*, 739 F. App'x 658,  (2d Cir. 2018) ("Courts in this Circuit long have observed that

discovery of tax return information 'presents a delicate situation.'" (quoting *SEC v. Cymaticolor*

---

[31]  *See also* 6 *Moore's Fed. Prac.* § 26.45[1][a] (3d ed. 2015) ("Information about a party's financial condition or
net worth was seldom relevant for discovery purposes, absent special circumstances, before the 2000 amendments to
Rule 26(b)(1), and is likely to remain relevant in only a few instances under the more restrictive definition of
relevance embodied in those amendments.").

*Corp.*, 106 F.R.D. 545, 547 (S.D.N.Y. 1985))).  Generally, the burden is on the "party seeking

discovery [of tax returns] to demonstrate both relevancy and a compelling need."  *Agerbrink v.*

*Model Serv. LLC*, No. 14 Civ. 7841, 2017 WL 933095, at *5 (S.D.N.Y. Mar. 8, 2017) (quoting

*Uto v. Job Site Servs. Inc.*, 269 F.R.D. 209, 212 (E.D.N.Y. 2010)).

Here, as discussed above, the Debtor has not demonstrated how Lafayette's financial

statements, annual reports and tax returns are relevant to his claim or defense of undue hardship

and the status of his Student Loan Debt as dischargeable indebtedness within the scope of §

523(a)(8).  Nor has the Debtor set forth any compelling need for these documents or shown that

these documents would support his wholly speculative theory that Lafayette was "mimicking"

the University of Madison Wisconsin.[32]  As such, the Debtor's request for Lafayette's financial

records (including as to Lafayette's reserve funds) and tax returns in Lafayette Request C is

denied.  *See generally United States v. Fed'n of Physicians & Dentists, Inc.*, 63 F. Supp. 2d 475,

479-80 (D. Del. 1999) (denying discovery from non-parties for confidential financial information

where information sought was only "remotely connected" to the claims at issue and in support of

a speculative argument).   Accordingly, the Court sustains Lafayette's objection to the

production of documents requested by the Debtor in Lafayette Request (C).

---

[32]    Courts have held that litigants may not use discovery under Rule 26 to engage in "fishing expeditions" in order
to find support for baseless or speculative allegations.  *See Micro Motion v. Kane Steel Co.*, 894 F.2d 1318, 1327-28
(Fed. Cir. 1990) ("The discovery rules are designed to assist a party to prove a claim it reasonably believes to be
viable without discovery, not to find out if it has any basis for a claim. That the discovery might uncover evidence
showing that a plaintiff has a legitimate claim does not justify the discovery request.").  *See also United States v.*
*Eisenberg*, 773 F. Supp. 662, 713, 714 (D.N.J. 1991) ("[Defendant's] claims of prosecutorial misconduct are
baseless as a reason for moving for…discovery…These allegations are meritless when considered singly or
cumulatively"); *Cf. Sec. Investor Prot. Corp v. Bernard L. Madoff Inv. Sec. LLC*, 496 B.R. 713, 725 (Bankr.
S.D.N.Y., 2013) (denying motion to subpoena certain records on the grounds that the discovery was "neither
relevant to [movants'] claims or defenses, nor the subject matter of this proceeding.").  There is no evidentiary basis
for the Debtor's allegation that Lafayette was "mimicking" the University of Madison Wisconsin's purported
operations for profit, and the Debtor should not be allowed to take discovery to "fish" for documents in support of
such a speculative theory.

Lafayette Request (D).  Lafayette's institutional methodology for calculating grants, financial aid, cost of attendance, and estimated family contribution for the years 1998 through 2002.

Insofar as this request seeks documents that demonstrate how Lafayette calculated financial aid, cost of attendance, grants and estimated family contribution for the relevant years 1998 – 2002, as to the Debtor, Lafayette contends that such information has already been provided to the Debtor in the Lafayette Production.  Insofar as this request seeks calculation records for all other Lafayette students for the years 1998 – 2002, such information is not relevant to the Debtor's claim or defense of the dischargeability of his Student Loan Debt and is protected from disclosure under FERPA, as more fully set forth above in Lafayette Request (B).  Accordingly, the Court sustains Lafayette's objection to the production of documents requested by the Debtor in Lafayette Request (D).

Lafayette Request (E).  Any tuition reserve amount, defined as "an amount beyond or not used or applied to teaching and instruction costs" for the years 1998 through 2003,[33] and what "Lafayette announced they had budgeted to pay out in financial aid" versus the amount of financial aid paid out during the years 1998 through 2002.

Like Lafayette Request (C), this request seeks the production of documents that are not relevant to the issues in this action.  As already discussed herein, the Debtor's objective in obtaining Lafayette's financial information, including reserve amounts and tax filings is, by his

---

[33]   It is not clear why the Debtor defined tuition reserve as "an amount beyond or not used or applied to teaching and instruction costs."  Notably, it is virtually identical to the definition the Debtor has attributed to the term "cost of attendance."  *See, e.g.*, Supplemental Discovery Request at 2 ("Cost of attendance is further defined in this section [221 of the Higher Education Act] and by the Internal Revenue Service as funds going directly to 'teaching and instruction.'").  The Debtor seems to be contending that if Lafayette has reserves beyond teaching and instruction costs, Lafayette has excess funds sufficient to cover a student's cost of attendance.  Such argument is without merit.  First, costs of attendance, as relevant to a determination of whether a loan is "any other educational loan that is a 'qualified education loan'" under § 221(d)(1) of the Internal Revenue Code, within the scope of section 523(a)(8)(B) is not limited to teaching and instruction costs.  Rather, as discussed above, "cost of attendance" refers to several categories of costs and expenses.  See 20 U.S.C. § 1087ll.  Second, assuming *arguendo* that Lafayette had sufficient reserves to cover students' teaching and instruction costs, there's no authority or basis to conclude that a school's reserve funds has any impact on the determination of a student loan as a "qualified education loan" for purposes of dischargeability under section 523(a)(8)(B).

own admission, to prove that Lafayette was profiteering illegally and fraudulently by, *inter alia*, charging higher than necessary tuition and/or not disbursing grants to students.  Even if the Debtor's theory and allegations were assumed to be true, these claims of fraud have no bearing on the dischargeability of the Student Loan Debt under § 523(a)(8).  Accordingly, the Court sustains Lafayette's objection to the production of documents requested by the Debtor in Lafayette Request (E).

## Conclusion

Based on the foregoing, the Court: (i) sustains the DOE's objection to the Discovery Motion, without prejudice to the Debtor's right to renew the document requests underlying the motion through the *Touhy* procedures applicable to the DOE; (ii) sustains Navient's objection to the Discovery Motion, except that it overrules Navient's objection to the production of documents responsive to the document requests underlying Navient Request A, and directs Navient to produce to the Debtor the documents requested in Navient Group (A), as set forth herein, including documents, relating to the calculation of the Debtor's "cost of attendance at Lafayette; and (iii) sustains Lafayette's objection to the Discovery Motion, except that it directs Lafayette to supplement the Lafayette Production to the Debtor to include any documents containing Lafayette's calculation of the Debtor's "cost of attendance" during the years the Debtor attended Lafayette.  Navient and Lafayette are directed to complete such document production on or before December 28, 2018.

IT IS SO ORDERED.

Dated: New York, New York
   November 20, 2018

              /s/ *James L. Garrity, Jr.*
              United States Bankruptcy Judge