**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------x
                                          :
In re:                                    :          Chapter 7
                                          :
Michael Grabis,                           :          Case No. 13-10669-JLG
                                          :
                        Debtor.           :
                                          :
-------------------------------------------------------x
                                          :
Michael Grabis,                           :
                                          :          Adv. Pro. No. 15-01420-JLG
                        Plaintiff,        :
                                          :
v.                                        :
                                          :
Navient Solutions, LLC, *et al.*,         :
                                          :
                        Defendants.       :
                                          :
-------------------------------------------------------x


**MEMORANDUM DECISION AND ORDER DENYING PLAINTIFF-DEBTOR'S**
**OMNIBUS MOTION AND THE ADDITIONAL DISCOVERY REQUESTS.**


**APPEARANCES:**

MICHAEL GRABIS
1 Hay Drive
Morristown, NJ 07960

*Plaintiff-Debtor, pro se*

PAUL J. HOOTEN
Paul J. Hooten & Associates
5505 Nesconset Highway, Suite 203
Mt. Sinai, NY 11706

*Attorney for Navient Solutions, LLC*

JOSEPH LUBERTAZZI, JR.
McCarter & English LLP

Four Gateway Center
100 Mullberry Street
Newark, NJ 07102

*Attorney for Lafayette College*

KENNETH L. BAUM
Law Offices of Kenneth L. Baum
167 Main Street
Hackensack, NJ 07601

*Attorney for EMC, Inc.*

**HONNORABLE JAMES L. GARRITY, JR.**
**UNITED STATED BANKRUPTCY JUDGE:**

In this adversary proceeding, Michael Grabis, the *pro se* chapter 7 debtor herein (the "Debtor"), seeks a determination that his Student Loan Debt (defined below) is not excepted from discharge under section 523(a)(8) of the Bankruptcy Code. The matters before the Court are, the Debtor's (i) request to amend his complaint, and related relief (the "*Omnibus Motion*"),[1] and (ii) the *Additional Discovery Requests* (defined below). For the reasons set forth herein, the Court denies the *Omnibus Motion* and the *Additional Discovery Requests*.

## Jurisdiction

The Court has jurisdiction over these matters pursuant to 28 U.S.C. §§ 1334(a) and 157(a) and the Amended Standing Order of Referral of Cases to Bankruptcy Judges of the United States District Court for the Southern District of New York (M-431), dated January 31, 2012 (Preska, C.J.). This is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

## Background

On March 5, 2013 (the "Petition Date"), the Debtor, through counsel, filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code in this Court (the "*Petition*").[2] In the

---

[1]  *See Motion for Fraud Upon the Court, Breach of Contract, Breach of Fiduciary Duty, Spoilation [sic] of Evidence by Navient, Salle Mae. ECMC, Lafayette College. Department of Education, Judge Garrity. Motion for Class Action Designation. Motion for Sanction. Motion for Default Judgment* [AP ECF No. 311] (the "*Omnibus Motion*"). The *Motion* substantially supersedes the Debtor's Motion For Class Action Status, Default Judgment 3/17/2020 [AP ECF No. 309] (the "*Default Judgment Motion*"). The Court will address the issues raised in that motion herein.

"AP ECF No. ___" refers to a document filed on the electronic docket in this adversary proceeding (AP No. 15-01420). "ECF No. ___" refers to a document filed on the electronic docket in the Debtor's chapter 7 bankruptcy case (No. 13-10669-JLG).

[2]  *Petition* [ECF No. 1].

*Petition*, the Debtor represented that: (i) he had fewer than 50 creditors; (ii) the estimated value of his assets was less than $50,000; and (iii) his liabilities exceeded $100,000, but were less than $500,000. In addition, he estimated the value of his personal property at $11,631.00 and reported that he did not hold any "contingent and unliquidated claims of [any] nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims." He listed cash, a bank account and used furniture and clothing as "Property Claimed As Exempt" under sections 522(d)(5) (bank account & cash) and 522(d)(3) (furniture & clothing).[3] In the list of "Creditors Holding Unsecured Nonpriority Claims" accompanying the *Petition*, the Debtor included six claims held by the Student Loan Marketing Association ("Sallie Mae") totaling approximately $161,781.[4] On April 8, 2013, the chapter 7 trustee of the Debtor's estate (the "Chapter 7 Trustee"), issued a "*Report of No Distribution*" in the chapter 7 case.[5] On June 11, 2013, the Court entered a "*Discharge of Debtor Order of Final Decree*," and closed the case.[6]

On July 31, 2013, the Debtor, acting *pro se*, filed a motion to reopen his bankruptcy case in order to file an adversary proceeding to seek discharge of his Student Loan Debt (the "*Motion*

---

[3]   *Petition*, Schedule C.

[4]   *See id.*, Schedule F.

[5]   *See Report of No Distribution* [ECF No. 6]. The report reads, as follows:

> I, Roy Babitt, having been appointed trustee of the estate of the above-named debtor(s), report that I have neither received any property nor paid any money on account of this estate; that I have made a diligent inquiry into the financial affairs of the debtor(s) and the location of the property belonging to the estate; and that there is no property available for distribution from the estate over and above that exempted by law. Pursuant to Fed R Bank P 5009, I hereby certify that the estate of the above-named debtor(s) has been fully administered. I request that I be discharged from any further duties as trustee. Key information about this case as reported in schedules filed by the debtor(s) or otherwise found in the case record: This case was pending for 1 months. Assets Abandoned (without deducting any secured claims): $ 0.00, Assets Exempt: $ 11631.09, Claims Scheduled: $ 193272.24, Claims Asserted: Not Applicable, Claims scheduled to be discharged without payment (without deducting the value of collateral or debts excepted from discharge): $193,272.24.

[6]   *See Order of Discharge and Order of Final Decree* [ECF No. 8].

2

*to Reopen Case"*).[7]    In doing so, the Debtor also asked the Court to waive the filing fee to reopen

the case (the "*Motion to Waive Fee*").[8]    The Court granted the *Motion to Reopen Case*, but

denied the *Motion to Waive Fee*, without prejudice.    By order dated August 27, 2013, the Court

directed that "the case shall be reopened upon payment of the appropriate fee by the Debtor or

further order of the Court after a renewed request for waiver of such fee for cause shown."[9]    On

December 10, 2013, the Debtor, acting *pro se*, filed (i) a motion renewing his request to reopen

the case to file an adversary complaint (the "*Second Motion to Reopen Case*");[10] and (ii) a

motion renewing his request to waive the fee to reopen the case (the "*Second Motion to Waive

Fee*").[11]    The Court denied the *Second Motion to Reopen Case* as moot, and denied the *Second

Motion to Waive Fee,* without prejudice.[12]    On May 6, 2014, the Debtor made a third request to

reopen his case, and in connection with that request, the Debtor paid the filing fee,[13] and on May

13, 2014, the Court reopened the case.

On May 1, 2014, SLM Corporation went through a corporate reorganization, creating a

restructured SLM Corporation, which continued operating as a separate publicly traded company

---

[7]    *See Motion to Reopen* [ECF No. 10].  In support of the Reopen Motion, the Debtor stated, in part:

> I, Michael Grabis, am making a motion to reopen my bankruptcy petition under Chapter 7 originally
> filed on 3/6/2013 and closed on 6/11/2013. I am making this motion in order to file an adversary
> pursuant to discharge of student loan debts. I was not instructed in my previous hearing that I would
> not have the opportunity to challenge these debts or that a separate motion or that filing of an
> adversary would be required for any consideration of discharge.

[8]    *See Motion to Approve Waiving the Filing Fee* [ECF No. 11].

[9]    *See Order Reopening Case and Denying Request for Waiver of Certain Fees* [ECF No. 12].

[10]    *See Motion to Reopen Chapter 7 Case* [ECF No. 13].

[11]    *See Motion to Approve Waiving the Case Reopening Filing Fee* [ECF No. 14].

[12]    *See Order Denying Request for Waiver of Certain Fees* [ECF No. 15].

[13]    *See Motion to Approve Waiving the Case Reopening Filing Fee* [ECF No. 16].

3

and included Sallie Mae Bank, and Navient Corporation, of which defendant Navient Solutions, Inc. ("Navient") is a subsidiary. *See Levy-Tatum v. Navient & Sallie Mae Bank*, No. CV 15-3794, 2016 WL 75231 at *6 (E.D. Pa. Jan. 7, 2016).[14]  Navient, as successor to Sallie Mae, is the servicer of the Debtor's five private educational loans, having an aggregate balance, including principal, interest and fees, of more than $119,095.39 (the "Private Loans").

On June 12, 2015, the Debtor filed a letter with the Court stating that he intended to commence an adversary proceeding and requested that the Court keep his bankruptcy case open.[15]  On July 30, 2015, the Court entered an *Order to Show Cause Why This Case Should Not Be Closed Pursuant to 11 U.S.C. §350(a)* (the "*Order to Show Cause*"), which directed the Debtor to appear at a hearing scheduled for October 7, 2015 to explain why his case should not be closed due to the failure to file an adversary proceeding or take any other action in the bankruptcy case.[16]  The Court adjourned the hearing on the *Order to Show Cause* to December 15, 2015.[17]  On December 15, 2015, acting *pro se*, the Debtor commenced this adversary

---

[14]    In *Levy-Tatum*, the District Court took judicial notice of the factual background of Sallie Mae's corporate reorganization.  As support, it cited: Navient Corp., Annual Report (Form 10-K) (Feb. 27, 2015), available at http://www.navient.com/assets/about/investors/shareholder/annual-reports/NAVI_2014_Form_10-K_2-27-15_Final.pdf;  SLM Corp., Annual Report (Form 10-K) (Feb. 26, 2015), available at https://www.salliemae.com/assets/about/investors/shareholder/annual-reports/201410K.pdf;  Robert Farrington, How the Sallie Mae and Navient Split May Help Student Loan Borrowers, Forbes.com, May 20, 2014, http://www.forbes.com/sites/robertfarrington/2014/05/20/how-the-sallie-mae-navient-split-may-help-student-loan-borrowers/ ("The new company which is being spun out — Navient — is equivalent to the old Sallie Mae. It will continue to service the existing loans in the Sallie Mae portfolio, as well as service new loans via contracts with the Department of Education. It will also focus on servicing private student loans, as well as asset recovery…");  Federal Student Aid, An Office of the U.S. Department of Education, Overview of Sallie Mae's Separation Into Two Companies, undated, available at https://studentaid.ed.gov/sa/about/announcements/sallie-mae ("The new company, Navient, has assumed all the responsibilities previously performed by Sallie Mae as a federal loan servicer. A loan servicer is a company that handles the billing and other services on your federal student loan.").

[15]    *See Letter by Debtor dated June 12, 2015* [ECF No. 19].

[16]    *See Order to Show Cause* [ECF No. 21].

[17]    *See Notice of Adjournment* [ECF No. 24].

proceeding by filing a complaint seeking a determination that his Student Loan Debt is not

excepted from discharge under section 523(a)(8) of the Bankruptcy Code.[18]   The complaint

named Sallie Mae Servicing, Inc., Navient, Lafayette College ("Lafayette"), and the University

of Vermont as defendants.   The Educational Credit Management Corporation ("ECMC") is a

Minnesota not-for-profit corporation and guaranty agency created under the direction of the U.S.

Department of Education (the "Department of Education") to provide guaranty services pursuant

to the Federal Family Education Loan Program ("FFELP").   In its role as a guarantor under

FFELP, ECMC accepts the transfer of title to certain student loan accounts on which the student

loan borrower has filed for bankruptcy or when a debtor has filed an adversary proceeding

seeking discharge of his/her student loans for undue hardship.   In its capacity as a guarantor

under FFELP, ECMC holds an interest in two consolidation loans owed by the Debtor, each of

which was disbursed on or about June 24, 2005, in the original principal amounts of $19,934 and

$30,096, respectively (the "Federal Loans," with the Private Loans, the "Student Loan Debt").

In that capacity, ECMC moved to intervene as a defendant in this action, and over the Debtor's

objection, the Court granted ECMC leave to do so.[19]

      With the Court's authorization, the Debtor amended the complaint several times.   The

operative complaint is the Debtor's "Third Adversary Complaint for Discharge of Student

Loans" (the "*Complaint*").[20]   In that complaint, the Debtor dropped Sallie Mae Servicing Inc, as

a defendant, but added Sallie Mae, Inc. and the Department of Education as defendants.   In

---

[18]    *See Summary Complaint* [AP ECF No. 1].

[19]    *See Motion to Intervene in Adversary Proceeding Pursuant to Fed. R. Civ. P. 24(a) and (b)* [AP ECF No. 11]; *Order Authorizing Educational Credit Management Corporation to Intervene in Adversary Proceeding Pursuant to Fed. R. Civ. P. 24(a) and (b)* [AP ECF No. 16].

[20]    *See Amended Complaint against all defendants (Third)* [AP ECF No. 84] (the "*Complaint*").

support of the *Complaint*, the Debtor asserts that he filed this adversary proceeding "as an

addition to my core bankruptcy proceeding to discharge my student loans under [Bankruptcy]

Rule 4007(b), 11 U.S.C[. §] 523 (a)(8), as per my rights to a 'fresh start' under the U.S.

Bankruptcy Code." *Complaint* at 2. He alleges that there are two reasons why this Court should

discharge his Student Loan Debt. First, he says that he is entitled to "the full discharge of the

unqualified private loan portion of my debt and full discharge of my federal debt, both under

section 523(a)(8) of the [B]ankruptcy [C]ode[,]" because

> [u]nder the standard tests for discharge of student loans I have made a good faith
> effort to repay my loans, I am currently unable and will be unable to repay the loans
> for a considerable period, and I have not been able to maintain a minimal standard
> of living as defined by the poverty guidelines.

*Id*. He asks this Court

> to recognize that the size and nature of my debt make my case fundamentally
> different from any guidelines decided under the Brunner case standard which dealt
> with federal student loans for graduate education under $15,000 dollars close to 30
> years ago in an economic environment far different from today. My debt is largely
> unqualified private student loans which are dischargeable under the bankruptcy
> code. The Southern District of New York has jurisdiction of the Brunner standard.

*Id.* He also maintains that he is entitled to relief under section 523(a)(8) to redress the harm

allegedly caused to him by the defendants. He says that "I believe that my degree issuing college

and lenders did not act in good faith in the origination and servicing of my student loans and, in

fact, acted to collude, embezzle, and purposely defraud me as a student borrower." *Id*. at 1-2.

