**UNITED STATES BANKRUPTCY COURT**　　　　NOT FOR PUBLICATION
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------x
　　　　　　　　　　　　　　　　　　　:
In Re:　　　　　　　　　　　　　　　:　　　Chapter 7
　　　　　　　　　　　　　　　　　　　:
Michael Grabis,　　　　　　　　　　　　:　　　Case No. 13-10669-JLG
　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　Debtor.　　　:
　　　　　　　　　　　　　　　　　　　:
------------------------------------------------------x
　　　　　　　　　　　　　　　　　　　:
Michael Grabis,　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　:　　　Adv. Pro. No. 15-01420-JLG
　　　　　　　　　　　Plaintiff,　　　:
　　　　　　　　　　　　　　　　　　　:
v.　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　:
Navient Solutions, LLC, *et al.*,　　　　　:
　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　Defendants.　　:
　　　　　　　　　　　　　　　　　　　:
------------------------------------------------------x

**MEMORANDUM DECISION AND ORDER DENYING PLAINTIFF-DEBTOR'S**
**STATEMENT AND NEW MOTIONS**

**A P P E A R A N C E S :**

Michael Grabis
*Appearing Pro Se*
1 Hay Drive
Morristown, NJ 07960

PAUL J. HOOTEN & ASSOCIATES
*Attorney for Navient Solutions, LLC*
5505 Nesconset Highway, Suite 203
Mt. Sinai, NY 11706
By:　　Paul J. Hooten, Esq.

LAW OFFICE OF KENNETH L. BAUM
*Attorney for EMC, Inc.*
167 Main Street
Hackensack, NJ 07601
By:　　Kenneth L. Baum, Esq.

**HON. JAMES L. GARRITY, JR.**
**U.S. BANKRUPTCY JUDGE**

## Introduction

In this adversary proceeding, Michael Grabis, the *pro se* chapter 7 debtor herein (the

"Debtor"), seeks a determination that his Student Loan Debt (defined below) is not excepted

from discharge under section 523(a)(8) of the Bankruptcy Code.  The matters before the Court

are, the Debtor's *Statement*[1] and *New Motions*[2] in which he seeks wide-ranging relief. As

discussed below, the Court finds no merit to the relief he is seeking therein. Accordingly, the

Court respectfully denies those requests for relief.

## Jurisdiction

The Court has jurisdiction over these matters pursuant to 28 U.S.C. §§ 1334(a) and

157(a) and the *Amended Standing Order of Reference* (M-431), dated January 31, 2012 (Preska,

C.J.).  This is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

## Background

On March 5, 2013 (the "Petition Date"), the Debtor, through counsel, filed a voluntary

petition for relief under chapter 7 of the Bankruptcy Code in this Court (the "Petition").[3] The

Debtor is a 2002 graduate of Lafayette College ("Lafayette"). In the list of "Creditors Holding

Unsecured Nonpriority Claims" accompanying the Petition, the Debtor included six claims held

by the Student Loan Marketing Association ("Sallie Mae") totaling approximately $161,781.[4] On

---

[1]    *See Fraud Upon The Court and Criminal Complaint (Criminal Impersonation), Grievance Motion To Chief Judge Morris, Discovery Motion Under Crime Fraud Exception* [ECF No. 66]. "ECF No. ___" refers to a document filed on the electronic docket in the Debtor's chapter 7 bankruptcy case, *In re Grabis,* Case No. 13-10669-JLG.

[2]    *See New Motions* [AP ECF No. 362]. "AP ECF No. ___" refers to a document filed on the electronic docket in this adversary proceeding, *Grabis v. Navient Solutions, LLC, et al.,* AP No. 15-01420-JLG.  References to "*New Motion # ___*" refer to the paragraph numbers in the document. The Court construes each paragraph of the *New Motion* as a new motion requesting specific relief.

[3]    *Voluntary Petition* [ECF No. 1].

[4]    *See id.,* Schedule F at 28-30.

April 8, 2013, the chapter 7 trustee of the Debtor's estate, issued a *Report Of No Distribution* in the chapter 7 case. On June 11, 2013, the Court entered a *Discharge Of Debtor Order Of Final Decree* and closed the case on June 25, 2013.[5]

On July 31, 2013, the Debtor, acting *pro se*, filed a motion to reopen his bankruptcy case in order to file an adversary proceeding to seek discharge of his Student Loan Debt (the "*Motion To Reopen Case*"). In doing so, the Debtor also asked the Court to waive the filing fee to reopen the case (the "*Motion To Waive Fee*").[6] The Court granted the *Motion To Reopen Case*, but denied the *Motion To Waive Fee*, without prejudice. On May 6, 2014, the Debtor paid the filing fee, and on May 13, 2014, the Court reopened the case.

On May 1, 2014, SLM Corporation went through a corporate reorganization, creating a restructured SLM Corporation, which continued operating as a separate publicly traded company and included Sallie Mae Bank, and Navient Corporation, of which defendant Navient Solutions, Inc. ("Navient") is a subsidiary. *See Levy-Tatum v. Navient & Sallie Mae Bank*, No. CV 15-3794, 2016 WL 75231 at *6 (E.D. Pa. Jan. 7, 2016). Navient, as successor to Sallie Mae, is the servicer of the Debtor's five private educational loans, having an aggregate balance, including principal, interest and fees, of more than $119,095.39 (the "Private Loans").

On December 15, 2015, acting *pro se*, the Debtor commenced this adversary proceeding by filing a complaint seeking a determination that his Student Loan Debt is not excepted from discharge under section 523(a)(8) of the Bankruptcy Code.[7] The operative complaint is the Debtor's *Third Adversary Complaint For Discharge of Student Loans* (the "Complaint");[8] it names Navient, the University of Vermont ("UVM"), Lafayette, Sallie Mae, Inc., and the

---

[5]    *See Order Of Discharge And Order of Final Decree* [ECF No. 8].

[6]    *See Motion To Approve Waiving The Filing Fee* [ECF No. 11].

[7]    *See Summary Complaint* [AP ECF No. 1].

[8]    *See Third Adversary Complaint For Discharge Of Student Loans* [AP ECF No. 84].

Department of Education as defendants. The Debtor asserts that he filed this adversary proceeding "as an addition to my core bankruptcy proceeding to discharge my student loans under [Bankruptcy] Rule 4007(b), 11 U.S.C[. §] 523 (a)(8), as per my rights to a 'fresh start' under the U.S. Bankruptcy Code." Complaint at 2. He alleges that under section 523(a)(8), he is entitled to the "full discharge" of the alleged "unqualified" private loans, and full discharge of his federal debt because

> [u]nder the standard tests for discharge of student loans I have made a good faith effort to repay my loans, I am currently unable and will be unable to repay the loans for a considerable period, and I have not been able to maintain a minimal standard of living as defined by the poverty guidelines.

*Id*. He asks this Court

> to recognize that the size and nature of my debt make my case fundamentally different from any guidelines decided under the Brunner [sic] case standard which dealt with federal student loans for graduate education under $15,000 dollars close to 30 years ago in an economic environment far different from today. My debt is largely unqualified private student loans which are dischargeable under the bankruptcy code. The Southern District of New York has jurisdiction of the Brunner [sic] standard.

*Id.* He also maintains that he is entitled to relief under section 523(a)(8) to redress the harm allegedly caused to him by the defendants. He says that "I believe that my degree issuing college and lenders did not act in good faith in the origination and servicing of my student loans and, in fact, acted to collude, embezzle, and purposely defraud me as a student borrower." *Id.* at 1-2. Thus, in addition to his *Brunner*[9] based arguments, he asserts that "I am alleging fraud, breach of contract, and unjust enrichment in my defense of repayment." *Id*. at 2. The Debtor is asking for damages that he says he has suffered by reason of the defendants' fraud. He maintains that although he is "seeking the full discharge of the unqualified private loan portion of my debt and my federal debt, both under sections 523(a)(8) of the [B]ankruptcy [C]ode[,] [t]he fraud that

---

[9]    *Brunner v. New York State Higher Educ. Servs. Corp.,* 831 F.2d 395, 396 (2d Cir.1987).

occurred also caused damage to me personally and I am asking the court to grant damages from these parties to pay towards the debt and personal costs incurred as a result of the fraud." *Id.*

The Debtor stipulated to dismiss UVM from the Complaint.[10] In its capacity as a guarantor under the Federal Family Education Loan Program ("FFELP"), the Educational Credit Management Corporation ("ECMC") holds an interest in two consolidation loans owed by the Debtor, each of which was disbursed on or about June 24, 2005, in the original principal amounts of $19,934 and $30,096, respectively (the "Federal Loans," with the Private Loans, the "Student Loan Debt"). Over the Debtor's objection, the Court granted ECMC leave to intervene as a defendant in this action.[11]  The Debtor is not indebted to Lafayette. In the Complaint, the Debtor purports to assert damage claims against Lafayette, occasioned by its alleged fraud, collusion, willful neglect, and breach of fiduciary duty. The basis for the Debtor's claims against Lafayette is that it allegedly had in its possession, but refused to allocate, grant funds to the Debtor while he was a student, forcing the Debtor into debt to pay for his education.  *See* Complaint at 3-4.[12] Lafayette moved to dismiss the Complaint on the grounds that the Debtor's claims related to pre-petition conduct and, therefore, they constituted property of the estate subject to the Chapter 7 Trustee's control and administration.[13]  At the hearing on that motion, the Court agreed that, among other things, the Debtor did not have standing to pursue any monetary damage claims against Lafayette because (1) any claim against Lafayette is a pre-petition claim that is property of the Debtor's bankruptcy estate, and (2) only the Chapter 7 Trustee has standing to prosecute

---

[10]    *See Stipulation Of Dismissal* [of the University of Vermont] [AP ECF No. 15].

[11]    *See Motion To Intervene In Adversary Proceeding Pursuant To Fed. R. Civ. P. 24(a) And (b)* [AP ECF No. 11]; *Order Authorizing Educational Credit Management Corporation To Intervene In Adversary Proceeding Pursuant To Fed. R. Civ. P. 24(a) And (b)* [AP ECF No. 16].

[12]    *See Third Adversary Complaint For Discharge Of Student Loans* [AP ECF No. 34].  This is a prior iteration of the operative Complaint.

[13]    *See Motion Of Lafayette College To Dismiss Adversary Proceeding Pursuant To Federal Rules of Civil Procedure 12(b)(1) And 12(b)(6) And Federal Rule Of Bankruptcy Procedure 7012* [AP ECF No. 40].

claims on behalf of the bankruptcy estate.  Accordingly, on August 31, 2016, the Court entered

an order dismissing the Complaint with prejudice as to Lafayette.[14]  The Court also granted

motions to dismiss Sallie Mae Inc. from the action and to dismiss all claims against Navient that

are not predicated on section 523(a)(8) of the Bankruptcy Code.[15]  Finally, the Court dismissed

the Complaint against the Department of Education (i) pursuant to Rule 21 of the Federal Rules

of Civil Procedure (the "Federal Rules"), as made applicable herein by Rule 7021 of the Federal

Rules of Bankruptcy Procedure  (the "Bankruptcy Rules") because it was not a proper party to a

claim for relief under section 523(a)(8) because it did not own any portion of the Student Loan

Debt, and (ii) dismissed the fraud claim asserted against the Department of Education for lack of

subject matter jurisdiction.[16]

Section 523(a)(8) of the Bankruptcy Code states:

The defendants remaining in this action are ECMC and Navient, and the matter at issue in

the Complaint is whether the Debtor is entitled to a determination that his Student Loan Debt is

not excepted from discharge under section 523(a)(8) of the Bankruptcy Code.

Section 523(a)(8) of the Bankruptcy Code states:

(a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt—

(8) unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents, for—

(A)(i) an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution; or

---

[14]   *See Order Dismissing Adversary Proceeding* [Against Lafayette] [AP ECF No. 43].

[15]   *See Order Granting Navient Solutions, Inc.'s Motion To Dismiss "Sallie Mae, Inc." As A Defendant In This Adversary Proceeding Pursuant To Fed. R. Civ. P. 21 And Fed. R. Bankr. P. 7021 And To Dismiss All Claims For Relief In Plaintiff's Third Amended Complaint Not Based On 11 U.S.C. § 523(a)(8) Pursuant To Fed. R. Civ. P. 12(b)(1) & (6) And Fed. R. Bankr. P. 7012(b)* [AP ECF No. 45].

[16]   *See Memorandum Decision Granting Department Of Education's Motion To Dismiss* [AP ECF No. 133]; *see also Memorandum Of Law In Support Of The Department Of Education's Motion To Dismiss* [AP ECF No. 102].

(ii) an obligation to repay funds received as an educational benefit, scholarship, or stipend; or

(B) any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a debtor who is an individual[.]

