**UNITED STATES BANKRUPTCY COURT**                    NOT FOR PUBLICATION
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------------x

| | | |
|---|---|---|
| In re: | : | Chapter 7 |
| | : | |
| Michael Grabis, | : | |
| | : | |
| Debtor. | : | Case No. 13-10669 (JLG) |

------------------------------------------------------------------------x

| | | |
|---|---|---|
| | : | |
| Michael Grabis, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Adv. P. No.: 15-01420 (JLG) |
| | : | |
| Navient Solutions, LLC, *et al.*, | : | |
| | : | |
| Defendants. | : | |

------------------------------------------------------------------------x

## MEMORANDUM DECISION AND ORDER RESOLVING MOTIONS FILED BY PLAINTIFF, EDUCATIONAL CREDIT MANAGEMENT CORP., AND NAVIENT SOLUTIONS, LLC

**A P P E A R A N C E S :**

Michael Grabis
*Appearing Pro Se*
1 Hay Drive
Morristown, NJ 07960

PAUL J. HOOTEN & ASSOCIATES
*Attorney for Navient Solutions, LLC.*
5505 Nesconset Highway, Suite 203
Mt. Sinai, NY 11706
By:    Paul J. Hooten, Esq.

LAW OFFICE OF KENNETH L. BAUM
*Attorney for ECMC*
167 Main Street
Hackensack, NJ 07601
By:    Kenneth L. Baum, Esq.

**HON. JAMES L. GARRITY, JR.**
**U.S. BANKRUPTCY JUDGE**

## INTRODUCTION[1]

In this Adversary proceeding, Michael Grabis (the "Plaintiff"), acting pro se, seeks a determination that his Student Loan Debt is not excepted from discharge under section 523(a)(8) of title 11 of the United States Code (the "Bankruptcy Code").

## JURISDICTION

The Court has jurisdiction to consider these matters pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Referral of Cases to Bankruptcy Judges of the United States District Court for the Southern District of New York, dated January 31, 2012 (Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

## BACKGROUND

**The Student Loan Debt**

As of the commencement of this chapter 7 case, Plaintiff's unsecured indebtedness included debts on account of federal and private student loans (collectively, the "Student Loan Debt" or "Student Loans"), as follows:

(1) The Educational Credit Management Corporation ("ECMC"), in its capacity as a federal student loan guarantor in the Federal Family Education Loan Program, holds an interest in two consolidation loans owed by Plaintiff, each of which was disbursed on or about June 24, 2005, in the original principal amounts of $19,934 and $30,096 (collectively, the "Consolidation Loans").

(2) Navient Solutions, LLC. ("Navient") as holder of five private educational loans, with an aggregate balance, including principal,

---

[1] Capitalized terms shall have the meanings ascribed to them herein. "ECF No.      " refers to a document filed in Plaintiff's chapter 7 case (No. 13-10669-JLG). "AP ECF No. ___" refers to a document filed in this adversary proceeding.

interest and fees, of more than $119,095.39 (collectively, the "Private Loans").

Second Omnibus Motion Decision[2] at 3, 5.

### The Adversary Proceeding

After Plaintiff received his discharge in bankruptcy (the "Discharge Order"),[3] he initiated this adversary proceeding by filing a complaint against Sallie Mae Servicing ("Sallie Mae"), Navient, Lafayette College ("Lafayette") and the University of Vermont ("UVM"), seeking the discharge of his Student Loan Debt under section 523(a)(8) of the Bankruptcy Code.[4] Thereafter, the Court entered a stipulation dismissing UVM from the adversary proceeding, with prejudice.[5] Also, over Plaintiff's objection, the Court granted ECMC's motion to intervene as a defendant in this case. *See* Order Authorizing ECMC to Intervene[6] at 2. Plaintiff amended the complaint several times.[7] The operative complaint (the "Complaint")[8] names Sallie Mae, Navient, Lafayette, ECMC, and the United States Department of Education (the "DOE") as defendants. Over Plaintiff's

---

[2] *Memorandum Decision and Order Denying Plaintiff-Debtor's Statement and New Motions*, AP ECF No. 395 (the "Second Omnibus Motion Decision").

[3] *Order of Discharge and Order of Final Decree*, ECF No. 8.

[4] *Complaint*, AP ECF No. 1.

[5] *Stipulation of Dismissal*, AP ECF No. 15.

[6] *Order Authorizing Educational Credit Management Corporation to Intervene in Adversary Proceeding Pursuant to Fed. R. Civ. P. 24(a) and (b)*, AP ECF No. 16 (the "Order Authorizing ECMC to Intervene").

[7] *See Adversary Complaint for Discharge of Student Loans,* AP ECF No. 18*; Second Amended Adversary Complaint for Discharge of Student Loans*, AP ECF No. 23; *Third Adversary Complaint for Discharge of Student Loans*, AP ECF No. 34.

[8] *Third Adversary Complaint for Discharge of Student Loans*, AP ECF No. 84.

objections, the Court granted motions dismissing Lafayette,[9] Sallie Mae,[10] and the DOE (the "DOE Dismissal Order")[11] from the Complaint. The Court denied Plaintiff's motion to vacate the DOE Dismissal Order.[12]

Accordingly, defendants remaining in this action are ECMC and Navient, and the matter at issue in the adversary proceeding is whether Plaintiff is entitled to a determination that the Student Loan Debt is not excepted from discharge under section 523(a)(8) of the Bankruptcy Code.

**The Statute**

Section 523(a)(8) provides that a discharge under section 727 of the Bankruptcy Code does not discharge an individual debtor from any debt—

> (8) unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents, for—
>
> (A)(i) an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution; or
>
> (ii) an obligation to repay funds received as an educational benefit, scholarship, or stipend; or

---

[9] *Motion of Lafayette College to Dismiss Adversary Proceeding Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) and Federal Rule of Bankruptcy Procedure 7012*, AP ECF No. 40; *Order Dismissing Adversary Proceeding*, AP ECF No. 43.

[10] *Navient Solutions, Inc.'s Motion to Dismiss "Sallie Moe, Inc." as Defendant in this Adversary Proceeding Pursuant to Fed.R.Civ.P. and Fed. R. Bankr. P. 7021 and to Dismiss all Claims for Relief in Plaintiff's Third Amended Complaint Not Based on 11 U.S.C. § 523(a)(8) Pursuant to Fed.R.Civ.P.12(b)(1) & (6) and Fed.R.Bankr.P. 7012(b)*, AP ECF No. 38; *Order Granting Navient Solutions, Inc.'s Motion to Dismiss "Sallie Moe, Inc." as Defendant in this Adversary Proceeding Pursuant to Fed.R.Civ.P. and Fed.R.Bankr.P 7021 and to Dismiss all Claims for Relief in Plaintiff's Third Amended Complaint Not Based on 11 U.S.C. § 523(a)(8) Pursuant to Fed.R.Civ.P.12(b)(1) & (6) and Fed.R.Bankr.P. 7012(b)*, AP ECF No. 45.

[11] *Memorandum Decision Granting Department of Education's Motion to Dismiss*, AP ECF No. 132.

[12] *Withdrawal of "Appeal" filing based on error. Request for Judge Garrity to vacate order dismissing Department of Education*, AP ECF No. 167; *Memorandum Decision and Order Denying Plaintiff-Debtor's Request to Vacate Order Dismissing the Department of Education*, AP. ECF No. 224.

(B) any other educational loan that is a qualified education loan, as defined
in section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a
debtor who is an individual[.]

11 U.S.C. § 523(a)(8).[13] "This dense language means that three categories of educational debt

cannot be discharged in bankruptcy: (1) loans and benefit overpayments backed by the government

or a nonprofit; (2) obligations to repay funds received as an educational benefit, scholarship, or

stipend; and (3) qualified private educational loans." *Homaidan v. Sallie Mae, Inc.* (*In re*

*Homaidan*), 3 F.4th 595, 601 (2d Cir. 2021).

In *Brunner v. New York Higher Educ. Servs.*, 831 F.2d 395 (2d Cir. 1987) (per curiam),

the Second Circuit established a three-prong test to determine if a debtor is eligible for an "undue

hardship" discharge of its student loan debt under section 523(a)(8). Under *Brunner*, to establish

"undue hardship," a debtor must prove:

(1) that he cannot maintain, based on current income and expenses, a "minimal"
standard of living for [himself] and [his] dependents if forced to repay the loans;

---

[13] Section 523(a)(8) defines the term "qualified education loan" by reference to section 221 of the Internal
Revenue Code, 26 U.S.C. § 221. Under that section, a "qualified education loan" is any indebtedness incurred by the
taxpayer solely to pay "qualified higher education expenses"—

(A) which are incurred on behalf of the taxpayer, the taxpayer's spouse, or any dependent of the
taxpayer as of the time the indebtedness was incurred,

(B) which are paid or incurred within a reasonable period of time before or after the indebtedness is
incurred, and

(C) which are attributable to education furnished during a period during which the recipient was an
eligible student.

