| | | |
|---|---|---|
| **UNITED STATES BANKRUPTCY COURT** | | NOT FOR PUBLICATION |
| **SOUTHERN DISTRICT OF NEW YORK** | | |
| ------------------------------------------------------------x | | |
| In re: | : | Chapter 7 |
| | : | |
| Michael Grabis, | : | |
| | : | |
| Debtor. | : | Case No. 13-10669 (JLG) |
| ------------------------------------------------------------x | | |
| | : | |
| Michael Grabis, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Adv. P. No.: 15-01420 (JLG) |
| | : | |
| Navient Solutions, LLC, *et al.*, | : | |
| | : | |
| Defendants. | : | |
| ------------------------------------------------------------x | | |

**MEMORANDUM DECISION AND ORDER DENYING
PLAINTIFF'S NEW MOTIONS SUBMISSION**[1]


**A P P E A R A N C E S :**

MICHAEL GRABIS
*Appearing Pro Se*
1 Hay Drive
Morristown, NJ 07960


PAUL J. HOOTEN & ASSOCIATES
*Attorney for Navient Solutions, LLC*
5505 Nesconset Highway, Suite 203
Mt. Sinai, NY 11706
By:   Paul J. Hooten, Esq.

---

[1] Plaintiff's New Motions Submission consists of the following motions: Motion For Emergency Stay, Motion For Relief Of Recent Orders, Motion To Vacate Orders, Motion For Recusal, Motion To Submit Evidence For Fraud On Court With Navient And Raytheon Fraud Findings And Raytheon Auerbach Whitsleblower Complaint Under False Claims Act, Submission Of Criminal Complaint, and Motion For Leave/Suspension Of Adversary Proceeding To File Whistleblower Complaint.

LAW OFFICES OF KENNETH L. BAUM
*Attorney for ECMC Inc.*
201 W Passaic Street, Suite 104
Rochelle Park, NJ 07662
By:  Kenneth L. Baum, Esq.

**<u>HON. JAMES L. GARRITY, JR.</u>**
**<u>U.S. BANKRUPTCY JUDGE</u>**

## INTRODUCTION[2]

Michael Grabis ("Plaintiff") is a chapter 7 debtor herein. He is acting pro se in this adversary proceeding. He financed his college education at Lafayette College ("Lafayette"), at least, in part, with Student Loans. He defaulted under those loans. He is the plaintiff, and Educational Credit Management Corporation ("ECMC") and Navient Solutions, LLC ("Navient") are the remaining defendants, in this adversary proceeding. In it, he seeks a determination that his Student Loan Debt is not excepted from discharge under section 523(a)(8) of title 11 of the United States Code (the "Bankruptcy Code").

By order dated April 11, 2025 (the "April 2025 Order"),[3] the Court resolved a number of motions filed by Plaintiff, ECMC, and Navient in this case. As relevant to the matters presently before the Court, pursuant to the April 2025 Order, the Court denied Plaintiff's motions/requests:

(i) for leave to amend the Complaint to add claims for fraud upon the Court and against additional defendants, April 2025 Order at 22-25,

(ii) to subpoena various witnesses and reopen discovery in the adversary proceeding, *id*. at 26-29,

(iii) to compel ECMC to admit that in student loan discharge cases, they are representing the interests Raytheon Corporation ("Raytheon"), *id*. at 29-31,

---

[2] Capitalized terms shall have the meanings ascribed to them herein. "ECF No. ___" refers to a document filed in Plaintiff's chapter 7 case (No. 13-10669). "AP ECF No. __" refers to a document filed in this adversary proceeding.

[3] *Memorandum Decision and Order Resolving Motions Filed by Plaintiff, Educational Credit Management Corporation and Navient Solutions, LLC*, AP ECF No. 527.

2

  (iv)  for summary judgment that ECMC and Navient, in conjunction with Raytheon and The Carlyle Group, have offered false documents in this adversary proceeding to hide their scheme to commit fraud on the Court, *id*. at 31-33, and

  (v)  for the Court to recuse itself from the case, *id*. at 33-36.

Before the Court is Plaintiff's New Motions Submission (the "New Motions"),[4] in which Plaintiff purports to assert the following claims for relief:

  (a)  Motion For Relief From/Vacate The April 2025 Order,

  (b)  Motion For Recusal,

  (c)  Motion To Submit Evidence,

  (d)  Motion For Leave To File Criminal Complaint And Whistleblower Complaint, and

  (e)  Motion For Emergency Stay.