Thus, in addition to his *Brunner* based arguments, he asserts that "I am alleging fraud, breach of

contract, and unjust enrichment in my defense of repayment." *Id*. at 2. The Debtor is asking for

damages that he says he has suffered by reason of the defendants' fraud. He maintains that

although he is "seeking the full discharge of the unqualified private loan portion of my debt and

my federal debt, both under sections 523(a)(8) of the [B]ankruptcy [C]ode[,] [t]he fraud that

occurred also caused damage to me personally and I am asking the court to grant damages from these parties to pay towards the debt and personal costs incurred as a result of the fraud." *Id.*

The Debtor stipulated to dismiss the University of Vermont from the *Complaint*.[21] Despite the fact that the Debtor does not owe any student loans to Lafayette, the Debtor named Lafayette as a defendant in this adversary proceeding and asserted claims of fraud, collusion, willful neglect and breach of fiduciary duty against it. Lafayette did not file any claims against the Debtor in his chapter 7 bankruptcy case, nor asserted any counter-claims in this adversary proceeding. The basis for the Debtor's claims against Lafayette is that it allegedly had in its possession, but refused to allocate, grant funds to the Debtor while he was a student, forcing the Debtor into debt to pay for his education. *See Complaint* at 3-4.[22] The Debtor sought monetary damages from Lafayette. Lafayette moved to dismiss *Complaint* on the grounds that the Debtor's claims related to pre-petition conduct and, therefore, they constituted property of the estate subject to the Chapter 7 Trustee's control and administration.[23] At the hearing on that motion, the Court agreed that, among other things, the Debtor did not have standing to pursue any monetary damage claims against Lafayette because (1) any claim against Lafayette is a pre-petition claim that is property of the Debtor's bankruptcy estate, and (2) only the chapter 7 trustee has standing to prosecute claims on behalf of the bankruptcy estate. Accordingly, on August 31, 2016, the Court entered an order dismissing the complaint with prejudice as to

---

[21]   *See Stipulation of Dismissal [of the University of Vermont]* [AP ECF No. 15].

[22]   *See Amended Complaint against all defendants (THIRD)* [AP ECF No. 34]. This is a prior iteration of the operative *Complaint*.

[23]   *See Motion of Lafayette College to Dismiss Adversary proceeding Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) and Federal Rule of Bankruptcy Procedure 7012* [AP ECF No. 40].

Lafayette.[24]  The Court also granted motions to dismiss Sallie Mae from the action and to

dismiss all claims against Navient that are not predicated on section 523(a)(8) of the Bankruptcy

Code.[25]  Finally, the Court dismissed the *Complaint* against the Department of Education (i)

pursuant to Rule 21 of the Federal Rules of Civil Procedure (the "Federal Rules"), as made

applicable herein by Rule 7021 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

Rules") because it was not a proper party to a claim for relief under section 523(a)(8) because it

did not own any portion of the Student Loan Debt, and (ii) dismissed the fraud claim asserted

against the Department of Education for lack of subject matter jurisdiction.[26]

As a consequence, the defendants remaining in this action are ECMC and Navient, and

the matter at issue is whether the Debtor is entitled to a determination that his Student Loan Debt

is not excepted from discharge under section 523(a)(8) of the Bankruptcy Code.

Section 523(a)(8) of the Bankruptcy Code states:

(a)    A discharge under section 727 ... of this title does not discharge an
       individual debtor from any debt—

       (8)    unless excepting such debt from discharge under this
              paragraph would impose an undue hardship on the debtor and
              the debtor's dependents, for—

              (A)(i) an educational benefit overpayment or loan made,
              insured, or guaranteed by a governmental unit, or made
              under any program funded in whole or in part by a
              governmental unit or nonprofit institution; or

---

[24]    *See Order Granting Motion to Dismiss the Claims Against Lafayette College* [AP ECF No. 43].

[25]    *See Order Granting Navient Solutions, Inc.'s Motion to Dismiss "Sallie Mae, Inc." as a Defendant in This
Adversary Proceeding Pursuant to Fed. R. Civ. P. 21 and Fed. R. Bankr. P. 7021 and to Dismiss All Claims for
Relief in Plaintiff's Third Amended Complaint Not Based on 11 U.S.C. § 523(a)(8) Pursuant to Fed. R. Civ. P.
12(b)(1) & (6) and Fed. R. Bankr. P. 7012(b)* [AP ECF No. 45].

[26]    *See Memorandum Decision Granting Department of Education's Motion to Dismiss* [AP ECF No. 133].

(ii) an obligation to repay funds received as an educational
benefit, scholarship, or stipend; or

(B) any other educational loan that is a qualified education
loan, as defined in section 221(d)(1) of the Internal
Revenue Code of 1986, incurred by a debtor who is an
individual[.]

11 U.S.C.§ 523(a)(8). The following categories of educational loans are within the scope of

section 523(a)(8):

(i) educational benefit overpayments or loans made, insured, or guaranteed by a
governmental unit;

(ii) educational benefit overpayments or loans made under any program partially
or fully funded by a governmental unit or nonprofit institution;

(iii) obligations to repay funds received as an educational benefit, scholarship, or
stipend; and

(iv) any other educational loan that is a "qualified education loan" under section
221(d)(1) of the Internal Revenue Code, incurred by a debtor who is an
individual.

11 U.S.C. § 523(a)(8). The first three loan categories fall under section 523(a)(8)(A), while the

last category is within the scope of section 523(a)(8)(B). Those subsections are mutually

exclusive. *See Campbell v. Citibank, N.A. (In re Campbell)*, 547 B.R. 49, 55 (Bankr. E.D.N.Y.

2016). In sum, the Debtor contends that his Student Loan Debt is not excepted from discharge

under section 523(a)(8) of the Bankruptcy Code because: (i) it will be an undue hardship for him

to repay that indebtedness; (ii) the Private Loans are not "qualified education loans" under

section 523(a)(8)(B); and (iii) the Federal Loans do not fall within the scope of section

523(a)(8)(A).

On August 31, 2016, the Court issued a scheduling order permitting the parties to engage in discovery for 90 days.[27]  The Debtor expressed the need for more discovery and the Court provided the Debtor with an opportunity to explain the discovery he wished to take from the parties.[28]  On December 8, 2017, the Debtor submitted a letter to the Court highlighting the discovery he sought from the parties to the litigation and also non-party Lafayette.[29]  On January 30, 2018, the Debtor filed a motion for trial and additional discovery. [30]  On February 23, 2018, the Court afforded the Debtor a further opportunity to enumerate and describe the discovery he sought from the parties.[31]  Lafayette did not respond to the Debtor's letter requesting additional discovery or its motion because Lafayette was no longer a defendant in the litigation.  On April 23, 2018, the Court ordered that the Debtor may file a supplemental discovery demand setting forth the factual and legal bases supporting his document demands and that Lafayette respond to the Debtor's supplemental discovery document by May 16, 2018.[32]  The Debtor declined to file any supplemental discovery demands.  Notwithstanding, Lafayette detailed its objections to the Debtor's discovery demands – specifically, those requests seeking documents unrelated to the Debtor – and expressed its willingness to produce financial aid and grant information relating to the Debtor.[33]  The Court held a hearing on the Debtor's discovery requests.  Thereafter, the Court

---

[27]  *See Scheduling Order dated 8/31/2016* [AP ECF No. 44].

[28]  *See Order signed on 11/20/2017 Directing Debtor to file Discovery Status Letter by 12/8/2017* [AP ECF No. 97].

[29]  *See Discovery Dispute – Requests for Information* [AP ECF No. 103].

[30]  *See Motion for Trial and Further Discovery* [AP ECF No. 111].

[31]  *See Scheduling Order signed on 2/23/2018 Re: Debtor's Motion for Trial and Further Discovery* [AP ECF No. 120].

[32]  *See Scheduling Order signed on 4/23/2018 Re: Hearing held on 4/19/2018 for Motion for Trial and Pre-Motion Conference* [AP ECF No. 155].

[33]  *See Non-Party Lafayette College's Objection to Plaintiff's Discovery Requests* [AP ECF No. 172].

directed the Debtor to file a pleading "specifying the legal and factual grounds in support of the

Discovery Request, including an explanation of the relationship between the information sought

in the Discovery Request and the relief the Debtor is seeking in this adversary proceeding. . . ."[34]

The Debtor submitted to the Court an expanded list of documents he sought from Lafayette and

the parties to the litigation, as well as the Department of Education.[35]  Those supplemental

document demands included requests for information on Lafayette's processes for calculating

financial aid and grant bequests, Lafayette's calculations of estimated family contributions

("EFC") pertaining to the Debtor and other students who attended Lafayette during the Debtor's

undergraduate career, tuition reserve amounts for the applicable period, and Lafayette's

distribution of grant and financial aid monies to other students.[36]  Lafayette filed its objection to

the Debtor's supplemental request for documents and information that was not relevant to the

Debtor's ability to repay his obligations and his establishment of undue hardship meriting

discharge.[37]  Simultaneous with the filing of its objection, Lafayette produced to the Debtor

printouts from Lafayette's financial aid award database, including a breakdown of the Debtor's

grants, student loans and EFC amounts for the 1998-1999, 1999-2000, 2000-2001 and 2001-

2002 school years.  Navient and the Department of Education also objected to the Debtor's

discovery demands.[38]  After a hearing on the Debtor's motion, the Court sustained the

---

[34]    *See Minutes of Proceeding dated June 7, 2018 Re: Motion for Trial* [AP ECF No. 182].

[35]    *See Debtor's Further Description of previously filed amended Schedule and Supplemental Discovery Demand*
[AP ECF No. 191].

[36]    *See Further Description of previously filed amended Schedule and Supplemental Discovery Demand* [AP ECF
No. 191].

[37]    *See Non-Party Lafayette College's Further Objection to Plaintiff's Discovery Requests* [AP ECF No. 197].

[38]     *See, e.g.*, *Department of Education's Opposition to Plaintiff's "Further Description of Previously Filed
Amended Schedule and Supplemental Discovery Demand"* [AP ECF No. 196]; *Navient Solutions Response to*

Department of Education's objections to the discovery demands, and the majority of Lafayette's and Navient's objections to the Debtor's document demands, but ordered Lafayette and Navient to produce certain documents to the Debtor (the "*Discovery Decision*").[39]  Lafayette and Navient complied with the Court's order.[40]  The Court discusses the *Discovery Decision* below.

On August 29, 2019, the Court issued a scheduling order setting September 6, 2019 as the deadline for the parties to serve supplemental responses to the Debtor's discovery requests.[41]  In addition to providing for pre-trial exchanges and a pre-trial conference, the scheduling order set a trial date of October 4, 2019.[42]  On September 25, 2019, the Debtor filed a motion to stay trial because, among other things, he needed "extra time" to collect unspecified evidence relating to his case.[43]  On or about November 8, 2019, the Debtor filed with the Court for service on all defendants, including non-party Lafayette and the Department of Education, "Additional Supplemental Discovery Requests."[44]  Lafayette and Navient filed objections to the Debtor's supplemental demands.[45]  On December 18, 2019, the Debtor filed a "Motions and Action Demands" setting forth thirteen requests for relief devoid of any legal argument or justification

---

*Plaintiff's Further Description of Previously Filed Amended Schedule and Supplemental Discovery Demand* [AP No. 195].

[39]    *See Memorandum Decision and Order Resolving Debtor's Request For Document Discovery* [AP ECF No. 226] (the "*Discovery Decision*").

[40]    *See Lafayette Letter dated December 28, 2018* [AP ECF No. 238]; *Certificate of Service of Navient Solutions, LLC's Responses to Plaintiff's Discovery Requests Ordered by the Court* [AP ECF No. 240].

[41]    *See Scheduling Order signed on 8/29/2019* [AP ECF No. 271].

[42]    *Id.*

[43]    *See Debtor's Motion to Delay/Suspend Adversary Proceeding* [AP ECF No. 278].

[44]    *See Debtor's Additional Supplemental Disocvery [sic] Requests* [AP ECF No. 289].

[45]    *See Navient Solutions, LLC's Responses to Plaintiff's Additional Supplemental Discovery Requests Served on November 7, 2019* [AP ECF No. 291]; *Lafayette Letter dated December 2, 2019* [AP ECF No. 293].

for the requests therein.[46]  ECMC and Navient objected to that Motion and Action Demands.[47]

(The Court will refer to the foregoing collectively as the "*Additional Discovery Requests*").

In the *Omnibus Motion*, the Debtor seeks assorted forms of relief, as follows:

Motion for Fraud upon the Court, Breach of Contract, Breach of Fiduciary Duty, Spoliation of Evidence by Navient, Sallie Mae, ECMC, Lafayette College, Department of Education, Judge Garrity, Motion for Class Action Designation, Motion for Default Judgement;

Motion to Remove Judge Garrity for Fraud Upon the Court- Add Judge Morris and Jury to this Case; and

Motion to Add/Re-Add Sallie Mae, Senator Joe Biden, Lafayette College, and Department of Education as Defendants in Fraud Upon the Court Portion of this Case.

Below, the Court considers those matters and the *Additional Discovery Requests*.

## Discussion

Request to Amend Complaint to Add Claims

The Debtor seeks leave to assert claims of fraud upon the court, and to declare breach of contract, breach of fiduciary duty and spoliation of evidence against Navient, ECMC, Lafayette, and the Department of Education.  Although not styled as such, the Court treats that aspect of the *Omnibus Motion* as the Debtor's motion for leave to amend the *Complaint*.

Bankruptcy Rule 7015 makes Federal Rule 15 applicable herein.  In part, Rule 15 states:

---

[46]   *See Debtor's Motions and Action Demands 12/18/19* [AP ECF No. 294].

[47]   *See Educational Credit Management Corporation's Objection to Plaintiff's Motions and Action Demands 12/18/19* [AP ECF No. 299]; *Navient Solutions, LLC's Response to Plaintiff's Motions and Action Demands 12/18/19* [AP ECF No. 300].

> A party may amend the party's pleadings once as a matter of course at any time
> before a responsive pleading is served or, if the pleading is one to which no
> responsive pleading is permitted and the action has not been placed upon the trial
> calendar, the party may so amend it at any time within 20 days after it is served.
> Otherwise a party may amend the party's pleading only be leave of court or by
> written consent of the adverse party; and leave shall be freely given when justice
> so requires....

Fed. R. Civ. P. 15(a).  The grant or denial of a motion for leave to amend a complaint is within the discretion of the bankruptcy court.  *See Adelphia Recovery Trust v. FPL Grp., Inc. (In re Adelphia Commc'ns Corp.*), 452 B.R. 484, 489 (Bankr. S.D.N.Y. 2011) ("[W]hether a motion to amend should be granted or denied must depend upon the sound judicial discretion of the trial court." (quoting *Evans v. Syracuse City School District*, 704 F.2d 44, 47 (2d Cir. 1983))).  Although courts construe Rule 15(a) liberally, leave to amend is not automatically granted, and will be denied where the amendment would be futile or prejudice the opposing party.  *Hosking v. TPG Capital Mgmt., L.P. (In re Hellas Telecomms. (Lux.) II SCA*), 535 B.R. 543, 561 (Bankr. S.D.N.Y. 2015) ("A court may deny a motion for leave to amend 'if the amendment (1) has been delayed unduly, (2) is sought for dilatory purposes or is made in bad faith, (3) [would prejudice] the opposing party ..., or (4) would be futile.'" (quoting *Lee v. Regal Cruises, Ltd.*, 916 F. Supp. 300, 303 (S.D.N.Y. 1996))).  An amendment to a complaint is futile if the proposed claim could not withstand a motion to dismiss pursuant to Federal Rule 12(b)(6).  *See Krys v. Pigott*, 749 F.3d 117, 134 (2d Cir. 2014) ("Leave to amend may properly be denied if the amendment would be futile . . . as when the proposed new pleading fails to state a claim on which relief can be granted.") (internal citations omitted).  *See also Pavarini McGovern, LLC v. Waterscape Resort LLC (In re Waterscape Resort LLC)*, 520 B.R. 424, 436 (Bankr. S.D.N.Y. 2014) ("A court may deny leave to amend as futile where the proposed amended claim would not withstand a motion to dismiss under Federal Civil Rule 12(b)(6).") (citations omitted).