11 U.S.C.§ 523(a)(8). The "dense language [of § 523(a)(8)] means that three categories of educational debt cannot be discharged in bankruptcy: (1) loans and benefit overpayments backed by the government or a nonprofit; (2) obligations to repay funds received as an educational benefit, scholarship, or stipend; and (3) qualified private educational loans." *Homaidan v. Sallie Mae, Inc.*, 3 F.4th 595, 601 (2d Cir. 2021). For an educational loan to be "qualified" under section 523(a)(8), "the student must attend an eligible educational institution and the loan must fund only qualified higher education expenses." *Id.* n.3 (citing 26 U.S.C. § 25(a)(F)(2); 26 U.S.C. § 221(d)). A student loan is discharged if it does not fall within the scope of section 523(a)(8). *DiDonato v. GC Services Limited Partnership*, 20 Civ. 2154 (LGS), 2021 WL 4219504, at *1 (S.D.N.Y. Sept. 16, 2021). "Loans that fall within one of the three categories are non-dischargeable unless not discharging them would impose 'undue hardship on the debtor or debtor's dependents.'" *Id.* (quoting 11 U.S.C. § 523(a)(8)).

The Debtor contends that his Student Loan Debt is not excepted from discharge under section 523(a)(8) of the Bankruptcy Code because: (i) it will be an undue hardship for him to repay that indebtedness; (ii) the Private Loans are not "qualified education loans" under section 523(a)(8)(B); and (iii) the Federal Loans do not fall within the scope of section 523(a)(8)(A).

On August 31, 2016, the Court issued a scheduling order permitting the parties to engage in discovery for 90 days.[17]  The Debtor expressed the need for more discovery and the Court provided the Debtor with an opportunity to explain the discovery he wished to take from the

---

[17]   *See Scheduling Order* [AP ECF No. 44].

parties.[18]  On December 8, 2017, the Debtor submitted a letter to the Court highlighting the discovery he sought from the parties to the litigation and also non-party Lafayette.[19]  On January 30, 2018, the Debtor filed a motion for trial and additional discovery. [20]  On February 23, 2018, the Court afforded the Debtor a further opportunity to enumerate and describe the discovery he sought from the parties.[21]  Lafayette did not respond to the Debtor's letter requesting additional discovery or its motion because Lafayette was no longer a defendant in the litigation.

On April 23, 2018, the Court ordered that the Debtor may file a supplemental discovery demand setting forth the factual and legal bases supporting his document demands and that Lafayette respond to the Debtor's supplemental discovery document by May 16, 2018.[22]  The Debtor declined to file any supplemental discovery demands.  Notwithstanding, Lafayette detailed its objections to the Debtor's discovery demands – specifically with respect to those requests seeking documents unrelated to the Debtor – and expressed its willingness to produce financial aid and grant information relating to the Debtor.[23]  The Court held a hearing on the Debtor's discovery requests.  Thereafter, the Court directed the Debtor to file a pleading "specifying the legal and factual grounds in support of the Discovery Request, including an explanation of the relationship between the information sought in the Discovery Request and the relief the Debtor is seeking in this adversary proceeding . . . ."[24]

---

[18]  *See Discovery Status Order* [AP ECF No. 97].

[19]  *See Discovery Dispute – Requests For Information* [AP ECF No. 103].

[20]  *See Motion For Trial And Further Discovery* [AP ECF No. 111].

[21]  *See Order On Debtor's Motion For Trial And Further Discovery* [AP ECF No. 120].

[22]  *See Minutes Of Proceeding* [AP ECF No. 155].

[23]  *See Non-Party Lafayette College's Objection To Plaintiff's Discovery Requests* [AP ECF No. 172].

[24]  *See Minutes Of Proceeding* [AP ECF No. 182].

The Debtor submitted to the Court an expanded list of documents he sought from Lafayette and the parties to the litigation, as well as the Department of Education.[25]  Those supplemental document demands included requests for information on Lafayette's processes for calculating financial aid and grant requests, Lafayette's calculations of estimated family contributions ("EFC") pertaining to the Debtor and other students who attended Lafayette during the Debtor's undergraduate career, tuition reserve amounts for the applicable period, and Lafayette's distribution of grant and financial aid monies to other students.[26]  Lafayette filed its objection to the Debtor's supplemental request for documents and information that was not relevant to the Debtor's ability to repay his obligations and his establishment of undue hardship meriting discharge of his Student Loan Debt.[27]  Simultaneously with the filing of its objection, Lafayette produced to the Debtor printouts from Lafayette's financial aid award database, including a breakdown of the Debtor's grants, student loans and EFC amounts for the 1998-1999, 1999-2000, 2000-2001 and 2001-2002 school years.  Navient and the Department of Education also objected to the Debtor's discovery demands.[28]  After a hearing on the Debtor's motion, the Court sustained the Department of Education's objections to the discovery demands, and the majority of Lafayette's and Navient's objections to the Debtor's document demands, but ordered Lafayette and Navient to produce certain documents to the Debtor (the "*Discovery Decision*") that the Court found relevant to application of the *Brunner* standard and to the issue

---

[25]  *See Further Description Of Previously Filed Amended Schedule And Supplemental Discovery Demand* [AP ECF No. 191].

[26]  *See id.* at 4.

[27]  *See Non-Party Lafayette College's Further Objection To Plaintiff's Discovery Requests* [AP ECF No. 197].

[28]  *See, e.g.*, *Navient Solutions* [sic] *Response To Plaintiff's Further Description Of Previously Filed Amended Schedule And Supplemental Discovery Demand* [AP ECF No. 195]; *Department of Education's Opposition To Plaintiff's "Further Description Of Previously Filed Amended Schedule And Supplemental Discovery Demand"* [AP ECF No. 196].

of whether the Student Loan Debt is on account of "qualified student loans".[29] Lafayette and

Navient complied with the Court's order.[30]

On August 29, 2019, the Court issued a scheduling order setting September 6, 2019 as the

deadline for the parties to serve supplemental responses to the Debtor's discovery requests.[31]  In

addition to providing for pre-trial exchanges and setting a pre-trial conference, the scheduling

order set a trial date of October 4, 2019.[32]  On September 25, 2019, the Debtor filed a motion to

stay trial because, among other things, he needed "extra time" to collect unspecified evidence

relating to his case.[33]  On or about November 8, 2019, the Debtor filed with the Court for service

on all defendants, together with Lafayette and the Department of Education, "*Additional*

*Supplemental Discovery Requests.*"[34]  Lafayette and Navient filed objections to the Debtor's

supplemental demands.[35] On December 18, 2019, the Debtor filed the "*Motions And Action*

*Demands*" setting forth thirteen requests for relief devoid of any legal or factual argument or

justification for the requests therein.[36] ECMC and Navient objected to the *Motions And Action*

*Demands*.[37]

---

[29]    *See Memorandum Decision And Order Resolving Debtor's Request For Document Discovery* [AP ECF No. 226].

[30]    *See* Letter from Counsel for Lafayette dated December 18, 2018 [AP ECF No. 238]; *Certificate Of Service - Navient Solutions, LLC's Responses To Plaintiff's Discovery Requests Ordered By The Court* [AP ECF No. 240].

[31]    *See Scheduling Order* signed on 8/29/2019 [AP ECF No. 271].

[32]    *Id.* ¶ 4.

[33]    *See Motion To Delay/Suspend Adversary Proceeding* [AP ECF No. 278].

[34]    *See Debtor's Additional Supplemental Disocvery [sic] Requests* [AP ECF No. 289].

[35]    *See Navient Solutions, LLC's Responses To Plaintiff's Additional Supplemental Discovery Requests Served On November 7, 2019* [AP ECF No. 291]; *Lafayette Letter Dated December 2, 2019* [AP ECF No. 293].

[36]    *See Debtor's Motions And Action Demands 12/18/19* [AP ECF No. 294].

[37]    *See Educational Credit Management Corporation's Objection To Plaintiff's Motions And Action Demands 12/18/19* [AP ECF No. 299]; *Navient Solutions, LLC's Response To Plaintiff's Motions And Action Demands 12/18/19* [AP ECF No. 300].

In March 2020, the Debtor filed his *Omnibus Motion*[38] in which he sought assorted forms of relief, as follows:

> Motion for Fraud upon the Court, Breach of Contract, Breach of Fiduciary Duty, Spoliation of Evidence by Navient, Sallie Mae, ECMC, Lafayette College, Department of Education, Judge Garrity, Motion for Class Action Designation, Motion for Default Judgement;
>
> Motion to Remove Judge Garrity for Fraud Upon the Court-Add Judge Morris and Jury to this Case; and
>
> Motion to Add/Re-Add Sallie Mae, former Senator Joseph R. Biden, Jr., Lafayette College, and Department of Education as Defendants in Fraud Upon the Court Portion of this Case.

The Court resolved the *Additional Supplemental Discovery Requests,* the *Motions and Action Demands,* and the *Omnibus Motion* in its *Omnibus/Additional Discovery Decision.*[39]

In the *Omnibus Motion*, the Debtor contended, among other things, that Navient committed "fraud upon the court" when it allegedly misrepresented to this Court that it owns the Private Loans when, in reality, SLM Private Credit Student Loan Trust 2006-A and Navient Credit Finance Corporation own them. *See Omnibus/Additional Discovery Decision* at 23-24. He asserted that Navient did so because it is incumbent upon the owners of the Private Loans to obtain a determination of this Court that those loans are not excepted from discharge and they are barred from doing so because they are foreign corporations that are not registered to do business in New York. *Id.* at 24-25. The Court found that the Debtor failed to demonstrate that Navient committed fraud upon the court.

---

[38]    *See Motion For Fraud Upon The Court, Breach Of Contract, Breach Of Fiduciary Duty, Spoilation [sic] Of Evidence By Navient, Salle Mae. ECMC, Lafayette College. Department Of Education, Judge Garrity. Motion For Class Action Designation. Motion For Sanction. Motion For Default Judgment* [AP ECF No. 311]. The *Omnibus Motion* substantially supersedes the *Debtor's Motion For Class Action Status, Default Judgment* 3/17/2020 [AP ECF No. 309] (the "*Default Judgment Motion*"). In resolving the *Omnibus Motion,* the Court addressed the issues raised in the *Default Judgment Motion.*

[39]    *See Memorandum Decision And Order Denying Plaintiff-Debtor's Omnibus Motion And The Additional Discovery Request* [AP ECF No. 343].

In the *Statement* and *New Motions*, the Debtor asserts that Navient is guilty of "criminal impersonation" and that it is committing that crime to further a massive billion-dollar tax and securities fraud scheme that Navient has hatched with the support and assistance of its counsel, ECMC, the Department of Education, the federal courts, Lafayette and other colleges and universities throughout the United States, and Joseph R. Biden, Jr. ("Biden"). In broad strokes, in the *Statement* and *New Motions* the Debtor demands that the Court refer the alleged criminal impersonation and billion dollar tax and securities fraud scheme to the United States Attorney General, the Federal Bureau of Investigation ("FBI"), the Internal Revenue Service ("IRS"), the Securities and Exchange Commission (the "SEC"), New York and New Jersey Tax Authorities, the Office of the United States Trustee (the "US Trustee") and the New York Sheriff to investigate Navient, Lafayette, Reed Auerbach, Esq. (as Navient's alleged counsel), the Department of Education and Biden. *Statement* at 8, *New Motion # 9*. The Debtor also seeks to (i) reopen discovery, (ii) amend the Complaint to add Lafayette and the Department of Education as defendants in order to seek sanctions from them for their alleged support of Navient's criminal activities and, (iii) obtain miscellaneous other relief including my recusal from this case and the appointment of Chief Judge Morris to preside over this case. *See generally New Motions.*

Before addressing the merits of the *Statement* and *New Motions*, and to put the relief sought therein in context, the Court will briefly review the scope of the discovery afforded to the Debtor to date, and the matters that the Debtor raised in the *Omnibus Motion* and the resolution of those matters.

**<u>The Discovery Requests</u>**

The Debtor asserts that the Student Loan Debt is not excepted from discharge under section 523(a)(8) of the Bankruptcy Code because: (i) it will be an undue hardship for him to repay that indebtedness; and (ii) the Private Loans are not "qualified education loans." *See*

Complaint at 2. As to the latter, section 523(a)(8) defines the term "qualified education loan" by reference to section 221 of the Internal Revenue Code, 26 U.S.C. § 221. Under that section, a "qualified education loan" is any indebtedness incurred by the taxpayer solely to pay "qualified higher education expenses"—

> (A) which are incurred on behalf of the taxpayer, the taxpayer's spouse, or any dependent of the taxpayer as of the time the indebtedness was incurred,

> (B) which are paid or incurred within a reasonable period of time before or after the indebtedness is incurred, and

> (C) which are attributable to education furnished during a period during which the recipient was an eligible student.

26 U.S.C. § 221(d)(1). Section 221(d)(2) defines the term "qualified higher education expenses" to mean the "cost of attendance (as defined in section 472 of the Higher Education Act of 1965, 20 U.S.C. 108711, as in effect on the day before the date of the enactment of the Taxpayer Relief Act of 1997) at an eligible educational institution," reduced by educational expenses paid under certain other programs. 26 U.S.C. § 221(d)(2).[40]

As discussed in the *Discovery Decision*, as support for his contention that the Private Loans are not "qualified education loans," and in support of his requests for document discovery from Navient and Lafayette, the Debtor made three arguments.

> First, he contended that the proceeds of the Private Loans were not applied by Lafayette to expenses associated with "Teaching or Instruction" as defined in the "Cost of Attendance" definition of 26 U.S.C. § 221(d)(1) and therefore are not "School Certified." *See Discovery Decision* at 8.