26 U.S.C. § 221(d)(1). Section 221(d)(2) defines the term "qualified higher education expenses" to mean the "cost of
attendance (as defined in section 472 of the Higher Education Act of 1965, 20 U.S.C. § 1087ll, as in effect on the day
before the date of the enactment of the Taxpayer Relief Act of 1997) at an eligible educational institution," reduced
by educational expenses paid under certain other programs. 26 U.S.C. § 221(d)(2). In turn, section 472 of the Higher
Education Act includes the following categories of costs within the definition of "cost of attendance":

(1) tuition and fees normally assessed a student carrying the same academic workload as determined
by the institution; [and]

(2) an allowance for books, course materials, supplies, and equipment, which shall include all such
costs required of all such students in the same course of study, including a reasonable allowance for
the documented rental or upfront purchase of a personal computer, as determined by the institution[.]

20 U.S.C. § 1087ll.

(2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and

(3) that [he] has made good faith efforts to repay the loans.

*Id.* at 396; *accord In re Tingling*, 990 F.3d 304, 306 (2d Cir. 2021) (examining whether a debtor established "undue hardship" to discharge her student loan debt under the *Brunner* standards). A debtor must establish all three prongs of this test by a preponderance of the evidence. *See Davis v. Educ. Credit Mgmt. Corp. (In re Davis)*, 373 B.R. 241, 245 (Bankr. W.D.N.Y. 2007); *Garneau v. New York State Higher Educ. Servs. Corp. (In re Garneau)*, 122 B.R. 178, 179 (Bankr. W.D.N.Y. 1990).

## The Complaint

Plaintiff asserts that he filed this adversary proceeding "as an addition to my core bankruptcy proceeding to discharge my student loans under [Bankruptcy] Rule 4007(b), 11 U.S.C[. §] 523 (a)(8), as per my rights to a 'fresh start' under the U.S. Bankruptcy Code." Complaint at 2. He alleges that there are two reasons why this Court should grant him such relief. First, he says that he is entitled to "the full discharge of the unqualified private loan portion of my debt and full discharge of my federal debt, both under section 523(a)(8) of the [B]ankruptcy [C]ode[,]" because

> [u]nder the standard tests for discharge of student loans I have made a good faith effort to repay my loans, I am currently unable and will be unable to repay the loans for a considerable period, and I have not been able to maintain a minimal standard of living as defined by the poverty guidelines.

*Id*. He asks this Court

> to recognize that the size and nature of my debt make my case fundamentally different from any guidelines decided under the Brunner case standard which dealt with federal student loans for graduate education under $15,000 dollars close to 30 years ago in an economic environment far different from today. My

6

> debt is largely unqualified private student loans which are dischargeable under
> the [B]ankruptcy [C]ode. The Southern District of New York has jurisdiction
> of the Brunner standard.

*Id*. Second, he maintains that he is entitled to relief under section 523(a)(8) to redress the harm

caused to him by defendants. He says that "I believe that my degree issuing college and lenders

did not act in good faith in the origination and servicing of my student loans and, in fact, acted to

collude, embezzle, and purposely defraud me as a student borrower." *Id*. at 1-2. Thus, in addition

to his *Brunner* based arguments, he asserts that "I am alleging fraud, breach of contract, and unjust

enrichment in my defense of repayment." *Id.* at 2. Plaintiff is asking for damages that he says he

has suffered by reason of defendants' fraud. He maintains that although he is "seeking the full

discharge of the unqualified private loan portion of my debt and my federal debt, both under

sections 523(a)(8) of the [B]ankruptcy [C]ode[,] [t]he fraud that occurred also caused damage to

me personally and I am asking the court to grant damages from these parties to pay towards the

debt and personal costs incurred as a result of the fraud." *Id*.

## **Plaintiff's Discovery**

### ***Whether The Private Loans Were "Qualified Education Loans"***

There is no dispute that the Consolidation Loans fall within the scope of section

523(a)(8)(A). To show that those loans are not excepted from discharge, Plaintiff must prove that

excepting such loans from discharge would impose an undue hardship on him. Likewise, it is

undisputed that the Private Loans are outside of the scope of section 523(a)(8)(A). Thus, to prove

that the Private Loans are not excepted from discharge, Plaintiff must establish either that (i) the

Private Loans are not "qualified educational loans" under section 523(a)(8)(B), or (ii) under

*Brunner*, it will be an undue hardship for him to repay that debt.

In his discovery demands, Plaintiff sought broad discovery from the DOE, Lafayette and Navient which focused, in part, on whether the Private Loans are "qualified education loans" under section 523(a)(8).[14] Plaintiff contended that with Sallie Mae's assistance, Lafayette forced him (and other borrowers) to take out student loans in amounts that exceeded the "cost of attendance," as defined in 26 U.S.C. § 221 (d)(1). He says that in doing so, Lafayette was able to create a reserve fund, the proceeds of which it used to pay its school president and other administrators much higher salaries, as well as other expenses that are not associated with teaching and instruction or related to the normal cost of attendance. Discovery Decision at 8.[15] Accordingly, Plaintiff argued that the Private Loans are not qualified education loans because the loan proceeds were not applied to expenses associated with "teaching or instruction" as defined in the "cost of attendance" definition of 26 U.S.C. §221(d)(1) and therefore are not "school certified." *Id.*

Plaintiff also contended that the Student Loans were not qualified education loans because, through the student loan programs, Lafayette, and other colleges and universities (the "Institutions") across the country, are engaged in a massive illegal tax fraud that profits from the student loans. Discovery Decision at 26. Specifically, Plaintiff contended that Lafayette engaged in tax fraud by withholding grant money from him and others, *id*. at 9, and Sallie Mae aided the alleged tax fraud scheme by (i) pushing Lafayette and other schools to break tax laws by causing students to borrow funds in excess of the "cost of instruction"; and (ii) repeatedly loaning out funds it knew were dischargeable in bankruptcy but at the same time attempted to buy government influence to later deem the loans exempt from discharge under §523(a)(8) provision, *id.*

---

[14] *Discovery Dispute – Requests for Information,* AP ECF No. 103*; Discovery Request Simplified (per court's request)*, AP ECF No. 125; *Further Description of Previously Filed Amended Schedule and Supplemental Discovery Demand*, AP ECF No. 191.

[15] *Memorandum Decision and Order Resolving Debtor's Request for Document Discovery*, AP ECF No. 226 (the "Discovery Decision").

The Court granted the discovery demands, in part, and denied them, in part. *See generally* Discovery Decision. The Court granted Plaintiff's requests for documents relevant to whether the proceeds of the Private Loans were applied to expenses associated with "teaching and instruction." *Id.* at 23.[16] The Court denied Plaintiff's requests for discovery related to Lafayette and Sallie Mae's alleged "tax fraud" as irrelevant to the issues underlying section 523(a)(8). *Id.* at 25-30. In part, the Court noted that Plaintiff "admits that the purpose behind his request for Lafayette's financial information is not to support the grounds for dischargeability, but to prove his theory that Lafayette, like other colleges and universities across America, and in conjunction with the DOE, Sallie Mae, and ECMC, is engaged in a massive illegal tax fraud that profits from students." *Id.* at 26. The Court also noted that Plaintiff was asserting damage claims against Lafayette based on its alleged fraud, breach of fiduciary duties, and/or violations of United States tax laws, in administering its student loan program and that the Court had dismissed those claims as beyond the scope of section 523(a)(8). *Id.* at 26-27.

After discovery closed and the Court issued the Discovery Order, Plaintiff filed with the Court for service on all defendants, and non-parties Lafayette and the DOE, "Additional Supplemental Discovery Requests."[17] Lafayette and Navient filed objections to the supplemental

---

[16] For example, Lafayette produced the documents contained in Debtor's file at Lafayette. That consisted of information from the database that include a breakdown of the Debtor's grants, student loans and estimated family contribution amounts for the 1998-1999, 1999-2000, 2000-2001 and 2001-2002 school years (the "Lafayette Production"). Discovery Decision at 23. The Lafayette Production contains all documents in its possession that are responsive to the document request, including a calculation of the "cost of attendance" for the Debtor in each of the four years he attended Lafayette. *Id.*

[17] *See Debtor's Letter Requesting Additional Supplemental Discovery*, AP ECF No. 289.

demands.[18] The Court denied those requests as not relevant to the matters at issue in the Complaint. First Omnibus Motion Decision at 48-60.[19]

### The Pre-Trial Orders and Miscellaneous Motions

With the close of discovery, the Court entered a scheduling order (the "First Scheduling Order").[20] The order directed the parties to submit a proposed Joint Pre-Trial Order and joint exhibit book (a "Joint Ex. Book"), and scheduled dates for a Final Pre-Trial Conference and the Trial of the adversary proceeding. ECMC and Navient prepared a Joint Pre-Trial Order and Joint Ex. Book. Plaintiff failed to provide comments to the order or Joint Ex. Book.