*See generally* New Motions. ECMC and Navient submitted a joint response in opposition to the New Motions.[5] For the reasons set forth herein, the Court denies the New Motions.

---

[4] *NEW MOTIONS SUBMISSION: MOTION FOR EMERGENCY STAY, MOTION FOR RELIEF OF RECENT ORDERS, MOTION TO VACATE ORDERS, MOTION FOR RECUSAL, MOTION TO SUBMIT EVIDENCE FOR FRAUD ON COURT WITH NAVIENT AND RAYTHEON FRAUD FINDINGS AND RAYTHEON AUERBACH WHITSLEBLOWER COMPLAINT UNDER FALSE CLAIMS ACT, SUBMISSION OF CRIMINAL COMPLAINT, MOTION FOR LEAVE/SUSPENSION OF ADVERSARY PROCEEDING TO FILE WHISTLEBLOWER COMPLAINT*, AP ECF No. 536.

[5] *Joint Response of Navient Solutions, LLC and Educational Credit Management Corporation's Response to Plaintiff's Motion for Emergency Stay, Motion for Relief of Recent Order, Motion to Vacate Orders, Motion for Recusal, Motion to Submit Evidence for Fraud on Court with Navient and Raytheon Fraud Findings and Raytheon Auerbach Whistleblower Complaint Under False Claims Act, Submission of Criminal Complaint, Motion for Leave/Suspension of Adversary Proceeding to File Whistleblower Complaint*, AP ECF No. 537.

3

## JURISDICTION

The Court has jurisdiction to consider these matters pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Referral of Cases to Bankruptcy Judges of the United States District Court for the Southern District of New York, dated January 31, 2012 (Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

## BACKGROUND

**Facts**[6]

Plaintiff's unsecured indebtedness includes debts on account of federal and private student loans (collectively, the "Student Loans" or the "Student Loan Debt") that he incurred as a student at Lafayette, as follows:

> (i) ECMC, in its capacity as a federal student loan guarantor in the Federal Family Education Loan Program, holds an interest in two consolidation loans owed by Plaintiff, each of which was disbursed on or about June 24, 2005, in the original principal amounts of $19,934 and $30,096 (collectively, the "Consolidation Loans").
>
> (ii) Navient, as holder of five private educational loans, with an aggregate balance, including principal, interest and fees, of more than $119,095.39 (collectively, the "Private Loans").

April 2025 Order at 2-3 (citations omitted). Plaintiff received his discharge in bankruptcy.[7] In this adversary proceeding, Plaintiff seeks a determination that his Student Loan Debt is not excepted from discharge under section 523(a)(8) of the Bankruptcy Code.

---

[6] The facts are set forth in the April 2025 Order. The Court assumes familiarity with that order. Except as necessary, the Court will not repeat them herein.

[7] *Order of Discharged and Order of Final Decree* (the "Discharge Order"), ECF No. 8.

4

In his Complaint,[8] Plaintiff asserts that he filed this adversary proceeding "as an addition to my core bankruptcy proceeding to discharge my student loans under [Bankruptcy] Rule 4007(b), 11 U.S.C[. §] 523 (a)(8), as per my rights to a 'fresh start' under the U.S. Bankruptcy Code." Complaint at 2. He alleges that there are two reasons why this Court should grant him such relief. First, he says that he is entitled to "the full discharge of the unqualified private loan portion of my debt and full discharge of my federal debt, both under section 523(a)(8) of the [B]ankruptcy [C]ode[,]" because

> [u]nder the standard tests for discharge of student loans I have made a good faith effort to repay my loans, I am currently unable and will be unable to repay the loans for a considerable period, and I have not been able to maintain a minimal standard of living as defined by the poverty guidelines.

*Id*. He asks this Court

> to recognize that the size and nature of my debt make my case fundamentally different from any guidelines decided under the Brunner case standard which dealt with federal student loans for graduate education under $15,000 dollars close to 30 years ago in an economic environment far different from today. My debt is largely unqualified private student loans which are dischargeable under the [B]ankruptcy [C]ode. The Southern District of New York has jurisdiction of the *Brunner* standard.

*Id*.[9]

Second, he maintains that he is entitled to relief under section 523(a)(8) to redress the harm allegedly caused to him by defendants. He says that "I believe that my degree issuing college and lenders did not act in good faith in the origination and servicing of my student loans and, in fact, acted to collude, embezzle, and purposely defraud me as a student borrower." *Id*. at 1-2. Thus, in

---

[8] *See Third Adversary Complaint for Discharge of Student Loans* (the "Complaint"), AP ECF No. 84.