14

Federal Rule 12(b)(6), made applicable herein by Bankruptcy Rule 7012(b), tests the sufficiency of the allegations in support of a complaint in light of the pleading requirements in Federal Rule 8.  Since it is "designed to test the legal sufficiency of the complaint," application of the Rule "does not require the Court to examine the evidence at issue." *De Jesus v. Sears, Roebuck Co., Inc.*, 87 F.3d 65, 69 (2d Cir. 1996), *cert. denied*, 519 U.S. 1007 (1996); *see also Ryder Energy Distrib. Corp. v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir. 1984).  Accordingly, to overcome a Rule 12(b)(6) motion, the plaintiff must demonstrate that the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

<u>Fraud Upon The Court</u>

A "fraud on the court" encompasses conduct that prevents the court from fulfilling its duty of impartially deciding cases.  *Gazes v. DelPrete (In re Clinton Street Food Corp.)*, 254 B.R. 523, 532 (Bankr. S.D.N.Y. 2000).  *Accord Milner v. TPAC, LLC (In re Ticketplanet.com)*, 313 B.R. 46 (Bankr. S.D.N.Y. 2004).  As such, the "fraud" at issue "is limited to that species of fraud which does or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudication."  *Salsberg v. Trico Marine Svcs., Inc. (In re Trico Marine Svcs., Inc.)*, 360 B.R. 53, 57 (Bankr. S.D.N.Y. 2006) (quoting *Serzysko v. Chase Manhattan Bank*, 461 F.2d 699, 702 (2d Cir. 1972), *cert. denied*, 409 U.S. 883, 93 S. Ct. 173, 34 L. Ed. 2d 139 (1972)).  "The essence of fraud on the court is 'when a party lies to the court and his adversary intentionally, repeatedly, and about issues that are central to the truth-finding process.'"  *Passlogix, Inc. v. 2FA Tech., LLC*, 708 F. Supp. 2d 378, 393 (S.D.N.Y. 2010)

15

(quoting *McMunn v. Mem'l Sloan-Kettering Cancer Ctr.*, 191 F. Supp. 2d 440, 445 (S.D.N.Y. 2002)). The elements of a claim for fraud upon the court are: (1) a misrepresentation to the court by the defendant; (2) a description of the impact the misrepresentation had on proceedings before the court; (3) a lack of an opportunity to discover the misrepresentation and either bring it to the court's attention or bring an appropriate corrective proceeding; and (4) the benefit the defendant derived from the misrepresentation. *See Grubin v. Rattet (In re Food Mgmt. Grp., LLC)*, 380 B.R. 677, 714-15 (Bankr. S.D.N.Y. 2008) (citing *In re Ticketplanet.com*, 313 B.R. at 64)); *see also Nicholas v. Oren (In re Nicholas)*, 457 B.R. 202, 220 (Bankr. E.D.N.Y. 2011) (same).

Moreover, because "fraud upon the court" is a variation of fraud, a plaintiff must allege it with the level of particularity required under Federal Rule 9(b). *See* Fed. R. Civ. P. 9(b) ("In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. . . ."). *See also Madonna v. United States*, 878 F.2d 62, 66 (2d Cir. 1989) (granting motion for judgment in favor of defendant as to plaintiff's fraud upon the court allegations because the plaintiff did not plead fraud with sufficient particularity); *Bryant v. Silverman*, No. 15 Civ. 8427 (PAC) (HBP), 2017 WL 887043 at *2 (S.D.N.Y. Mar. 6, 2017) (applying heightened pleading standards of Rule 9(b) to fraud on court claim). To satisfy Rule 9(b), a complaint alleging fraud must: "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)). Where the fraud claim is premised on concealment so that the plaintiff cannot specify the time and place because no affirmative act occurred, "the complaint must still allege: (1) what the omissions were; (2) the person responsible for the failure to disclose; (3) the context of the omissions and

the manner in which they misled the plaintiff; and (4) what the defendant obtained through the fraud." *Manhattan Motorcars, Inc. v. Automobili Lamborghini, S.p.A.*, 244 F.R.D. 204, 213 (S.D.N.Y. 2007) (internal quotation marks and citation omitted). Although the fraud alleged must be stated with particularity, Rule 9(b) specifies that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). However, a plaintiff "'must allege facts that give rise to a strong inference of fraudulent intent.'" *Lerner*, 459 F.3d at 290 (quoting *Acito v. IMCERA Grp., Inc.,* 47 F.3d 47, 52 (2d Cir. 1995)). A "strong inference" of fraudulent intent may be established "either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) (citations omitted). Finally, "[w]here multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud." *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987) (citing *Natowitz v. Mehlman*, 542 F. Supp. 674 (S.D.N.Y. 1982)).

The Debtor relies on *In re Navient Corporation Securities Litigation*, No. 17-8373, 2019 WL 7288881 (D.N.J. Dec. 30, 2019) ("*Navient Securities*") in support of his contention that he can state a claim of fraud on the court against Navient, ECMC, Lafayette and the Department of Education.[48] In that case, a Navient shareholder (the "NSL Plaintiff") sued Navient and certain individuals (collectively the "NSL Defendants") on behalf of all shareholders (excluding the NSL Defendants) who purchased or otherwise acquired Navient's

---

[48] *Omnibus Motion* at 1-2; *see also Supplemental Documents: The Rosenberg Decision, Gray Decision, Navient Securities Litigation Decision – Exhibits A, B, and C* [AP ECF No. 303] (the "*Supplemental Documents*") at 1-2.

publicly traded stock during the period of January 2017 through November 2018 (the "Class").

*Id.* at *1. The NSL Plaintiff sued under sections 10(b) and 20(a) of the Securities Exchange Act

of 1934 and Rule 10b–5 to recover damages caused by the NSL Defendants' alleged violations

of the federal securities laws. *See id.* The gravamen of the complaint (the "NSL Complaint")

was that the NSL Defendants made materially false and misleading statements regarding

Navient's business, causing losses and damages to the holders of Navient securities.[49] The NSL

Plaintiff's claims arose out of the NSL Defendants' response to lawsuits brought against Navient

by the Consumer Financial Protection Bureau and State Attorneys General from the States of

Illinois, Washington, Pennsylvania, California, and Mississippi during the period of January

2017 through June 2018. The plaintiffs in those lawsuits alleged that Navient was running a

"forbearance scheme," which they described as an illegal scheme to cheat struggling student

borrowers out of their rights to lower repayment plans by improperly steering borrowers into

forbearance status, rather than offering more financially sensible income-driven repayment

(IDR) plans. *See id.* They maintained that when the information was made public, Navient's

stock price fell by 11%.[50] The matter before the District Court was the NSL Defendants' Rule

---

[49] The NSL Complaint contained two counts: (1) violation of section 10(b)(5) of the Exchange Act and Rule 10b-5 against all Defendants, and (2) violation of section 20(a) of the Exchange Act against the individual Defendants. The NSL Plaintiff contended that NSL Defendants made "materially false and misleading" quarterly and annual reports, SEC filings, press releases, and media reports as part of a scheme to: (i) deceive the investing public, including the NSL Plaintiff and other Class members, (ii) artificially inflate and maintain the market price of Navient common stock; and (iii) cause Plaintiff and the other members of the Class to purchase or otherwise acquire Navient's common stock at artificially inflated prices. *Navient Securities*, 2019 WL 7288881, at *3.

[50] In substance, the NSL Plaintiff alleged that even as the NSL Defendants knew that the allegations underlying those actions were true, in response to those actions, the NSL Defendants went on the offensive through the dissemination of false and misleading information through public statements and interviews in which they

    (i) attacked the allegations underlying each lawsuit as unsubstantiated, false, and politically motivated,

    (ii) denied the lawsuits' claims that Navient did not educate borrowers about IDR;

    (iii) highlighted the successful aspects of Navient's loan repayment system, and

12(b)(6) motion to dismiss the NSL Complaint.  Liability under section 20 of the Exchange Act

is derivative of an underlying violation of section 10(b).  Accordingly, in resolving the motion,

the court focused on whether the NSL Plaintiff's complaint stated a claim under Rule 10(b)-5.

To state a claim for violation of Rule 10b–5, a plaintiff must allege with particularity that:

(1) the defendant made a materially false or misleading statement or omitted to state a material

fact necessary to make a statement not misleading; (2) the defendant acted with scienter; and (3)

the plaintiff's reliance on defendant's misstatement or omission injured the plaintiff.  In moving

to dismiss the NSL Complaint, the NSL Defendants argued that the NSL Plaintiff failed to plead

any of material falsity, scienter, or loss causation.  *See* 2019 WL 7288881 at *5.  Among other

things, the NSL Defendants argued that the NSL Complaint failed to plead material falsity

because it did not plead with particularity facts showing that a systemic forbearance-steering

scheme actually existed at Navient.  *Id.* at *7.  They argued that the factual allegations in the

NSL Complaint improperly relied on the statements of confidential witnesses (the "CWs") and

factual allegations from the State government complaints, and that without that support, the NSL

Complaint failed to plead facts suggesting material falsity.  *Id.*  The District Court rejected those

---

(iv) categorically denied the allegations contained in the lawsuits and stated that Navient would
not be made economically better off by steering borrowers into forbearance.

*See id.* at * 2-3.  The NSL Plaintiff also asserted that in February 2017, Navient issued its 2016 10-K, which falsely
stated that Navient promotes awareness of IDR plans and limits grants of forbearance, tailoring forbearance to each
customer's "unique situation," and failed to disclose the results of a May 2017 audit of Navient's forbearance
practices between March 20 and 24, 2017 by the Department of Education's Federal Student Aid office ("FSA")
which found, among other things, that Navient was placing borrowers into forbearance without providing them with
other, more beneficial options.  *Id.* *3.  The FSA found that, in almost one out of ten calls with borrowers,
forbearance was offered as the only option available, regardless of personal situation.  *Id.*  However, in November
2018, Senator Elizabeth Warren published a letter that she sent to Navient's president in which she accused him of
withholding and concealing the FSA Audit, and the FSA Audit report itself.  She also asserted that the audit
contradicted Navient's positive statements about its loan programs and appeared to validate the allegations that
Navient boosted its profits by unfairly steering student borrowers into forbearance.  *Id.*  Immediately after the
Associated Press published an article containing an exclusive report on Senator Warren's letter and the FSA Report,
Navient's stock price fell 11%.

19

contentions.  It held that in assessing the adequacy of the NSL Complaint, it could accept as true, the allegations in the government complaint regarding the alleged forbearance-steering scheme. *Id.* at *7-8.  It also found that although the CWs' statements may not be sufficient standing alone to plead a company-wide forbearance scheme, the anecdotal evidence offered by the CWs supported the element of material falsity.  It noted that the forbearance practices described by the CWs directly conflicted with Defendants' statements describing how Navient employees apply forbearance.  *Id.* at *8.

The Debtor asserts that his request for leave to assert a claim of fraud upon the court against Navient, ECMC, Lafayette, and the Department of Education relates to the evidence provided by the *Navient Securities* Court's findings and its decision against Navient.[51]  He contends that Navient's alleged fraud on the court relates to its alleged bad acts at issue in the NSL Complaint.  He says that the District Court's findings of fact demonstrate that Navient barred borrowers, including himself,  from repaying their student loans in order to profit and increase the size of its loan portfolio.[52]  He asserts that those findings show that Navient and the other parties sought to block these payments while at the same time pleading to the court that the borrowers, including the Debtor, made no such effort to repay their loans.[53]  He also contends that Navient's attempts to block those payments demonstrates Navient's and Sallie Mae's collective effort to defraud the prong of the *Brunner* test relating to the borrower's effort to repay and record of repayment.[54]  He argues that through the fraud, Navient sought to increase profits

---

[51]    *Omnibus Motion* at 1-2.

[52]    *See id.* at 1.

[53]    *Id.*

[54]    *Id. at 1-2.*

for its alleged criminal lending enterprise which included other actors such as ECMC, Lafayette,

Sallie Mae, and the Department of Education, as well as individuals working to implement and

protect the ongoing fraud on Navient's behalf- such as former Senator Joseph Biden.[55]

The Debtor's assertions to the contrary notwithstanding, in *Navient Securities*, the

District Court did not find that Navient committed fraud or any other wrongdoing.  The District

Court made no findings of fact.  Rather, it found that the NSL Plaintiff had alleged sufficient

facts – which the District Court assumed to be true for purposes of the motion to dismiss before

it -- to state a claim for relief under the securities law.  *See* 2019 WL 7288881 at *7-8.

Moreover, none of the facts alleged in support of the NSL Complaint involve misrepresentations

to this Court, and all the alleged bad acts are attributable solely to Navient.  The Debtor has not

alleged, with any particularity, or otherwise, that Lafayette, ECMC, Sallie Mae, the Department

of Education or Joseph Biden perpetrated a fraud upon the Court resulting in the entry of a

judgment or order adverse to the Debtor.  He cannot plausibly do so.  The Debtor focuses on

Navient, whom the Debtor alleges "is guilty of fraud upon the court by misrepresenting itself as

the owner and holder of my loans."[56]  The Debtor tries to tie Lafayette, ECMC, Sallie Mae, the

Department of Education and Joseph Biden to Navient's alleged fraud, but fails to do so.  For

example, the Debtor baldly asserts that Lafayette executives made public statements of "loan

manipulation."[57]  Moreover, he asserts that ECMC, Lafayette, Sallie Mae, the Department of

---

[55]    *Id.*

[56]    *See id.* at 3.

[57]    *See id.* at 2.

Education and Joseph Biden were part of "Navient's criminal lending enterprise."[58]  Those

conclusory allegations do not evidence a fraud upon the court.

The Debtor has not demonstrated that Lafayette, ECMC, Sallie Mae, the Department of

Education or Joseph Biden "knowingly submitted a materially false or misleading [statement] to

the Court, or knowingly failed to correct false statements, as part of a deliberate and

unconscionable scheme to interfere with the Court's ability to adjudicate the case fairly."  *TVT

Records, Inc. v. Island Def Jam Music Grp.*, Mo. 02 Civ. 6644 (VM) (DF), 2006 U.S. Dist.