---

[40]    In turn, section 472 of the Higher Education Act includes the following categories of costs within the definition of "cost of attendance":

> (1) tuition and fees normally assessed a student carrying the same academic workload as determined by the institution, and including costs for rental or purchase of any equipment, materials, or supplies required of all students in the same course of study; [and]

> (2) an allowance for books, supplies, transportation, and miscellaneous personal expenses, including a reasonable allowance for the documented rental or purchase of a personal computer, for a student attending the institution on at least a halftime basis, as determined by the institution[.]

20 U.S.C. § 1087ll.

Second, he argued that Lafayette engaged in tax fraud by withholding grant money from him and others. *Id*. at 9.

Third, he asserted that Sallie Mae aided the alleged tax fraud scheme by (i) pushing Lafayette and other schools to break tax laws by causing students to borrow funds in excess of the "cost of instruction;" and (ii) repeatedly loaned out funds it knew were dischargeable in bankruptcy but at the same time attempted to buy government influence to later deem the loans exempt from discharge under § 523(a)(8) provision. *Id.*

Navient and Lafayette objected to certain of the document requests. Below the Court summarizes the scope of the document requests and its resolution of the objections to the discovery requests.

**Discovery From Navient**

The Debtor included fifteen requests for document production from Navient. In resolving those requests, the Court grouped them into requests seeking documents relating to:

A. The Debtor's account with Navient.[41]

B. Instructions, including internal memoranda, directives and other training materials relating to Sallie Mae's advice to borrowers generally, relating to bankruptcy and Sallie Mae's collection of forbearance fees from borrowers.[42]

---

[41] The relevant document requests were:

Request 1. Records of Grabis's borrowing, including information relating to forbearance, fees, and debt management solutions advised.

Request 10. Copies of all Sallie Mae employees' emails or correspondence related to Grabis's account.

[42] The relevant document requests were:

Request 2. Specific instructions Sallie Mae gave to its debt counselors in advising private student loan borrower bankruptcy rights for the period 2000 – 2005, and any changes thereafter.

Request 3. Specific instructions Sallie Mae gave to its debt counselors in appropriating and distributing forbearances to private student loan borrowers for the period 2000 – 2005.

Request 4. Any and all intercompany memoranda, directives, and training manuals for the period 2002 – 2012, related to debt servicing employee's handling of borrowers, including, more specifically, statements and directives to debtors regarding bankruptcy rights and eligibility.

Request 5. Any and all intercompany directives related to forbearances offered, including when and how and frequency offered, and applicable fees.

Request 6. Copies of internal complaints by Sallie Mae employees related to forcing or manipulating borrowers into forbearance.

C. Sallie Mae's alleged efforts to include private loans within the section 523(a)(8) exception to discharge.[43]

D. Sallie Mae's communications with Lafayette and other colleges/universities.[44]

E. Sallie Mae's legal filings in connection with the litigation brought against it by former employee Michael Zahara.[45]

*Discovery Decision* at 16-21.  The Court resolved those requests, as follows:

<u>Navient Request A</u>

The Court granted the Debtor's request for discovery of documents related to Debtor's account with Navient. *Discovery Decision* at 18-21.  Specifically, the Court directed Navient to produce documents relating to:

Proof of the Private Loan Debt, the amount at issue, and any relevant payment history.

Communications, including documents, emails and correspondence, evidencing,

---

Request 7. Any and all intercompany memoranda, directives, or projections of revenue/profit for the period 1995 – 2006, related to forbearance fees and establishing private student loans as exception to discharge.

Request 9. Copies of any intercompany directives for the period 2002 – 2012, related to a strategy or policy advising or instructing borrowers with both private and federal student loans, on how to "stay current" and pay fees towards private loan balances rather than federal loan balances.

[43]    The relevant document requests were:

Request 8. All communications for the period 1997 – 2006 between Sallie Mae and the DOE related to Sallie Mae's attempts to include private student loans as exception to discharge.

Supplemental Request 1. Sallie Mae's instructions or requests to the House of Representative Committee on Education related to BAPCPA and John Boehner.

[44]    The relevant document requests were:

Request 11. Copies of any documents, memoranda, correspondence, and "sales pitches" Sallie Mae sent to colleges and universities for the period 1995 – 2008 regarding their lending services and how those services might benefit the colleges.

Request 12. Any correspondence between Lafayette and Sallie Mae between 1997 and 2005 related to lending and lending limits.

Request 13. Any and all correspondence between Sallie Mae and Arthur Rothkopf while president of Lafayette.

[45]    The relevant document request was:

Supplemental Request 2. Sallie Mae's legal filings with respect to former employee Michael Zahara and any record of complaints from Zahara or other internal employees relating to blocking or preventing borrower payments to increase their overall loan balance.

encompassing, or concerning information or advice that Sallie Mae/Navient
provided to the Debtor with respect to (i) forbearance, fees, and debt
management, and (ii) the Private Loans.

*Id.* at 19. The Court found those documents and that information relevant to evaluating undue
hardship under *Brunner.* That is because in making that evaluation a debtor must establish,
among other things, that he has made good faith efforts to repay the debt he seeks to discharge.
The instructions or advice that Navient and/or Sallie Mae gave to the Debtor with respect to the
repayment of the Private Loans, including, without limitation, matters concerning loan
forbearance/forgiveness and repayment plans, may bear directly on that prong of the *Brunner*
test. *Id.*

       The Court also directed Navient to produce:

       Any communications, including documents, evidencing Navient/Sallie Mae's
       calculation of the Debtor's "cost of attendance," as that term is defined in §
       523(a)(8)(B) of the Bankruptcy Code, at Lafayette for the period of 1998 through
       2002.

*Id.* The Court found that information to be relevant to the Debtor's assertion that the Private
Loans are not "qualified" education loans. The Court directed Navient to include in the
production, without limitation, correspondence (email or otherwise) between Navient/Sallie Mae
and the Debtor or Lafayette, or any other third party, relating to the calculation of the Debtor's
"cost of attendance." *Id.*

       <u>Navient Request B</u>

       The Court sustained Navient's objection to this request. In doing so, the Court found that
the documents the Debtor was seeking related to Sallie Mae's loan servicing operations
generally, including advice that Sallie Mae gave to borrowers regarding bankruptcy, Sallie Mae's
procedures relating to borrower forbearance agreements, and Sallie Mae's "strategy" for advising
borrowers how to "stay current" on their federal loans and private loans, and that those
documents did not satisfy the relevancy requirement in Federal Rule 26(b)(1), because they
would not  provide evidence relating to either whether the Private Loans are "qualified education
loans" or whether the Debtor is entitled to a hardship discharge. *Discovery Decision* at 20.

       <u>Navient Request C</u>

       The Court sustained Navient's objection to this request. The Court found that Sallie Mae's
communications, if any, with the Department of Education for the period 1997-2006 relating to
Sallie Mae's alleged attempts to include private student loans as exceptions to discharge, and with
the House of Representatives Committee on Education regarding BAPCPA, has no bearing on
whether the Student Loan Debt should be excepted from discharge. *Discovery Decision* at 20.

Navient Request D

The Court overruled Navient's objection to the extent that the Court found that any communications between Lafayette and Sallie Mae regarding the Debtor's "cost of attendance" during his four years at Lafayette are relevant to the matters at issue herein and directed Navient to produce them to the Debtor. *Discovery Decision* at 21. On relevancy grounds, the Court sustained Navient's objection to the request for:

> Correspondence between Sallie Mae and Lafayette during the period of 1997 to 2005 relating to lending and lending limits, other than documents related to the Debtor's "cost of attendance."

> Correspondence between Sallie Mae and Lafayette's president, except to the extent that it relates to the Debtor's cost of attendance", or the "sales pitches" that Sallie Mae sent to colleges and universities during the period 1995-2008 regarding their lending services and how those services might benefit the colleges.

*Id.*

Navient Request E

The Court sustained Navient's objection to the production of documents responsive to this request on the grounds that Sallie Mae's legal filings with respect to litigation brought against it by Michael Zahara are a matter of public record, and that complaints from Zahara or other internal employees relating to borrower payments are not relevant to whether the Private Loans should not be excepted from discharge under section 523(a)(8). *Discovery Decision* at 21.

**Discovery From Lafayette**

The Debtor included ten requests for document production from Lafayette. The Court grouped them into requests seeking documents relating to:

> A. The Debtor's personal record of financial aid with the college.[46]

> B. Any records of giving grants and financial aid to students "both in general and specific student records" for the period 1998-2014, and a "snapshot of what other borrowers received in grant money" versus the grant money the Debtor received for the years 1998 through 2002.[47]

---

[46] The relevant document request was:

Request 4. Records relating to Grabis's personal record of financial aid with the college.

[47] The relevant document requests were:

Request 1. Any records of giving grants and financial aid to students "both in general and specific student records" for the period 1998-2014.

C. All records relating to Lafayette's cash and liquid investment reserves for the period 1995-2017, its federal tax filings for the period 1998-2005, and its annual report and financial statements for the years 1998 through 2002.[48]

D. Lafayette's institutional methodology for calculating grants, financial aid, cost of attendance, and estimated family contribution for the years 1998 through 2002.[49]

E. Any tuition reserve amount, defined as "an amount beyond or not used or applied to teaching and instruction costs" for the years 1998 through 2003, and what "Lafayette announced they had budgeted to pay out in financial aid" versus the amount of financial aid paid out during the years 1998 through 2002.[50]

*Discovery Decision* at 22-23. The Court resolved those requests, as follows:

Lafayette Request A

Lafayette had produced to the Debtor printouts from the database that include a breakdown of the Debtor's grants, student loans and estimated family contribution amounts for the 1998-1999, 1999-2000, 2000-2001 and 2001-2002 school years (the "Lafayette Production"). *Discovery Decision* at 23. Lafayette contended, and the Debtor did not dispute, that the Lafayette Production included all documents in its possession that are responsive to Lafayette

---

Supplemental Request 5. A "snapshot of what other borrowers received in grant money" versus the grant money the Debtor received for the years 1998 through 2002.

[48]    The relevant document requests were:

Request 2. Any and all records related to Lafayette's federal tax filings for the period 1998-2005.

Request 3. Any and all records of Lafayette's cash and liquid investment reserves for the period 1995-2017.

Supplemental Request 1. Lafayette's "Annual report and financial statements" for the years 1998 through 2002.

[49]    The relevant document requests were:

Supplemental Request 2. Lafayette's institutional methodology for calculating grants, financial aid, cost of attendance, and estimated family contribution ("EFC") for the years 1998 through 2002.

Supplemental Request 3. Lafayette's institutional methodology for calculating EFC for the Debtor for the years 1998 through 2002.

[50]    The relevant document requests were:

Supplemental Request 4. Any tuition reserve amount, defined as "an amount beyond or not used or applied to teaching and instruction costs" for the years 1998 through 2003.

Supplemental Request 6. What "Lafayette announced they had budgeted to pay out in financial aid" versus the amount of financial aid paid out during the years 1998 through 2002.

Request A. *Id.* Because it was not clear to the Court whether the Lafayette Production included a calculation of the "cost of attendance" for the Debtor in each of the four years he attended Lafayette, the Court directed Lafayette to produce such documents, to the extent it had failed to do so. *Id.* Lafayette complied with that direction.[51]

### Lafayette Request B

The Court denied that request on two grounds. First, it found that the financial aid records (including grant information) of other students at Lafayette for the period of 2002-2014 have no bearing on any of the *Brunner* factors in determining the Debtor's undue hardship, or on whether his Student Loan Debt falls within the indebtedness described in section 523(a)(8)(A) and section 523(a)(8)(B). *Discovery Decision* at 24. Second, it held that the records Debtor sought were protected education records under the Family Educational Rights and Privacy Act of 1974, 20 U.S.C. § 1232g; 34 CFR Part 99. *Id.* at 24-25.

### Lafayette Request C

The Court held that the documents sought by the Debtor failed to satisfy the relevancy standards under Federal Rules 26 and 45. Documents responsive to this request have no bearing on the Debtor's claim of undue hardship and his assertion that his Student Loan Debt is not of the types of loans described in section 523(a)(8). *Discovery Decision* at 26. The Court found that in seeking those documents, the Debtor acknowledged that the purpose behind his request for Lafayette's financial information was not to support the grounds for dischargeability, but to prove his theory that Lafayette, like other colleges and universities across America, and in conjunction with the Department of Education, Sallie Mae, and ECMC, is engaged in a massive illegal tax fraud that profits from students. *Id.*

### Lafayette Request D

Lafayette contended and Debtor did not deny that the Lafayette Production contained documents that demonstrate how Lafayette calculated financial aid, cost of attendance, grants, and estimated family contribution for the relevant years 1998-2002, as to the Debtor. *Discovery Decision* at 29. The Court denied Debtor's request for records for all other Lafayette students for the years 1998-2002. *Id.*

In sum, pursuant to the *Discovery Decision*, the Court afforded the Debtor discovery of matters relevant to the issue of whether the Private Loans are "qualified education loans" and on matters relevant to the Debtor's contention that he meets the *Brunner* standards. The *Motions and Action Demands* sought wide ranging discovery/relief from Navient, and others. In summary, the Debtor sought additional discovery from Lafayette, Navient and the Department of

---

[51]    *See* Letter from Counsel for Lafayette dated December 18, 2018 [AP ECF No. 238].