Instead, Plaintiff filed a motion (the "First Omnibus Motion")[21] seeking leave to amend the Complaint to add additional claims and obtain additional relief. The claims he sought to add included fraud on the court. First Omnibus Motion at 1-2. He asserted that Navient and other parties sought to block borrowers' student loan payments in an effort to keep those borrowers from satisfying the third prong of the *Brunner* test for dischargeability of student loans. *Id.* at 1. He also asserted that Navient was guilty of fraud on the court for misrepresenting itself as holder of his student loans. *Id.* at 2. Plaintiff also petitioned the Court to recuse itself from this action, in favor of Judge Morris. *Id.* at 4. He also sought leave to add Sallie Mae, Joseph R. Biden, Jr. ("President

---

[18] *See Navient Solutions, LLC's Responses to Plaintiff's Additional Supplemental Discovery Requests,* AP ECF No. 291; *Lafayette College's Letter in Opposition to Request of Michael Grabis for Additional Supplemental Discovery Requests,* AP ECF No. 293.

[19] *Memorandum Decision and Order Denying Plaintiff-Debtor's Omnibus Motion and the Additional Discovery Requests,* AP ECF No. 343.

[20] *Scheduling Order,* AP ECF No. 271.

[21] *Motion for Fraud Upon the Court, Breach of Contract, Breach of Fiduciary Duty, Spoilation of Evidence by Navient, Sallie Mae, ECMC, Lafayette College, Department of Education, Judge Garrity, Motion for Class Action Designation, Motion for Sanction, Motion for Default Judgment,* AP ECF No. 311.

Biden"), Lafayette and the DOE as defendants in his fraud upon the court claim. *Id.* The Court

denied the First Omnibus Motion. First Omnibus Motion Decision at 63.

Thereafter, Plaintiff filed a statement in the Chapter 7 Case (the "Statement")[22] and a

motion in the adversary proceeding (the "Second Omnibus Motion").[23] In the Statement and

Second Omnibus Motion, Plaintiff asserts that Navient is guilty of "criminal impersonation" and

that it is committing that crime to further a massive billion-dollar tax and securities fraud scheme

that Navient has hatched with the support and assistance of its counsel, together with President

Biden, ECMC, the DOE, the Federal Courts, Lafayette and other Institutions throughout the United

States. Second Omnibus Motion ¶ 1. In broad strokes, in the Statement and Second Omnibus

Motion Plaintiff petitioned the Court to refer the alleged criminal impersonation and billion dollar

tax and securities fraud scheme to the United States Attorney General, the Federal Bureau of

Investigation, the Internal Revenue Service (the "IRS"), the Securities and Exchange Commission,

New York and New Jersey Tax Authorities, the Office of the United States Trustee, and the New

York Sheriff to investigate Navient, Lafayette, the DOE, President Biden and Reed Auerbach, Esq.

(as Navient's alleged counsel). Statement at 8; Second Omnibus Motion ¶ 9. Plaintiff also sought

to (i) reopen discovery in this action, (ii) amend the Complaint to add Lafayette and the DOE as

defendants to seek sanctions from them for their alleged support of Navient's criminal activities

and, (iii) obtain miscellaneous other relief including the Court's recusal from this case in favor of

Judge Morris. *See generally* Second Omnibus Motion. The Court denied the Statement and Second

Omnibus Motion. Second Omnibus Motion Decision at 53.

---

[22] *Fraud Upon the Court Filing and Criminal Complaint (Criminal Impersonation), Grievance Motion to Chief Judge Morris, Discovery Motion Under Crime Fraud Exception*, ECF No. 66.

[23] *New Motions*, AP ECF No. 362.

The Court then entered the Second Scheduling Order,[24] which directed the parties to confer and submit a proposed Joint Pre-Trial Order. In response to that order, Navient's counsel filed a letter with the Court (the "March 2 Letter")[25] stating "Counsel for Navient and Counsel for ECMC attempted to get Plaintiff involved in drafting a proposed trial scheduling order and in supplying date(s) when he would be available for trial. Plaintiff refused to participate in the process and indicated that he was not ready to schedule a trial date."

Thereafter, the Court entered an order (the "Third Scheduling Order").[26] The order directed the parties to submit a proposed Joint Pre-Trial Order and a Joint Ex. Book, and scheduled dates for a Final Pre-Trial Conference and the Trial of the adversary proceeding. ECMC and Navient complied with the order as each filed witness list for trial.[27] Plaintiff did not comply with the order. However, he filed additional motions in this action (the "Third Omnibus Motion").[28] In that motion, without limitation, he complained about the Court's rulings in the Discovery Decision, and asserted:

> I am making this motion due to the fact that Judge Garrity has acted in a criminal manner to block discovery and appearances from the proper party in this case, deemed by Judge Garrity's previous ruling to be two bond tranches, as well as previously granted discovery of communications between Lafayette College and Navient and public documents such as the Reed Auerbach offshore tax fraud plan. Judge Garrity also blocked any and all depositions that I had requested prior to trial and made the absurd claim that the IRS code governing

---

[24] *Minutes of Proceedings*, AP ECF No. 348 (the "Second Scheduling Order").

[25] *Letter To The Honorable James L. Garrity, Jr.*, AP ECF No. 352.

[26] *Scheduling Order*, AP ECF No. 399. The Court also entered an *Order Establishing Procedures for Remote Evidentiary Trial to Determine the Dischargeability of the Debtor/Plaintiff's Student Loans*, AP ECF No. 401.

[27] *Educational Credit Management Corporation's Trial Witness List*, AP ECF No. 404*; Navient Solutions, LLC's Witness List*, AP ECF No. 405.

[28] *Motion for Transfer, Suspension, or Withdrawal of Case No:15-01420-JLG in lieu of Judicial Fraud, Fraud upon the Court, Criminal Referral for DOE, Reed Auerbach, Navient, ECMC, Lafayette College, Others*, AP ECF No. 406.

> non-profit educational institutions and definition of "cost of attendance" simply
> do not exist.

Third Omnibus Motion at 3. In support of those assertions, Plaintiff noted that "[t]he cost of attendance definition is significant because it states that only amounts borrowed for teaching and instruction used for the student during their time in school are exempt from discharge." *Id.* He maintained that in denying his additional discovery requests, the "actions by the Judge were intentional and focused on aiding Reed Auerbach, Navient, ECMC, the DOE, PIMCO, and other currently unknown financial companies, and Lafayette College in conducting a massive securities fraud that was uncovered in actions by the defendants during the pre-trial hearings in this case." *Id.* He says that it is based on the Court's rulings "that I believe Judge Garrity and the other parties committed perjury and fraud upon the court in order to prevent the securities fraud and the massive damages and subsequent financial relief that would be due to me and tens of millions of other student loan borrowers throughout the United States." *Id.* Moreover, he advised that he "believe[s] the actions of [Judge Garrity] and defendants in my case . . . revealed the nexus of a securities fraud that deceived millions of borrowers and was recently admitted to by Navient and Sallie Mae Corporate officers Albert Lord and Edward Fox in interviews with Wall Street Journal Reporter Josh Mitchell." *Id.* He further noted that he attempted to depose Mitchell, Lord and Auerbach, but this request was blocked by the Court. *Id.* He asserted that "[d]espite revealing to the court that Navient had impersonated the lender and holder of my loans and despite previous court order of his own Judge Garrity has attempted to schedule a trial without allowing me any discovery or appearance by the proper defendants." *Id.* at 5. He "believe[s] that Judge Garrity was compensated in some manner for disrupting the case in favor of the defendants and the law firm Morgan Lewis and Bockius and Shearman Sterling who represent Navient on various student loan bond/securities issuances." *Id.* He maintained that the Court "was also required by state and federal statute to

report Navient for impersonating another party in court but refused to do so. *Id.* In short, Plaintiff requested that the "Chief Judge to take over this case." *Id.*

The Court denied the Third Omnibus Motion (the "Third Omnibus Motion Decision").[29] In it, without limitation, the Court denied Plaintiff's "baseless contention" that it "acted in a criminal manner to block discovery and appearances from the proper party in this case." *Id.* at 14. The Court denied Plaintiff's request that it revisit Plaintiff's discovery requests and his request that the Court recuse itself from this action. *Id.*

### The Trial Orders

Thereafter, the Court entered two orders (together, the "Trial Orders"). The Fourth Scheduling Order[30] directed the parties to submit a proposed Joint Pre-Trial Order and a Joint Ex. Book, with exhibits pre-marked, and fixed dates for the Final Pre-Trial Conference and Trial of the Complaint. The Procedures Order[31] established procedures for the Trial. In the wake of the entry of the Trial Orders, ECMC filed a status letter with the Court (the "Status Letter").[32] The letter explained that Plaintiff advised ECMC and Navient that he had "withdrawn" his "filing" and would not be proceeding to trial. Status Letter at 1. ECMC requested that the Court convert the scheduled pre-trial conference to a status conference. *Id.* ECMC indicated that defendants would seek leave to file a motion to dismiss the Complaint. *Id.* The Court granted the requested relief and

---

[29] *Memorandum Endorsed Order*, AP ECF No. 407.

[30] *Scheduling Order*, AP ECF No. 410 (the "Fourth Scheduling Order").