[9] The reference to "*Brunner*" is to *Brunner v. New York Higher Educ. Servs.,* 831 F.2d 395 (2d Cir. 1987) (per curiam).

5

addition to his *Brunner* based arguments, he asserts that "I am alleging fraud, breach of contract, and unjust enrichment in my defense of repayment." *Id.* at 2. Plaintiff is asking for damages that he says he has suffered by reason of defendants' fraud. He maintains that although he is "seeking the full discharge of the unqualified private loan portion of my debt and my federal debt, both under sections 523(a)(8) of the [B]ankruptcy [C]ode[,] [t]he fraud that occurred also caused damage to me personally and I am asking the court to grant damages from these parties to pay towards the debt and personal costs incurred as a result of the fraud." *Id.*

Section 523(a)(8) provides that a discharge under section 727 of the Bankruptcy Code does not discharge an individual debtor from any debt—

> (8) unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents, for—
>
> (A)(i) an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution; or
>
> (ii) an obligation to repay funds received as an educational benefit, scholarship, or stipend; or
>
> (B) any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a debtor who is an individual[.]

11 U.S.C. § 523(a)(8).[10]

---

[10] Section 523(a)(8) defines the term "qualified education loan" by reference to section 221 of the Internal Revenue Code, 26 U.S.C. § 221. Under that section, a "qualified education loan" is any indebtedness incurred by the taxpayer solely to pay "qualified higher education expenses"—

> which are incurred on behalf of the taxpayer, the taxpayer's spouse, or any dependent of the taxpayer as of the time the indebtedness was incurred,
>
> which are paid or incurred within a reasonable period of time before or after the indebtedness is incurred, and
>
> which are attributable to education furnished during a period during which the recipient was an eligible student.

There is no dispute that the Consolidation Loans fall within the scope of section 523(a)(8)(A). To show that those loans are not excepted from discharge, Plaintiff must prove that excepting such loans from discharge would impose an undue hardship on him. Likewise, it is undisputed that the Private Loans are outside of the scope of section 523(a)(8)(A). Thus, to prove that the Private Loans are not excepted from discharge, Plaintiff must establish either that (i) the Private Loans are not "qualified educational loans" under section 523(a)(8)(B), or (ii) under *Brunner*, it will be an undue hardship for him to repay that debt.

A "qualified education loan" is any indebtedness incurred to pay "qualified higher education expenses." *See* 26 U.S.C. § 221(d)(1). Those expenses encompass the "cost of attendance." *Id.* § 221(d)(2). Those costs include tuition, fees, and an allowance for books and other supplies. 20 U.S.C. § 1087ll; *see also supra* note 9. There is no dispute that Plaintiff applied for and obtained the Student Loans, and used the loan proceeds to pay his "qualified higher education expenses" at Lafayette. Still, Plaintiff maintains that the Discharge Order discharged the Private Loans debt, because those loans are not "qualified education loans." *See* April 2025 Order at 8. Those arguments have come to light in connection with Plaintiff's discovery requests.

First, Plaintiff maintains that with Sallie Mae's assistance, Lafayette forced him (and other borrowers) to take out student loans in amounts that exceeded the "cost of attendance," as defined

---

26 U.S.C. § 221(d)(1). Section 221(d)(2) defines the term "qualified higher education expenses" to mean the "cost of attendance (as defined in section 472 of the Higher Education Act of 1965, 20 U.S.C. § 1087ll, as in effect on the day before the date of the enactment of the Taxpayer Relief Act of 1997) at an eligible educational institution," reduced by educational expenses paid under certain other programs. 26 U.S.C. § 221(d)(2). In turn, section 472 of the Higher Education Act includes the following categories of costs within the definition of "cost of attendance":

> tuition and fees normally assessed a student carrying the same academic workload as determined by the institution; [and]
>
> an allowance for books, course materials, supplies, and equipment, which shall include all such costs required of all such students in the same course of study, including a reasonable allowance for the documented rental or upfront purchase of a personal computer, as determined by the institution[.]