LEXIS 62230, *31 (S.D.N.Y. May 15, 2006).  The Debtor's allegations lack the requisite details

to establish the who, what, when and how of the alleged fraud as required under the heightened

pleading standards of Rule 9(b).  The Debtor also fails to identify any adverse Court order or

judgment that was entered due to a fraud allegedly perpetrated by Lafayette, ECMC, Sallie Mae,

the Department of Education or Joseph Biden.  It is not plausible that he can do so.  The Court

denies the Debtor's request for leave to assert claims of fraud on the court against ECMC,

Lafayette, Sallie Mae, the Department of Education and Joseph Biden.

The Debtor also relies on *SLM Educ. Fin. Corp. v. Gray*, 2014 WL 7734104 (N.Y.

City Civ. Ct.) (Trial Order) as support for his contention that Navient has committed a fraud on

the court.[59]  In *Gray,* SLM Education Finance Corp. ("SLM Education") sued Stephanie Gray

after she defaulted under her student loans.[60]  SLM Education was not a New York corporation.

---

[58]    *See id.* at 3.

[59]    *See Omnibus Motion* at 2. *See also Supplemental Documents* at 1-2.

[60]    SLM Education Finance Corp. commenced four collection actions against Ms. Gray in the New York Civil
Court – New York County (the "New York Civil Court"), as follows:

*SLM Education Finance Corp. v. Gray*, Index No. 021649-13/NY
*SLM Education Finance Corp. v. Gray*, Index No. 021605-13/NY
*SLM Education Finance Corp. v. Gray*, Index No. 021604-13/NY

Ms. Gray moved to dismiss the action pursuant to section 1312 of the New York Business

Corporations Law on the grounds that SLM Education lacked capacity to sue.  In relevant part,

section 1312 states:

> A foreign corporation doing business in this state without authority shall not
> maintain any action or special proceeding in this state unless and until such
> corporation has been authorized to do business in this state and it has paid to the
> state all fees and taxes imposed under the tax law or any related statute, as defined
> in section eighteen hundred of such law, as well as penalties and interest charges
> related thereto, accrued against the corporation.

N.Y. Bus. Corp. L. § 1312(a).  The New York Civil Court found that Ms. Gray adequately

demonstrated in her motion papers that SLM Education is not properly registered to do business

in New York.  For that reason, the court dismissed the collection actions.  *See* 2014 WL 7734104

at *1.[61]

    Navient does not own the Private Loans.  The loans are owned in part by SLM Private

Credit Student Loan Trust 2006-A, and in part by Navient Credit Finance Corporation.  Navient

is the servicer under all the loans.[62]  The Debtor contends that *Gray* reveals that Navient is

---

*SLM Private Credit Student Loan Trust VL Funding LLC v. Gray*, Index No. 021650-13/NY

All of the actions were pending before the Hon. James E. d'Auguste.

[61]    In its Decision/Order, the New York Civil Court stated:

> The motion is granted as plaintiff lacks capacity to sue. BCL §1312(a).  [T]he defendant adequately
> demonstrates in her motion papers that plaintiff is not properly registered.  [S]ee Thomas Aff. at
> Exh. C. As such, the court may properly dismiss the instant action . . .  In doing so, the court noted
> that the plaintiff, and its affiliates, have filed multiple lawsuits." 2014 WL 7734104 at *1. (citations
> omitted).

The New York Civil Court entered its decision in each of the four cases.

[62]    The *Summary of Chain of Title of Navient Loans* [AP ECF No. 323] shows that the five Private Loans are
owned, as follows:

> **Loan 01**:  Loan to attend Lafayette College; Lender on Application-The First National Bank in
> Sioux Falls (Sioux Falls, SD)

committing a massive lender registration and tax fraud that affect the dischargeability of his

loans and the lack of rights that Navient has as a lender.[63]   The Debtor asserts that in order to

obtain a determination that any of the Private Loans are "qualified student loans" for purposes of

section 523(a)(8) of the Bankruptcy Code, the owners of the Private Loans would be required to

file an action in the bankruptcy court.   He maintains that by application of *Gray* and section 1312

of the New York Business Corporations Act, they would be barred from doing so – because they

are not registered to do business in New York.[64]   He says that Navient has withheld and

---

Original disbursement date: 10/7/99
Purchaser: SLM Private Credit Student Loan Trust 2006-A
Purchase date: 4/6/06
Servicer: Navient Solutions LLC

**Loan 02**: Loan to attend University of Vermont; Lender on Application- First Union Bank
(Wilmington, DE)
Original disbursement date: 1/6/99
Purchaser: SLM Private Credit Student Loan Trust 2006-A
Purchase date: 4/6/06
Servicer: Navient Solutions LLC

**Loan 03:** Loan to attend Lafayette College; Lender on Application- First Union Bank
(Wilmington, DE)
Original disbursement date: 3/15/99
Purchaser: SLM Private Credit Student Loan Trust 2006-A
Purchase date: 4/6/06
Servicer: Navient Solutions LLC

**Loan 06**: Loan to attend Lafayette College; Lender on Application- The First National Bank in
Sioux Falls (Sioux Falls, SD)
Original disbursement date: 10/2/00
Transferor: SLM Private Credit Student Loan Trust 2002-A
Transferee: Navient Credit Finance Corporation
Transfer Date: 9/30/19
Servicer: Navient Solutions LLC

**Loan 12**: Loan to attend Lafayette College; Lender on Application-The First National Bank in
Sioux Falls (Sioux Falls, SD)
Original disbursement date: 9/25/01
Transferor: SLM Private Credit Student Loan Trust 2002-A
Transferee: Navient Credit Finance Corporation
Transfer Date: 9/30/19
Servicer: Navient Solutions LLC

[63]   *See Omnibus Motion* at 2.

[64]   *Id.*

misrepresented information regarding the true owners of the Private Loans throughout the case

because they are barred from taking any legal action in New York.  He contends that the owners

of the loans are not registered to do business in New York and, as such, have no rights or identity

as education loan lenders.[65]  Thus, he says that the owners could not sue to determine whether

the Private Loans are "qualified educational loans."  He maintains that the *Gray* decision was

well known to Navient and that despite the New York Civil Court's "warning," Navient has not

registered these entities and continued to describe itself as the owner of the loans while knowing

that it is not.  He says that constitutes fraud and that this Court must take action against them.[66]

He asserts that, as the orchestrator of the fraud, Navient knew that it must make the appearance

of itself as owner and holder and registered entity.  He maintains that, in this case, Navient did

so, repeatedly, while knowing the statements were false.[67]

*Gray* supports the proposition that a foreign corporation doing business in New York

state, without authority, cannot maintain any action or special proceeding in this state unless it

complies with section 1312 of the Business Corporations Law.  Despite its broad language,

section 1312(a) "has been applied only where the foreign corporation's contacts with New York

'exhibit the sort of localization or intrastate character which [the Supreme Court has] required in

situations where a State seeks to require a foreign corporation to qualify to do business.'"

*Netherlands Shipmortgage Corp. v. Madias,* 717 F.2d 731, 735 (2d Cir.1983) (*quoting Allenberg

Cotton Co., Inc. v. Pittman,* 419 U.S. 20, 33 (1974)).  Whether section 1312 applies in a

particular case depends on the facts and circumstances of the case.  Nonetheless, as a general

---

[65]    *Id.*

[66]    *Id.*

[67]    *Id.*

rule, New York courts have found that the statute only bars actions by foreign corporations

engaging in permanent, continuous, and regular activity within New York State.  *Netherlands*,

717 F.2d at 735-36.[68]   Non-compliance with section 1312 is an affirmative defense.  *See Domino*

*Media, Inc. v. Kranis*, 9 F. Supp. 2d 374, 385 (S.D.N.Y. 1998) ("Non-compliance with the

statute is an affirmative defense[.]").   As the party seeking to invoke it, the Debtor "bears the

burden of proving that the corporation's business activities in New York were 'so systematic and

regular as to manifest continuity of activity in the jurisdiction,'"  *Manney v. Intergroove*

*Tontrager Vertriebs GMBH*, No. 10 Civ. 4493, 2011 WL 6026507, at *7 (E.D.N.Y. Nov. 30,

2011) (quoting *S & T Bank v. Spectrum Cabinet Sales, Inc.*, 668 N.Y.S.2d 641, 642 (2d Dep't

---

[68]   The Second Circuit explained, as follows:

> Even though no precise measure of the nature or extent of the activities may be determinative of whether a foreign corporation is doing business in New York and each case must be decided on its own facts, *William L. Bonnell Co. v. Katz*, 23 Misc. 2d 1028, 196 N.Y.S.2d 763 (Sup. Ct. 1959), general guidelines exist which are instructive. An initial principle is that not all business activity engaged in by a foreign corporation constitutes doing business in New York. *Von Arx, A.G. v. Breitenstein*, 52 A.D.2d 1049, 384 N.Y.S.2d 895 (4th Dep't. 1976) (mem.), *aff'd mem.*, 41 N.Y.2d 958, 363 N.E.2d 582, 394 N.Y.S.2d 876 (1977). Indeed, some business activity that might suffice to subject a foreign corporation to the jurisdiction of New York courts will not suffice to constitute doing business for B.C.L. § 1312. *Von Arx, supra; Paper Manufacturers Co. v. Ris Paper Co.*, 86 Misc. 2d 95, 381 N.Y.S.2d 959 (Civ. Ct. 1976). [**15]  *See Tauza, supra*.  The classic articulation of the standard for doing business in New York for the purposes of the foreign corporation licensing statutes is contained in a discussion of a predecessor of B.C.L. § 1312 in *International Fuel & Iron Corp. v. Donner Steel Corp*., 242 N.Y. 224, 230, 151 N.E. 214, 215 (1926):
>
> > To come within this section, the foreign corporation must do more than make a single contract, engage in an isolated piece of business, or an occasional undertaking; it must maintain and carry on business with some continuity of act and purpose.
>
> New York courts have repeatedly and recently affirmed the vitality of this standard which requires the intrastate activity of a foreign corporation to be permanent, continuous, and regular for it to be doing business in New York. *See, e.g., Parkwood Furniture Co. v. OK Furniture Co*., 76 A.D.2d 905, 429 N.Y.S.2d 240 (App. Div. 2d Dep't. 1980) (mem.); *Continental Shows, Inc. v. Essex County Agricultural Society, Inc*., 62 A.D.2d 1103, 404 N.Y.S.2d 418 (3d Dep't. 1978) (mem.); *Colonial Mortgage Co. v. First Federal Savings & Loan Ass'n of Rochester*, 57 A.D.2d 1046, 395 N.Y.S.2d 798 (4th Dep't. 1977) [**16]  (mem.).

  *Netherlands Shipmortgage Corp. v. Madias,* 717 F.2d 731, 735-36 (2d Cir.1983).

26

1998)).  The Debtor has made no such showing, and cannot do so with respect to SLM Private

Credit Student Loan Trusts 2006-A.  That is because under the Business Corporation Law, a trust

does not qualify as a foreign corporation.  *See* N.Y. B.C.L. § 102(7).[69]

Moreover, even if the Debtor could demonstrate that the owners of the loans are subject

to section 1312(a) of the Business Corporations Law, they would not be barred either from

initiating or defending litigation under section 523(a)(8) of the Bankruptcy Code in this Court.

First, "door closing" statutes, like section 1312, are not enforceable in bankruptcy discharge

cases.  *See In re Hallyburton*, 163 B.R. 476, 478 (Bankr. D. Md. 1994).  Second, the failure of a

foreign corporation to obtain authority to do business in New York does not bar it from

defending in any action or special proceeding in New York.  *See* N.Y. B.C.L. 1312(b).[70]  *See*

*also Werbungs Und Commerz Union Austalt v. Collectors' Guild, Ltd.*, 782 F. Supp. 870, 874,

n.3 (S.D.N.Y. 1991) (granting foreign corporation (Permal) leave to intervene as defendant in an

action, and stating that "[t]he court reject[ed] Werbungs' argument that Permal does not have

---

[69]   That section states, as follows:

  "Foreign corporation" means a corporation for profit formed under laws other than the statutes of
  this state, which has as its purpose or among its purposes a purpose for which a corporation may
  be formed under this chapter, other than a corporation which, if it were to be formed currently
  under the laws of this state, could not be formed under this chapter. "Authorized", when used with
  respect to a foreign corporation, means having authority under article 13 (Foreign corporations) to
  do business in this state.

N.Y. B.C.L. § 102(7).

[70]   That section states, as follows:

  (b) The failure of a foreign corporation to obtain authority to do business in this state shall not
  impair the validity of any contract or act of the foreign corporation or the right of any other party
  to the contract to maintain any action or special proceeding thereon, and shall not prevent the
  foreign corporation from defending any action or special proceeding in this state.

N.Y. B.C.L § 1312(b).

27

standing to sue under § 1312 of the New York Business Corporation Law because Permal is not

authorized to do business in New York.  While it is true that foreign corporations and foreign

partnerships may not initiate lawsuits in New York, they are not barred from defending actions in

this jurisdiction."); *Mahar v. Harrington Part Villa Sites*, 204 N.Y. 231, 237 (1912) (interpreting

predecessor to section 1312 (section 15 of the General Corporation Law (Laws of 1909, c. 28

[Consol. Laws 1909, c. 23])) and noting that "the statute imposes only on the foreign

corporation, which has not complied with the provisions of the laws of this state requisite to

entitle it to do business therein, the penalty of being unable to maintain any action upon a

contract made by it, not upon the other party to the contract. In other words, it can be sued upon

the contract, but cannot sue thereon.").

The Debtor contends, but has not demonstrated, that Navient misrepresented to the Court

that it owns the Private Loans.  However, assuming, *arguendo*, that he can make that showing,

he has failed to demonstrate that he can plausibly allege a claim of fraud on the court against

Navient.  The Debtor has not demonstrated that Navient has realized any benefits in this

litigation by reason of the alleged misrepresentation.  Moreover, the alleged misrepresentation

has been brought to the Court's attention and the parties can address the significance, if any, of

the fact that Navient does not own the loans in advance of trial.  The Debtor cannot plead that

Navient derived any benefit from the alleged misrepresentation in this litigation.  The Court

denies the Debtor's request to amend the *Complaint* to add a claim of fraud on the court against

Navient.  *See Burris v. Frito-Lay, Inc*., No. C09-5492-RJB, 2009 WL 10726006, at *3 (W.D.

Wash. Oct. 20, 2009) (denying motion to amend complaint where "the plaintiff has failed to

meet her burden to sufficiently plead her proposed additional claim against Defendant Pratt*"); G

& C Auto Body Inc. v. Geico Gen. Ins. Co.*, No. C06-04898 MJJ, 2007 WL 4350907, at *6 (N.D.