Education,[52] as well as discovery related to Debtor's claims of "fraud on the court, "[53] and

---

[52]   Motions And Actions Demand #5

Motion for further discovery based on Lafayette administration officials' comments on illegal profiteering using 501 c 3 tax exemption protections. I need to take depositions from Allison Byerly who made comments in the Lafayette school newspaper regarding the rarity six figure debt holders amongst graduates of Lafayette and Roger Demereski, Vice President of Finance, who commented in the Lafayette school newspaper edition dated April 26, 2018 that the school was actively attempting to outsource and conceal off balance sheet profit making by the school. This activity is relevant due to the 501 c 3 IRS law that determines non-qualified vs. qualified student loan debt. AP ECF No. 294.

Additional Discovery Request #3

The Debtor seeks the following additional discovery from Lafayette:

(i) Production of the college's annual reports for years 1997-2002.

(ii) Production of communications with Sallie Mae regarding reducing school's grant burden for providing for in need of financial assistance students and their cost of attendance for years 1997-2002.

(iii) Identification of, and leave to depose the college's financial directors for years 1997-2002 on questions related to cost of attendance and grant awards to students including the Debtor.

Additional Discovery Request #1

The Debtor requests that Navient produce all Sallie Mae/Navient sales teams communications with Lafayette, Holy Cross, Lehigh, Colgate, and Bucknell regarding cost of attendance and grant savings from using Sallie Mae lending products and constructs during the years 1997-2002. He requests that Navient provide exact names of sales members and their corresponding contacts at the aforementioned institutions as well as dates and number of times of meetings, whether in person or by phone or other correspondence such as physical mail or email.

Motions And Actions Demand #8

Motion for further discovery related to former Department of Education executive A. Wayne Johnson and Sallie Mae sales teams communications to Lafayette and other patriot league schools. Specifically, I need to take depositions from Sallie Mae sales team members including Kurt Hansen, Senior Director, who has made public statements regarding Sallie Mae's directive to colleges and universities regarding "outsourcing" their financial giving programs. Also included on this team are David Long, Niki Bucerri, Chris Earnshaw, Melony Ohalek, Brad Reibel, and Shawn Murphy or anyone similar to these people's roles who communicated with Lafayette []. These depositions will focus on Sallie Mae's instruction to Lafayette in profiting beyond 501(c)(3) IRS tax laws governing educational non-profits and thus making these amounts nonqualified student loans. AP ECF No. 294.

Additional Discovery Request #2

The Debtor seeks leave to depose:

(i) Wayne Johnson, who he identifies as a former executive at the Department of Education regarding recent comments he made on cost of attendance of college and lending practices and regulations.

(ii) Kevin Reilly, who he identifies as University of Wisconsin President.

(iii) The current head of financial affairs at Lafayette and the head of financial affairs during the period 1997-2002.

Debtor's damage claims against ECMC, Navient and others.[54] He also sought a declaration of

fraud against Sallie Mae and Navient, an in-court review of certain state and federal court rules,

and for the Court to summon the state attorney general and state tax investigator to Court.[55]

Finally, he sought, among other things, the production of documents from the Court.[56]  The

---

[53]    Motions And Actions Demand #3

Motion to reveal SLM Trust 2006 and Navient Credit Finance legal representatives. These parties have now been identified by Navient Corp's attorney as title holders of the loans in question.

[54]    Motions And Actions Demand #9

Motion for damages related to ECMC, Sallie Mae, Navient, and Lafayette College regarding above-described tax fraud and prevention of payment of loans.

[55]    Motions And Actions Demand #1

Motion for criminal inquiry/declaration of fraud against and into Sallie Mae/Navient regarding now revealed tax fraud and blocking of payments resulting in breach of contract. Recent discovery documents from Navient indicate Navient has intentionally omitted and deceived who the title holder of the loans in question is as well as these entities' legal licenses to participate in lawsuits. Navient is aware that they have already been warned and threaten with sanction by Justice D'Auguste in the Navient vs. Gray case (index #21650/13 Civil Court of New York City). Navient has continued their deception in this case to block revelation of a massive tax fraud. Navient must provide tax i.d.s and state business registrations for every known entity holding title to loans in question. Request #2 and Request #3 seek the same relief.

Motions And Actions Demand #2

Motion for in court review of state and federal rules/court obligations when a crime amongst a plaintiff and or defendant is revealed in court.

Motions And Actions Demand #4

Motion to summon state attorney general and state tax investigator regarding above fraud inquiry, the findings in Gray, and their influence on dischargeability, breach of contract, and criminal fraud.

[56]    Motions And Actions Demand #6

Motion to clarify power of the court regarding illegal or bad faith actions by the US congress with relation to student loan debt in relation to required public discourse before a law or change in law is passed to allow the change in law to be considered legitimate and constitutional. More specifically, can the court rule a congressional action unconstitutional?

Motions And Actions Demand #7

Motion for the chief judge of the Southern District of New York to reveal
all memorandums and directives, both verbal and on paper, related to student loan bankruptcy and section 523(a)(8) adversary filings. These communications would include those made to other judges, the clerk of court, and the court deputies.

Court denied the *Motions and Actions Demands* and the Additional Request for Discovery. *See Omnibus/Additional Discovery Decision* at 29.

The *Omnibus Motion*

As relevant, in the *Omnibus Motion*, the Debtor sought the following relief:

Leave to assert claims of (i) fraud upon the court, (ii) breach of contract, (iii) breach of fiduciary duty, and (iv) spoliation of evidence against Navient and ECMC, as well as Sallie Mae, Lafayette, the Department of Education, and Biden.

The removal of Judge Garrity from the case and adding Chief Judge Morris to preside over this case.

Below, the Court reviews its resolution of those matters.

Fraud Upon The Court

A "fraud on the court" encompasses conduct that prevents the court from fulfilling its duty of impartially deciding cases. *Gazes v. DelPrete (In re Clinton Street Food Corp.)*, 254 B.R. 523, 532 (Bankr. S.D.N.Y. 2000). *Accord Milner v. TPAC, LLC (In re Ticketplanet.com)*, 313 B.R. 46 (Bankr. S.D.N.Y. 2004). The "fraud" at issue "is limited to that species of fraud which does or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudication." *Salsberg v. Trico Marine Svcs., Inc. (In re Trico Marine Svcs., Inc.)*, 360 B.R. 53, 57 (Bankr. S.D.N.Y. 2006) (quoting *Serzysko v. Chase Manhattan Bank*, 461 F.2d 699, 702 (2d Cir. 1972), *cert. denied*, 409 U.S. 883 (1972)). "The essence of fraud on the court is 'when a party lies to the court and his adversary intentionally, repeatedly, and about issues that are central to the truth-finding process.'" *Passlogix, Inc. v. 2FA*

---

Motions And Actions Demand #10

Motion to reveal reasons judicial decision of Judge Garrity to block evidence related to dischargeability of loans, including depositions of key players in loan origination and known Department of Education directives related to discharge. Also, this motion would be to reveal reasons previously undisclosed to not recuse himself as requested prior in adversary hearings. AP ECF No. 294. Request #4 [AP ECF No. 289] seeks similar relief.

*Tech., LLC*, 708 F. Supp. 2d 378, 393 (S.D.N.Y. 2010) (quoting *McMunn v. Mem'l Sloan-Kettering Cancer Ctr.*, 191 F. Supp. 2d 440, 445 (S.D.N.Y. 2002)). The elements of a claim for fraud upon the court are: (1) a misrepresentation to the court by the defendant; (2) a description of the impact the misrepresentation had on proceedings before the court; (3) a lack of an opportunity to discover the misrepresentation and either bring it to the court's attention or bring an appropriate corrective proceeding; and (4) the benefit the defendant derived from the misrepresentation. *See Grubin v. Rattet (In re Food Mgmt. Grp., LLC)*, 380 B.R. 677, 714-15 (Bankr. S.D.N.Y. 2008) (citing *In re Ticketplanet.com*, 313 B.R. at 64); *see also Nicholas v. Oren (In re Nicholas)*, 457 B.R. 202, 220 (Bankr. E.D.N.Y. 2011).

As support for his contention that Navient, ECMC, Sallie Mae, Lafayette, the Department of Education, and Biden committed fraud on the court, the Debtor relied on *In re Navient Corporation Securities Litigation*, No. 17-8373, 2019 WL 7288881 (D.N.J. Dec. 30, 2019) ("*Navient Securities*") and *SLM Educ. Fin. Corp. v. Gray*, 2014 WL 7734104 (N.Y. City Civ. Ct.) (Trial Order) ("*SLM Education v. Gray*"). *See Omnibus/Additional Discovery Decision* at 17, 22.

### *Navient Securities*

In *Navient Securities*, a Navient shareholder (the "NSL Plaintiff") sued Navient and certain individuals (collectively the "NSL Defendants") on behalf of all shareholders (excluding the NSL Defendants) who purchased or otherwise acquired Navient's publicly traded stock during the period of January 2017 through November 2018. *Omnibus/Additional Discovery Decision* at 17-18. The NSL Plaintiff sued under sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and Rule 10b–5 to recover damages caused by the NSL Defendants' alleged violations of the federal securities laws. *See id.* at 18. The essence of the complaint (the "NSL Complaint") was that the NSL Defendants made materially false and misleading

statements regarding Navient's business, causing losses and damages to the holders of Navient

securities. Those claims arose out of the NSL Defendants' response to lawsuits brought against

Navient by the Consumer Financial Protection Bureau and State Attorneys General from the

States of Illinois, Washington, Pennsylvania, California, and Mississippi during the period of

January 2017 through June 2018. *Id.* The plaintiffs in those lawsuits alleged that Navient was

running a "forbearance scheme," which they described as an illegal scheme to cheat struggling

student borrowers out of their rights to lower repayment plans by improperly steering borrowers

into forbearance status, rather than offering more financially sensible income-driven repayment

plans. They maintained that when the information was made public, Navient's stock price fell by

11 percent. *See id.*

The matter before the District Court was the NSL Defendants' Rule 12(b)(6) motion to

dismiss the NSL Complaint. In resolving the motion, the court focused on whether the NSL

Plaintiff's complaint stated a claim under Rule 10b-5. *See Omnibus Additional Discovery*

*Decision* at 18-19. Among other things, the NSL Defendants argued that (i) the NSL Complaint

failed to plead material falsity because it did not plead with particularity facts showing that a

systemic forbearance-steering scheme actually existed at Navient; and (ii) the factual allegations

in the NSL Complaint improperly relied on the statements of confidential witnesses' (the

"CWs") factual allegations from the State government complaints, and that without that support,

the NSL Complaint failed to plead facts suggesting material falsity. *Id*. at 19. The District Court

rejected those contentions. It held that in assessing the adequacy of the NSL Complaint, it could

accept as true, the allegations in the government complaint regarding the alleged forbearance-

steering scheme. *Id.* at 19-20.  It also found that although the CWs' statements may not be

sufficient standing alone to plead a company-wide forbearance scheme, the anecdotal evidence

offered by the CWs supported the element of material falsity. *Id.* at 20.

The Debtor based his claims of fraud upon the court on the "evidence" underlying the District Court's findings and its decision in *Navient Securities. See id.* at 20. He contended that Navient's alleged fraud on the court related to its alleged bad acts at issue in the NSL Complaint. He maintained that the District Court's "findings of fact" in *Navient Securities* demonstrate that Navient barred borrowers, including himself, from repaying their student loans in order to profit and increase the size of its loan portfolio, and that those "findings" show that Navient and the other parties sought to block these payments while at the same time pleading to the court that the borrowers, including the Debtor, made no such effort to repay their loans. *See id.* He also asserted that Navient's attempts to block those payments demonstrated Navient's and Sallie Mae's collective effort to defraud (the prong of the *Brunner* test relating to the borrower's effort to repay and record of repayment). *See id.* He argued that through the fraud, Navient sought to increase profits for its alleged criminal lending enterprise which included other actors such as ECMC, Lafayette, Sallie Mae, and the Department of Education, as well as individuals working to implement and protect the ongoing fraud on Navient's behalf – such as Biden. *See id.* at 20-21.

The Court found no merit to those contentions. *See Omnibus Additional Discovery Decision* at 21-22. First, contrary to the Debtor's assertions, the District Court in *Navient Securities* did not find that Navient committed fraud or any other wrongdoing. *See id*. at 21. The District Court made no findings of fact; rather, it found that the NSL Plaintiff had alleged sufficient facts – which the District Court assumed to be true for purposes of the motion to dismiss before it – to state a claim for relief under the securities law. *Id.* Moreover, none of the facts alleged in support of the NSL Complaint involve misrepresentations to this Court, and all the alleged bad acts are attributable solely to Navient. *Id.* The Debtor had not alleged, with any particularity, or otherwise, that Lafayette, ECMC, Sallie Mae, the Department of Education or

Biden perpetrated a fraud upon the Court resulting in the entry of a judgment or order adverse to the Debtor and could not have plausibly done so. *Id.*

### *SLM Education v. Gray*

In *SLM Education v. Gray,* SLM Education Finance Corp. ("SLM Education") sued Stephanie Gray after she defaulted under her student loans. SLM Education is not a New York corporation. Ms. Gray moved to dismiss the action pursuant to section 1312 of the New York Business Corporations Law on the grounds that SLM Education lacked capacity to sue. *See Omnibus/Additional Discovery Decision* at 22-23.[57] The New York Civil Court found that Ms. Gray adequately demonstrated in her motion papers that SLM Education is not properly registered to do business in New York. For that reason, the court dismissed the collection action. *See id.* at 23.