[31] *Order Establishing Procedures for Remote Evidentiary Trial to Determine the Dischargeability of the Debtor/Plaintiff's Student Loans*, AP ECF No. 412 (the "Procedures Order").

[32] *Status of Trial*, AP ECF No. 415.

converted the Final Pre-Trial Conference to a status conference.[33] The Court conducted the status

conference. Plaintiff did not attend the conference.

### The Rule 41(b) Motion

ECMC and Navient filed a joint motion requesting that the Court dismiss the adversary

proceeding pursuant to Fed. R. Civ. P. 41(b) (the "Rule 41(b) Motion").[34] As support for the

motion, the defendants relied on the declaration of Kenneth L. Baum (the "Baum Declaration"),[35]

counsel for ECMC. The exhibits to the Baum Declaration, included an email from Navient's

counsel to Plaintiff (the "Request Email")[36] and three responsive emails from Plaintiff to Navient's

counsel (the "Response Emails").[37] In substance, Navient's counsel's email requested Plaintiff to

provide his input on the Joint Pre-Trial Order and Joint Ex. Book, and Plaintiff's emails advised

that that he had withdrawn his filing and would not be proceeding to trial in this adversary

proceeding. ECMC and Navient submitted a memorandum of law (the "Rule 41(b) Memo") in

further support of the motion.[38]

In an email addressed to the Court and counsel to Navient and ECMC, Plaintiff advised

that he was not available on the scheduled return date of the Rule 41(b) Motion. Thereafter, the

Court entered a scheduling order (the "Fifth Scheduling Order")[39] extending Plaintiff's time to

---

[33] *Memorandum Endorsed Order*, AP ECF No. 416.

[34] *Joint Motion of Educational Credit Management Corporation and Navient Solutions, LLC, to Dismiss Adversary Proceeding Pursuant to Fed. R. Civ. P. 41(b)*, AP ECF No. 420.

[35] *Declaration of Kenneth L. Baum, Esq., in Support of Joint Motion of Educational Credit Management Corporation and Navient Solutions, LLC, to Dismiss Adversary Proceeding Pursuant to Fed. R. Civ. P. 41(b)*, AP ECF No. 421-2.

[36] The Request Email is annexed to the Baum Declaration as Exhibit A.

[37] The Response Emails are annexed to the Baum Declaration as Exhibit B.

[38] *Memorandum in Further Support of Joint Motion of Educational Credit Management Corporation and Navient Solutions, LLC, To Dismiss Adversary Proceeding Pursuant To Fed. R. Civ. P. 41(b)*, AP ECF No. 433.

[39] *Order*, AP ECF No. 424.

provide his input to the Joint Pre-Trial Order and Joint Ex. Book, as directed by the Trial Order, and adjourning the hearing on the Rule 41(b) Motion. Plaintiff did not comply with the order.

**<u>Plaintiff's Opposition to the Rule 41(b) Motion and Requests for Relief</u>**

Central to Plaintiff's opposition to the Rule 41(b) Motion and the support for his claims for relief, is his contention that his Student Loan Debt was discharged by the Discharge Order, because the underlying loans are not "qualified education loans" under the Bankruptcy Code. That position is not based upon his receipt and use of the loan proceeds or the definition of "qualified education loan." There is no dispute that Plaintiff took out the Student Loans and used the proceeds to pay for his education at Lafayette. He says that the debt is dischargeable because Lafayette did not use the loan proceeds paid to them for educational purposes, as required by the Internal Revenue Code. *See* Motion to Stay at 1;[40] Addendum I at 3;[41] Motion to Present at 1.[42]

Plaintiff contends that two individuals—Reed Auerbach and Jamie Gorelick—formulated a scheme (the "Auerbach-Gorelick Scheme")[43] pursuant to which, without the knowledge of student loan borrowers, Institutions throughout the United States are using student loan assets for the non-educational purposes of illegally subsidizing weapons manufacturing by Raytheon Corporation ("Raytheon") and Northrop Grumman ("Northrop"). Motion for Reconsideration at

---

[40] *Motion for Stay of Dismissal to Plead Special Matter – Rule 9 Civil Procedure, Notice of FOIL Filing, Request for Subpoenas*, AP ECF No. 433 ("Motion to Stay").

[41] *Addendum to Motion for Special Matter, Stay, Request for Subpoenas, Adding Defendants*, AP ECF No. 434 ("Addendum I").

[42] *Motion to Present the Auerbach Gorelick Plan in Court with IRS Criminal Division and Chief Judge of Southern District Present*, AP ECF No. 432 ("Motion to Present").

[43] In discussing Plaintiff allegations of wrongdoing by ECMC, Navient and others as it relates to the student loan program the Court uses this defined term solely for convenience. The Court has made no determination whether such a plan/scheme exists.

1-3;[44] Motion to Present at 1-3; Addendum I at 1-2. Plaintiff says that Lafayette is party to that scheme.

### The Auerbach-Gorelick Scheme

Plaintiff contends that pursuant to the Auerbach-Gorelick Scheme, Institutions overcharged student borrowers and used the increased principal amounts of student loans to raise funding (the "Student Loan Funds") to subsidize Raytheon's and Northrop's weapons sales to Saudi Arabia, and to avoid taxation for these sales by laundering the payments from Saudi Arabia through the Institutions' endowment funds. Motion to Present at 1; Motion to Stay at 1. He says that the Auerbach-Gorelick Scheme calls for Institutions to:

   i.    overcharge students far beyond the cost of attendance and thereby raise the principal amounts charged to students,

   ii.   restrict the award of grants to students,

   iii.  force students to incur large amounts of student loan indebtedness,

   iv.   package the student loans into transferable securities,

   v.    funnel the loan proceeds to offshore accounts without alerting the Internal Revenue Service and in violation of the Internal Revenue Code,

   vi.   use the proceeds to subsidize contract sales of military grade munitions manufactured by Raytheon and Northrop to Saudi Arabia, and

   vii.  receive payment for the munitions from Saudi Arabia through college and university endowment funds.

Motion for Reconsideration at 1-3; Motion to Present at 1-3; Motion to Compel at 1-3.[45]

---

[44] *Filing by Plaintiff-Michael Grabis,* AP ECF No. 426 ("Motion for Reconsideration").

[45] *Motion to Compel ECMC to Admit Concealed Representation of Raytheon and Filing Intervention on False Grounds in Withholding the Pertinent Facts from The Court in this Proceeding. Executing Withholding of Pertinent Facts as an Overt Action to Block Dischargeability and Nature of Loans from the Borrower and the Court, Commit Fraud Upon the Court. Motion to Court to Declare Failure of Compliance of Discovery by Navient, ECMC in Concealing, Withholding Raytheon Information and Contracts*, AP ECF No. 454 ("Motion to Compel").

Plaintiff says that Auerbach and Gorelick did not work alone in formulating and executing the plan. He asserts that the scheme was organized and perpetrated by Auerbach and Gorelick, together with Rodney Frelinghuysen, Christy Todd Whitman, Mikie Sherrill, David Rubenstein, Lawrence Fink, and a host executives for Raytheon and The Carlyle Group. Addendum II at 1-2.[46] He identifies the following individuals as "[k]ey operatives" who were hired by Raytheon and The Carlyle Group to propel the Auerbach-Gorelick Scheme: Victoria Nuland, Robert Kagan, Merrick Garland, David Rubenstein, Glenn Youngkin, Wayne Abernathy, Jared Kushner, Craig Annis, Jerome Powell, Arthur Rothkopf, and Presidents Biden and Trump. SJ Motion[47] at 3. He also says that the following law firms are involved in the scheme: Kirkland & Ellis, LLP, Morgan Lewis & Bockius, LLP ("Morgan Lewis"), and Shearman & Sterling, LLP ("Shearman"). *Id.*

Plaintiff says that Gorelick served as a director on the 9/11 Commission for the specific purpose of blocking the dissemination of any information regarding the alleged Saudi Arabia-Raytheon-Northrop nexus and took payments and arranged payments to Tom Kean and others in order to do so. Motion to Present at 2. He says, acting in that capacity, Gorelick blocked evidence from the 9/11 Commission relating to Saudi Arabian Intelligence Officials, due to their client status of Raytheon and Northrop.[48] *Id.* He also says that at Gorelick's direction, Merrick Garland, in his capacity as United States Attorney General, blocked any investigation into the Auerbach-Gorelick

---

[46] *Addendum to Prior Motion- Motion for Fraud Upon the Court Determination and Criminal Referral for False Instrument Filing, Impersonation, Blocking Trial and Motion to Vacate ECMC's approved Motion to Intervene, Motion to Recall the US Department of Education*, AP ECF No. 482 ("Addendum II").

[47] *Motion for Summary Judgment for Offering a False Instrument for Filing in Order to Hide Dischargeability – Fraud on the Court Scheme as Defined By 18 U.S. Code 157 – also known as the Bankruptcy Fraud Statute*, AP ECF No. 475 ("SJ Motion").