20 U.S.C. § 1087ll.

7

in 26 U.S.C. § 221(d)(1). *Id*. He says that in doing so, Lafayette was able to create a reserve fund, which it used to pay outsized salary payments to Lafayette's president and other administrators, and other costs and expenses that are not associated with teaching and instruction or related to the normal cost of attendance. *Id.* (citation omitted). Plaintiff argues that the Private Loans are not qualified education loans because the loan proceeds were not applied to expenses associated with "teaching or instruction" as defined in the "cost of attendance" definition of 26 U.S.C. §221(d)(1) and therefore are not "school certified." *Id.*

Plaintiff also argues that the Private Loans are not qualified education loans because through the student loan programs, Lafayette, and other colleges and universities across the country (the "Institutions"), are engaged in a massive illegal tax fraud that profits from the student loans. *Id.* (citation omitted). Specifically, Plaintiff contends that Lafayette engaged in tax fraud by withholding grant money from him and others, and Sallie Mae aided the alleged tax fraud scheme by (i) pushing Lafayette and other schools to break tax laws by causing students to borrow funds in excess of the "cost of instruction"; and (ii) repeatedly loaning out funds it knew were dischargeable in bankruptcy but at the same time attempted to buy government influence to later deem the loans exempt from discharge under section 523(a)(8). *Id.*

The Court granted the Plaintiff discovery on matters relevant to whether the proceeds of the Private Loans were applied to expenses associated with "teaching and instruction." *Id.* at 9 (citation omitted).[11] The Court denied Plaintiff's requests for discovery related to Lafayette and

---

[11] For example, Lafayette produced the documents contained in Debtor's file at Lafayette. That consisted of information from the database that include a breakdown of the Debtor's grants, student loans and estimated family contribution amounts for the 1998-1999, 1999-2000, 2000-2001 and 2001-2002 school years (the "Lafayette Production"). April 2025 Order at 9 n.16. The Lafayette Production contains all documents in its possession that are responsive to the document request, including a calculation of the "cost of attendance" for the Debtor in each of the four years he attended Lafayette. *Id.*

8

Sallie Mae's alleged "tax fraud" as irrelevant to the issues underlying section 523(a)(8). *Id.* In part, the Court noted that Plaintiff "admits that the purpose behind his request for Lafayette's financial information is not to support the grounds for dischargeability, but to prove his theory that Lafayette, like other colleges and universities across America, and in conjunction with the [Department of Education], Sallie Mae, and ECMC, is engaged in a massive illegal tax fraud that profits from students." *Id.* (citation omitted). The Court also noted that Plaintiff was asserting damage claims against Lafayette based on its alleged fraud, breach of fiduciary duties, and/or violations of United States tax laws, in administering its student loan program and that the Court had dismissed those claims as beyond the scope of section 523(a)(8). *Id.* (citation omitted).

Now, Plaintiff alleges that the Private Loans are not qualified education loans because two individuals—Reed Auerbach and Jamie Gorelick—allegedly formulated a scheme (the so-called "Auerbach-Gorelick Scheme") pursuant to which, without the knowledge of student loan borrowers, Institutions, including Lafayette, overcharged student borrowers and used the increased principal amounts of student loans to subsidize weapon sales by the Raytheon Corporation ("Raytheon") and Northrop Grumman ("Northrop") to Saudi Arabia, and to avoid taxation for these sales by laundering the payments from Saudi Arabia through the Institutions' endowment funds. *Id*. at 16-17. He says that the Auerbach-Gorelick Scheme calls for Institutions to:

    i.    overcharge students far beyond the cost of attendance and thereby raise the principal amounts charged to students,

    ii.    restrict the award of grants to students,

    iii.    force students to incur large amounts of student loan indebtedness,

    iv.    package the student loans into transferable securities,

    v.    funnel the loan proceeds to offshore accounts without alerting the Internal Revenue Service and in violation of the Internal Revenue Code,

9

      vi.    use the proceeds to subsidize contract sales of military grade munitions manufactured by Raytheon and Northrop to Saudi Arabia, and

      vii.    receive payment for the munitions from Saudi Arabia through college and university endowment funds.

*Id.* at 17 (citation omitted).

Plaintiff says that Auerbach and Gorelick organized and perpetrated the scheme with the assistance of Rodney Frelinghuysen, Christy Todd Whitman, Mikie Sherrill, David Rubenstein, Lawrence Fink, and a host of executives for Raytheon and The Carlyle Group. *Id.* at 18 (citation omitted). He identifies the following individuals as "[k]ey operatives" who were hired by Raytheon and The Carlyle Group to propel the Auerbach-Gorelick Scheme: Victoria Nuland, Robert Kagan, Merrick Garland, David Rubenstein, Glenn Youngkin, Wayne Abernathy, Jared Kushner, Craig Annis, Jerome Powell, Arthur Rothkopf, and Presidents Biden and Trump. *Id.* (citation omitted). He also says that the following law firms are involved in the scheme: Kirkland & Ellis, LLP, Morgan Lewis & Bockius, LLP ("Morgan Lewis"), and Shearman & Sterling, LLP ("Shearman"). *Id.* (citation omitted).