Cal. Dec. 12, 2007) (denying plaintiff's' motion for leave to amend as futile where plaintiff's

proposed amended complaint, "fails to adequately plead the existence of false or misleading

statements with sufficient particularity."). *Cf. Grimes-Jenkins v. Consol. Edison Co. of New*

*York, Inc.*, No. 16CIV4897ATJCF, 2017 WL 2258374, at *2 (S.D.N.Y. May 22, 2017), *report*

*and recommendation adopted*, No. 16CIV4897ATJCF, 2017 WL 2709747 (S.D.N.Y. June 22,

2017) ("Leave to amend should be denied as futile when the amended pleading would not

survive a motion to dismiss under Rule 12(b)(6). Thus, the standard governing leave to amend is

whether the amended pleading states a claim on which relief can be granted when all facts pled

are accepted as true and construed in the light most favorable to the plaintiff.").[71]

---

[71]    Several of the Debtor's "Motions and Actions Demands" relate to his assertion of fraud on the court. [AP ECF No. 294]. The Court addresses them below.

Motions and Actions Demand #1

      Motion for criminal inquiry/declaration of fraud against and into Sallie Mae/Navient regarding now revealed tax fraud and blocking of payments resulting in breach of contract. Recent discovery documents from Navient indicate Navient has intentionally omitted and deceived who the title holder of the loans in question is as well as these entities' legal licenses to participate in lawsuits. Navient is aware that they have already been warned and threaten with sanction by Justice D'Auguste in the Navient vs. Gray case (index #21650/13 Civil Court of New York City). Navient has continued their deception in this case to block revelation of a massive tax fraud. Navient must provide tax i.d.s and state business registrations for every known entity holding title to loans in question.   Request #2 and Request #3 seek the same relief.

      Denied.  For the reasons set forth herein, the Court finds that the Debtor has not asserted a claim for fraud on the court against Navient.

Motions and Actions Demand #2

      Motion for in court review of state and federal rules/court obligations when a crime amongst a plaintiff and or defendant is revealed in court.

      Denied.  The Court lacks subject matter jurisdiction to enforce state or federal criminal laws.  As such, the Court will not review state and federal rules/court obligations when a crime amongst a plaintiff and or defendant is revealed in court.  Moreover, the Debtor has not revealed that a crime has been committed.

Motions and Actions Demand #3

      Motion to reveal SLM Trust 2006 and Navient Credit Finance legal representatives. These parties have now been identified by Navient Corp's attorney as title holders of the loans in question.

      Denied.   Information is irrelevant to the matters at issue in the *Complaint*.

Spoliation of Evidence

The Debtor contends that based upon the District Court's "findings" in *Navient Securities,* the Court should declare "spoliation of evidence against Navient, ECMC, Lafayette College [and] the Department of Education . . ." *Omnibus Motion* at 2. The Court construes the request as one to amend the *Complaint* to include a claim of spoliation against Navient, ECMC, Lafayette College and the Department of Education. That request misses the mark. "Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *West v. Goodyear*

---

Motions and Actions Demand #4

Motion to summon state attorney general and state tax investigator regarding above fraud inquiry, the findings in *Gray,* and their influence on dischargeability, breach of contract, and criminal fraud.

Denied. No state attorney general or state tax investigator is party to this litigation. Moreover, the Court lacks subject matter jurisdiction to conduct or oversee an inquiry regarding Navient's alleged criminal fraud.

Motions and Actions Demand #6

Motion to clarify power of the court regarding illegal or bad faith actions by the US congress with relation to student loan debt in relation to required public discourse before a law or change in law is passed to allow the change in law to be considered legitimate and constitutional. More specifically, can the court rule a congressional action unconstitutional?

Denied. The request is in the nature of a request for an advisory opinion, and this Court lacks the power to issue such an opinion. "The oldest and most consistent thread in the federal law of justiciability is that federal courts will not give advisory opinions." *In Matter of Motors Liquidation Company*, 829 F.3d 135, 167-68 (2d Cir. 2016) (internal quotation marks omitted). That limitation applies to bankruptcy courts. *Id*. at 168 (citing *Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 135 S.Ct. 1932, 1945, 191 L.Ed.2d 911 (2015) ("Bankruptcy courts hear matters solely on a district court's reference [and] possess no free-floating authority to decide claims traditionally heard by Article III courts.").

Motions and Actions Demand #9

Motion for damages related to ECMC, Sallie Mae, Navient, and Lafayette College regarding above described tax fraud and prevention of payment of loans.

Denied. The Debtor is not entitled to recover damages in this discharge litigation, and, in any event, the evidence submitted by Debtor in support of the claims demonstrates that he cannot plausibly assert claims of tax fraud and prevention of loan payments against ECMC, Sallie Mae, Navient, and Lafayette College.

*Tire & Rubber Co.,* 167 F.3d 776, 779 (2d Cir.1999) (citing *Black's Law Dictionary* 1401 (6th ed.1990)); *see also Silvestri v. Gen. Motors Corp.,* 271 F.3d 583, 590 (4th Cir.2001) (spoliation of evidence is "the destruction or material alteration of evidence or ... the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation.")    Courts impose sanctions for spoliation either under Fed.R.Civ.P. 37(b)(2) when the spoliation violates a court order, or pursuant to their "broad inherent power" to impose sanctions in response to "abusive litigation practices" to "protect the administration of justice." *Penthouse Int'l., Ltd. v. Playboy Enter., Inc.,* 663 F.2d 371, 386 (2d Cir.1981).  *See also Chambers v. NASCO, Inc.,* 501 U.S. 32, 45–46 (1991) (recognizing the inherent power of the courts to fashion appropriate sanctions for conduct that disrupts the judicial process).  A party seeking sanctions for spoliation must establish: "(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a 'culpable state of mind' and (3) that the destroyed evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Zubulake v. UBS Warburg LLC,* 229 F.R.D. 422, 430 (S.D.N.Y.2004).  However, "while the spoliation of evidence may give rise to court imposed sanctions . . . the acts of spoliation do not themselves give rise in civil cases to substantive claims or defenses."  *Silvsetri v. General Motors Corp*., 271 F.3d at 590.  That is one reason why the Court finds no merit denies the Debtor's request that the Court declare "spoliation of evidence" against Navient, ECMC, Lafayette College and/or the Department of Education.  More significantly, it is not plausible the that Debtors could establish spoliation against ECMC, Lafayette College and/or the Department of Education based on *Navient Securities,* because they are not party to that litigation.  Moreover, as noted previously, the *Navient Securities* court did not make any findings of fact let alone findings that would

31

support of request for sanctions against Navient.  The Court denies the Debtor's request that the
Court declare "spoliation of evidence" against Navient, ECMC, Lafayette College and the
Department of Education, or to amend the *Complaint* to permit the Debtor to asserts claims of
spoliation of evidence against them.

<u>Breach of Contract and Breach of Fiduciary Duties</u>

Property of the estate includes "all legal or equitable interests of the debtor in property as
of the commencement of the case."  11 U.S.C. § 541(a)(1).  Causes of action belonging to the
debtor that accrued prior to the filing of the bankruptcy petition constitute property of the estate
under section 541(a) of the Bankruptcy Code.  *See Seward v. Devine*, 888 F.2d 957, 963 (2d Cir.
1989) ("The bankruptcy estate encompasses all legal or equitable interests of the debtor in
property as of the commencement of the case, . . .  including any causes of action possessed by
the debtor . . . .") (internal quotation marks and citations omitted); *Sierra Switchboard Co. v.
Westinghouse Elec. Corp.*, 789 F.2d 705, 707 (9th Cir. 1986) ("The scope of section 541 is
broad, and includes causes of action.") (citing *United States v. Whiting Pools, Inc.*, 462 U.S. 198,
205 & n. 9, 103 S. Ct. 2309, 2313 & n.9, 76 L. Ed. 2d 515 (1983)).  In a chapter 7 case, causes of
action are administered by the trustee unless she abandons them pursuant to the procedures set
forth in section 554 of the Bankruptcy Code or the debtor can demonstrate that resolution of the
claim would result in the reasonable possibility of an estate surplus reverting to the debtor
pursuant to section 726(a)(6), after payment in full, plus interest, of all creditors' claims.  *See
Cadle, Co. v. Mangan (In re Flanagan)*, 503 F.3d 171, 179 (2d Cir. 2007) ("It is well established
that once a trustee is appointed, a debtor loses all authority to litigate any claim for or against the
estate."); *see also* 11 U.S.C. § 323(b) (trustee has capacity to sue and be sued); 11 U.S.C. § 544
(setting forth procedures for abandonment); *Chartschlaa v. Nationwide Mut. Ins. Co*., 538 F.3d

32

116, 123 (2d Cir. 2008); *In re Drexel Burnham Lambert Grp., Inc.*, 160 B.R. 508, 514 (S.D.N.Y.

1993); *Kapp v. Naturelle (In re Kapp)*, 611 F.2d 703, 707 (8th Cir. 1979) ("[W]hen it appears

that, if the contested claims are disallowed, there may be a surplus of assets to be returned to the

bankrupt, the bankrupt is considered to have standing to contest the claims[.]").

On the Petition Date, the Debtor's estate took ownership of all of his property, including

tort claims and all other causes of action that accrued prior to the Petition Date, including those

claims not listed in his Petition.  In his Report of No Distribution, the Chapter 7 Trustee advised,

among other things, that the Debtor's estate "has been fully administered," that he "made a

diligent inquiry into the financial affairs of the debtor and the location of the property belonging

to the estate; and that there is no property available for distribution from the estate over and

above that exempted by law."[72]  The Chapter 7 Trustee did not abandon any assets to the

Debtor.[73]  As noted, the Court previously dismissed a prior iteration of the Debtor's complaint as

against Lafayette – premised upon allegations that Lafayette wrongfully withheld grant funds

from the Debtor pre-petition – on the grounds that the Debtor did not have standing to pursue

claims accruing pre-petition.  The Debtor is barred by principles of *res judicata* from litigating

the claims here.  *See Tycon Tower I Inv. Ltd. P'ship v. John Burgee Architects*, No. 95 Civ. 6951

(DAB), 1999 U.S. Dist. LEXIS 13305, *26 (S.D.N.Y. Aug. 30, 1999) ("[A] prior decision on

lack of standing has a res judicata effect as to that litigant.").

The Debtor asserts that he has standing to sue Lafayette, ECMC, Sallie Mae, the

Department of Education and Joseph Biden for their alleged participation in Navient's schemes

to bar student borrowers, such as the Debtor, from repaying loans, and to misrepresent Navient's

---

[72]    *Report of No Distribution* [ECF No. 6].

[73]    *See id.*

33

ownership of the Debtor's student loans. However, claims arising from those alleged schemes, if any, plainly accrued pre-petition and, as such, the Debtor is barred from pursuing any such claims. First, the Debtor's allegation that Navient and Sallie Mae intentionally blocked the Debtor from repaying his loans dates back to the time of his college graduation approximately 14 years ago:

> During the period immediately after my graduation to present time, Sallie Mae, through their loan servicing employees, repeatedly attempted to prohibit payment towards my loans by setting impossibly high minimums and offering forbearance as the only solution to stay current and avoid default.

*See Complaint* at 4. The Debtor alleges that Lafayette, ECMC, Sallie Mae, the Department of Education and Joseph Biden were willing participants in that scheme:

> The intention of this fraud was to increase profits for Navient's criminal lending enterprise which included other actors such as ECMC, Lafayette College, Sallie Mae (A parent company to Navient), and the Department of Education as well individuals working to implement and protect the ongoing fraud on Navient's behalf- such as former Senator Joe Biden.

*Omnibus Motion* at 2. However, all of the alleged bad acts by the defendants took place prior to the Petition Date. As such, the Debtor lacks standing to pursue them. Likewise, allegations regarding those parties' participation in a scheme to misrepresent Navient's ownership of the Debtor's student loans also relate to pre-petition conduct. The Debtor's bankruptcy schedules list Sallie Mae as the holder of the Debtor's student loans.[74] Assuming, *arguendo*, that the Debtor is alleging that he listed Sallie Mae as the holder of the student loan based upon a fraudulent misrepresentation, then that misrepresentation must have occurred prior to the filing of the *Petition*. The Debtor does not allege that Lafayette, ECMC, Sallie Mae, the Department of

---

[74]    *See* Petition, Schedule F (Creditors Holding Unsecured Non-Priority Claims).

Education or Joseph Biden engaged in any fraud or misrepresented Navient's ownership of the

Debtor's student loans after the filing of the Debtor's bankruptcy petition.  As such, the Debtor

lacks standing to pursue his proposed claims against them.

The Debtor's lack of standing to sue is not the only reason for denying the Debtor's

motion to amend the *Complaint*.  "Where the dates in a complaint show that an action is barred

by a statute of limitations, a defendant may raise the affirmative defense in a pre-answer motion

to dismiss.  Such a motion is properly treated as a Rule 12(b)(6) motion to dismiss for failure to

state a claim upon relief can be granted. . . ."  *Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160,

162 (2d Cir. 1989).  Notwithstanding the defects in the Debtor's pleadings, all alleged causes of

action against Lafayette, ECMC, Sallie Mae, the Department of Education or Joseph Biden are

time barred -- whether based in fraud, breach of fiduciary duty, or breach of contract, and under

either New York or Pennsylvania law.

*The Claims are Barred Under New York Law*

A three-year statute of limitations applies where, as here, a plaintiff seeks money

damages occasioned by an alleged breach of fiduciary duty under New York law.  *See* N.Y.

C.P.L.R. 214(4).[75]  *See also Yatter v. William Morris Agency*, 256 A.D.2d 260, 261 (1st Dep't.

1998) ("Because plaintiff's breach of fiduciary duty claim seeks only money damages, the

---

[75]   That section states, in relevant part:

    The following actions must be commenced within three years:

                    *        *        *        *

    4. an action to recover damages for an injury to property . . . .

N.Y. C.P.L.R. 214(4).

applicable limitations period is three years."); *Whitney Holdings, Ltd. v. Givotovsky*, 988 F.

Supp. 732, 741 (S.D.N.Y. 1997) ("[S]uits alleging breach of fiduciary duty, particularly those

seeking purely damages, have been construed as alleging 'injuries to property' and therefore held

to come within CPLR § 214(4) which has a three year prescriptive period."). The three-year

statute of limitations is applicable here because the Debtor asserts that Lafayette has breached a

fiduciary duty to the Debtor and seeks damages in connection therewith.[76] As Lafayette could

only have owed a fiduciary duty to the Debtor while he was matriculated at Lafayette as a

student, it could only have breached its duty to the Debtor while he was a student. The Debtor's

initial complaint was filed fourteen years after the Debtor was no longer a student at Lafayette.

Therefore, the breach of fiduciary claim is time barred pursuant to N.Y. C.P.L.R. 214(4).[77]

The Debtor's claims of breach of contract are subject to a six-year statute of limitations,

which begins to run from the date of the breach. *See* N.Y. C.P.L.R. 213(2).[78] *See also Ely-*

*Cruikshank Co., Inc. v. Bank of Montreal*, 81 N.Y.2d 399, 402 (1993) (noting that the statute of

limitations begins to run "from the time of the breach though no damage occurs until later")

---

[76]    *See Omnibus Motion* at 2-3.