Navient does not own the Private Loans. The loans are owned in part by SLM Private Credit Student Loan Trust 2006-A, and in part by Navient Credit Finance Corporation. Navient is the servicer under all the loans. *See id*. at 23. In support of his request for leave to assert claims of fraud upon the Court, the Debtor argued that *Gray* demonstrates that Navient is committing a massive lender registration and tax fraud that affect the dischargeability of his loans and the lack of rights that Navient has as a lender. *Id.* at 23-24. He asserted that to obtain a determination that any of the Private Loans are "qualified student loans" for purposes of section 523(a)(8) of the Bankruptcy Code, the owners of the Private Loans would be required to file an action in the bankruptcy court. He maintained that by application of *SLM Education v. Gray* and section 1312

---

[57] In relevant part, section 1312 states:

> A foreign corporation doing business in this state without authority shall not maintain any action or special proceeding in this state unless and until such corporation has been authorized to do business in this state and it has paid to the state all fees and taxes imposed under the tax law or any related statute, as defined in section eighteen hundred of such law, as well as penalties and interest charges related thereto, accrued against the corporation.

N.Y. Bus. Corp. L. § 1312(a).

of the New York Business Corporations Act, they would be barred from doing so – because they are not registered to do business in New York. *Id.* at 24. He argued that Navient has withheld and misrepresented information regarding the true owners of the Private Loans throughout the case because the owners are barred from taking any legal action in New York, and that the owners of the loans are not registered to do business in New York and, as such, have no rights or identity as education loan lenders. *Id.* at 25. He asserted that the owners could not sue to determine whether the Private Loans are "qualified educational loans." The Debtor argued that the *SLM Education v. Gray* decision was well known to Navient and that despite the New York Civil Court's "warning," Navient has not registered these entities and continues to describe itself as the owner of the loans while knowing that it is not. *Id.* He asserted that constituted fraud and that this Court must take action against Navient. He also contended that as the orchestrator of the fraud, Navient knew that it must make the appearance of itself as owner and holder and registered entity. He maintains that, in this case, Navient did so, repeatedly, while knowing the statements were false. *See id.*

The Court found no merit to those contentions. *See Omnibus/Additional Discovery Decision* at 25-29. *SLM Education v. Gray* supports the proposition that a foreign corporation doing business in New York state, without authority, cannot maintain any action or special proceeding in state court unless it complies with section 1312 of the Business Corporations Law. *See id.* at 25. Among other things, the Court found that even if the Debtor could demonstrate that the owners of the loans are subject to section 1312(a) of the Business Corporations Law, they would not be barred either from initiating or defending litigation under section 523(a)(8) of the Bankruptcy Code in this Court. *See id.* at 27. That is because "door closing" statutes, like section 1312, are not enforceable in bankruptcy discharge cases, *see id.*, and because the failure of a foreign corporation to obtain authority to do business in New York does not bar it from

defending against any action or special proceeding in New York. *Id*. The Court also found that

assuming, *arguendo*, that Navient misrepresented its status as owner of the loans, the Debtor

failed to demonstrate that he can plausibly allege a claim of fraud on the court against Navient.

*See id*. at 28. The Debtor had not demonstrated that Navient has realized any benefits in this

litigation by reason of the alleged misrepresentation, and that since the alleged misrepresentation

had been brought to the Court's attention, the parties can address the significance, if any, of the

fact that Navient does not own the loans in advance of trial. *See id.* The Court denied the

Debtor's request for leave to assert claims of fraud on the court against Navient, ECMC,

Lafayette, Sallie Mae, the Department of Education and Biden. *Id.* at 22.

Breach Of Contract And Breach Of Fiduciary Duties

The Debtor sought leave to further amend the Complaint to sue Lafayette, ECMC, Sallie

Mae, the Department of Education and Biden for their alleged participation in Navient's schemes

to bar student borrowers, such as the Debtor, from repaying loans, and to misrepresent Navient's

ownership of the Debtor's student loans. *See Omnibus/Additional Discovery Decision* at 33-34.

Specifically, the Debtor sought leave to assert damage claims against them based on their alleged

breaches of contract and/or their fiduciary duties. *Id.* at 18. The Court denied the request on the

grounds that the Debtor had no standing to assert the claims (*see id*. at 33-35) and, in any event,

that the claims are time-barred under New York and Pennsylvania law. *Id.* at 35-40.

Spoliation Of Evidence

The Debtor argued that based upon the New Jersey District Court's "findings" in *Navient*

*Securities,* the Court should declare "spoliation of evidence against Navient, ECMC, Lafayette []

[and] the Department of Education." *See Omnibus/Additional Discovery Decision* at 30. The

Court construed the request as one to amend the Complaint to include a claim of spoliation

against Navient, ECMC, Lafayette College and the Department of Education. *Id.* "Spoliation is

the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *West v. Goodyear Tire & Rubber Co.,* 167 F.3d 776, 779 (2d Cir.1999) (citing *Black's Law Dictionary* 1401 (6th ed.1990)); *see also Silvestri v. Gen. Motors Corp.,* 271 F.3d 583, 590 (4th Cir.2001) (spoliation of evidence is "the destruction or material alteration of evidence or . . . the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation.") Courts impose sanctions for spoliation either under Federal Rule 37(b)(2) when the spoliation violates a court order, or pursuant to their "broad inherent power" to impose sanctions in response to "abusive litigation practices" to "protect the administration of justice." *Penthouse Int'l., Ltd. v. Playboy Enter., Inc.,* 663 F.2d 371, 386 (2d Cir.1981). *See also Chambers v. NASCO, Inc.,* 501 U.S. 32, 45-46 (1991) (recognizing the inherent power of the courts to fashion appropriate sanctions for conduct that disrupts the judicial process). A party seeking sanctions for spoliation must establish: "(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a 'culpable state of mind' and (3) that the destroyed evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Zubulake v. UBS Warburg LLC,* 229 F.R.D. 422, 430 (S.D.N.Y.2004). However, "while the spoliation of evidence may give rise to court imposed sanctions . . . the acts of spoliation do not themselves give rise in civil cases to substantive claims or defenses." *Silvsetri v. General Motors Corp.,* 271 F.3d at 590.

The Court denied the Debtor's request that the Court declare "spoliation of evidence" against Navient, ECMC, Lafayette and the Department of Education, or to amend the Complaint to permit the Debtor to asserts claims of spoliation of evidence against them. *See Omnibus/Additional Discovery Decision* at 31-32. The Court found that *Navient Securities*

provides no support for Debtor's request for relief. The *Navient Securities* court did not make

any findings of fact let alone findings that would support a request for sanctions against Navient.

It was not plausible that the Debtor could state a claim of spoliation against ECMC, Lafayette

and/or the Department of Education based on *Navient Securities*, because they are not a party to

that litigation. *Id.* at 31.

<u>Motion To Remove Judge</u>

Section 455 of title 28 of the United States Code is made applicable to this case by

Bankruptcy Rule 5004(a). That rule states, as follows:

> A bankruptcy judge shall be governed by 28 U.S.C. § 455, and disqualified from
> presiding over the proceeding or contested matter in which the disqualifying
> circumstances arises or, if appropriate, shall be disqualified from presiding over
> the case.

Fed. R. Bankr. R. 5004(a). In relevant part, section 455 states, as follows:

> (a) Any justice, judge, or magistrate judge of the United States shall disqualify
> himself in any proceeding in which his impartiality might reasonably be
> questioned.

> (b) He shall also disqualify himself in the following circumstances:

>> (1) Where he has a personal bias or prejudice concerning a party, or
>> personal
>> knowledge of disputed evidentiary facts concerning the proceeding,

>> (2) Where in private practice he served as lawyer in the matter in
>> controversy, or a lawyer with whom he previously practiced law
>> served during such association as a lawyer concerning the matter, or
>> the judge or such lawyer has been a material witness concerning it[.]

28 U.S.C. § 455(a), (b)(1)-(2).[58] Recusal motions are committed to the trial court's discretion.

---

[58] Sections 455(b)(3) – (5) plainly are not relevant herein. They mandate that a bankruptcy judge disqualify
himself in any proceeding:

> (3) Where he has served in governmental employment and in such capacity participated as
> counsel, adviser or material witness concerning the proceeding or expressed an opinion
> concerning the merits of the particular case in controversy;

> (4) He knows that he, individually or as a fiduciary, or his spouse or minor child residing in his
> household, has a financial interest in the subject matter in controversy or in a party to the

*Apple v. Jewish Hosp. & Med. Ctr.,* 829 F.2d 326, 333 (2d Cir.1987). Disqualification is

required if a reasonable factual basis exists for doubting the judge's impartiality. *In re Beard*,

811 F.2d 818, 827 (8th Cir. 1987). In assessing the merits of a recusal motion, the inquiry the

Court must make is whether a reasonable person would have a reasonable basis for questioning

the judge's impartiality, not whether the judge is in fact impartial. *Rice v. McKenzie*, 581 F.2

1114, 1116 (4th Cir. 1978). In doing so, the court applies an objective test. The appearance of

impropriety must be determined "by examining the record facts and the law, and then deciding

whether a reasonable person knowing and understanding all of the relevant facts would recuse

the judge." *In re Drexel Burnham Lambert Inc.,* 861 F.2d 1307, 1313 (2d Cir.1988); *accord*

*United States v. Lovaglia,* 954 F.2d 811, 815 (2d Cir.1992); *Apple v. Jewish Hosp. & Med. Ctr*.,

829 F.2d at 333. "The alleged bias and prejudice sufficient to warrant disqualification must stem

from an extrajudicial source and result in an opinion on the merits on some basis other than what

the judge learned from his participation in the case." *United States v. Grinnell Corp.,* 384 U.S.

563, 583 (1966); *accord Lewis v. Tuscan Dairy Farms, Inc.,* 25 F.3d 1138, 1141 (2d Cir.1994).

"[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion."

*Liteky v. United States,* 510 U.S. 540, 555 (1994); *see United States v. Colon,* 961 F.2d 41, 44

(2d Cir.1992); *Schiff v. United States,* 919 F.2d 830, 834 (2d Cir.1990) *cert. denied,* 501 U.S.

---

proceeding, or any other interest that could be substantially affected by the outcome of the
proceeding;

(5) He or his spouse, or a person within the third degree of relationship to either of them, or the
spouse of such a person:

    (i) Is a party to the proceeding, or an officer, director, or trustee of a party;

    (ii) Is acting as a lawyer in the proceeding;

    (iii) Is known by the judge to have an interest that could be substantially affected by the outcome
    of the proceeding;

    (iv) Is to the judge's knowledge likely to be a material witness in the proceeding.

28 U.S.C. §§ 455(b)(3) – (5).

1238 (1991).

Mr. Grabis contended that I should be removed from presiding over this case in favor of Chief Judge Morris. *See Omnibus/Additional Discovery Decision* at 40-43. He argued that I should be removed from this case because "Judge Garrity was or possibly is a partner in the law firm Morgan Lewis Bockius which represented and advised Navient and Sallie Mae in known fraudulent activities related to college cost of attendance manipulation and borrower bankruptcy dischargeability and securities fraud." *Id.* at 40. He stated that "[t]his firm is clearly culpable in these actions and Judge Garrity withheld previously requested conflicts of interest to be revealed to the court." *Id.* I found no merit to the Debtor's contention.

As I explained, Morgan Lewis & Bockius ("Morgan Lewis") is not a party to this litigation and has not appeared in this case; until the Debtor introduced Morgan Lewis into the mix, there was no reason for me to discuss my prior association with the firm. *Id.* at 43. I found that my former relationship to Morgan Lewis does not disqualify me from presiding over this matter because the Debtor submitted no evidence to support his contention that Morgan Lewis has or is acting as counsel to Navient and/or Sallie Mae, and, assuming, *arguendo*, that Morgan Lewis was or is serving as counsel to Navient and/or Sallie Mae, that does not disqualify me from continuing to preside over this lawsuit. *Id.* It is a matter of public record that immediately prior to my appointment to the Court, I was a member of Morgan Lewis. I am not currently a member of Morgan Lewis. I resigned from Morgan Lewis immediately prior to my appointment to the Court. I have no interest, financial or otherwise, in the firm. *Id.* Further, to the best of my recollection, during my tenure at Morgan Lewis, I did not provide legal or other services to Navient or Sallie Mae. I do not have any information or knowledge of evidentiary facts, disputed or otherwise, concerning this matter. *Id.* Morgan Lewis has no interest in this litigation. I concluded that, based on the foregoing, a reasonable person would not have a reasonable basis

for questioning whether my former association with Morgan Lewis disqualifies me from presiding over this case. *Id*. Accordingly, I denied the Debtor's motion to disqualify me from presiding over this litigation.