[48] Plaintiff explains that this statement is in regard to Saudi Arabian Intelligence Agent Omar Al-Bayoumi's connections to Intelligence Director Turki Al Faisal and Al Faisal's statements and actions which were recently revealed as fact by UK Courts in response to subpoena to 9/11 families engaged in a lawsuit against the Kingdom of Saudi Arabia. Motion to Compel at 2.

Scheme, and rejected Plaintiff's letter to the Department of Justice requesting charges against

Navient. *Id.* Plaintiff asserts that, in furtherance of the scheme, Auerbach:

     i.    used Institution endowment funds to bribe college officials,

    ii.    used Institution endowment funds inflated by financial gains of his
personally designed student loan borrower fraud to further the weapons
tax fraud and bribe federal officials including underwriting most
Supreme Court Justices in overseas vacations and other payments,

   iii.    used the Great Swamp Watershed Trust to bribe current U.S.
Representative Mikie Sherrill to continue the fraud by restricting state
funding to colleges and also to allow Raytheon weapons payments to
continue to be laundered through college endowments, and

   iv.    used Great Swamp Watershed Trust to bribe Tom Kean to corrupt,
destroy, and obstruct the 9/11 Commission investigation into September
11, 2001 attacks on the United States, in order to conceal evidence
showing that the government of Saudi Arabia funded and was complicit
in the 9/11 attacks and thereby protect the alleged Raytheon endowment
tax evasion money laundering scheme.

Motion to Present at 1-2.

Plaintiff says that Auerbach committed his alleged "criminal acts" with the support of Lee

Bollinger, former President of Columbia University. *Id.* Without limitation, he also contends that

Jerome Powell, Elizabeth Warren and Mitch McConnell have knowledge of, and have made public

statements regarding Raytheon's use of student loans to subsidize weapon making. Motion to

Compel at 6. He maintains that each of them has been employed by either Raytheon or The Carlyle

Group. *Id.* He also says that Mr. Powell specifically has been purchasing student loans and holding

them on the Federal Reserve Balance Sheet. *Id.* He contends that is a critical aspect of the Raytheon

student loan scheme and Mr. Powell withheld his knowledge of the nature of these purchases. *Id.*

He says that the contracts between the DOE and Raytheon as well as The Carlyle Group's

involvement and Mr. Powell's history as an employee with The Carlyle Group evidence the gravity of his claims against ECMC, Raytheon, and Navient. *Id.*

Plaintiff asserts that in 1994, Raytheon, under guidance and participation of The Carlyle Group and its senior officers David Rubenstein and Glenn Youngkin, ordered the creation of ECMC to represent them in bankruptcy court while "cloaking" their involvement in forcing student loan borrowing to engineer a tax-free subsidy of their offshore raw materials and industrial weapons production business. SJ Motion at 3. He says at that time, Raytheon created contracts between itself and the DOE to protect any challenge to the existence of their student loan financed weapons subsidy. *Id.* at 3. He asserts that ECMC covertly represents the interests of BlackRock and Raytheon in student loan adversary proceedings nationwide by arguing, at their behest, that the student loans in issue were used for educational purposes. Motion to Compel at 3-4. He maintains that ECMC and Navient's goal in the bankruptcy court proceedings is to misdirect borrowers to file adversary proceedings under section 523(a)(8) seeking a hardship discharge of the student loan indebtedness, in order to conceal the identity and liability of the actual creditors. *Id.* He argues that ECMC intervened in this adversary proceeding under false premises, concealing their relationship with Raytheon and their representation of the interests of BlackRock and Raytheon. Motion to Compel at 7; Addendum I at 3.

Plaintiff claims that both Navient and ECMC have provided false documentation to the Court stating they were holders of his loans, when in fact they are not. SJ Motion at 3. He alleges this was done to conceal that Raytheon, BlackRock, and The Carlyle Group are the actual parties in interest. *Id.* Plaintiff further alleges that contracts between Raytheon and the DOE would reveal his loans were part of a "batch of loans used for subsidizing raw material mining for the production of weapons including missiles and not for educational costs." *Id.* at 5.

***Plaintiff's "Special Matter" at Issue in the Adversary Proceeding***

Plaintiff says that the Auerbach-Gorelick Scheme reveals a fraud of unprecedented proportion and damage to United States citizens and United States student loan borrowers who would have not only had knowledge of the dischargeability of their unqualified loans but also a constitutionally granted bargaining chip with creditors to make the student loan market run efficiently by keeping borrowing costs at normal levels. Motion to Present at 2.

Plaintiff argues that by application of the Auerbach-Gorelick Scheme**,** his Student Loan Debt (and the debts of millions of other student loan borrowers) is dischargeable in bankruptcy because under that scheme, the Institutions are not applying Student Loan Funds for educational purposes. *Id.* at 1. Rather, without notice to the borrowers, they are using those funds illegally to underwrite Raytheon's and Northrop's munition sales to Saudi Arabia with payments from Saudi Arabia being made through the Institutions' endowment funds, at the direction of Auerbach and Gorelick. Motion to Stay at 1. He says that the consequence of the Institutions' misuse of the Student Loan Funds is that the student loans are not "qualified education loans" excepted from discharge under section 523(a)(8) of the Bankruptcy Code. *Id.* at 1. In substance, Plaintiff asserts that the Institutions' alleged misuse of the Student Loan Funds for non-educational purposes under the Auerbach-Gorelick Scheme, alters the character of the underlying "qualified education loans" and renders them dischargeable under the Bankruptcy Code. *Id.*

Plaintiff contends that to determine whether the Student Loan Debt is dischargeable, the Court must resolve the issues he has raised with respect to the Auerbach-Gorelick Scheme, and Lafayette's alleged role in that scheme. He argues that "[t]he special matter to be resolved in this case is whether or not the [Auerbach-Gorelick Scheme] to use [S]tudent [L]oan [F]unds for the production of weapons and payment for those weapons through college endowments renders

them unqualified student loans and therefore not exempt from discharge under the [B]ankruptcy [C]ode." Motion to Stay at 1. He says that it does and that the Student Loan Debt was discharged by the Discharge Order. Motion to Present at 1.

## DISCUSSION

### Plaintiff's Motions

Plaintiff asks the Court to stay its consideration of the Rule 41(b) Motion and grant him leave to amend the Complaint to add claims for fraud upon the Court under Rule 9 of the Federal Rules of Civil Procedure (the "Federal Rules")[49] against ECMC, Navient, Lafayette and other alleged accomplices to the Auerbach-Gorelick Scheme. Motion to Stay at 1; Addendum I at 1. In doing so, Plaintiff seeks to litigate the merits of his claims that the Auerbach-Gorelick Scheme exists, Lafayette is party to the scheme, the Student Loan is not a "qualified education loan" excepted from discharge under section 523(a)(8) of the Bankruptcy Code based upon Lafayette's alleged use of the Student Loan Funds to underwrite Raytheon's and Northrop's alleged illegal munitions sales, and that he is entitled to damages. To complement that relief, Plaintiff seeks leave to name additional defendants to the Complaint and to conduct broad third-party discovery relating to the Auerbach-Gorelick Scheme. He also seeks miscellaneous forms of relief against ECMC and Navient, and demands that I recuse myself from this case. The Court considers these matters below.

### *Request To Amend Complaint*

Plaintiff asserts that the alleged Auerbach-Gorelick Scheme includes a plan to defraud Plaintiff and other student loan borrowers of their bankruptcy rights to discharge the student

---

[49] Federal Rule 9 is made applicable herein by Rule 7009 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

loan indebtedness by using ECMC, Navient, and others to conceal that the Student Loan Funds are being used for non-education purposes and, therefore, are not exempt from discharge under section 523(a)(8). He says that the acts of concealment arise to the level of "fraud on the court" because it affects the prosecution of this adversary proceeding. He also contends that he and other student loan borrowers have been damaged by the alleged fraud associated with the Auerbach-Gorelick Scheme.