Plaintiff contended that the Court should stay any dismissal of the adversary proceeding and grant him leave to pursue fraud claims, pursuant to Rule 9 of the Federal Rules of Civil Procedure, against ECMC, Navient, and other alleged accomplices to the Auerbach-Gorelick Scheme that he identified in the motions. *Id.* at 23. Plaintiff also sought leave to amend the Complaint to add the following, as defendants: (i) BlackRock, and its officers, (ii) The Carlyle Group, and its officers, (iii) Raytheon, and its officers, (iv) Morgan Lewis, (v) Reed Auerbach, (vi) Lou Bollinger, (vii) Great Swamp Watershed Trust, (viii) the DOE, and (ix) Lafayette. *Id.*

The Court denied all of Plaintiff's requests for relief. *See id.* at 22-37. In part, the Court reasoned that the principle that Plaintiff advocates in support of his claims for relief, including his

10

request to amend the Complaint, is that an Institution's use of the proceeds of a student loan dictates whether that loan is a "qualified education loan" under section 523(a)(8) of the Bankruptcy Code. *Id*. at 23. The Court rejected that contention. *Id.* In part, the court reasoned:

> "[T]he plain text of § 523(a)(8)(B) requires looking to the stated purpose of the loan at the time of the agreement, rather than supplementing the stated purpose with ancillary information from the debtor's use of the loan funds." *Mazloom v. Navient Solutions, LLC (In re Mazloom)*, 648 B.R. 1, 12 (Bankr. N.D.N.Y. 2023). "[T]he 'purpose test,' also known as the 'substance of the transaction test' . . . holds that the proper analysis in a § 523(a)(8)(B) case is to look at the initial purpose of the loan, rather than the actual use of the funds, to establish the purpose of the loan." *Id.* (citing *Conti v. Arrowood Indem. Co. (In re Conti)*, 982 F.3d 445 (6th Cir. 2020); *Busson-Sokolik v. Milwaukee Sch. of Eng'g (In re Busson-Sokolik)*, 635 F.3d 261 (7th Cir. 2011)); *see also Mehlman v. New York City Bd. Of Educ. (In re Mehlman)*, 268 B.R. 379, 386 (Bankr. S.D.N.Y. 2001) (interpreting substantially similar language in a prior version of 11 U.S.C. § 523(a)(8)) ("[A] finding that a debt constitutes a 'student loan' or 'educational benefit' as defined under the statute is sufficient to invoke Section 523(a)(8). Nothing in the statute limits its application where some third party also receives a benefit, or where some additional objective is fulfilled."). In short, the "'[p]urpose [t]est' restricts a federally-subsidized or qualified educational loan from degenerating into a non-qualified loan . . . ." *Dufrane v. Navient Solutions, Inc. (In re Dufrane),* 566 B.R. 28, 40 (Bankr. C.D. Cal. 2017) (emphasis omitted).

*Id*. at 23-24. At issue in this adversary proceeding is whether the Student Loan Debt is excepted from discharge under section 523(a)(8) of the Bankruptcy Code. Plaintiff's contentions regarding Lafayette's alleged participation the alleged wrongdoing by Auerbach, Gorelick and their alleged accomplices in giving effect to the Auerbach-Gorelick Scheme, have no bearing on the resolution of this matter.

11

**DISCUSSION**

**A. Motion For Relief From/Vacate The April 2025 Order**

The Debtor did not specify the predicate for his request that the Court vacate the April 2025 Order. In light of Plaintiff's pro se status, the Court construes his request as purporting to seek relief from the order under Rules 9023 and 9024 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), which incorporate Rules 59 and 60, respectively, of the Federal Rules of Civil Procedure. *See Soto v. Cnty. of Westchester*, 08-CV-5066, 2018 WL 527977, at *1 (S.D.N.Y. Jan. 22, 2018) ("The Plaintiff did not characterize his submissions to the Court as being brought pursuant to Rule 60 or any other Federal Rule of Civil Procedure. However, 'it is well established that the submissions of a pro se litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" (internal citation omitted) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006))).