[77]    The same statute of limitation analysis likewise applies to the Debtor's breach of fiduciary duty claim against
ECMC. As noted above, under FFELP, ECMC would only have taken title to the Debtor's student loan accounts by
operation of law upon the commencement of this adversary proceeding, on December 15, 2015. Thus, insofar as the
Debtor is contending that ECMC owed a fiduciary duty to him as the holder of his student loans, any such duty
could only have arisen and been breached in December of 2015. The Debtor's *Omnibus Motion* to amend the
*Complaint* to assert a breach of fiduciary duty claim against ECMC is well after the 3-year statute of limitation
under the N.Y. C.P.L.R. 214(4), and thus, is time-barred.

[78]    As relevant, N.Y. C.P.L.R. 213 states:

The following actions must be commenced within six years:

*    *    *    *

2. an action upon a contractual obligation or liability, express or implied, except as provided in
section two hundred thirteen-a of this article or article 2 of the uniform commercial code or article
36-B of the general business law . . . .

36

(citation omitted); *T&N PLC v. Fred S. James & Co. of N.Y., Inc.*, 29 F.3d 57, 60 (2d Cir. 1994)

("Under New York law, a cause of action for breach of contract accrues and the statute of

limitations commences when the contract is breached."); *Guilbert v. Gardner*, 480 F.3d 140, 149

(2d Cir. 2007) ("The plaintiff need not be aware of the breach or wrong to start the period

running.") (citation omitted).  The breaches contemplated by the Debtor relate to Lafayette's and

Navient's alleged participation in schemes that began immediately after the Debtor's graduation

from college, nearly fourteen years ago.  Thus, the Debtor's claims accrued well over six years

ago.  Therefore, the Debtor's claims are time barred pursuant to N.Y. C.P.L.R. 213(2).

Finally, under subsection 213(8) of the New York Civil Practice Laws and Rules, a cause

of action based upon fraud must be commenced within six years from the time of the fraud, or

within two years from the time the fraud was discovered.[79]  *See Oggioni v Oggioni*, 46 A.D.3d

646, 648 (2d Dep't. 2007) ("A cause of action based upon fraud must be commenced within six

years from the time of the fraud or within two years from the time the fraud was discovered, or

with reasonable diligence, could have been discovered, whichever is longer . . . ") (citations

omitted).  For these purposes, "[a] cause of action alleging fraud accrues at the time the plaintiff

possesses knowledge of facts from which the fraud could have been discovered with reasonable

diligence." *Town of Poughkeepsie v. Espie*, 41 A.D.3d 701, 705 (2d Dep't. 2007).  *See also*

*Marasa v Andrews*, 69 A.D.3d 584, 584 (2d Dep't. 2010) ("For the purposes of the discovery

---

[79]    N.Y. C.P.L.R. 213(8) provides:

The following actions must be commenced within six years:

*        *        *        *

8. an action based upon fraud; the time within which the action must be commenced shall be the
greater of six years from the date the cause of action accrued or two years from the time the plaintiff
or the person under whom the plaintiff claims discovered the fraud, or could with reasonable
diligence have discovered it.

37

rule, a plaintiff's cause of action accrues at the time the plaintiff 'possesses knowledge of facts

from which the fraud could have been discovered with reasonable diligence.") (internal quotation

marks and citations omitted).

To the extent that the Debtor alleges fraud, the claims are based on events that occurred

in the late 1990's and early 2000's, nearly 15 years before the commencement of this action in

late 2015.  Moreover, the discovery rule does not apply to the cause of action for constructive

fraud (*see Gonik v Israel Discount Bank of NY*, 80 A.D.3d 437, 438 (1st Dep't. 2011); *Fandy

Corp. v Lung-Fong Chen*, 262 A.D.2d 352, 353 (2d Dep't. 1999)), and the Debtor has failed to

allege sufficient facts that he could not, with reasonable diligence, have discovered the purported

fraud earlier than two years before the *Complaint* was filed.  As such, the Debtor's alleged

claims for fraud are barred pursuant to N.Y. C.P.L.R. 213(8).

*The Claims are Barred Under Pennsylvania Law*

In Pennsylvania, there is a two-year statute of limitations for tort actions, including fraud

and breach of fiduciary.  *See* 42 Pa. Cons. Stat. § 5524.[80]  *See also Weis-Buy Servs., Inc. v.

Paglia*, 411 F.3d 415, 422 (3d Cir. 2005) (applying Pennsylvania statute of limitation to breach

of fiduciary duty claim); *AAMCO Transmissions, Inc. v. Harris*, 759 F. Supp. 1141, 1144 (E.D.

---

[80]    As relevant, section 5524 states:

> The following actions and proceedings must be commenced within two years:
>
> *        *        *        *
>
> (7) Any other action or proceeding to recover damages for injury to person or property which is
> founded on negligent, intentional, or otherwise tortious conduct or any other action or proceeding
> sounding in trespass, including deceit or fraud, except an action or proceeding subject to another
> limitation specified in this subchapter.

42 Pa. Cons. Stat. § 5524(7).

Pa. 1991) (noting that claim for fraud is covered by section 5524(7)).  Pennsylvania law

"recognizes a 'discovery rule' exception to the statute of limitations which delays the running of

the statute until the plaintiff knew, or through the exercise of reasonable diligence should have

known, of the injury and its cause."  *Beauty Time, Inc. v. VU Skin Systems, Inc.*, 118 F.3d 140,

144 (3d Cir. 1997).  That rule is not applicable herein because the Debtor acknowledges in his

motion papers, his bankruptcy schedules, and the *Complaint* that he was aware of the facts

supporting his loan amendment immediately after graduating from Lafayette in 2002.  Because

the Debtor has failed to bring his claims within two years of graduating, the Debtor's request to

add claims for fraud and breach of fiduciary duty claims are now barred under 42 Pa. Cons. Stat.

§ 5524.

Similarly, the Debtor's breach of contract claims are time barred under Pennsylvania's

four-year statute of limitations.  *See* 42 Pa. Cons. Stat. § 5525(8).[81]  A complaint asserting a

breach of contract claim must be filed within four years of "the time when a claimant first knows

that the benefit has been infringed or removed," or the statute of limitations will bar the claim.

*Romeo & Sons, Inc. v. P.C. Yezbak & Son, Inc.*, 652 A.2d 830, 832 (Pa. 1995) (acknowledging

that the statute of limitations requires a plaintiff to file a breach of contract claim within four

years of "the time of the breach" (internal quotation marks omitted)).  The Debtor's motion

---

[81]    That section states, in relevant part:

> (a)  General rule.--Except as provided for in subsection (b), the following actions and proceedings
> must be commenced within four years:
>
> *        *        *        *
>
> (8) An action upon a contract, obligation or liability founded upon a writing  not specified in
> paragraph (7), under seal or otherwise, except an action subject to another limitation specified in
> this subchapter.

42 Pa. Cons. Stat. § 5525(8).

suggests that any alleged breach occurred while he was a student at Lafayette or immediately thereafter, and that he was aware of the breach, at the latest, "almost immediately after graduation." *Complaint* at page 3. Accordingly, the Debtor's claims are barred pursuant to 42 Pa. Cons. Stat. § 5525(8).

It is clear from the face of the *Complaint* that the causes of action that the Debtor seeks to assert against Navient, Lafayette, ECMC, Department of Education and Joseph Biden have not been brought within any applicable statutes of limitation. Those are additional grounds for denying the Debtor's request to amend the *Complaint*. [82]

Motion To Remove Judge

Mr. Grabis contends that I should be removed from presiding over this case in favor of Chief Judge Morris. *See Omnibus Motion* at 4. ("Judge Morris is clearly the voice of the court in matters related to dischargeability of student loans[.]") The Debtor says that I should be removed from this case because "Judge Garrity was or possibly is a partner in the law firm Morgan Lewis Bockius which represented and advised Navient and Sallie Mae in known fraudulent activities related to college cost of attendance manipulation and borrower bankruptcy dischargeability and securities fraud." *Id.* He states that "[t]his firm is clearly culpable in these actions and Judge Garrity withheld previously requested conflicts of interest to be revealed to the court." *Id.*[83]

---

[82]    In his Motions and Actions Demand # 12 (AP ECF No. 294), the Debtor seeks "Notification of filing of breach of contract against ECMC, Navient, Lafayette and the Department of Education." For the reasons set forth herein, the Court denies that Motion and Demand.

[83]    *See also Motion To Allow Class Action Status, Default Judgment 3/17/2020* at ¶ 7 (Motion for Chief Judge to take over the case.) [AP ECF No. 309].

Section 455 of title 28 of the United States Code is relevant to the matters at issue in the

Debtor's motion.  It is made applicable to this case by Bankruptcy Rule 5004(a).  That rule

states, as follows:

> A bankruptcy judge shall be governed by 28 U.S.C. § 455, and disqualified from presiding over the proceeding or contested matter in which the disqualifying circumstances arises or, if appropriate, shall be disqualified from presiding over the case.

Fed. R. Bankr. R. 5004(a).  In relevant part, section 455 states, as follows:

> (a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

> (b) He shall also disqualify himself in the following circumstances:

> (1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding,

> (2) Where in private practice he served as lawyer in the matter in controversy, or a lawyer with whom he previously practiced law served during such association as a lawyer concerning the matter, or the judge or such lawyer has been a material witness concerning it[.]

28 U.S.C. § 455(a), (b)(1)-(2).[84]  Recusal motions are committed to the trial court's discretion.

*Apple v. Jewish Hosp. & Med. Ctr.,* 829 F.2d 326, 333 (2d Cir.1987).  Disqualification is

---

[84]   Sections 455(b)(3) – (5) plainly are not relevant herein.  They mandate that a bankruptcy judge disqualify himself in any proceeding:

> (3) Where he has served in governmental employment and in such capacity participated as counsel, adviser or material witness concerning the proceeding or expressed an opinion concerning the merits of the particular case in controversy;

> (4) He knows that he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding;

> (5) He or his spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person:

> > (i) Is a party to the proceeding, or an officer, director, or trustee of a party;

41

required if a reasonable factual basis exists for doubting the judge's impartiality. *In re Beard*,

811 F.2d 818, 827 (8th Cir. 1987). In assessing the merits of a recusal motion, the inquiry the

Court must make is whether a reasonable person would have a reasonable basis for questioning

the judge's impartiality, not whether the judge is in fact impartial. *Rice v. McKenzie*, 581 F.2

1114, 1116 (4th Cir. 1978). In doing so, the court applies an objective test. The appearance of

impropriety must be determined "by examining the record facts and the law, and then deciding

whether a reasonable person knowing and understanding all of the relevant facts would recuse

the judge." *In re Drexel Burnham Lambert Inc.,* 861 F.2d 1307, 1313 (2d Cir.1988); *accord*

*United States v. Lovaglia,* 954 F.2d 811, 815 (2d Cir.1992); *Apple v. Jewish Hosp. & Med. Ctr.*,

829 F.2d at 333. "The alleged bias and prejudice sufficient to warrant disqualification must stem

from an extrajudicial source and result in an opinion on the merits on some basis other than what

the judge learned from his participation in the case." *United States v. Grinnell Corp.,* 384 U.S.

563, 583 (1966); *accord Lewis v. Tuscan Dairy Farms, Inc.,* 25 F.3d 1138, 1141 (2d Cir.1994).

"[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion."

*Liteky v. United States,* 510 U.S. 540, 555 (1994); *see United States v. Colon,* 961 F.2d 41, 44

(2d Cir.1992); *Schiff v. United States,* 919 F.2d 830, 834 (2d Cir.1990) *cert. denied,* 501 U.S.

1238 (1991).

---

(ii) Is acting as a lawyer in the proceeding;

(iii) Is known by the judge to have an interest that could be substantially affected
by the outcome of the proceeding;

(iv) Is to the judge's knowledge likely to be a material witness in the proceeding.

28 U.S.C. §§ 455(b)(3) – (5).

42

Morgan Lewis & Bockius (the "Firm") is not a party to this litigation and has not appeared in this case. As such until now there was no reason for me to discuss my prior association with the Firm with to the parties to this action. My former relationship to the Firm does not disqualify me from presiding over this matter. The Debtor has submitted no evidence to support his contention that the Firm has or is acting as counsel to Navient and/or Sallie Mae. However, assuming, *arguendo*, that the Firm was or is serving as counsel to Navient and/or Sallie Mae, that does not disqualify me from continuing to preside over this lawsuit. It is a matter of public record that immediately prior to my appointment to the Court, I was a member of the Firm. I am not currently a member of the Firm. I resigned from the Firm immediately prior to my appointment to the Court. I have no interest, financial or otherwise, in the Firm. To the best of my recollection, during my tenure at the Firm, I did not provide legal or other services to Navient or Sallie Mae. I do not have any information or knowledge of evidentiary facts, disputed or otherwise, concerning this matter. As noted, the Firm has no interest in this litigation. I find that, based on the foregoing, a reasonable person would not have a reasonable basis for questioning whether my former association with the Firm disqualifies me from presiding over this case. Accordingly, I deny the Debtor's motion to disqualify me from presiding over this litigation.

Motion for Jury Trial

The Debtor also "demand[s] a jury in any trial action as is my right by law." *Omnibus Motion* at 4. The Court denies that demand for two reasons. First, the request is not timely. Federal Rule 38(b)(1), as made applicable by Bankruptcy Rule 9015(a), provides that "[o]n any issue triable of right by a jury, a party may demand a jury trial by . . . serving the other parties with a written demand--which may be included in a pleading--no later than 14 days after the last

43

pleading directed to the issue is served[.]" Fed. R. Civ. P. 38(b)(1). For these purposes, "'the

last pleading directed to' an issue is not the pleading that raises the issue, it is the pleading that

contests the issue. Normally, that pleading is an answer, or, with respect to a counterclaim, a

reply." *McCarthy v. Bronson,* 906 F.2d 835, 840 (2d Cir. 1990) (citation omitted), *aff'd*, 500

U.S. 136 (1991). Under Rule 38(d), "[a] party waives a jury trial unless its demand is properly

served and filed." Fed. R. Civ. P. 38(d). The Debtor did not include a request for a jury trial in

his original complaint.[85] With leave of the Court, he amended his complaint four times.[86] He

did not include a request for a jury trial in any of those complaints, including the operative

*Complaint*. The last pleading directed to the operative complaint was filed on September 25,

2017.[87] Accordingly, the Debtor waived his right to request jury trial in this matter. *Lucero v.*

*Somichi Deli, Inc.*, No. 15-cv-413 (PKC), 2016 WL 796853, at *2 (S.D.N.Y. 2016) (finding that

defendants did not make a timely jury demand where "the last pleading directed to the issue" was

on October 21, 2015, "meaning that the 14-day window to make a timely jury demand expired

on November 4, 2015" rendering the defendants jury demand on November 25, 2015 untimely);

*see also Washington v. New York City Bd. of Estimate*, 709 F.2d 792, 797-98 (2d Cir. 1983)

(finding that employee's request for a jury trial on his age discrimination claim was waived as

untimely under Rule 38(d).), *cert. denied*, 464 U.S. 1013 (1983).