## Discussion

### The *Statement*

The Debtor maintains that in general, student loan indebtedness is not excepted from discharge in bankruptcy cases because the underlying loans are not "qualified education loans" as defined by section 221 of the Internal Revenue Code (26 U.S.C. § 221). He says that is so because most of the existing student loans were extended "to generate money for non-educational purposes" since, in his view, "the loans [are] created by schools intentionally elevating their prices to generate massive profits in the form of asset backed securities." *Statement* at 7. He contends that his Student Loans are not "qualified education loans" based on the following:

> Navient, in conjunction with its counsel Reed Auerbach, an attorney who is a partner at the law firm of Morgan Lewis created a state and federal tax fraud scheme involving raising student loan borrowing amounts for most American college students. He maintains that their actions are part of a ploy to leverage the tax exemption for educational non-profit institutions.

> The goal of the alleged tax and securities fraud scheme is to illegally profit from the tax exemption provided to educational institutions by creating large individual loans and packaging them into asset backed securities.

> The alleged scheme includes raising the student loan borrowing amounts of the Debtor and millions of others well above cost of attendance and packaging the loans into securities, blocking loan payments, and forcing borrowers into forbearance agreements – all to increase the value of the securities and their company.

> The large amounts of liquid assets created by the scheme are then moved to offshore funds, where they are cashed out or used by venture capital firms, but never used for educational expenses.
>
> So-called "criminal actors" such as Navient, Sallie Mae, many large United States banks, hundreds of United States colleges and universities, Auerbach, and politicians representing Sallie Mae and Navient such as Biden, further conspired to defraud borrowers and seal in their alleged illicit profits by claiming these funds were exempt from discharge in bankruptcy, and that the deception culminated in the passage of the 2005 Bankruptcy Abuse Prevention and Consumer Protections Act.

*Statement* at 2-3; *New Motions* at 4. The Debtor contends that Navient maintains the value of the securities by defrauding borrowers in bankruptcy court by misrepresenting itself as the lender and holder of the loans and allowing the actual entities holding the loans to go unregistered and untaxed. *Statement* at 2-3; *New Motions* at 4. He asserts that Navient misrepresents to borrowers that unqualified student loan funds lent to borrowers, which are dischargeable in bankruptcy, are actually qualified loans not usually dischargeable in bankruptcy. *Statement* at 2-3. He says that Navient does so to force borrowers to litigate their right to discharge their student loans pursuant to section 523(a)(8), knowing that the borrowers "face an extremely difficult measure of undue hardship." *Id.* at 7. He asserts that these actions allow Navient and its co-perpetrators to reap hundreds of billions of dollars in illicit financial gains by preventing individuals from receiving bankruptcy discharges, in order to maintain the performance of the asset backed securities formed out of the individual loans. *Statement* at 2-3.

The Debtor says that while he was aware of the alleged massive tax and securities fraud, he learned more of the depth and detail of the alleged fraud when he read about Stephanie Gray and how Navient allegedly had been "caught" committing tax and securities fraud while suing her. *New Motions* at 4 (citing *SLM Education v. Gray* (discussed above)). The Debtor contends that he provided evidence of Navient's malfeasance by alerting the Court to the *Navient Securities* decision (discussed above). *See, e.g., Statement* at 4. He maintains that in that case, the

District Court in New Jersey found that Navient is unjustly enriching itself in its asset backed

securities by refusing payment from borrowers. *Id.* The Debtor asserts that in hearings before this

Court in November/December 2019, Navient committed the crime of "criminal impersonation"

when it allegedly misrepresented to the Court that it was the holder of his Private Loans and, as

such, is the proper party to act as the defendant in this adversary proceeding. *Id.* at 2. He

maintains that Navient committed the alleged crime to execute its alleged ongoing tax and

securities fraud and to protect the actual loan holders from ever having to appear as plaintiffs in a

bankruptcy adversary because they were unregistered entities with no legal rights. *Id.* at 2-3. He

asserts that these entities have no legal status and are not paying taxes, thereby making them

more profitable as asset backed securities; and that Navient paid lawyers, law firms, colleges,

Senators, and federal judges to aid it in the execution of this crime. *Id.* The Debtor contends that

Navient repeatedly argued in Court that it was the lender and sole holder of the loans, and that in

doing so, Navient was deceiving the Court regarding the identity of the real holders and lenders

because Navient knew that if it revealed the true identity of the owners of the loans, the student

loans would be rendered dischargeable in bankruptcy. He maintains that is so because the

revelation would require the loan tranches (i.e., the true owners of the loans) to file adversary

proceedings seeking a determination of the dischargeability of the student loans. *Id.* He says that

if they were forced to do so, the lawsuit would expose the alleged massive tax and securities

fraud. *Id.* The Debtor contends that, in any event, the lawsuit would fail, and the student loans

would be found to be dischargeable because based on his reading of *SLM Education v. Gray*, the

owners of the loans are barred by application of section 1312 of the New York Business

Corporations Law from obtaining any relief from the borrowers. *Id.* He also says that this action

meant that Navient was aware that his loans were discharged by this Court's entry of the

bankruptcy discharge in his "No Asset" chapter 7 case. *Id.* The Debtor maintains that Navient

was also aware that the revelation that they were not the holders or owners of the loans would represent a much greater criminal act as it was also engaging in the same misrepresentation to millions of other borrowers. *Id.* at 3.

The Debtor says that the alleged "criminal impersonation" does not end with Navient. He contends that ECMC, Lafayette, certain individuals associated with Lafayette, Reed Auerbach, Morgan Lewis, Shearman & Sterling LLC ("Shearman"), the Department of Education, Biden, the Court and certain "Unknown Co-perpetrators" are likewise guilty of the crime of "criminal impersonation" for the purposes of "executing a federal tax fraud against [himself] and millions of other borrowers (as well as taxpayers of the United States, New York state, New Jersey, and many more) . . . ." *Statement* at 1. The Debtor contends that the perpetrators of the tax and securities fraud and the criminal impersonation include:

Biden

The Debtor says that as Navient's and Sallie Mae's primary lobbyist and contact in the federal government, Biden led the push, on behalf of Navient, to misrepresent to borrowers the dischargeability of student loans, and to conceal the tax fraud scheme from borrowers, the courts, and the rest of the American taxpayers. *Statement* at 6. He maintains that Biden helped write misleading language into the legislation that became BAPCPA. *Id.* He says that Biden's action was criminal because in so acting, Biden knowingly concealed Navient's and others' intentions to profit from the educational institutions' tax exemption, and Navient's repeated criminal impersonation of a lender in his case and tens of thousands of other cases like it. *Id.*

Reed Auerbach

The Debtor identifies Reed Auerbach as the self-described architect of the student loan asset backed securities market and the author of the program run by the Department of Education and Navient (the "Liquidity Plan"). *Statement* at 6. He says that in his public statements, Auerbach describes this program as a vehicle to generate "liquidity." *Id.* He maintains that further inspection will show these "liquidity funds" were not intended to be used for educating students, but rather represented excess gains achieved by schools by failing to report the gains as taxable income. *Id.* He asserts that this action is in conflict with the United States Tax Code and IRS directives on reporting taxable income from non-profits. *Id.* at 7. He says that the disclosure of Auerbach's communications with government officials, colleges, and bankruptcy judges will show how he and others exerted undue influence to block student loan bankruptcy rights and discharges in order to create profits for Navient, the schools, the Department of Education, and himself. *Id.* at 7-8. The Debtor also asserts that there are other actors who did the same as Auerbach, but that Auerbach is known as the "industry leader" and that his actions are proof of

the alleged massive ongoing fraud. *Id.* The Debtor speculates that Auerbach could also have instructed Navient to commit criminal impersonation of the loan holders in order to maintain the "dynamic of the 523 [(a)(8)] adversary proceeding with borrowers as plaintiffs and not as defendants in order to not draw attention or liability to the fraud." *Id.* at 8.

 ECMC

The Debtor contends that ECMC knew Navient was not the holder or owner of his Private Loans but argued the opposite in court. *Statement* at 7. He contends that ECMC misrepresented the nature of his loans by claiming that it held the loans when it did not, and that the "Federal" or "Federally Guaranteed" loans were non-dischargeable when, in fact, ECMC knew that the loans were part of a bond securitization and part of an illicit profit scheme based on tax fraud. *Id.*

Lafayette College

The Debtor says that Lafayette and its officers participated in the criminal impersonation by knowing Navient was not the lender or loan holder and arguing the opposite while appearing in this proceeding. *Statement* at 5. He maintains that the school's officers

> [U]nderstood that Navient and Sallie Mae had approached them with a scheme to make profits on their educational institution tax exemption status and that this scheme involved them withholding and misrepresenting their own tax-exempt funds, concealing said funds, and knowingly withholding paying federal taxes on these funds in order to profit; and

> [K]new the loans were not used for educational purposes as defined in the IRS tax code and that they were being sold as asset backed securities in a much larger profit tax fraud scheme involving hundreds of other colleges and universities.

*Id.* He says that the college swore in court that it had no knowledge of such schemes.

Based, in part, on the foregoing, in the *Statement*, the Debtor "ask[s] Chief Judge Morris to remove Judge Garrity from [his] case," as he "believe[s] Judge Morris has the power to do so per the court's own bylaws on Judge's [sic] committing crimes in court." *Statement* at 8. He also "request[s] the Chief Judge to issue a ruling barring Navient from committing criminal impersonation in other cases." *Id.* Finally, he "request[s] that the Federal Bureau of Investigation and IRS commence an investigation of Navient, Lafayette, Auerbach, Biden, and the [Department of Education]," and that "the New York Sheriff and [United States Trustee's] office . . . aid in this investigation." *Id.* The Court understands that the Debtor has already reached out

to a number of law enforcement agencies.[59]

The Court will address those matters in connection with its analysis of the *New Motions* and relief sought pursuant to those motions, as certain of those motions seek relief that overlaps with the relief that the Debtor seeks in the *Statement*.

The *New Motions*[60]

As discussed below, in the *New Motions*, the Debtor demands that the Court (i) grant him leave to amend the Complaint to seek sanctions from Navient, its counsel, Paul Hooten, Lafayette, the Department of Education and ECMC, (ii) reopen discovery in this case to permit him to investigate matters relating to the alleged massive tax and securities fraud described above, (iii) grant him other miscellaneous forms of relief, and (iv) remove me from presiding over this matter in favor of the transfer of the case to Chief Judge Morris. The Court considers those matters below.

<u>Motions To Amend Complaint</u>

Paul Hooten is counsel to Navient and is not a party to this action. In the *New Motions*, the Debtor contends that he is entitled to recover sanctions from Navient and Mr. Hooten for "the criminal impersonation of the lender and holder of [his] loans for the purpose of committing tax fraud and securities fraud, spoliation and corruption of discovery, intentionally misrepresenting unqualified student loan debt as qualified, and intentionally withholding Reed Auerbach Liquidity Offshore Tax Fraud plan for criminal purposes." *See New Motion # 1*. The Court understands that in the *New Motion #1*, the Debtor seeks leave to amend the Complaint to name Mr. Hooten as a defendant and to assert sanction claims against Mr. Hooten and Navient.  He

---

[59]    The Debtor advises that "RECIPIENTS OF THIS NOTIFICATION OF CRIME/FRAUD are: Judge Morris, US Attorney's Office, FBI, SEC, IRS Whistleblower office, New York County Sheriff. *Statement* at 1.

[60]    Navient and ECMC filed responses to the *New Motions*. *See Navient Solutions, LLC's Response to Plaintiff's New Motions* [AP ECF No. 368]; *Educational Credit Management Corporation's Omnibus Objection to Plaintiff's New Motions*  [AP ECF No. 370]. Lafayette submitted a letter opposing the *New Motion*. *See* Letter dated August 5, 2021 [AP ECF No. 369].

seeks similar relief from the Court with respect to Lafayette and the Department of Education. In

*New Motion #1*, he seeks leave to add Lafayette as a defendant in order to recover sanctions from

Lafayette "for deceiving [the Debtor] and the court over the cost of attendance, withholding

discovery, withholdings knowledge of the [Liquidity Plan], and knowingly providing false

information in court." *New Motion # 1*. In *New Motion # 4*, he seeks leave to add the Department

of Education to the Complaint as a defendant, and to include it in the "sanctions and damages

charges." *See New Motion # 4.* Finally, he asserts that he is entitled to impose sanctions against

ECMC "for knowledge of the Reed Auerbach Plan and dischargeability of loans, as well as

knowingly misrepresenting private loans as federal for purposes of gaining exemption under the

bankruptcy code and knowingly misrepresenting ownership of the loans in question in order to

deflect discovery and dischargeability." *New Motion #1.*

Bankruptcy Rule 7015 makes Federal Rule 15 applicable herein. In part, Federal Rule 15

states:

> A party may amend the party's pleadings once as a matter of course at any time
> before a responsive pleading is served or if the pleading is one to which no
> responsive pleading is permitted and the action has not been placed upon the trial
> calendar, the party may so amend it at any time within 20 days after it is served.
> Otherwise, a party may amend the party's pleading only be leave of court or by
> written consent of the adverse party; and leave shall be freely given when justice
> so requires . . .

Fed. R. Civ. P. 15(a). The Debtor may not amend the Complaint as of right. As previously noted,

in the *Omnibus/Additional Discovery Decision*, the Court denied the Debtor's motion to amend

the Complaint to assert claims against Lafayette and the Department of Education. *See*

*Omnibus/Additional Discovery Decision* at 28-29. In considering this request to amend the

Complaint, the Court notes that, in broad strokes, the grant or denial of a motion for leave to

amend a complaint is within the discretion of the bankruptcy court; and the court may deny leave

to amend if the amendment (i) has been delayed unduly, (ii) is sought for dilatory purposes or is

made in bad faith, (iii) would prejudice the opposing party, or (4) would be futile. *Id.* at 14
(citations omitted).