He says that the court should stay any dismissal of the adversary proceeding and grant him leave to pursue fraud claims, pursuant to Federal Rule 9, against ECMC, Navient, and other alleged accomplices to the Auerbach-Gorelick Scheme that he identifies in the motions. Plaintiff also requests that he be granted leave to amend the Complaint to add the following, as defendants: (i) BlackRock, and its officers, (ii) The Carlyle Group, and its officers, (iii) Raytheon, and its officers, (iv) Morgan Lewis, (v) Reed Auerbach, (vi) Lou Bollinger, (vii) Great Swamp Watershed Trust, (viii) the DOE, and (ix) Lafayette College.[50]

The principle that Plaintiff advocates in support of his claims for relief, including his request to amend the Complaint, is that an Institution's use of the proceeds of a student loan dictates whether that loan is a "qualified education loan" under section 523(a)(8) of the Bankruptcy Code. The Court disagrees with that premise. It is settled that "[t]he plain text of § 523(a)(8)(B) requires looking to the stated purpose of the loan at the time of the agreement, rather than supplementing the stated purpose with ancillary information from the debtor's use of the loan funds." *Mazloom v. Navient Solutions, LLC (In re Mazloom)*, 648 B.R. 1, 12 (Bankr. N.D.N.Y. 2023). "[T]he 'purpose test,' also known as the 'substance of the transaction test' . . . holds that

---

[50] *Motion For Reconsideration*, AP ECF No. 426; *Motion for Stay and Motion to Add Defendants*, AP ECF No. 484; *Motion for Stay and New Fraud Evidence and to Add Defendants*, AP ECF No. 488.

the proper analysis in a § 523(a)(8)(B) case is to look at the initial purpose of the loan, rather than the actual use of the funds, to establish the purpose of the loan." *Id.* (citing *Conti v. Arrowood Indem. Co. (In re Conti),* 982 F.3d 445 (6th Cir. 2020); *Busson-Sokolik v. Milwaukee Sch. of Eng'g (In re Busson-Sokolik)*, 635 F.3d 261 (7th Cir. 2011)); *see also Mehlman v. New York City Bd. Of Educ. (In re Mehlman)*, 268 B.R. 379, 386 (Bankr. S.D.N.Y. 2001) (interpreting substantially similar language in a prior version of 11 U.S.C. § 523(a)(8)) ("[A] finding that a debt constitutes a 'student loan' or 'educational benefit' as defined under the statute is sufficient to invoke Section 523(a)(8). Nothing in the statute limits its application where some third party also receives a benefit, or where some additional objective is fulfilled."). In short, the "'[p]urpose [t]est' restricts a federally-subsidized or qualified educational loan from degenerating into a non-qualified loan . . . ." *Dufrane v. Navient Solutions, Inc. (In re Dufrane),* 566 B.R. 28, 40 (Bankr. C.D. Cal. 2017) (emphasis omitted).

In this adversary proceeding, the Court will not resolve Plaintiff's contentions regarding the alleged wrongdoing by Auerbach, Gorelick and their alleged accomplices in giving effect to the Auerbach-Gorelick Scheme, nor Lafayette's alleged involvement in the scheme. Even if true, those actions cannot render the Student Loans "unqualified" loans if those loans were "qualified education loans" when Plaintiff obtained them.

Bankruptcy Rules 7015 and 7021 make Federal Rules 15 and 21, respectively, applicable herein. As relevant, Federal Rule 15(a)(2) provides that a court "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). The decision to grant or deny leave to amend under Federal Rule 15(a)(2) is within the trial court's discretion. *See Broidy Cap. Mgmt. LLC v. Benomar*, 944 F.3d 436, 447 (2d Cir. 2019) ("[I]t is within the sound discretion of the district court to grant or deny leave to amend." (quoting *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir.

2018))). The policy behind this rule is that "[l]iberal amendment promotes judicial economy by making it possible to dispose of all contentions between parties in one lawsuit." *Bilt-Rite Steel Buck Corp. v. Duncan's Welding & Corr. Equip., Inc.*, No. 90-cv-311, 1990 WL 129970, at *1 (E.D.N.Y. Aug. 24, 1990) (citing *Jenn-Air Prods. v. Penn Ventilator, Inc.*, 283 F. Supp. 591, 594 (E.D. Pa. 1968)). Federal Rule 21 states, in part, that "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party." Fed. R. Civ. P. 21. "It is generally accepted . . . that no material difference exists between the standards articulated by [Federal] Rules 15(a) and 21, and, as such, 'where parties satisfy the requirements under [Federal Rule 15(a)] for leave to amend, they will generally be permitted to add parties under [Federal Rule 21].'" *Sanrio Co. v. Epic Trading, Inc.*, No. 2004-5428, 2005 WL 1705746, at *1 (E.D.N.Y. July 21, 2005) (alterations in original) (quoting *Cortigiano v. Oceanview Manor Home for Adults*, 227 F.R.D. 194, 201 (E.D.N.Y. 2005)).

The Court denies Plaintiff's request to amend the Complaint as set forth herein. Through the requested amendments, Plaintiff seeks to adjudicate the merits of his contentions regarding the Auerbach-Gorelick Scheme. The Court has determined that those matters are not relevant to the resolution of the issue of whether Plaintiff's Student Loan Debt is excepted from discharge under section 523(a)(8) of the Bankruptcy Code.

In a related matter, Plaintiff seeks leave to present the Auerbach-Gorelick Scheme in Court with the IRS Criminal Division and Chief Judge of the Bankruptcy Court for the Southern District of New York in attendance. *See* Motion to Present at 1. He also requests that the Court empanel a jury to review the evidence relevant to the Auerbach-Gorelick Scheme. *See* Motion to Compel at 2. The Court denies both requests. !

***Request To Reopen Discovery[51]***

Plaintiff seeks to reopen discovery and conduct wide-ranging discovery on matters relating to the Auerbach-Gorelick Scheme. For example, he seeks leave to subpoena witnesses including:

> Specific individuals making up support staff of Morgan Lewis law firm, Columbia University Fundraising, NYU Law Fundraising, Great Swamp Watershed Trust, former staff members of US Congressman Rodney Frelinghuysen, current staff members of US Congresswoman Mikie Sherrill, support staff members of Great Swamp Watershed Trust, former and current support staff of Lafayette College including the staff of Dan Weiss Former President of Lafayette College. Support Staff of Merrick Garland, Tom Kean and Tom Kean Jr. Principal of Morgan Lewis Law Firm, Principals and Executives of Great Swamp Watershed Trust, support staff of Lee Bollinger Columbia Law School. Support staff of New Jersey Governor Murphy, personal communications of Governor Murphy to and about Mikie Sherrill.

Motion for Reconsideration at 3. Relatedly, he asks for leave to obtain *"CIA and Government employment records of Mikie Sherrill." Id*. He is also "seeking subpoenas to depose Mr. Frelinghuysen and Ms. Gorelick in this matter" on the grounds that they "have knowledge of the connection of student loan borrowing to subsidizing Raytheon and Northrop Grumman." Addendum I at 2. Finally, without limitation, he seeks to reopen discovery:

> i.  To compel the DOE to produce the related contracts and other documentation and correspondence with Raytheon as it relates to student loans generally and his loans, in particular.

---

[51] Plaintiff requests leave to reopen discovery in the following documents: *Motion for Reconsideration and Other Relief*, AP ECF No. 426; *Motion to Present the Auerbach Gorelick Plan in Court with IRS Criminal Division and Chief Judge of the Southern District of New York Present*, AP ECF No. 432; *Motion for Stay of Dismissal to Plead Special Matter – Rule 9 Civil Procedure, Notice of FOIL Filing, Request for Subpoenas*, AP ECF No. 433; *Addendum to Motion for Special Matter, Stay, Request for Subpoenas, Adding Defendants*, AP ECF No. 434; *Motion to Compel ECMC to Admit Concealed Representation of Raytheon and Filing Intervention on False Grounds in Withholding the Pertinent Facts from this Court in this Proceeding. Executing Withholding of Pertinent Facts as an Overt Action to Block Dischargeability of Loans from the Borrower and the Court, Commit Fraud Upon the Court. Motion to Court to Declare Failure of Compliance with Discovery by Navient, ECMC in Concealing, Withholding Raytheon Information and Contracts*, AP ECF No. 454; *Motion for Summary Judgment for Offering a False Instrument for Filing in Order to Hide Dischargeability – Fraud on the Court Scheme as Defined by 18 U.S. Code 157 – also known as the Bankruptcy Fraud Statute*, AP ECF No. 475; *Addendum to Prior Motion- Motion for Fraud Upon the Court Determination and Criminal Referral for False Instrument Filing, Impersonation. Blocking Trial and Motion to Vacate ECMC's approved Motion to Intervene, Motion to Recall the US Department of Education*, AP ECF No. 482.

ii.   To permit him (a) to depose Wayne Abnerathy, Craig Annis, and Reed Auerbach in order to provide expert knowledge and information on the alleged "Raytheon ECMC scheme;" and (b) to serve a small number of interrogatories to Jamie Gorelick, Merrick Garland, Victoria Nuland, Jerome Powell, Elizabeth Warren and Mitch McConnell on that matter.

Motion to Compel at 4-6.

"The decision whether to reopen discovery is within a district court's discretion." *Moroughan v. Cnty. of Suffolk*, 320 F. Supp. 3d 511, 515 (E.D.N.Y. 2018) (citing *Krawec v. Kiewit Constructors Inc.*, No. 11 Civ. 0123, 2013 WL 1104414, at *8 (S.D.N.Y. Mar. 1, 2013)); *see also Wills v. Amerada Hess Corp.*, 379 F.3d 32, 41 (2d Cir. 2004) (district court has "broad discretion to direct and manage the pre-trial discovery process."). "In deciding whether to reopen discovery, courts consider whether good cause exists." *Bakalar v. Vavra*, 851 F. Supp. 2d 489, 493 (S.D.N.Y. 2011). In assessing whether cause exists to reopen discovery, the Court considers the relevance of the information Plaintiff is seeking to the matters at issue in the adversary proceeding.