Local Bankruptcy Rule 9023-1(a) provides that a motion for rehearing under Bankruptcy Rule 9023 must be filed within fourteen days after entry of the Court's order that is the subject of the request for rehearing. LBR 9023-1(a). The Court entered the April 2025 Order on April 11, 2025. The last day Plaintiff could timely file a motion under Local Rule 9023-1 was Friday, April 25, 2025. *See* Fed. R. Bankr. P. 9006(a)(1).[12] Plaintiff filed the New Motions on May 23, 2025,

---

[12] Bankruptcy Rule 9006 (a) states, as follows:

(a) Computing Time. The following rules apply in computing any time period specified in these rules, in the Federal Rules of Civil Procedure, in any local rule or court order, or in any statute that does not specify a method of computing time.

(1) Period Stated in Days or a Longer Unit**.** When the period is stated in days or a longer unit of time:

(A) exclude the day of the event that triggers the period;

(B) count every day, including intermediate Saturdays, Sundays, and legal holidays; and

12

nearly one month after the Local Rule 9023-1 deadline. "While this court is required to liberally construe pro se filings, the court is not required to 'liberally construe' adherence to court deadlines." *Carr v. Her*, No. 2:09-cv-0826, 2011 WL 463218, at *1 (E.D. Cal. Feb. 4, 2011). Plaintiff is time-barred from obtaining relief under Bankruptcy Rule 9023.

The six grounds under Rule 60 of the Federal Rules of Civil Procedure for which a court may grant relief from an order or judgment are: "(1) mistake, inadvertence, surprise, excusable neglect; (2) newly discovered evidence; (3) fraud, misrepresentation, or misconduct; (4) the judgment is void; (5) the judgment has been satisfied, released, discharged, or it is no longer equitable; or (6) any other reason that justifies relief." *In re Residential Capital, LLC*, No. 12-12020, 2015 WL 1636440, at *4 (Bankr. S.D.N.Y. Apr. 10, 2015) (internal quotation marks omitted) (citing Fed. R. Civ. P. 60(b)). In support of his request to vacate the April 2025 Order, Plaintiff states:

> I am making a motion to vacate recent orders in order for the court to receive submission of new evidence of fraud and dischargeability of debt in question, a criminal complaint, to receive notice of a whistleblower complaint, and to allow leave in order for the whistleblower complaint to be filed with the Department of Justice Civil Division.

New Motions ¶ 2. "While the courts liberally construe pro se pleadings as a matter of course judges are not also required to construct a party's legal arguments for him." *Smith v. Endicott*, 998 F.2d 411, 417-18 (7th Cir. 1993) (citation omitted); *see also Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) ("Despite the liberal construction afforded pro se pleadings, the court will not construct arguments or theories for the plaintiff in the absence of any discussion of those

---

(C) include the last day of the period, but if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday.

Fed. R. Bankr. P. 9006(a).

issues."). Plaintiff makes no factual or legal arguments in support of request for relief from the April 2025 Order. Plaintiff has not demonstrated that he is entitled to relief under Bankruptcy Rule 9024. The Court denies the Motion For Relief From/Vacate The April 2025 Order.

**B. Motion For Recusal**

In support of the Motion For Recusal, Plaintiff contends that "a conflict of interest exists between the Judge and the law firms involved with the [alleged] existing fraud I have mentioned in this case." New Motions ¶ 3. He maintains that "[t]he parties [allegedly] involved, Raytheon and Navient, have been and are represented by the Judge's former employer law firms [i.e., Morgan Lewis and Shearman]," and that "[a]ny judgement or order by Judge Garrity could be viewed as biased due to the Judge's prior employment with these law firms." *Id*. In addition, he complains that that "[t]here is also a question of blocked discovery from the [D]epartment of [E]ducation which has arisen during this adversary proceeding. I believe Judge Garrity demonstrated bias in this judgement and should the Department of Education have faced a discovery order prior to dismissal from this case then discharge of the debt would have been revealed and a trial order made to be erroneous." *Id*. In the April 2025 Order, the Court addressed, and rejected, essentially the same arguments. *See* April 2025 Order at 33-36.[13]

---

[13] In support of his request that I recuse myself from the adversary proceeding, Plaintiff argued, in substance, that:

> Prior to my appointment to the Court I was employed, at different times, by Shearman & Sterling, LLP and Morgan Lewis & Bockius, LLP, two law firms that he contends aided and abetted the "student loans for weapons scheme" and concealing dischargeability in bankruptcy eligibility of those unqualified loans. He says my continued role in this case gives the appearance of impropriety. I dismissed the DOE from the Complaint on the eve of discovery in which the DOE would have been required to reveal the dischargeability of his loans. During a hearing before the Court, counsel for the DOE made non-verbal gestures to influence and signal me from ruling for discovery. He says this action signaled to him that the DOE could influence me for some unknown reasons.