    In any event, the Debtor is not entitled to a jury trial. The Seventh Amendment to the

United States Constitution guarantees the right to trial by jury "[i]n suits at common law, where

---

[85]    *See* AP ECF No. 1.

[86]    *See* AP ECF Nos. 18, 23, 34 and 84.

[87]    Under Rule 38(b)(1) the Debtor's last day to demand a jury trial was October 9, 2017. A review of the record shows that the Debtor's first and only demand for a jury trial was made on March 13, 2020 (*see* ECF 311) more than two years after that deadline.

the value in controversy shall exceed twenty dollars." "[T]he thrust of the Amendment was to

preserve the right to jury trial as it existed in 1791." *Granfinanciera S.A. v. Nordberg,* 492 U.S.

33, 41 (1989)(quoting *Parsons v. Bedford,* 3 Pet. 433, 447, 7 L.Ed. 732 (1830)).  In

*Granfinanciera,* the Supreme Court considered whether a party to an adversary proceeding filed

in a bankruptcy case had a Seventh Amendment right to a jury trial.  In that case, a chapter 7

trustee sued to recover an alleged prepetition fraudulent transfer and the non-debtor defendant

made a timely demand for a jury trial.  In resolving that matter, the Supreme Court applied the

following two-part test.  First, it considered whether the claim asserted would have been

considered an action at law or an action in equity in eighteenth century England before the

merger of the courts of law and equity. *Granfinanciera,* 492 U.S. at 42.  Second, it  considered

whether the remedy sought in that action is equitable or legal.  It noted that the second

consideration weighs more heavily than the first. *Id.* Applying that test, the Court found that the

trustee's claim for damages was the kind of claim that was long recognized as an "action at law"

before the merger of law and equity.   It also found that since the defendant had not waived its

right to demand a trial by jury by having filed a proof of claim, the defendant's demand for a jury

had to be respected.  *Id.*  The sole issue to be resolved under the *Complaint*, is whether the

Debtor's Student Loan Debt is discharged under §523(a)(8) of the Bankruptcy Code.  In

applying the two-part test to the *Complaint*, the Court finds that a determination of

nondischargeability "involves issues with an equitable history and for which there was no

entitlement to a jury trial in courts of England prior to the merger of law and equity."  *Hallahan*

*v. N.I.S. Corp. (In re Hallahan)*, 936 F.2d 1496, 1505 (7th Cir. 1991) (*quoting In re Hooper*, 112

B.R. 1009, 1012 (Bankr. 9th Cir. 1990).  Moreover, "the relief sought is equitable since the

essence of a dischargeability claim is a declaration that the debt is indeed dischargeable or

nondischargeable." *Id.* The Debtor has no right to trial by jury under the *Complaint*. *See In re*

*Cavender*, Adv. No. 16 A 00657, 2017 WL 8218841 at *11 (Bankr. N.D. Ill. Nov. 27, 2017)

("Because Cavender has no right to a jury trial on her § 523(a)(8) claim, even if the demand was

timely, the jury demand is inappropriate."). *See also U.S. v. Stanley,* 595 Fed. Appx. 314, 320-

321 (5th Cir. 2014)("Stanley . . . had no right to a jury to determine the dischargeability of his

income tax liability [under § 523(a)(1)(A) of the Bankruptcy Code]"); *American Express Travel*

*Related Servs. Co. v. Hashemi (In re Hashemi),* 104 F.3d 1122, 1124 (9th Cir.1997) (No right to

jury trial in action seeking to declare debt to AMEX non-dischargeable under § 523(a)(2)(A)

because "[b]ankruptcy litigants . . . have no Seventh Amendment right to a jury trial in

dischargeability proceedings."); *Sobel v. Weinstein (In re Weinstein),* 237 B.R. 567, 574

(Bankr. E.D.N.Y. 1999) (Finding that debtor had "no cognizable jury trial right with respect to

the limited issue of nondischargeability [under sections 523(a)(2)(A) and (2)(B) of the

Bankruptcy Code)].[88]

Motion for Default Judgment/Class Action Status

        The *Omnibus Motion* includes the Debtor's request for entry of a default

judgment against Navient. As support, the Debtor "urge[s] the court to find default judgment

against Navient based on fraud . . ." *See Omnibus Motion* at 3. The Court denies that request.[89]

---

[88]    In his Motions and Actions Demand #13 (AP ECF No. 294), the Debtor makes a "Motion for Jury Trial in this
adversary proceeding. For the reasons set forth herein, the Court denies that motion.

[89]    Under Federal Rule 55, made applicable herein by Bankruptcy Rule 7055, "[w]hen a party against whom a
judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by
affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). The Clerk's record should
contain a notation indicating that the defendant has "failed to plead or otherwise defend" and that the party moving
for the default judgment has filed an affidavit setting forth the grounds for the entry of default. *Enron Oil Corp. v.
Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993). Next, the moving party may apply for entry of a default judgment under
Rule 55(b)(1) or (b)(2). Under Rule 55(b)(1), "[t]he clerk may enter a judgment when the claim is one for a sum
certain, if furnished with an affidavit of the amount due, and provided that defendant has been defaulted for failure

The *Omnibus Motion* also includes a "*Motion for Class Action Status,*" but does not elaborate on

the requested relief. *See Omnibus Motion* at 2. In his pleadings, the Debtor also included:

> motion for class action status for fraud upon the court based on Navient
> Securitization ruling from Judge Kugler, expedited discovery of communications
> between defendants related to blocking payments and defrauding [B]runner
> standard prong #3 (including internal emails and statements related to Joe Biden
> as point government official in execution of said fraud), and default judgement;
>
> [m]otion for damages related to fraud upon the court; and
>
> [m]otion for other defendants to be added.

*See Motion To Allow Class Action Status, Default Judgment 3/17/2020* at ¶¶ 3, 4, 6.[90] Based on

the foregoing, the Court denies those motions, as well as the Debtor's motion to summon US

Attorney and US trustee to seize assets of Navient, Sallie Mae, ECMC, and Lafayette College as

well as other schools with liability to the class. *Id.* ¶ 5. The Court also denies the Debtor's

motion for class action status based on widespread emergency undue hardship facing all

borrowers and motion to discharge all student loans, federal and private, for all borrowers in

default judgment. *Id*. ¶¶ 1- 2. In the *Omnibus Motion* the Debtor seeks similar relief against

Navient. *See Omnibus Motion* at 3 ("As I am only one of a much larger class of borrowers and

debtors, I urge the court to find default judgement based on fraud and to sanction these parties

---

to appear." *Diakuhara*, 10 F.3d at 95 (citing Rule 55(b)(1)). For all other cases, the party must apply to the court for a default judgment under 55(b)(2), where the court may conduct a hearing or order a reference if in order to enter a default judgment the amount of damages must be ascertained. *Id.* The Debtor has not demonstrated that he is entitled to a default judgment under Rule 55. Navient has been an active party in the adversary proceeding having filed answers and various additional pleadings in defense of the claims asserted against it. *See, e.g.*, AP ECF Nos. 4, 37, 38, 104, 134, 195, 254, 287, 305. There are no grounds for entering a default judgment against Navient. Moreover, even if the Debtor could demonstrate that Navient committed fraud on the court, the remedy would not be the entry of a default judgment against Navient.

[90]    *See* AP ECF No. 309.

and block them from representing other known holders and owners of debt."). The Court denies

that request.

The *Additional Discovery Requests*

        The Debtor requests leave to conduct additional discovery. Before addressing those

requests, the Court will review the discovery permitted to date and in particular, its resolution of

the Debtor's earlier discovery requests. As noted, the Debtor asserts that the Student Loan Debt

is not excepted from discharge under section 523(a)(8) of the Bankruptcy Code because: (i) it

will be an undue hardship for him to repay that indebtedness; and (ii) the Private Loans are not

"qualified education loans." *See Complaint* at 2. As to the latter, **s**ection 523(a)(8) defines the

term "qualified education loan" by reference to section 221 of the Internal Revenue Code, 26

U.S.C. § 221. Under that section, a "qualified education loan" is any indebtedness incurred by

the taxpayer solely to pay "qualified higher education expenses"—

> (A) which are incurred on behalf of the taxpayer, the taxpayer's spouse, or any
> dependent of the taxpayer as of the time the indebtedness was incurred,
>
> (B) which are paid or incurred within a reasonable period of time before or after
> the indebtedness is incurred, and
>
> (C) which are attributable to education furnished during a period during which the
> recipient was an eligible student.

26 U.S.C. § 221(d)(1). Section 221(d)(2) defines the term "qualified higher education expenses"

to mean the "cost of attendance (as defined in section 472 of the Higher Education Act of 1965,

20 U.S.C. 108711, as in effect on the day before the date of the enactment of the Taxpayer Relief

Act of 1997) at an eligible educational institution," reduced by educational expenses paid under

certain other programs. 26 U.S.C. § 221(d)(2). [91]

As discussed in the *Discovery Decision*, as support for his contention that the Private

Loans are not "qualified education loans," and in support of his requests for document discovery

from the Department of Education, Navient and Lafayette, the Debtor made three arguments.

First, he contended that the proceeds of the Private Loans were not applied by
Lafayette to expenses associated with "Teaching or Instruction" as defined in the
"Cost of Attendance" definition of 26 U.S.C. 221(d)(1) and therefore are not
"School Certified." *See* AP ECF No. 226 at 9.

As support for that assertion the Debtor maintained that with Sallie
Mae's assistance, colleges/universities forced him and other
students to take out student loans in amounts that exceeded the
students' "cost of attendance," as defined in 26 U.S.C. § 221
(d)(1). *Id.* at 9. He asserted that in making "student loans" in
excess of the "cost of attendance," Lafayette was able to create a
reserve fund, the proceeds of which it used to pay its school
president and other administrators much higher salaries than those
associated with the "cost of attendance," as well as other expenses
that are not associated with teaching and instruction or related to
the normal cost of attendance. *Id.* He claimed that a detailed
review of a number of documents (including (i) Lafayette's
methodology of calculating and administering grant funds during
the period he attended the school, and, particularly, the "cost of
attendance" numbers used for different students, and (ii) the
publicly announced annual budget of financial aid grants during

---

[91]    In turn, section 472 of the Higher Education Act includes the following categories of costs within the
definition of "cost of attendance":

(1) tuition and fees normally assessed a student carrying the same academic workload as
determined by the institution, and including costs for rental or purchase of any equipment,
materials, or supplies required of all students in the same course of study; [and]

(2) an allowance for books, supplies, transportation, and miscellaneous personal
expenses, including a reasonable allowance for the documented rental or purchase of a personal
computer, for a student attending the institution on at least a halftime basis, as determined by the
institution[.]

20 U.S.C. § 1087ll.

this time as well as (iii) the "estimated family contribution" number Lafayette calculated for him to use) will prove that his loans were not borrowed in conjunction with "cost of attendance" but rather for profit. *Id.*

Second, he argued that Lafayette engaged in tax fraud by withholding grant money from him and others. *Discovery Decision* at 10.

In support of those assertions, the Debtor contended, as follows: (i) Lafayette was required to distribute grant funds uniformly, and if they failed to do so, Lafayette was required under tax law to report as taxable income any amount borrowed by a student not receiving uniform grant funds; (ii) Lafayette was withholding grants funds from certain students, including the Debtor; and (iii) Lafayette's annual financial reports for the years the Debtor attended the school will show that Lafayette did not pay any income taxes.

*Id.* at 10. Finally, he asserted that Sallie Mae aided the alleged tax fraud scheme in at least two ways.

He contends that Sallie Mae was pushing Lafayette and other schools to break tax laws by causing students to borrow funds in excess of the "cost of instruction." *Discovery Decision* at 9. He says that Sallie Mae not only participated in this tax fraud for profit scheme but also attempted to block borrowers from repaying their loans by setting impossibly high minimum payments and forcing borrowers into forbearance in order to generate higher loan balances and fees. *Id.* As evidence, he pointed to lawsuits brought against Sallie Mae for doing this including by employees and former employees of Sallie Mae, including one case that was brought by Michael Zahara, a former employee of Sallie Mae.

He also says that Sallie Mae repeatedly loaned out funds it knew were dischargeable in bankruptcy but at the same time attempted to buy government influence to later deem the loans exempt from discharge under § 523(a)(8) provision. *Id.* He argues that Sallie Mae used "backdoor and hidden communications" with the United States House of Representatives and the Department of Education to create a "veneer" provision to the § 523(a)(8) exemptions to discharge, while fully knowing it was hiding facts such as the school certified vs non-school certified nature of the loans to the borrowers, including the Debtor, and attempting a secret renegotiation of terms of loan contracts already entered into, including the Debtor's contract. *Id.* He maintains that those actions display Sallie Mac's blatant attempt at fraud and illegal profiteering at the expense of student loan borrowers like himself. *Id.*

50

15-01420-jlg   Doc 342   Filed 12/11/20   Entered 12/11/20 18:11:20   Main Document
Pg 53 of 63

Discovery from Navient

The Debtor included fifteen requests for document production from Navient. In resolving

those requests, the Court grouped them into requests seeking documents relating to:

A.  The Debtor's account with Navient.[92]

B.  Instructions, including internal memoranda, directives and other training
materials relating to Sallie Mae's advice to borrowers generally, relating to
bankruptcy and Sallie Mae's collection of forbearance fees from borrowers.[93]

C.  Sallie Mae's alleged efforts to include private loans within the section 523(a)(8)
exception to discharge. [94]

---

[92]   The relevant document requests were:

Request 1. Records of Grabis's borrowing, including information relating to forbearance, fees, and
debt management solutions advised.

Request 10. Copies of all Sallie Mae employees' emails or correspondence related to Grabis's
account.

[93]   The relevant document requests were:

Request 2. Specific instructions Sallie Mae gave to its debt counselors in advising private student
loan borrower bankruptcy rights for the period 2000 – 2005, and any changes thereafter.

Request 3. Specific instructions Sallie Mae gave to its debt counselors in appropriating and
distributing forbearances to private student loan borrowers for the period 2000 – 2005.

Request 4. Any and all intercompany memoranda, directives, and training manuals for the period
2002 – 2012, related to debt servicing employee's handling of borrowers, including, more
specifically, statements and directives to debtors regarding bankruptcy rights and eligibility.

Request 5. Any and all intercompany directives related to forbearances offered, including when
and how and frequency offered, and applicable fees.

Request 6. Copies of internal complaints by Sallie Mae employees related to forcing or
manipulating borrowers into forbearance.

Request 7. Any and all intercompany memoranda, directives, or projections of revenue/profit for
the period 1995 – 2006, related to forbearance fees and establishing private student loans as
exception to discharge.

Request 9. Copies of any intercompany directives for the period 2002 – 2012, related to a strategy
or policy advising or instructing borrowers with both private and federal student loans, on how to
"stay current" and pay fees towards private loan balances rather than federal loan balances.