The Debtor cites no authority in support of his assertions that Navient and others have
committed the crime of "criminal impersonation" in this case and that the Court can impose civil
sanctions on the basis of the alleged criminal impersonation. The Court is not aware of any such
authority. Section 912 of title 18 of the United States Code defines "criminal impersonation," as
follows:

> Whoever falsely assumes or pretends to be an officer or employee acting under
> the authority of the United States or any department, agency or officer thereof,
> and acts as such, or in such pretended character demands or obtains any money,
> paper, document, or thing of value, shall be fined under this title or imprisoned
> not more than three years, or both.

18 U.S.C. § 912. That plainly has no application to this matter. It would be futile to authorize the
Debtor to amend the Complaint to seek sanctions from Mr. Hooten, Navient, Lafayette and/or
the Department of Education based upon their alleged "criminal impersonation." Moreover, the
Debtor has not shown that there is any basis in fact or law to support his new claims against
Lafayette, the Department of Education and ECMC. The Court respectfully denies the Debtor's
requests in the *New Motion* to amend the Complaint.

<u>Motions To Reopen Discovery</u>

The Debtor's principal contention in support of his Complaint that the Student Loan Debt
is not excepted from discharge under section 523(a)(8), is that the loans are not "qualified
education loans." A "qualified education loan" is any indebtedness incurred to pay "qualified
higher education expenses." *See* 26 U.S.C. § 221(d)(1). Those expenses encompass the "cost of
attendance." *Id.* § 221(d)(2). Those costs include tuition, fees, and an allowance for books and
other supplies. 20 U.S.C. § 1087ll. The Debtor contends that he should be given the opportunity
to demonstrate that his loans are not "qualified education loans." At trial, he will have that
opportunity. The Court has afforded the Debtor discovery into those matters from Navient and

Lafayette, as they relate to his Student Loan Debt. The Court also granted the Debtor's requests

for discovery into Navient's collection activities as relevant to his loans. Those discovery

requests plainly seek information that is relevant to the issue of whether the Student Loan Debt is

dischargeable in bankruptcy. Still, the Debtor contends that the Court should reopen discovery

and authorize him to take additional discovery.

Before reviewing that matter, the Court considers the Debtor's contention that *Crocker v.*

*Navient Solutions, L.L.C.*, 941 F.3d 206 (5th Cir. 2019) ("*Crocker*") "proves that [his] loans did

not need to be submitted to a 523 a 8 [sic] proceeding." *Statement* at 8. In that case, the Fifth

Circuit rejected Navient's contention that all private student loans are excepted from discharge

under section 523(a)(8)(ii) of the Bankruptcy Code. 941 F.3d at 218. That section excludes "an

obligation to repay funds received as an educational benefit, scholarship or stipend," from

discharge "unless excepting such debt from discharge under this paragraph would impose an

undue hardship on the debtor and the debtor's dependents." 11 U.S.C. § 523(a)(8)(ii).  In

*Crocker*, Navient made the relevant private loans to fund one borrower's bar examination

preparation, and the other borrower's costs and expenses of attending a technical school. 941

F.3d at 209. Among other things, Navient contended that by application of section 523(a)(8)(ii),

the loans were nondischargeable because they conferred "educational benefits" on the borrowers.

The Fifth Circuit rejected Navient's broad reading of that section. The circuit found that

"[s]ubsection 523(a)(8)(A)(ii) applies only to educational payments that are not initially loans

but whose terms will create a reimbursement obligation upon the failure of conditions of the

payments." *Id.* at 223. It concluded that the term "educational benefit" in section 523(a)(8)(ii),

"is limited to conditional payments with similarities to scholarships and stipends." *Id.* at 224. It

found that "[t]he loans at issue here, though obtained in order to pay expenses of education, do

not qualify as 'an obligation to repay funds received as an educational benefit, scholarship, or

stipend' because their repayment was unconditional." *See also Homaidan v. Sallie Mae, Inc.*, 3 F. 4th 595 (2d Cir. 2021) (construing the term "educational benefit" in section 523(a)(8)(ii) narrowly "to refer to conditional grant payments similar to scholarships and stipends."). The Debtor overstates the significance of *Crocker,* as section 523(a)(8)(ii) is not at issue herein.

In support of the *New Motions* the Debtor maintains that all student loan indebtedness is dischargeable in bankruptcy because none of the underlying loans are "qualified education loans." In substance, he contends that all public and private student loan programs are corrupt and serve merely as fronts in support of a massive tax and securities fraud scheme–calculated to overstate the "cost of attendance" of all student loan borrowers–that is being perpetrated by Navient, the Department of Education, ECMC, members of Congress, colleges and universities throughout the United States, attorneys, and the federal courts. On that basis, he contends that the Court should authorize him to take discovery from Biden, Auerbach, Lafayette, the Department of Education, select Navient employees, the owners of the Navient loans and ECMC, on matters relating to the alleged tax and securities fraud. However, the discovery demands are not grounded in fact or law. There is no basis to authorize the Debtor to conduct any of the discovery that he is seeking in the *New Motions*. For that reason, the Court denies that Debtor's *New Motions* seeking to reopen discovery.

Below, the Court reviews the new discovery demands.

Biden

The Debtor contends that in supporting the BAPCPA legislation, then Senator Biden "knowingly concealed the intention [to] profit off of educational institutions' tax exemption." *Statement* at 6. He says that what followed the enactment of BAPCPA was "Navient's repeated criminal impersonation of a lender in [his] case and tens of thousands of other cases like it." *Id.* He contends that he is entitled to discovery from Biden because he "believe[s] further inspection of Joe Biden and his communications with Sallie Mae and Navient officers and other Senators and Congressman will show a willful attempt to misrepresent a tax fraud scheme as legitimate legislation in the form of the 2005 BACPA [sic] bill." *Id.*

Denied.

42

Reed Auerbach

The Debtor seeks an order of this Court directing Reed Auerbach and Morgan Lewis to provide details and an explanation of the "Liquidity Plan" and "offshore tax fraud plan." *New Motion # 2*. He describes the Liquidity Plan as "a scheme to raise borrowing far above cost of attendance in order to generate liquid assets that can be moved offshore, avoid taxation, and used for other purposes than cost of attendance." *Id.* He says that the plan is evidence that Navient's actions in this adversary proceeding are part of a massive tax fraud and that millions of borrowers are being deceived with respect to the dischargeability of their student loans. *Id.* He contends that Lafayette has withheld disclosure of the Liquidity Plan and, as such, has not complied with its obligation to produce documents reflecting the cost of attendance during his years at Lafayette. *Id.* On that basis, he seeks discovery regarding Auerbach's alleged communications with Navient related to student loan bankruptcy discharges and section 523 (a)(8) proceedings and his alleged communications with the Court, past or present. *Statement* at 2. He also seeks discovery regarding any influence that Auerbach exerted on federal judges and or senators and other government officials such as officers of the Department of Education to act against the dischargeability of student loans. *Id.*

Denied.

The Bond Tranches

The Debtor contends that the Court should compel the "bond tranches" to appear for examination. *New Motion # 3*.

Denied.

Lafayette College

The Debtor asserts that "the obvious and out of control increase in charges for attendance and loan borrowing amongst attendees of Lafayette and other colleges is obvious 'on its face' . . ." *Statement* at 6. He maintains that he is seeking Lafayette's information on cost of attendance related to his personal record and time at the school. *Id.* In doing so, he acknowledges that the Court already granted him such discovery. *Id.* He asserts that Lafayette withheld that information because it provided only information on what he was charged but nothing on cost of attendance which is a very specific number used to calculate estimated family contribution. *Id.* He contends that "Lafayette intentionally manipulated the cost of attendance calculation to force [him] to borrow more money than they knew [he] should have." *Id.* He says that Lafayette did so because "the excess borrowing would allow [Lafayette] to profit from Navient's scheme." *Id.* The Debtor asserts that "Lafayette and many other colleges and universities participated in this tax fraud scheme and are using the illicit proceeds to fund their own lavish lifestyles of their principal officers as well as to bribe government officials to look the other way as the scheme continues to generate profit." *Id.* He says that Lafayette withheld discovery and deceived the Court in connection with the cost of attendance by withholding production of the Liquidity Plan. He seeks an order directing Lafayette to produce the plan. *See New Motion # 1*; *Statement* at 5-6. He also contends that the Court should direct Lafayette to produce "any ledgers that show profits from forcing loan borrowing that have been intentionally kept off the official balance sheet and federally mandated financial reports." *New Motion # 4*.

Denied.

<u>The Department Of Education</u>

The Debtor asserts that he is entitled to discovery from the Department of Education because it had full knowledge of the Liquidity Plan and failed to disclose it, and for that reason, it has destroyed the integrity of this adversary proceeding. *New Motion # 4.*

Denied.

<u>The Navient Employees Identified In *Navient Securities*</u>

In *Navient Securities*, the underlying complaint drew on statements of two confidential witnesses – "CW1" and "CW2". *See* 2019 WL 7288881, at *8. The opinion describes them as individuals "who worked for Navient at various points, and who allege that they were instructed to steer borrowers toward forbearance*." Id.* CW1 worked in Navient's Muncie, Indiana office from March 2015 to November 2016, and CW2 worked in Navient's Wilkes-Barre, Pennsylvania office form June 2015 to June 2017. *Id.* at *8-9. The Debtor requests that the Court "summon" those individuals (whose identities are not known to the Court or to the Debtor) and enter their confidential statements in evidence. *New Motion # 7.*

Denied.

<u>ECMC</u>

The Debtor seeks discovery of "any statements by ECMC or instructions given to ECMC by Navient or the [Department of Education] to misrepresent themselves or the holder of the loans in court." *Statement* at 7. He also requests that ECMC "provide clear evidence that they hold [his] loans and present that evidence to the court." *Id.* The Debtor says that he is entitled to the additional discovery of ECMC because he believes that:

ECMC knew Navient was not the holder or owner of his loans but argued the opposite in court.

ECMC misrepresented the nature of his loans by claiming that they held the loans when they did not and that they were "Federal" or "Federally Guaranteed" and thus non-dischargeable when, in fact, they knew that the loans were part of a bond securitization and part of an illicit profit scheme based on tax fraud.

Proof of ECMC's knowledge of the fraud would be represented in its officer's communications with officers of the Department of Education, other employees of the federal government and Navient.

*Statement at 2-3; New Motions* at 4. "Specifically [he is] seeking any statements by ECMC or instructions given to ECMC by Navient or the [Department of Education] to misrepresent themselves or the holder of the loans in court." *Statement* at 3. He also asks for ECMC to provide clear evidence that it holds his loans and present that evidence to the court.

Denied. The Court previously ruled, over the Debtor's objection, that ECMC is the federal student loan guaranty agency that holds title to the Federal Loans and, as such, is a proper party defendant in this case. *See Order Authorizing Educational Credit Management Corporation To Intervene In Adversary Proceeding Pursuant To Fed. R. Civ. P. 24(a) And (b)* [AP ECF No. 16]. Moreover, in any event, where, as here, the Debtor is seeking the discharge of a FFELP loan on the basis of undue hardship, applicable regulations mandate that ECMC, as the guarantor, defend against the action. *See* 34 C.F.R. § 682.402(h)(1) (ii) & (i)(l)(ii)-(iv). There is no basis for granting the Debtor discovery relating to his claims of tax and securities fraud.

<u>Miscellaneous *New Motions*</u>

The Court considers the following New Motions seeking a variety of relief from the

Court.

<u>Motion for an immediate public proclamation by the court that the Reed Auerbach Plan for tax fraud exists and much of the outstanding student loan debt in America is actually dischargeable in bankruptcy.</u>  *New Motion # 5.*

The Debtor contends that the existence of the Liquidity Plan proves that student loans

were generated above the cost of attendance and done so in order to generate liquid assets to be

moved into offshore funds and criminally avoid taxes. *New Motion #5*. He maintains that

Navient, Sallie Mae, Reed Auerbach, the Department of Education, and hundreds of participating

colleges used this plan while deceiving borrowers into taking on massive debts and then using

deception to block them from discharging the loans in bankruptcy and obtaining any knowledge

that they could do so. *Id.* He contends that this action was executed by Biden and others in the

United States Government who knew Sallie Mae and other large financial institutions were

attempting to falsify a seal for their profit scheme. *Id.* He asserts that the financial damages

related to this fraud are in the trillions of dollars. *Id.* The Debtor asserts that millions of

borrowers who have previously filed for bankruptcy need to know they can amend their

schedules to include this debt, and that millions of other borrowers who did not think their debts

could be discharged and were considering bankruptcy due to financial hardship need to know

this information as well. *Id.*   Denied. There is no basis in law or fact for the requested relief.

Motion to move the damages portion of the tax/bankruptcy fraud component of this proceeding to state district court if the southern district bankruptcy court does not have jurisdiction over damages claims. *New Motion # 8.*

Denied. The Court has determined that the matter before the Court is Debtor's request for

a determination that his Student Loan Debt is not excepted from discharge under section

523(a)(8) of the Bankruptcy Code. The Court will not hear the Debtor's tax/bankruptcy fraud or

damage claims of any sort.