Federal Rule 26, as made applicable herein by Bankruptcy Rule 7026, governs the scope of discovery and provides, in relevant part:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). The term "relevant" is not defined in Federal Rule 26, and courts often look to the definition of "relevant evidence" under Rule 401 of the Federal Rules of Evidence.[52] *See, e.g.*, *O'Garra v. Northwell Health*, No. CV 16-2191, 2018 WL 502656, at *2 (E.D.N.Y. Jan. 22, 2018) ("Information 'is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action.'"); *cf.* 6 James W. Moore, *Moore's Federal Practice* § 26.44[3][a] (3d ed. 2015) (noting that while Federal Rule 26 does not define "relevant," "relevant evidence" is defined by Rule 401 of the Federal Rules of Evidence). A trial court has broad discretion in determining the "relevance" of the requested discovery. *See, e.g.*, *Homeward Residential, Inc. v. Sand Canyon Corp.*, No. 12-CV-5067, No. 12-CV-7319, 2017 WL 4676806, at *5 (S.D.N.Y. Oct. 17, 2017) ("A district court has wide latitude to determine the scope of discovery." (quoting *In re Agent Orange Prod. Liability Litig.*, 517 F.3d 76, 103 (2d Cir. 2008))).

The Court finds that good cause does not exist to reopen discovery. The discovery Plaintiff seeks relates to matters outside of the scope of the issues to be resolved in this adversary proceeding. At issue in the adversary proceeding is whether Plaintiff's Student Loans are "qualified education loans" under section 523(a)(8) of the Bankruptcy Code. *See* Discovery Decision at 8. To that end, the Court directed Navient to produce "any communications, including documents, evidencing Navient/Sallie Mae's calculation of the Debtor's 'cost of attendance,' as that term is defined in § 523(a)(8)(B) of the Bankruptcy Code, at Lafayette for the period of 1998 through 2002" because that "information is relevant to the Debtor's assertion that the Private Loans

---

[52] Federal Rule of Evidence 401 states:

> Evidence is relevant if (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action.

Fed. R. Evid. 401.

are not 'qualified' education loans." *Id.* at 19. Similarly, the Court directed Lafayette to produce its calculation of the Debtor's "cost of attendance" during his years at the college. *Id.* at 23.

In contrast, the Court denied broader discovery into alleged tax fraud schemes, finding such information irrelevant to the Debtor's claim of undue hardship and his assertion that his Student Loan Debt does not consist of the types of loans described in section 523(a)(8). Discovery Decision at 26. The First Omnibus Motion Decision addressed the Court's view on such fraud theories, finding them without merit. The Court rejected Plaintiff's broader theories about fraud and tax evasion schemes, finding them irrelevant to the discharge determination and denying discovery requests aimed at establishing these theories. First Omnibus Motion Decision at 57. Without limitation, in the Second Omnibus Motion Decision, the Court directed that the issue of whether Plaintiff's Student Loans are excepted from discharge under section 523(a)(8) of the Bankruptcy Code is a matter to be determined at trial. Second Omnibus Motion Decision at 40. The Court emphasized it "afforded the Debtor discovery into those matters from Navient and Lafayette, as they relate to his Student Loan Debt" and emphasized that "at trial, he will have that opportunity" to demonstrate that his loans are not qualified education loans. *Id*. at 40-41.

***Motion to Compel***

Plaintiff contends that in furtherance of the Auerbach-Gorelick Scheme, ECMC is representing Raytheon's interests in this adversary proceeding and in adversary proceedings throughout the United States in which courts are adjudicating the dischargeability of student loans. He asserts that ECMC concealed those facts when it intervened in this adversary proceeding, and that Navient, Sallie Mae, Raytheon, The Carlyle Group, Lafayette, and the DOE enlisted and assisted ECMC in making an intervention on false grounds in this proceeding. Motion to Compel at 2; Addendum II at 2.

Plaintiff argues that ECMC's failure to disclose its alleged relationship with Raytheon in connection with its motion to intervene was an overt action to deceive the Court, and Plaintiff, as the borrower. He says ECMC sought to do so in an effort to protect any and all knowledge of Raytheon's involvement with his Student Loan Debt and, in doing so, conceal that the loans are not qualified education loans and thus, are not excepted from discharge under section 523(a)(8) of the Bankruptcy Code. Motion to Compel at 2. He also contends that in the process of the "false grounds intervention," ECMC failed to comply with Plaintiff's discovery requests by not revealing its alleged relationship with Raytheon, while pretending and acting as if it had fully complied with Plaintiff's discovery requests. *Id*. at 2.

Plaintiff seeks an order of the Court "compel[ing] ECMC to admit they are representing Raytheon and acting as a concealing party to Raytheon's involvement in this proceeding and any and all other student loan adversary proceedings of this type." *Id*. at 2. He also contends that the Court should vacate the Order Authorizing ECMC to Intervene. Addendum II at 3.

Navient denies that Plaintiff is entitled to any of the relief he is seeking in the motion.[53] So does ECMC, in its response to the motion. *See* ECMC Response to Motion to Compel ¶ 3.[54] It denies that it is acting on behalf of Raytheon. It also seeks an order of the Court enjoining Plaintiff (the "Pre-Filing Injunction") from filing any new pleadings, discovery requests, or other documents without first obtaining permission of the Court. *Id.* ¶ 5.

---

[53] *Navient Solutions, LLC's Response to Plaintiff's Motion to Compel ECMC to Admit Concealed Representation of Raytheon and Filing Intervention on False Grounds in Withholding the Pertinent Facts from this Court in this Proceeding. Executing Withholding of Pertinent Facts as an Overt Action to Block Dischargeability of Loans from the Borrower and the Court, Commit Fraud Upon the Court. Motion to Court to Declare Failure of Compliance with Discovery by Navient, ECMC in Concealing, Withholding Raytheon Information and Contracts*, AP ECF No. 462.

[54] *Memorandum of Educational Credit Management Corporation in Opposition to Plaintiff's Motion to Compel and in Support of Cross-Motion for a Filing Injunction Against Plaintiff*, AP ECF No. 464.

The Court denies Plaintiff's request for an order compelling ECMC to admit its alleged relationship with Raytheon and the request to vacate the Order Authorizing ECMC to Intervene. ECMC denies Plaintiff's allegations, and Plaintiff has not demonstrated grounds for such relief in law or in fact. The Court considers ECMC's request for a Pre-Filing Injunction. It is settled that "bankruptcy courts, like all federal courts, possess the inherent authority to prohibit abusive and vexatious litigation practices through the issuance of filing injunctions." *In re Belmonte*, 524 B.R. 17, 32 (Bankr. E.D.N.Y. 2015) (citing *Deep v. Danaher*, 393 B.R. 51, 54-55 (N.D.N.Y. 2008); *In re Truong*, No. 09-11047, 2009 WL 2929261, at *6-7 (Bankr. S.D.N.Y. Sept. 3, 2009)). In this circuit, the following factors should be considered in determining a motion for a pre-filing injunction:

> (1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, e.g., does the litigant have an objective good faith expectation of prevailing?; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties.

*Safir v. U.S. Lines, Inc.*, 792 F.2d 19, 24 (2d Cir. 1986). "Ultimately, the question the court must answer is whether a litigant who has a history of vexatious litigation is likely to continue to abuse the judicial process and harass other parties." *Id*.

ECMC contends that all the *Safir* factors weigh in favor of issuing the Pre-Filing Injunction. The Court notes that Plaintiff is proceeding pro se, and that the remedy sought is extreme. The Court denies the request, without prejudice.

### Motion For Summary Judgment

Plaintiff contends that the ECMC and Navient have offered documents in this case which falsely state that they are holders of the Consolidated Loans and Private Loans, respectively. SJ

Motion at 2. Plaintiff seeks summary judgment that ECMC and Navient, in conjunction with Raytheon and The Carlyle Group have offered false documents in this action. *Id.* at 2. Navient[55] and ECMC[56] object to the motion.

There is no merit to the request for relief. Federal Rule 56 is made applicable to this case by Bankruptcy Rule 7056. Federal Rule 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In the adversary proceeding, Plaintiff is seeking a judgment that the Student Loans are not excepted from discharge under section 523(a)(8) of the Bankruptcy Code, not a judgment on whether ECMC and Navient offered false documents in this case. Accordingly, it is not an appropriate predicate for summary judgment. Further, the Court has determined that matters relating to the Auerbach-Gorelick Scheme, like those at issue in this motion, are beyond the scope of this adversary proceeding.

Moreover, and in any event, summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the [movant] is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). ECMC and Navient dispute all of the "facts" that Plaintiff relies on in support for the motion. Plaintiff has not met his burden of demonstrating that the undisputed facts entitle him to summary judgment as a matter of law. *See Rodriguez v. City of New York*, 72 F.3d 1051, 1060-61 (2d Cir. 1995); *see also Hellstrom v. U.S. Dep't of Veterans Affs.*, 46 F. App'x 651, 654 (2d Cir. 2002) ("The moving

---

[55] *Navient Solutions, LLC's Response to Plaintiff's Motion for Offering a False Instrument for Filing in Order to Hide Dischargeability – Fraud on the Court Scheme as Defined by 18 U.S. Code 157 – also known as the Bankruptcy Fraud Statute*, AP ECF No 478.