April 2025 Order at 33 (citation omitted).

14

Plaintiff cites no support for his request. Given Plaintiff's pro se status, the Court treats this matter as a request for relief under section 455 of the Judiciary Code. It is made applicable to this case by Bankruptcy Rule 5004(a), which states, as follows:

> A bankruptcy judge's disqualification is governed by 28 U.S.C. § 455. The judge is disqualified from presiding over a proceeding or contested matter in which a disqualifying circumstance arises--and, when appropriate, from presiding over the entire case.

Fed. R. Bankr. R. 5004(a).[14] Section 455(a) of the Judiciary Code states that "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). The Second Circuit has stated that recusal under section 455 requires a showing that would cause "'an objective, disinterested observer fully informed of the underlying facts [to] entertain significant doubt that justice would be done absent recusal.'" *In re Aguinda*, 241 F.3d 194, 201 (2d Cir. 2001) (quoting *United States v. Lovaglia*, 954 F.2d 811, 815 (2d Cir. 1992)).

Section 455(a) was "intended to establish an objective standard designed to promote public confidence in the impartiality of the judicial process." *Lovaglia*, 954 F.2d at 815; *see also In re Drexel Burnham Lambert, Inc.*, 861 F.2d 1307, 1313 (2d Cir. 1988) (stating that "the test to be applied is an objective one which assumes that a reasonable person knows and understands all the

---

[14] Section 144 of the Judiciary Code states:

> Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

28 U.S.C. § 144. In this Circuit, it is settled that "Section 144 does not apply to bankruptcy judges." *In re Teligent, Inc.*, No. 01–12974, 2005 WL 267956, at *2 n.7 (Bankr. S.D.N.Y. Feb. 3, 2005) (citing *Smith v. Edwards & Hale, Ltd. (In re Smith)*, 317 F.3d 918, 932 (9th Cir. 2002), *cert. denied*, 538 U.S. 1032 (2003); *Dubnoff v. Goldstein*, 385 F.2d 717, 720 (2d Cir. 1967)); *see, e.g., In re Savage & Assocs., P.C.*, No. 05 Civ.2072, 2005 WL 488643, at *1 (S.D.N.Y. Feb. 28, 2005) (citing *Dubnoff*, 385 F.2d at 720) (observing that "[t]he Second Circuit has held . . . that section 144 does not apply to bankruptcy judges").

15

relevant facts."). The determination whether to recuse is committed to the court's "sound discretion." *Weisshaus v. Fagan*, 456 F. App'x 32, 34 (2d Cir. 2012) (quoting *LoCascio v. United States*, 473 F.3d 493, 495 (2d Cir. 2007)).

"[T]here exists a strong presumption of a judge's impartiality which may only be overcome by adequate proof to the contrary." *Wiltshire v. Williams*, No. 10 Civ. 6947, 2012 WL 899383, at *6 (S.D.N.Y. Mar. 16, 2012) (citing *United States v. Occhipinti*, 851 F. Supp. 523, 525 (S.D.N.Y. 1993)). Thus, recusal is the exception, not the rule, and the burden is on the moving party to "overcome [the] presumption of impartiality, and the burden for doing so is substantial." *Da Silva Moore v. Publicis Groupe*, 868 F. Supp. 2d 137, 150 (S.D.N.Y. 2012) (quoting *Metro. Opera Ass'n, Inc. v. Local 100, Hotel Emps. Int'l Union*, 332 F. Supp. 2d 667, 670 (S.D.N.Y. 2004)). However, "'judicial rulings alone almost never constitute valid basis for a bias or partiality motion,' and 'opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible.'" *Loeber v. Spargo*, 391 F. App'x 55, 59 (2d Cir. 2010) (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)), *cert. denied*, 563 U.S. 1029 (2011).

There is no merit to Plaintiff's claims. Morgan Lewis and Shearman have not appeared in this case and the Plaintiff's allegations regarding the alleged Auerbach-Gorelick Scheme have no bearing on the dischargeability of the Student Loan Debt.[15] Moreover, Plaintiff's disagreement

---

[15] In part, section 455(b) states:

[The judge] shall also disqualify himself in the following circumstances:

(1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;

16

with the Court's evidentiary rulings is not grounds for recusal. *See Litesky*, 510 U.S. at 555 ("[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion.").