[94]   The relevant document requests were:

     D. Sallie Mae's communications with Lafayette College and other colleges/universities.[95]

     E. Sallie Mae's legal filings in connection with the litigation brought against it by former employee Michael Zahara.[96]

*Discovery Decision* at 16-18. The Court resolved those requests, as follows:

Navient Request A.

     The Court granted the Debtor's request for discovery of documents related to Debtor's account with Navient. *Discovery Decision* at 18-19. Specifically, the Court directed Navient to produce documents relating to:

     Proof of the Private Loan Debt, the amount at issue, and any relevant payment history.

     Communications, including documents, emails and correspondence, evidencing, encompassing or concerning information or advice that Sallie Mae/Navient provided to the Debtor with respect to (i) forbearance, fees, and debt

---

     Request 8. All communications for the period 1997 – 2006 between Sallie Mae and the DOE related to Sallie Mae's attempts to include private student loans as exception to discharge.

     Supplemental Request 1. Sallie Mae's instructions or requests to the House of Representative Committee on Education related to BAPCPA and John Boehner.

[95]  The relevant document requests were:

     Request 11. Copies of any documents, memoranda, correspondence, and "sales pitches" Sallie Mae sent to colleges and universities for the period 1995 – 2008 regarding their lending services and how those services might benefit the colleges.

     Request 12. Any correspondence between Lafayette and Sallie Mae between 1997 and 2005 related to lending and lending limits.

     Request 13. Any and all correspondence between Sallie Mae and Arthur Rothkopf "while president of Lafayette College."

[96]  The relevant document request was:

     Supplemental Request 2. Sallie Mae's legal filings with respect to former employee Michael Zahara and any record of complaints from Zahara or other internal employees relating to blocking or preventing borrower payments to increase their overall loan balance.

management, and (ii) the Private Loans.

*Id.* at 19.  The Court found those documents and that that information relevant to evaluating

undue hardship under *Brunner*.  That is because in making that evaluation a debtor must

establish, among other things, that he has made good faith efforts to repay the debt he seeks to

discharge.  The instructions or advice that Navient and/or Sallie Mae gave to the Debtor with

respect to the repayment of the Private Loans, including, without limitation, matters concerning

loan forbearance/forgiveness and repayment plans, may bear directly on that prong of the

*Brunner* test.  *Id.*

> The Court also directed Navient to produce:

> Any communications, including documents, evidencing Navient/Sallie Mae's
> calculation of the Debtor's "cost of attendance," as that term is defined in §
> 523(a)(8)(B) of the Bankruptcy Code, at Lafayette for the period of 1998 through
> 2002.

*Id.*  The Court found that information to be relevant to the Debtor's assertion that the Private

Loans are not "qualified" education loans. The Court directed Navient to include in the

production, without limitation, correspondence (email or otherwise) between Navient/Sallie Mae

and the Debtor or Lafayette, or any other third party, relating to the calculation of the Debtor's

"cost of attendance."  *Id.*

Navient Request B.

> The Court sustained Navient's objection to this request.  In doing so, the Court found that

the documents the Debtor was seeking related to Sallie Mae's loan servicing operations

generally, including advice the Sallie Mae gave to borrowers regarding bankruptcy, Sallie Mae's

procedures relating to borrower forbearance agreements, and Sallie Mae's "strategy" for advising

borrowers how to "stay current" on their federal loans and private loans, and that those documents did not satisfy the relevancy requirement in Rule 26(b)(i), because they would not provide evidence relating to either whether the Private Loans are "qualified education loans" or whether the Debtor is entitled to a hardship discharge.  *Id.* at 20.

Navient Request C.

The Court sustained Navient's objection this request. Court found that Sallie Mae's communications, if any, with the Department of Education for the period 1997- 2006 relating to Sallie Mae's alleged attempts to include private student loans as exceptions to discharge, and with the House of Representatives Committee on Education regarding BAPCA, has no bearing on whether the Student Loan Debt should be excepted from discharge. *Id.*

Navient Request D.

The Court overruled Navient's objection to the extent that the Court found that any communications between Lafayette and Sallie Mae regarding the Debtor's "cost of attendance" during his four years at Lafayette are relevant to the matters at issue herein, and directed Navient to produce it to the Debtor.  *Id.*  at 21.

On relevancy grounds, the Court sustained Navient's objection to the request for:

Correspondence between Sallie Mae and Lafayette during the period of 1997 to 2005 relating to lending and lending limits, other than documents related to the Debtor's "cost of attendance."

Correspondence between Sallie Mae and Lafayette's president, except to the extent that it relates to the Debtor's cost of attendance", or the "sales pitches" that Sallie Mae sent to colleges and universities during the period 1995 – 2008 regarding their lending services and how those services might benefit the colleges.

*Id.*

Navient Request E.

The Court sustained Navient's objection to the production of documents responsive to this request on the grounds that Sallie Mae's legal filings with respect to litigation brought against it by Michael Zahara are a matter of public record, and that complaints from Zahara or other internal employees relating to borrower payments are not relevant to whether the Private Loans should not be excepted from discharge under § 523(a)(8).  *Id*. at 21.

Discovery from Lafayette College

The Debtor included ten requests for document production from Lafayette. The Court grouped them into requests seeking documents relating to:

A. The Debtor's personal record of financial aid with the college.[97]

B. Any records of giving grants and financial aid to students "both in general and specific student records" for the period 1998 – 2014, and a "snapshot of what other borrowers received in grant money" versus the grant money the Debtor received for the years 1998 through 2002.[98]

C. All records relating to Lafayette's cash and liquid investment reserves for the period 1995-2017, its federal tax filings for the period 1998 – 2005, and its annual report and financial statements" for the years 1998 through 2002.[99]

---

[97]  The relevant document request was:

Request 4. Records relating to Grabis's personal record of financial aid with the college.

[98]  The relevant document requests were:

Request 1. Any records of giving grants and financial aid to students "both in general and specific student records" for the period 1998 – 2014.

Supplemental Request 5. A "snapshot of what other borrowers received in grant money" versus the grant money the Debtor received for the years 1998 through 2002.

[99]  The relevant document requests were:

Request 2. Any and all records related to Lafayette's federal tax filings for the period 1998 – 2005.

D. Lafayette's institutional methodology for calculating grants, financial aid, cost of attendance, and estimated family contribution for the years 1998 through 2002.[100]

E. Any tuition reserve amount, defined as "an amount beyond or not used or applied to teaching and instruction costs" for the years 1998 through 2003, and what "Lafayette announced they had budgeted to pay out in financial aid" versus the amount of financial aid paid out during the years 1998 through 2002.[101]

*Discovery Decision* at 22-23. The Court resolved those requests, as follows:

<u>Lafayette Request A</u>.

Lafayette had produced to the Debtor printouts from the database that include a breakdown of the Debtor's grants, student loans and estimated family contribution amounts for the 1998-1999, 1999-2000, 2000-2001 and 2001-2002 school years (the "Lafayette Production"). *Id.* at 23. Lafayette contended, and the Debtor did not dispute, that the Lafayette Production included all documents in its possession that are responsive to Lafayette Request A. *Id.*

---

Request 3. Any and all records of Lafayette's cash and liquid investment reserves for the period 1995 – 2017.

Supplemental Request 1. Lafayette's "Annual report and financial statements" for the years 1998 through 2002.

[100] The relevant document requests were:

Supplemental Request 2. Lafayette's institutional methodology for calculating grants, financial aid, cost of attendance, and estimated family contribution ("EFC") for the years 1998 through 2002.

Supplemental Request 3. Lafayette's institutional methodology for calculating EFC for the Debtor for the years 1998 through 2002.

[101] The relevant document requests were:

Supplemental Request 4. Any tuition reserve amount, defined as "an amount beyond or not used or applied to teaching and instruction costs" for the years 1998 through 2003.

Supplemental Request 6. What "Lafayette announced they had budgeted to pay out in financial aid" versus the amount of financial aid paid out during the years 1998 through 2002.

56

Because it was not clear to the Court whether the Lafayette Production included a calculation of the "cost of attendance" for the Debtor in each of the four years he attended Lafayette, the Court directed Lafayette to produce such documents, to the extent it had failed to do so. *Id.* Lafayette complied with that direction.[102]

Lafayette Request B.

The Court denied that request on two grounds. First, it found that the financial aid records (including grant information) of other students at Lafayette for the period of 2002 – 2014 have no bearing on any of the *Brunner* factors in determining the Debtor's undue hardship, or on whether his Student Loan Debt falls within the indebtedness described in section 523(a)(8)(A) and section 523(a)(8)(B). *Discovery Decision* at 24. Second, it held that the records Debtor sought were protected education records under the Family Educational Rights and Privacy Act of 1974 ("FERPA"), 20 U.S.C. § 1232g; 34 CFR Part 99. *Id.* at 24-25.

Lafayette Request C.

The Court held that the documents sought failed to satisfy the relevancy standards under Rules 26 and 45 and warrants denial. Documents responsive to this request have no bearing on the Debtor's claim of undue hardship and his assertion that his Student Loan Debt are not of the types of loans described in section 523(a)(8). *Id*. at 26. The Court found that in seeking those documents, the Debtor acknowledged that the purpose behind his request for Lafayette's financial information was not to support the grounds for dischargeability, but to prove his theory that Lafayette, like other colleges and universities across America, and in conjunction with the DOE, Sallie Mae, and ECMC, is engaged in a massive illegal tax fraud that profits from students.

---

[102]    *See Lafayette Letter dated December 28, 2018* [AP ECF No. 238].

*Id.*

Lafayette Request D.

Lafayette contended and Debtor did not deny that the Lafayette Production contained

documents that demonstrate how Lafayette calculated financial aid, cost of attendance, grants

and estimated family contribution for the relevant years 1998 – 2002, as to the Debtor. *Id.* at 29.

The Court denied Debtors request for records for all other Lafayette students for the years 1998 –

2002. *Id.*

In the *Additional Discovery Requests*, the Debtor seeks additional discovery of Navient,

Lafayette and others.  In light of the *Discovery Decision,* and for the reasons set forth below, the

Court denies those discovery requests.

Motions and Actions Demand #5

Motion for further discovery based on Lafayette College administration
officials comments on illegal profiteering using 501 c 3 tax exemption
protections. I need to take depositions from Allison Byerly who made
comments in the Lafayette school newspaper regarding the rarity six figure
debt holders amongst graduates of Lafayette and Roger Demereski, Vice
President of Finance, who commented in the Lafayette school newspaper
edition dated April 26, 2018 that the school was actively attempting to
outsource and conceal off balance sheet profit making by the school. This
activity is relevant due to the 501 c 3 IRS law that determines non-qualified
vs. qualified student loan debt.   AP ECF No. 294.

Denied.  Lafayette College was previously dismissed as a defendant from
this adversary proceeding.  This Court lacks subject matter jurisdiction to
adjudicate any claims of alleged illegal profiteering on the part of Lafayette
College.  Moreover, the requested discovery has no relevance to the
dischargeability of the loans at issue herein.

Motions and Actions Demand #7

Motion for the chief judge of Southern District of New York to reveal
all memorandums and directives, both verbal and on paper, related to student
loan bankruptcy and 523(a)(8) adversary filings. These communications

58

would include those made to other judges, the clerk of court, and the court
deputies.

Denied.  Previously requested and denied**.**  There is no basis in law or
in fact for the request.  Debtor has access to any local rules promulgated by
the Court.

Motions and Actions Demand #8

Motion for further discovery related to former Department of
Education executive A. Wayne Johnson and Sallie Mae sales teams
communications to Lafayette College and other patriot league schools.
Specifically, I need to take depositions from Sallie Mae sales team members
including Kurt Hansen, Senior Director, who has made public statements
regarding Sallie Mae's directive to colleges and universities regarding
"outsourcing" their financial giving programs. Also included on this team are
David Long, Niki Bucerri, Chris Earnshaw, Melony Ohalek, Brad Reibel, and
Shawn Murphy or anyone similar to these people's roles who communicated
with Lafayette College. These depositions will focus on Sallie Mae's
instruction to Lafayette College in profiting beyond 501(c)(3) IRS tax laws
governing educational non-profits and thus making these amounts non-
qualified student  loans.  AP ECF No. 294.

Denied**.**  Without limitations, the information sought is irrelevant to
the matters at issue herein.

Motions and Actions Demand #10

Motion to reveal reasons judicial decision of Judge Garrity to block
evidence related to dischargeability of loans, including depositions of key
players in loan origination and known Department of Education directives
related to discharge. Also, this motion would be to reveal reasons previously
undisclosed to not recuse himself as requested prior in adversary  hearings.
AP ECF No. 294.  Request #4 (AP ECF No. 289) seeks similar relief.

Denied.  The Court's decision on the discovery matters referred to in
this Motions and Actions Demand is set forth in the *Discovery Decision*.  It
speaks for itself.  The Court's bench ruling on the Debtor's motion to recuse
speaks for itself.  *See* June 20, 2019 Hr'g. Tr. [AP ECF No. 266].

Additional Discovery Request #1

The Debtor requests that Navient produce all Sallie Mae/Navient sales
teams communications with Lafayette College, Holy Cross, Lehigh, Colgate, and
Bucknell regarding cost of attendance and grant savings from using Sallie Mae
lending products and constructs during the years 1997-2002.  He requests that

15-01420-jlg   Doc 342   Filed 12/11/20   Entered 12/11/20 18:11:20   Main Document
Pg 62 of 63

Navient provide exact names of sales members and their corresponding contacts at the aforementioned institutions as well as dates and number of times of meetings, whether in person or by phone or other correspondence such as physical mail or e-mail. *See* AP ECF No. 289.

Denied.   Without limitation, the information requested is not relevant to the matters at issue herein.

Additional Discovery Request #2.

The Debtor seeks leave to depose:

(i) Wayne Johnson, who he identifies as a former executive at the Department of Education regarding recent comments he made on cost of attendance of college and lending practices and regulations.

(ii) Kevin Reilly, who he identifies as University of Wisconsin President.

(iii) The current "head of financial affairs at Lafayette College and the head of financial affairs during the period 1997 – 2002.

AP ECF No. 289.

Denied.  Without limitation, the information requested is not relevant to the matters at issue herein.

Additional Discovery Request #3.

The Debtor seeks the following additional discovery from Lafayette:

(i) Production of the college's annual reports for years 1997-2002.

(ii) Production of communications with Sallie Mae regarding reducing school's grant burden for providing for in need of financial assistance students and their cost of attendance for years 1997-2002.

(iii) Identification of, and leave to depose the college's financial directors for years 1997-2002 on questions related to cost of attendance and grant awards to students including the Debtor.

AP ECF No. 289.

Denied. Without limitation, the information requested is not relevant to the matters at issue herein.

## **Conclusion**

Based on the foregoing, the Court denies the *Omnibus Motion* and the *Additional Discovery Requests*.


IT IS SO ORDERED.

Dated:  December 11, 2020
      New York, New York

                                          /s/ *James L. Garrity, Jr.*
                                          Honorable James L. Garrity, Jr.
                                          United States Bankruptcy Judge