Motion for the court to provide criminal referrals to the US Attorney General, State Attorney General, IRS Criminal Division, FBI, SEC, and New York and New Jersey Tax Authorities. *New Motion # 9.*

The Debtor maintains that in making the referral, the Court should request those entities

to investigate: (i) the Liquidity Plan; and (ii) Sallie Mae's and Navient's alleged enlistment of

Biden and other government seat holders in the drafting of BAPCPA to further the alleged fraud.

*Id.*

Section 3057 of title 18 of the United States Code states in relevant part that

(a) Any judge . . . having reasonable grounds for believing that any violation under chapter 9 of this title or other laws of the United States relating to insolvent debtors, receiverships or reorganization plans has been committed, or that an investigation should be had in connection therewith, shall report to the appropriate United States attorney all the facts and circumstances of the case, the names of the witnesses and the offense or offenses believed to have been committed.

18 U.S.C. § 3057. To protect the integrity of the bankruptcy process, chapter 9 of Title 18 of the

United States Code includes a number of provisions addressing bankruptcy crimes.[61] Chapter 9

---

[61] Those provisions are, as follows:

§ 152. Concealment of assets; false oaths and claims; bribery.
§ 153. Embezzlement against estate.

"was intended primarily as an administrative measure - a congressional directive to the district offices of the United States Attorneys to become more active in the prosecution of bankruptcy fraud cases." *In re Valentine*, 196 B.R. 38, 388 (Bankr. E.D. Mich. 1996).

By the terms of the statute, a bankruptcy judge is required to refer a matter to the U.S. Attorney where there are "reasonable grounds" for believing that (i) a bankruptcy-related criminal offense has occurred or (ii) "an investigation should be had in connection therewith." Congress's use of the word "shall" indicates that a referral by a bankruptcy judge is mandatory if the conditions described in Section 3057 are satisfied. *In re Starbrite Properties Corp.*, No. 11–40758 CEC, 2012 WL 2050745 at * 8 (Bankr. E.D.N.Y. Jun. 5, 2012) (citing *In re Halko*, 203 B.R. 668, 675 (Bankr. N.D.Ill. 1996) (stating that bankruptcy courts have an "express and independent duty to refer [under section 3057]")). *See also Flushing Savs. Bank v. Parr (In re Parr),* 13 B.R. 1010, 1020 (E.D.N.Y.1981) (finding that "a reading of the entire statute [18 U.S.C. § 3057] leads to the conclusion that a court is compelled to direct the United States Attorney to investigate the facts whenever reasonable grounds exist for a belief that a violation of the bankruptcy laws has occurred and that such violations have not been litigated before the bankruptcy and appellate courts.").

Denied. The Statement fails to provide facts that could give the Court reasonable grounds to believe that any criminal offense has occurred in this case. The Court is under no obligation to make the referral called for in the *New Motions* and declines to do so.

---

§ 154. Adverse interest and conduct of officers.
§ 155. Fee agreements in cases under title 11 and receiverships.
§ 156. Knowing disregard of bankruptcy law or rule.
§ 157. Bankruptcy fraud.

18 U.S.C. §§ 152-157.

<u>Motion for US Trustee to be appointed to seize assets from Navient, Lafayette College, and other
parties involved with Auerbach fraud.</u> *New Motion # 10.*

Denied.  The Court interprets this request for an extraordinary remedy of prejudgment

asset seizure by the U.S. Trustee.  There is simply no basis in fact or law for the requested relief.

<u>Motion For Judge Garrity To Recuse Himself From This Case</u>

In *New Motion # 6*, the Debtor contends that I must recuse myself from this matter and

cause the case to be reassigned to Chief Judge Morris because: (i) I have a direct conflict of

interest because Morgan Lewis and Shearman are both law firms that have allegedly aided and

helped create the alleged tax and securities fraud discussed herein, (ii) I refused to report

criminal impersonation of a party in court (i.e., Navient), blocking relevant evidence, deceiving

the plaintiff on court jurisdiction of breach of contract, (iii) I have had *ex parte* communications

with the Department of Education, (iv) I am protecting my former employers, and attempting to

shield my alma mater educational institution from criminal culpability in the alleged tax and

securities fraud, and (v) I possibly know Auerbach personally and am attempting to protect him

as well. There is no merit to any of those contentions. In addressing those matters, I am

incorporating my earlier discussion of the legal standards applicable to matters relating to the

recusal of judges, generally, as well as to the facts relating to my professional relationship with

Morgan Lewis. For the reasons set forth below, I respectfully deny the Debtor's request for my

recusal from this case.

Prior Association With Law
<u>Firms Unrelated To This Litigation</u>

Before my appointment to the Bench in 2015, at different times, I was a member of the

law firms of Shearman and Morgan Lewis. I am no longer a member of either firm and have no

connection with either firm. The firms are not parties to this action and have never appeared in

this action. Nonetheless, the Debtor asserts that I "withheld [my] knowledge that [my] previous

law firms of which [I] was partner and senior attorney in the finance divisions, Morgan Lewis

Bockius and Shearman Sterling had not been the legal representation to Navient, publicly stated

"special counsel" to Navient, and advisor to Navient and the Department of Education in the

creation of asset backed securities formed out of unqualified student loans." *Statement* at 2.[62]

That is false. The Debtor also maintains that my repeated denials of his requests to conduct fraud

discovery in his case "indicates a possibility that [I] was dispatched to the court on orders by the

Morgan Lewis firm and their client Navient." *Statement* at 4. He says that "[t]his order would be

to intentionally subvert and block discharges of student loans in bankruptcy and thus maintain

the profitability of the asset backed securities issuances that Morgan Lewis and Navient created."

*Id.* He asserts that "Reed Auerbach and the principals of Morgan Lewis and or Shearman

Sterling specifically instructed Judge Garrity to rule against and [sic] student loan borrower

seeking discharge and that a financial reward was either paid at that time or promised in the

future." *Id.* at 5. That is false. Finally, he maintains that based on my combined expert

knowledge of taxation laws and bankruptcy law, as well as my knowledge of corporate

restructurings, knowledge of Navient's position as client of my former firms, and firsthand

knowledge of the exponential increase in college tuitions since his time in college means that I

---

[62]    The Debtor says that

> Morgan Lewis publicly and routinely refers to themselves as Navient's special counsel in
> issuances of asset backed securities and other defense matters. Morgan Lewis attorney Reed
> Auerbach, also a co-partner in the finance division when I was employed by this firm, refers to
> himself on the firm's public website as the creator of liquidity and author of the program used by
> the Department of Education and Navient in creation of student loan asset backed securities.

*Statement* at 3. The Debtor also asserts that

> Shearman Sterling represented Navient in a lawsuit by the asset manager Lord Abbett which
> detailed fraud and deception related to student loan asset backed securities and Navient's
> treatment of borrowers and prevention of payment of their student loans in relation to these
> securities.

*Id.*

knew a fraud was happening and that Navient was committing criminal impersonation before the

Debtor filed its case. *Id.* That is false.

Failure To Report Crimes
Allegedly Committed In This Court

The Debtor contends that whether or not Morgan Lewis, Shearman, or Navient paid,

dispatched, or encouraged me to block student loan bankruptcy discharges (which they did not), I

refused to report Navient's criminal impersonation of another party as a crime or hold them

accountable in any way. *Statement* at 5. He says that the inaction on my part is a crime in and of

itself. *Id.* He is wrong. The Debtor has not demonstrated that Navient has committed the crime

of criminal impersonation herein and the Court has not erred in failing to "report" it.

Failure To Report
Alleged Tax Fraud

The Debtor says that he provided me with evidence of Navient's alleged tax fraud and

that I failed to report or otherwise address it. Specifically, he says that he provided me with

evidence of Navient's fraud from *Navient Securities* and *SLM Education v. Gray* and cited public

admissions of fraud in 2013 from Kevin Reilly, the President of the University of Wisconsin,

detailing a massive federal tax fraud involving most U.S. colleges and universities' withholding

overcharges of student payments collected as tuition as profit, and Navient's misrepresentations

in this Court proceeding as evidence of a large and ongoing fraud. *Statement* at 4. He says that I

repeatedly stated that such information had no bearing on his case or the function of the

bankruptcy court even though in similar cases a New York state court judge and a federal judge

in New Jersey determined with the same information that fraud had occurred on Navient's part.

*Id.* The Debtor has not demonstrated that Navient and its alleged confederates have committed

tax and securities fraud. As discussed briefly above and at length in the *Omnibus/Additional*

*Discovery Decision,* the New Jersey District Court made no finding of fact in *Navient Securities*

50

and in *SLM Education v. Gray,* the state court did not find that Navient defrauded anyone.

*Omnibus/Additional Discovery Decision* at 21.   Finally, the Court attaches no weight to the

statements attributed to Mr. Reilly. There is no merit to the Debtor's contention.

Exception To Court Rulings

Manipulation Of The
Definition of "Spoliation"

As discussed above, the Debtor previously argued that based upon the District Court's

findings in *Navient Securities*, the Court should declare "spoliation of evidence" against Navient,

ECMC, Lafayette and the Department of Education. *See Omnibus/Additional Discovery Decision*

at 30-32.  As explained above, the Court denied that request because the *Navient Securities* court

did not make any findings of fact let alone findings that would support a request for sanctions

against Navient, and it was not plausible that the Debtor could state a claim of spoliation against

ECMC, Lafayette and/or the Department of Education based on *Navient Securities*, because they

are not party to that litigation. The Debtor says that in so ruling, I acted as if withholding of

evidence stated in lay terms is an accepted and justified action by parties in a legal proceeding.

*Statement* at 3. I did no such thing. The ruling speaks for itself. The Debtor's disagreement with

the ruling is not grounds for recusal. *Devine v. United States*, No. 12 CIV. 2236 ALC DF, 2012

WL 4320608, at *1 (S.D.N.Y. Sept. 20, 2012) (holding that disagreement with a ruling does not

provide a ground for recusal); *Williams v. Zuk*, No. 9:07-CV-789, 2009 WL 909520, at *3

(N.D.N.Y. Apr. 3, 2009) (noting that "plaintiff's quarrel centers principally upon his

disagreement with my rulings in his case. Such disagreement, standing alone, does not afford a

basis for recusal. *United States v. IBM Corp.,* 618 F.2d 923, 929 (2d Cir.1980); *see also Mirra v.

United States*, 379 F.2d 782, 787–88 (2d Cir.1967)"); *Fowlkes v. Parker*, No. Civil Action 9:08-

CV-1198 (LEK/DEP), 2009 WL 249810, at *5 (N.D.N.Y. Jan. 5, 2009), *report and*

*recommendation adopted as modified*, No. 08-CV-1198(LEK/DEP), 2009 WL 249799

(N.D.N.Y. Feb. 3, 2009) (noting that mere disagreement with prior rulings, standing alone, does

not warrant recusal of the Court).

### Fraud Upon The Court

The Debtor says that in resolving the Debtor's claim that Navient committed fraud upon

the court, I claimed that section 1312 of the Business Corporation law of the State of New York

that requires entities to register and acquire tax identification numbers had no relevance to

Navient's actions or that a securities loan trust or any trust entity had to register and acquire a tax

identification number in the State of New York. *Statement* at 4. He asserts that in no instance in

that ruling did I mention or refer to the legality of impersonating another party in court. *Id.* He

says that I did so intentionally in order to conceal Navient's ongoing fraud. *Id.* I did not conceal,

intentionally or otherwise, Navient's alleged fraud. The ruling speaks for itself, and, as stated

above, the Debtor's disagreement with the ruling is not grounds for recusal.

### Department Of Education

The Debtor contends that when the Department of Education was facing a deadline to

provide discovery, I took unprecedented action to issue a ruling outside of a court hearing that

granted the Department of Education's motion to be dismissed from the Complaint. *See*

*Statement* at 3-4.  He contends that counsel to the Department of Education obtained this "special

ruling" as a result of its *ex parte* communication with the Court. There is no merit to that

allegation. The Court's decision speaks for itself. The Debtor's contentions that I engaged in *ex*

*parte* communication with counsel to the Department of Education and I issued a special ruling

for the benefit of the Department of Education are false. They present no support for the

Debtor's *New Motion*.

<u>Unspecified Pre-Trial Conference</u>

The Debtor says that during an unspecified pre-trial conference, I made a statement that I was "scared of what might come out" of Lafayette's internal financial records but then denied his discovery requests for the vast majority of those records. He says that he believes that this statement was an indication of my knowledge of an ongoing fraud. *Statement* at 5. I have no recollection of making any such statement. Moreover, when the Debtor first raised this issue (some time ago), the Court provided the Debtor with the transcripts of the conferences he identified. The transcripts do not reflect any such statement.

Based on the foregoing, the Court denies the Debtor's *New Motion # 6.*

## **Conclusion**

Based on the foregoing, the Court denies the Debtor's requests for relief in the *Statement* and *New Motions*.

IT IS SO ORDERED.

Dated: New York, New York
December 6, 2021

/s/ *James L. Garrity, Jr.*
Hon. James L. Garrity, Jr.
U.S. Bankruptcy Judge