[56] *Memorandum of Educational Credit Management Corporation in Opposition to Plaintiff's Motion for Summary Judgment for Offering a False Instrument for Filing in Order to Hide Dischargeability, Etc.*, AP ECF No. 479.

party bears the initial burden of 'informing the . . . court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'"). Based on the foregoing, the Court denies the motion.

### Motion For Recusal[57]

Plaintiff contends that I should recuse myself from this case. As support he complains in substance, that:

> Prior to my appointment to the Court I was employed, at different times, by Shearman & Sterling, LLP and Morgan Lewis & Bockius, LLP, two law firms that he contends aided and abetted the "student loans for weapons scheme" and concealing dischargeability in bankruptcy eligibility of those unqualified loans. He says my continued role in this case gives the appearance of impropriety.

> I dismissed the DOE from the Complaint on the eve of discovery in which the DOE would have been required to reveal the dischargeability of his loans.

> During a hearing before the Court, counsel for the DOE made non-verbal gestures to influence and signal me from ruling for discovery. He says this action signaled to him that the DOE could influence me for some unknown reasons.

*See generally* Motion to Stay at 1-2. Section 455 of title 28 of the United States Code is relevant to the matters at issue in the Debtor's motion. It is made applicable to this case by Bankruptcy Rule 5004(a). That rule states, as follows:

---

[57] Plaintiff requests that the Court recuse itself in the following documents: *Motion For Reconsideration and Other Relief*, ECF No. 426; *Motion For Stay Of Dismissal To Plead Special Matter – Rule 9 Civil Procedure, Notice Of FOIL Filing, Request For Subpoenas*, ECF No. 433; *Addendum To Motion For Special Matter, Stay, Request For Subpoenas, Adding Defendants*, ECF No. 434; *Motion For Summary Judgment For Offering A False Instrument For Filing In Order To Hide Dischargeability – Fraud On The Court Scheme As Defined By 18 U.S. Code 157 – also known as the Bankruptcy Fraud Statute*, ECF No. 475; *Addendum to Prior Motion- Motion for Fraud Upon the Court Determination And Criminal Referral For False Instrument Filing, Impersonation, Blocking Trial and Motion to Vacate ECMC's approved Motion to Intervene, Motion to Recall The US Department of Education*, ECF No. 482; *Motion For Stay and Motion To Add Defendants,* ECF No. 484*; Motion For Stay and New Fraud Evidence and To Add Defendants*, ECF No. 488.

> A bankruptcy judge shall be governed by 28 U.S.C. § 455, and disqualified from presiding over the proceeding or contested matter in which the disqualifying circumstances arises or, if appropriate, shall be disqualified from presiding over the case.

Fed. R. Bankr. R. 5004(a) (1987) (amended 2024).[58] In relevant part, section 455 states, as follows:

> (a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

> (b) He shall also disqualify himself in the following circumstances:

>> (1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;

>> (2) Where in private practice he served as lawyer in the matter in controversy, or a lawyer with whom he previously practiced law served during such association as a lawyer concerning the matter, or the judge or such lawyer has been a material witness concerning it[.]

28 U.S.C. §§ 455(a), (b)(1)-(2).[59]

---

[58] The advisory committee noted that the amendment is intended to be stylistic only. Fed. R. Bankr. P. 5004 advisory committee's note to 2024 amendment ("The language of Rule 5004 has been amended as part of the general restyling of the Bankruptcy Rules to make them more easily understood and to make style and terminology consistent throughout the rules. These changes are intended to be stylistic only.").

[59] Sections 455(b)(3)-(5) plainly are not relevant herein. They mandate that a bankruptcy judge disqualify himself in any proceeding:

> (3) Where he has served in governmental employment and in such capacity participated as counsel, adviser or material witness concerning the proceeding or expressed an opinion concerning the merits of the particular case in controversy;

> (4) He knows that he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding;

> (5) He or his spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person:

>> (i) Is a party to the proceeding, or an officer, director, or trustee of a party;

>> (ii) Is acting as a lawyer in the proceeding;

>> (iii) Is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding;

Recusal motions are committed to the trial court's discretion. *Apple v. Jewish Hosp. & Med. Ctr.,* 829 F.2d 326, 333 (2d Cir. 1987). Disqualification is required if a reasonable factual basis exists for doubting the judge's impartiality. *In re Beard*, 811 F.2d 818, 827 (4th Cir. 1987). In assessing the merits of a recusal motion, the inquiry the Court must make is whether a reasonable person would have a reasonable basis for questioning the judge's impartiality, not whether the judge is in fact impartial. *Rice v. McKenzie*, 581 F.2 1114, 1116 (4th Cir. 1978). In doing so, the Court applies an objective test. *See id.* The appearance of impropriety must be determined "by examining the record facts and the law, and then deciding whether a reasonable person knowing and understanding all of the relevant facts would recuse the judge." *In re Drexel Burnham Lambert Inc.,* 861 F.2d 1307, 1313 (2d Cir. 1988)*; accord United States v. Lovaglia,* 954 F.2d 811, 815 (2d Cir. 1992)*; Apple,* 829 F.2d at 333. "The alleged bias and prejudice to be disqualifying must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case." *United States v. Grinnell Corp.,* 384 U.S. 563, 583 (1966) (citing *Berger v. U.S.*, 255 U.S. 22, 29 (1921))*; accord Lewis v. Tuscan Dairy Farms, Inc.,* 25 F.3d 1138, 1141 (2d Cir. 1994). "[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky v. United States,* 510 U.S. 540, 555 (1994). *See also United States v. Colon,* 961 F.2d 41, 44 (2d Cir. 1992) ("[E]arlier adverse rulings, without more, do not provide a reasonable basis for questioning a judge's impartiality.")*; accord Schiff v. United States,* 919 F.2d 830, 834 (2d Cir. 1990).

Prior to my appointment to the Court, at different times, I was a member of the law firms of Shearman and Morgan Lewis (together, the "Firms"). I am not currently a member of either

---

(iv) Is to the judge's knowledge likely to be a material witness in the proceeding.
28 U.S.C. §§ 455(b)(3)-(5).

Firm. I have no interest, financial or otherwise, in either Firm. Since my departure from the Firms, I have not been compensated directly or indirectly, in any way by either Firm, for any reason. Neither firm has appeared in this case on its own behalf or on behalf of a client. To the best of my knowledge, during my tenure at the Firms, I did not provide services, legal or otherwise, to the individuals or entities that Plaintiff maintains are party to the Auerbach-Gorelick Scheme. My former relationships to the Firms do not disqualify me from presiding over this matter. It is clear that a reasonable person would not have a reasonable basis for questioning whether my former association with either Firm disqualifies me from presiding over this case. Moreover, all rulings that I have made in this case, to date, have been based on the merits of the legal and factual arguments that are a matter of record. I deny the Debtor's motion to disqualify me from presiding over this litigation.

**Defendants' Motion**

***The Rule 41(b) Motion***

Federal Rule 41(b) states, as follows:

> If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it. Unless the dismissal order states otherwise, a dismissal under this subdivision (b) and any dismissal not under this rule—except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19—operates as an adjudication on the merits.

Fed. R. Civ. P. 41(b). The decision whether to dismiss a complaint for want of prosecution lies within the Court's discretion. *See, e.g., Minnette v. Time Warner,* 997 F.2d 1023, 1027 (2d Cir. 1993); *Peart v. City of New York,* 992 F.2d 458, 461 (2d Cir. 1993). The use of an involuntary dismissal should be employed only when the court "is sure of the impotence of lesser sanctions." *Chira v. Lockheed Aircraft Corp.*, 634 F.2d 664, 665 (2d Cir. 1980) (affirming dismissal where the "behavior of plaintiff and his attorney in this case was dilatory, obstreperous, and resolute").

To that end, it is settled that "'pro se plaintiffs should be granted special leniency regarding procedural matters.'" *Komatsu v. City of New York*, No. 20-cv-10942, 2022 WL 1446545, at *10 (S.D.N.Y. April 21, 2022) (quoting *Lucas v. Miles*, 84 F.3d 532, 535 (2d Cir. 1996)), *report and recommendation adopted*, No. 20-cv-10942, 2022 WL 2188170 (S.D.N.Y. June 17, 2022).

Plaintiff has not complied with the Court's pre-trial orders. However, in recognition of Plaintiff's pro se status, the Court denies the Rule 41(b) Motion, without prejudice, and directs, as follows:

> 1. The parties shall submit a proposed Joint Pre-Trial Order and a Joint Exhibit Book with exhibits pre-marked, on or before May 8, 2025.

> 2. A final pre-trial conference will be held on May 22, 2025 at 2:00 p.m. (ET) via Court Solutions.

## CONCLUSION

The Court resolves the Rule 41(b) Motion and Plaintiff's Motions in the manner and on the grounds set forth herein.

IT IS SO ORDERED.

Dated: April 11, 2025
New York, New York

/s/ *James L. Garrity, Jr.*
Hon. James L. Garrity, Jr.
U.S. Bankruptcy Judge