The Court denies the Motion For Recusal.

### C. Motion To Submit Evidence

Plaintiff seeks leave of the Court to submit evidence of fraud on the court, fraud by inducement, dischargeability of debt-unqualified debt, and lack of exemption from bankruptcy. New Motions ¶ 4. He asserts that the motion will include:

> Submission of the recent Consumer Financial Protection Bureau's finding of fraud against Navient for withholding Income Based Repayment Plans from student loan borrowers for purposes of unjust enrichment. I will also submit the Eastern District of New York's recent fraud finding against Raytheon Corporation for a pricing scheme for purposes of unjust enrichment.
>
> . . . .
>
> [T]he Reed Auerbach plan . . . involves both Navient and Raytheon and involves these demonstrated instances of fraud and include[s] the creation of ECMC, the party that has intervened in this proceeding, and the inducement of myself into this adversary proceeding, and the concealment of dischargeability of my debt by the original bankruptcy discharge order I received prior to the filing of this adversary proceeding.

*Id*. For the reasons set forth herein and in the April 2025 Order, these matters have no bearing on the dischargeability of the Student Loan Debt. The Court denies Plaintiff's Motion To Submit Evidence.

---

> (2) Where in private practice he served as lawyer in the matter in controversy, or a lawyer with whom he previously practiced law served during such association as a lawyer concerning the matter, or the judge or such lawyer has been a material witness concerning it[.]

28 U.S.C. § 455(b)(1)-(2). Neither provision is applicable. I have no personal knowledge of any of the disputed evidentiary facts in this matter, and no personal bias or prejudice concerning the Plaintiff. My sole contact with the Plaintiff has been in this case. Further, when I was in private practice I did not serve as a lawyer in the matters in controversy herein, and no lawyer that I previously practiced with served in such capacity. Finally, I am not a material witness to the matters at issue. No lawyer that I previously practiced with is a material witness to the matters at issue herein.

17

**D. Motion For Leave To File Criminal Complaint And Whistleblower Complaint**

Plaintiff incurred the Student Loan Debt, applied the loan proceeds to finance his education at Lafayette and, ultimately, defaulted under his obligation to repay the loans. In support of his request for relief, Plaintiff erroneously maintains that, based on Lafayette, ECMC, and Navient's alleged participation in the Auerbach-Gorelick Scheme, the Student Loan Debt is dischargeable in this chapter 7 case.

Plaintiff seeks a stay of the adversary proceeding and leave to file a criminal complaint and whistleblower complaint against ECMC, Navient, Auerbach, Raytheon, and others. New Motions ¶¶ 1, 5-6. He says the complaint will address the relationship between Auerbach, Navient, Raytheon, the Department of Education, and ECMC. *Id*. ¶ 5. He contends that these parties conspired to force student loan borrowing by Plaintiff and others to subsidize a non-educational expense of Raytheon and increase profit on deals, while concealing the forced loans were not qualified loans as defined by the IRS code and, therefore, not exempt from bankruptcy. *Id*. He says those parties then sought to induce borrowers, including himself, to file adversary proceedings in order to discharge debts that were already discharged by original bankruptcy orders, or at least eligible for discharge under a chapter 7 bankruptcy filing. *Id*.

For the reasons set forth herein and in the April 2025 Order, the alleged wrongdoing by Auerbach and his alleged co-conspirators has no bearing on the dischargeability of the Student Loan Debt. The Court denies Plaintiff's Motion For Leave To File Criminal Complaint And Whistleblower Complaint.

**E. Motion For Emergency Stay**

Plaintiff seeks entry of an order staying prosecution of the adversary proceeding pending resolution of "several motions based on new evidence of fraud and to submit evidence of that fraud . . . ." *Id.* ¶ 1. The Court understands those matters to relate to the alleged Auerbach-Gorelick Scheme. For the reasons stated herein and in the April 2025 Order, those matters have no bearing on the dischargeability of the Student Loan Debt. The Court denies the Motion For Emergency Stay of these proceedings.

## CONCLUSION

Based on the foregoing, the Court denies the New Motions.

IT IS SO ORDERED.

Dated:  August 7, 2025
New York, New York

/s/ *James L. Garrity, Jr.*
Honorable James L. Garrity, Jr.
United States Bankruptcy Judge