**UNITED STATES BANKRUPTCY COURT**                    NOT FOR PUBLICATION
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------------x

In re:                                              :        Chapter 7
                                                    :
Michael Grabis,                                     :
                                                    :
                              Debtor.               :        Case No. 13-10669 (JLG)

------------------------------------------------------------------------x
                                                    :
Michael Grabis,                                     :
                                                    :
                              Plaintiff,            :
                                                    :
v.                                                  :        Adv. P. No.: 15-01420 (JLG)
                                                    :
Navient Solutions, LLC, *et al.*,                   :
                                                    :
                              Defendants.           :

------------------------------------------------------------------------x

<u>**MEMORANDUM DECISION AND ORDER**</u>


**A P P E A R A N C E S :**


Michael Grabis
*Appearing Pro Se*
1 Hay Drive
Morristown, NJ 07960

PAUL J. HOOTEN & ASSOCIATES
*Attorney for Navient Solutions, LLC.*
5505 Nesconset Highway, Suite 203
Mt. Sinai, NY 11706
By:     Paul J. Hooten, Esq.

LAW OFFICE OF KENNETH L. BAUM
*Attorney for ECMC*
167 Main Street
Hackensack, NJ 07601
By:     Kenneth L. Baum, Esq.

**HON. JAMES L. GARRITY, JR.**
**U.S. BANKRUPTCY JUDGE**

### INTRODUCTION[1]

Michael Grabis ("Plaintiff") is a chapter 7 debtor. He financed his college education at Lafayette College ("Lafayette"), at least in part, with Student Loans. He paid the proceeds of those loans in satisfaction of "qualified education costs" associated with his college education. He is in default under the loans. Plaintiff is acting *pro se* in this adversary proceeding. The operative complaint is his "Third Adversary Complaint for Discharge of Student Loans" (the "Complaint").[2] Educational Credit Management Corporation ("ECMC") and Navient Solutions, LLC ("Navient") are the remaining defendants (the "Defendants") in the Complaint.

Plaintiff commenced this adversary proceeding seeking two forms of relief. First, he sought a determination that his Student Loan Debt is not excepted from discharge under section 523(a)(8) of title 11 of the United States Code (the "Bankruptcy Code"), based on his alleged inability to pay the debts, and application of the factors set forth in *Brunner v. New York Higher Educ. Servs.*, 831 F.2d 395 (2d Cir. 1987) (per curiam) ("*Brunner*"). Second, he asserted damage claims against Lafayette, Sallie Mae and Navient based on their alleged participation in a tax fraud scheme. Now, he says that his Student Loans are not "qualified education loans" because Lafayette, and other institutions throughout the United States (the "Institutions") are inflating the cost of education for student borrowers and using the proceeds of the inflated student loans to subsidize secret weapon sales by Raytheon Inc. ("Raytheon") and Northrop Gruman ("Northrop") to Saudi Arabia;

---

[1] Capitalized terms shall have the meanings ascribed to them herein. "ECF No.      " refers to a document filed in Plaintiff's chapter 7 case (No. 13-10669-JLG). "AP ECF No. ___" refers to a document filed in this adversary proceeding.

[2] *See* AP ECF No. 84.

Raytheon and Northrop allegedly launder the payments from Saudi Arabia through the Institutions' endowment funds.

In resolving motions filed in this action, the Court dismissed Plaintiff's claims for damages and ruled that Lafayette's and the Institutions' alleged tax fraud has no bearing on whether the Student Loan Debt is excepted from discharge under section 523(a)(8). In each of four Scheduling Orders, the Court directed the parties to submit a Joint Pre-Trial Order and Joint Exhibit Book and scheduled a trial of the adversary proceeding. ECMC and Navient complied with each order; Plaintiff ignored them. He refuses to proceed to trial on the terms set forth by the Court. Instead, in response to the orders, on multiple occasions, he has sought leave to amend the Complaint to prosecute damage claims against the Institutions and their alleged supporters (including President Trump and President Biden), on behalf of student loan borrowers nationwide, and to conduct wide-ranging discovery in support of those claims for relief.

The matter before the Court is the Court's Rule 41(b) Show Cause Order.[3] The Court issued it in the wake of (i) Plaintiff's failure to comply with any of the Scheduling Orders, including his steadfast refusal to provide input to a Joint Pre-Trial Statement and Joint Exhibit Book prepared by Navient and ECMC, and (ii) Plaintiff's failure to respond to Defendants' Rule 41(b) Motion to dismiss the Complaint.[4] The Rule 41(b) Show Cause Order directs Plaintiff to show cause why the Court should not dismiss the adversary proceeding pursuant to Rule 41(b) of the Federal Rules of Civil Procedure ("Rule 41(b)")[5] based on Plaintiff's failure to prosecute this action. In response to

---

[3] *Order to Show Cause Why the Court Should Not Dismiss Case for Failure to Prosecute* (the "Rule 41(b) Show Cause Order"), AP ECF No. 530.

[4] *Joint Motion of Educational Credit Management Corporation and Navient Solutions, LLC, to Dismiss Adversary Proceeding Pursuant to Fed. R. Civ. P. 41(b)* (the "Rule 41(b) Motion"), AP ECF No. 420.

[5] With certain irrelevant conditions, Rule 7041 of the Federal Rules of Bankruptcy Procedure makes Rule 41 applicable in adversary proceedings.

the order, by email, he advised the Court that he rested on the papers he has filed herein, and would not appear at a hearing on the order.

Dismissal of a complaint under Rule 41(b) is a harsh remedy, and particularly so for a *pro se* litigant, like Plaintiff. Still, it is appropriate here, as Plaintiff refuses to comply with the Scheduling Orders and has made it clear that he will not proceed to trial in accordance with the orders of this Court. Nonetheless, the Court will afford Plaintiff a final opportunity to comply with the Court's direction that Plaintiff proceed to trial in this adversary proceeding. The Court directs, as follows:

> 1. On or before February 16, 2026 at 5:00 p.m. (ET), Plaintiff shall provide to ECMC and Navient his comments/contributions to the Joint Pre-Trial Order and Joint Exhibit Book with exhibits pre-marked. ECMC shall file a status letter with the Court on February 17, 2026, at 11:00 a.m. (ET).

> 2. On or before February 20, 2026 at 5:00 p.m. (ET), the parties shall file the Joint Pre-Trial Order and Joint Exhibit Book with exhibits pre-marked with the Court.

> 3. On February 25, 2026, at 10:00 a.m. (ET), the Court shall conduct a final pre-trial conference via Court Solutions.

**Plaintiff's unexcused failure to comply with this order will result in the entry of an order dismissing the adversary proceeding, with prejudice, pursuant to Rule 41(b).**

## <u>JURISDICTION</u>

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Referral of Cases to Bankruptcy Judges of the United States District Court for the Southern District of New York, dated January 31, 2012 (Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

# BACKGROUND

## The Student Loan Debt

Plaintiff's unsecured indebtedness includes debts on account of federal and private student loans (collectively, the "Student Loans" or the "Student Loan Debt") that he incurred as a student at Lafayette, as follows:

> (i) ECMC, in its capacity as a federal student loan guarantor in the Federal Family Education Loan Program, holds an interest in two consolidation loans owed by Plaintiff, each of which was disbursed on or about June 24, 2005, in the original principal amounts of $19,934 and $30,096 (collectively, the "Consolidation Loans").

> (ii) Navient, as holder of five private educational loans, with an aggregate balance, including principal, interest and fees, of more than $119,095.39 (collectively, the "Private Loans").

Second Omnibus Motion Decision[6] at 3, 5.

## The Adversary Proceeding

### Section 523(a)(8)

Plaintiff received his discharge in bankruptcy.[7] Thereafter, he reopened his chapter 7 case,[8] for the express purpose of commencing an adversary proceeding seeking a determination that his Student Loan Debt is not excepted from discharge under section 523(a)(8) of the Bankruptcy Code.[9]

---

[6] *Memorandum Decision and Order Denying Plaintiff-Debtor's Statement and New Motions* (the "Second Omnibus Motion Decision"), AP ECF No. 395.

[7] *Order of Discharged and Order of Final Decree,* (the "Discharge Order"), ECF No. 8.

[8] *Order Reopening Case*, ECF No. 12.

[9] *See Complaint*, AP ECF No. 1. Section 523(a)(8) provides that a discharge under section 727 of the Bankruptcy Code does not discharge an individual debtor from any debt—

> (a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt—

The debts within the scope of section 523(a)(8) include "any . . . educational loan that is a 'qualified education loan' under section 221(d)(1) of the Internal Revenue Code, incurred by a debtor who is an individual." 11 U.S.C. § 523(a)(8)(B). Under that section, a "qualified education loan" is any indebtedness incurred by the taxpayer solely to pay "qualified higher education expenses." 26 U.S.C. § 221(d)(2). It means the "cost of attendance (as defined in section 472 of the Higher Education Act of 1965, 20 U.S.C. 1087ll, as in effect on the day before the date of the enactment of the Taxpayer Relief Act of 1997) at an eligible educational institution," reduced by educational expenses paid under certain other programs. *Id.*[10]

### *The Complaint*

As filed, Plaintiff's complaint named Sallie Mae, Navient, Lafayette, and the University of Vermont as defendants. Over Plaintiff's objection, the Court granted ECMC leave to intervene as

---

(8) unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents, for—

(A)(i) an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution; or (ii) an obligation to repay funds received as an educational benefit, scholarship, or stipend; or

(B) any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a debtor who is an individual[.]

11 U.S.C. § 523(a)(8).

[10] Section 472 of the Higher Education Act includes the following categories of costs within the definition of "cost of attendance":

(1) tuition and fees normally assessed a student carrying the same academic workload as determined by the institution, and including costs for rental or purchase of any equipment, materials, or supplies required of all students in the same course of study; [and]

(2) an allowance for books, supplies, transportation, and miscellaneous personal expenses, including a reasonable allowance for the documented rental or purchase of a personal computer, for a student attending the institution on at least a halftime basis, as determined by the institution[.]

20 U.S.C. § 1087ll.

a defendant.[11] In amending the complaint, Plaintiff added the Department of Education (the "DOE") as a defendant.

Plaintiff says he filed this adversary proceeding "as an addition to my core bankruptcy proceeding to discharge my student loans under [Bankruptcy] Rule 4007(b), 11 U.S.C[. §] 523 (a)(8), as per my rights to a 'fresh start' under the U.S. Bankruptcy Code." Complaint at 2. He alleges there are two reasons why this Court should grant him such relief. First, he says he is entitled to "the full discharge of the unqualified private loan portion of my debt and full discharge of my federal debt, both under section 523(a)(8) of the [B]ankruptcy [C]ode[,]" because

> [u]nder the standard tests for discharge of student loans I have made a good faith effort to repay my loans, I am currently unable and will be unable to repay the loans for a considerable period, and I have not been able to maintain a minimal standard of living as defined by the poverty guidelines.

*Id.* He asks this Court

> to recognize that the size and nature of my debt make my case fundamentally different from any guidelines decided under the *Brunner* case standard which dealt with federal student loans for graduate education under $15,000 dollars close to 30 years ago in an economic environment far different from today. My debt is largely unqualified private student loans which are dischargeable under the [B]ankruptcy [C]ode. The Southern District of New York has jurisdiction of the *Brunner* standard.

*Id.* Second, he maintains he is entitled to relief under section 523(a)(8) to redress the harm caused to him by the defendants. He says, "I believe that my degree issuing college and lenders did not act in good faith in the origination and servicing of my student loans and, in fact, acted to collude, embezzle, and purposely defraud me as a student borrower." *Id.* at 1-2. Thus, in addition to his *Brunner*-based arguments, he asserts "I am alleging fraud, breach of contract, and unjust

---

[11] *Order Authorizing Educational Credit Management Corporation to Intervene in Adversary Proceeding Pursuant to Fed. R. Civ. P. 24(a) and (b)*, AP ECF No. 16.

enrichment in my defense of repayment." *Id.* at 2. Plaintiff is asking for damages that he says he

has suffered by reason of the defendants' fraud. He maintains that although he is "seeking the full

discharge of the unqualified private loan portion of my debt and my federal debt, both under

sections 523(a)(8) of the [B]ankruptcy [C]ode[,] [t]he fraud that occurred also caused damage to

me personally and I am asking the court to grant damages from these parties to pay towards the

debt and personal costs incurred as a result of the fraud." *Id.*

Plaintiff stipulated to dismiss the University of Vermont from the adversary proceeding.[12]

On Lafayette's motion,[13] the Court dismissed it from the adversary proceeding, with prejudice.[14]

On Navient's motion, the Court dismissed Sallie Mae from the adversary proceeding and

dismissed all claims against Navient not predicated on section 523(a)(8) of the Bankruptcy Code,

including all of Plaintiff's damage claims.[15] On DOE's motion,[16] the Court dismissed DOE from

the adversary proceeding.[17] ECMC and Navient are the remaining defendants in the Complaint.

### Elements Of Plaintiff's Claim

For Plaintiff to establish that his Student Loan Debt is not excepted from discharge, he

must demonstrate either (i) the Consolidation Loans and Private Loans do not fall within the scope

of section 523(a)(8)(A) or section 523(a)(8)(B); or (ii) excepting such loans from discharge would

---

[12] *Stipulation of Dismissal* [*of the University of Vermont*], AP ECF No. 15.

[13] *Motion of Lafayette College to Dismiss Adversary Proceeding Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) and Federal Rule of Bankruptcy Procedure 7012*, AP ECF 40.

[14] *See Order Dismissing Adversary Proceeding*, AP ECF No. 43.

[15] *See Order Granting Navient Solutions, Inc.'s Motion to Dismiss 'sallie Mae, Inc." as a Defendant in This Adversary Proceeding Pursuant to Fed. R. Civ. P. 21 and Fed. R. Bankr. P. 7021 and to Dismiss All Claims for Relief in Plaintiff's Third Amended Complaint Not Based on 11 U.S.C. § 523(a)(8) Pursuant to Fed. R. Civ. P. 12(b)(1) & (6) and Fed. R. Bankr. P. 7012(b)*, AP ECF No. 45.

[16] *Department of Education Motion To Dismiss*, AP ECF No. 102.

[17] *Memorandum Decision Granting Department of Education's Motion to Dismiss*, AP ECF No. 132.

impose an undue hardship on him. In *Brunner,* the Second Circuit established a three-prong test to determine if a debtor is eligible for an "undue hardship" discharge of its student loan debt. Under *Brunner*, Plaintiff must prove:

> (1) that he cannot maintain, based on current income and expenses, a "minimal" standard of living for himself and his dependents if forced to repay the loans;
>
> (2) that additional circumstances exist indicating that this current state of affairs is likely to persist for a significant portion of the repayment period; and
>
> (3) that he has made good faith efforts to repay the loans.

*Brunner,* 831 F.2d at 396. Plaintiff must establish all three prongs of this test by a preponderance of the evidence. *See Davis v. Educ. Credit Mgmt. Corp. (In re Davis)*, 373 B.R. 241, 245 (Bankr. W.D.N.Y. 2007); *Garneau v. New York State Higher Educ. Servs. Corp. (In re Garneau)*, 122 B.R. 178, 180 (Bankr. W.D.N.Y. 1990).

The Consolidation Loans fall within the scope of section 523(a)(8)(A); to establish they are not excepted from discharge, Plaintiff must demonstrate that under *Brunner*, excepting such loans from discharge would impose an undue hardship on him. To prove that the Private Loans are not excepted from discharge, Plaintiff must establish either (i) the Private Loans are not "qualified education loans" incurred by an individual debtor under section 523(a)(8)(B), or (ii) under *Brunner*, it will be an undue hardship for him to repay that debt.

### Whether The Student Loans Are "Qualified Education Loans"

Throughout this litigation, Plaintiff has ignored the *Brunner* allegations in his Complaint. He has not submitted evidence or argument to support his contention that he satisfies the *Brunner* standards. Rather, he has focused on his contention that the Student Loans were discharged upon entry of the Discharge Order because they do not qualify as "qualified education loans." Initially he argued that is so because (i) with the assistance of Sallie Mae, Lafayette and other

colleges/universities forced him and other students to take out student loans in amounts that exceeded the students' "cost of attendance," as defined in 26 U.S.C.§ 221(d)(1); and (ii) Lafayette, with Sallie Mae's assistance, engaged in tax fraud by withholding funds from Plaintiff and others. *See* Discovery Decision at 9.[18] In his Discovery Motion,[19] Plaintiff sought broad discovery from Navient, DOE and Lafayette, including discovery relating to the alleged tax fraud. All of them objected to the motion.[20]

The Court sustained those objections, in part. In substance, the Court directed Lafayette and Navient to produce documents relevant to whether the Student Loan Debt is comprised of qualified education loans. The Court directed Navient and Lafayette to produce documents relating to Plaintiff's "cost of attendance" as relevant to Plaintiff's "qualified higher education expenses." Discovery Decision at 19. However, the Court denied Plaintiff's requests for discovery related to Lafayette and Sallie Mae's alleged "tax fraud" as irrelevant to the whether the Student Loans are "qualified education loans" or any other issue underlying section 523(a)(8). *Id.* at 25-30. Indeed, Plaintiff "admit[ed] that the purpose behind his request for Lafayette's financial information is not to support the grounds for dischargeability, but to prove his theory that Lafayette, like other

---

[18] *See Memorandum Decision and Order Resolving Debtor's Request for Document Discovery* (the "Discovery Decision"), AP ECF No. 226. Specifically, Plaintiff contended that Lafayette engaged in tax fraud by withholding grant money from him and others, *id.* at 9, and Sallie Mae aided the alleged tax fraud scheme by (i) pushing Lafayette and other schools to break tax laws by causing students to borrow funds in excess of the "cost of instruction"; and (ii) repeatedly loaning out funds it knew were dischargeable in bankruptcy but at the same time attempted to buy government influence to later deem the loans exempt from discharge under § 523(a)(8) provision, *id.*

[19] The "Discovery Motion" is comprised of the following documents filed by Plaintiff: (i) *Discovery Dispute – Request for Information*, AP ECF No. 103; *Discovery Request Simplified*, AP ECF No. 125; and (iii) *Further Description of Previously Filed Amended Schedule and Supplemental Discovery Demand*, AP ECF No. 191.

[20] *See Department of Education's Opposition to Plaintiffs' Discovery Motions*, AP ECF No. 138; *Department of Education's Opposition to Plaintiff's Further Description of Previously Filed Amended Schedule and Supplemental Discovery Demand*, AP ECF No. 196; *Navient Solutions, LLC's Response to Plaintiff's Discovery Request Simplified,* AP ECF No. 134; *Navient Solutions, LLC's Response to Plaintiff's Further Description of Previously Filed Amended Schedule and Supplemental Discovery Demand*, AP ECF No. 195; *Non-Party Lafayette College's Objection to Plaintiff's Discovery Requests*, AP ECF No. 172; *Non-Party Lafayette College's Further Objections to Plaintiff's Discovery Requests*, AP ECF No. 197.

colleges and universities across America, and in conjunction with the DOE, Sallie Mae, and ECMC, is engaged in a massive illegal tax fraud that profits from students." *Id.* at 26.

After the Court closed discovery, Plaintiff filed certain "Additional Supplemental Discovery Requests" directed to Lafayette, DOE and the Defendants.[21] Lafayette and Navient objected to the supplemental demands.[22] The Court denied those requests because they ran afoul of the Discovery Order, as they did not relate to matters relevant to the issue of whether the Student Loans are "qualified education loans." *See* First Omnibus Motion Decision[23] at 48-60.

### Debtor Ignores The Scheduling Orders And Multiplies Litigation

With the close of discovery, the Court entered scheduling orders (collectively, the "Scheduling Orders") each directing Plaintiff and Defendants to submit a Joint Pre-Trial Order and Joint Exhibit Book. As briefly described below, Plaintiff ignored or refused to comply with them, and, instead, filed meritless motions for relief previously denied by the Court.

### First Scheduling Order

The First Scheduling Order[24] (i) directed the parties to submit a proposed Joint Pre-Trial Order and Joint Exhibit Book, and (ii) fixed dates for a Final Pre-Trial Conference and the trial of the adversary proceeding. ECMC and Navient prepared a Joint Pre-Trial Order and Joint Exhibit Book. Plaintiff refused to comply with the order and failed to provide comments to either document.

---

[21] *See Debtor's Letter Requesting Additional Supplemental Discovery*, AP ECF No. 289.

[22] *See Navient Solutions, LLC's Responses to Plaintiff's Additional Supplemental Discovery Requests,* AP ECF No. 291; *Lafayette College's Letter in Opposition to Request of Michael Grabis for Additional Supplemental Discovery Requests*, AP ECF No. 293.

[23] *Memorandum Decision and Order Denying Plaintiff-Debtor's Omnibus Motion and the Additional Discovery Requests* (the "First Omnibus Motion Decision"), AP ECF No. 343.

[24] *Scheduling Order* (the "First Scheduling Order"), AP ECF No. 271.

### *Plaintiff's First and Second Omnibus Motions*

Instead, Plaintiff filed a baseless motion seeking leave to amend the Complaint to add claims for relief, including a claim of fraud on the court. First Omnibus Motion at 1-2.[25] Plaintiff also petitioned the Court to recuse itself from this action, in favor of then Chief Judge Cecelia Morris, *id.* at 4, and sought leave to add Sallie Mae, President Biden, Lafayette and the DOE as defendants in his fraud upon the court claim, *id.* The Court denied the First Omnibus Motion. *See* First Omnibus Motion Decision. Thereafter, Plaintiff filed a Statement[26] in the chapter 7 case and a motion in the adversary proceeding. In those submissions, Plaintiff asserted that Navient is guilty of "criminal impersonation" and that it is committing that crime to further a massive billion-dollar tax and securities fraud scheme that it hatched with the support and assistance of its counsel, together with President Biden, ECMC, the DOE, the Federal Courts, Lafayette and other Institutions throughout the United States. Second Omnibus Motion ¶ 1.[27] In broad strokes, in the Statement and Second Omnibus Motion, Plaintiff petitioned the Court to refer the alleged criminal impersonation and billion dollar tax and securities fraud scheme to the United States Attorney General, the Federal Bureau of Investigation, the Internal Revenue Service (the "IRS"), the Securities and Exchange Commission, New York and New Jersey Tax Authorities, the Office of the United States Trustee, and the New York Sheriff to investigate Navient, Lafayette, the DOE,

---

[25] *Motion for Fraud Upon the Court, Breach of Contract, Breach of Fiduciary Duty, Spoilation of Evidence by Navient, Sallie Mae, ECMC, Lafayette College, Department of Education, Judge Garrity, Motion for Class Action Designation, Motion for Sanction, Motion for Default Judgment* (the "First Omnibus Motion"), AP ECF No. 311. Briefly, Plaintiff asserted that Navient and other parties sought to block borrowers" student loan payments in an effort to keep those borrowers from satisfying the third prong of the *Brunner* test for dischargeability of student loans. First Omnibus Motion at 1. He also asserted that Navient was guilty of fraud on the court for misrepresenting itself as holder of his student loans. *Id.* at 2.

[26] *Fraud Upon the Court Filing and Criminal Complaint (Criminal Impersonation), Grievance Motion to Chief Judge Morris, Discovery Motion Under Crime Fraud Exception* (the "Statement"), ECF No. 66.

[27] *New Motions* (the "Second Omnibus Motion"), AP ECF No. 362.

President Biden and Reed Auerbach, Esq. (as Navient's alleged counsel). Statement at 8; Second Omnibus Motion ¶ 9. Plaintiff also sought to (i) reopen discovery, (ii) amend the Complaint to add Lafayette and the DOE as defendants to seek sanctions from them for their alleged support of Navient's criminal activities and, (iii) obtain miscellaneous other relief including the Court's recusal from this case in favor of Judge Morris. *See generally* Second Omnibus Motion. The Court denied the Statement and Second Omnibus Motion. *See* Second Omnibus Motion Decision.

### Second Scheduling Order

The Second Scheduling Order[28] directed the parties to confer and submit a proposed Joint Pre-Trial Order. Debtor disregarded the order. Navient's counsel filed a letter with the Court[29] stating "Counsel for Navient and Counsel for ECMC attempted to get Plaintiff involved in drafting a proposed trial scheduling order and in supplying date(s) when he would be available for trial. Plaintiff refused to participate in the process and indicated that he was not ready to schedule a trial date."

### Third Scheduling Order

The Third Scheduling Order[30] directed the parties to submit a proposed Joint Pre-Trial Order and a Joint Exhibit Book, and scheduled dates for a Final Pre-Trial Conference and the trial of the adversary proceeding. ECMC and Navient complied with the order as they submitted a Pre-Trial Order and Joint Exhibit Book; in addition, each filed a witness list for trial.[31] Plaintiff refused

---

[28] *Minutes of Proceedings* (the "Second Scheduling Order"), AP ECF No. 348.

[29] *Letter to the Honorable James L. Garrity, Jr.*, AP ECF No. 352.

[30] *Scheduling Order* (the "Third Scheduling Order"), AP ECF No. 399. The Court also entered an *Order Establishing Procedures for Remote Evidentiary Trial to Determine the Dischargeability of the Debtor/Plaintiff's Student Loans*, AP ECF No. 401.

[31] *Educational Credit Management Corporation's Trial Witness List,* AP ECF No. 404; *Navient Solutions, LLC's Witness List*, AP ECF No. 405.

to comply with the order. Instead, he filed the Third Omnibus Motion[32] seeking a wide-range of meritless relief, including that the Court reopen discovery and recuse itself from the adversary proceeding in favor of Judge Morris. The Court denied the Third Omnibus Motion.[33]

### Fourth Scheduling Order

The Fourth Scheduling Order[34] directed the parties to submit a proposed Joint Pre-Trial Order and a Joint Exhibit Book, with exhibits pre-marked, and fixed dates for the Final Pre-Trial Conference and trial of the Complaint. The Procedures Order[35] established procedures for the trial. Plaintiff refused to comply with those orders. ECMC filed a Status Letter[36] explaining that Plaintiff advised ECMC and Navient that he had "withdrawn" his "filing" and would not be proceeding to trial. Status Letter at 1. ECMC requested that the Court convert the scheduled pre-trial conference to a status conference, and advised that Defendants would seek leave to file a motion to dismiss the Complaint. *Id.* The Court granted the requested relief and converted the Final Pre-Trial Conference to a status conference.[37] The Court conducted the status conference. Plaintiff did not attend the conference.

### The Defendants' Rule 41(b) Motion

In the face of Plaintiff's refusal to comply with the Scheduling Orders, ECMC and Navient jointly filed a motion to dismiss the adversary proceeding under Rule 41(b). *See* Rule 41(b)

---

[32] *Motion for Transfer, Suspension, or Withdrawal of Case No:15-01420-JLG in lieu of Judicial Fraud, Fraud upon the Court, Criminal Referral for DOE, Reed Auerbach, Navient, ECMC, Lafayette College, Others* (the "Third Omnibus Motion"), AP ECF No. 406.

[33] *Memorandum Endorsed Order*, AP ECF No. 407.

[34] *Scheduling Order* (the "Fourth Scheduling Order"), AP ECF No. 410.

[35] *Order Establishing Procedures for Remote Evidentiary Trial to Determine the Dischargeability of the Debtor/Plaintiff's Student Loans* (the "Procedures Order"), AP ECF No. 412.

[36] *Status of Trial* (the "Status Letter"), AP ECF No. 415.

[37] *Memorandum Endorsed Order*, AP ECF No. 416.

Motion. As support for the motion, the Defendants relied on the declaration of Kenneth L. Baum,[38] counsel for ECMC. The exhibits to the Baum Declaration, included an email from Navient's counsel to Plaintiff[39] and three responsive emails from Plaintiff to Navient's counsel (the "Plaintiff's Emails").[40] In substance, Navient's counsel requested Plaintiff to provide his input on the Joint Pre-Trial Order and Joint Exhibit Book, and Plaintiff's Emails advised that he had withdrawn his filing and would not be proceeding to trial in this adversary proceeding. ECMC and Navient submitted a memorandum of law in further support of the motion.[41] Plaintiff failed to respond to the motion. In an email addressed to the Court and counsel to Navient and ECMC, Plaintiff advised that he was not available on the scheduled return date of the Rule 41(b) Motion. In response to the email, in recognition of Plaintiff's *pro se* status, the Court *sua sponte* entered an order[42] extending Plaintiff's time to provide his input to the Joint Pre-Trial Order and Joint Exhibit Book, and adjourning the hearing on the Rule 41(b) Motion. Plaintiff did not comply with the order.

### Plaintiff Does Not Challenge Merits Of Rule 41(b) Motion

Plaintiff did not respond to the Rule 41(b) Motion. Instead, he filed a number of motions/requests which, together, sought a wide range of relief including, (i) to stay prosecution of the Rule 41(b) Motion, (ii) for the Court to reconsider certain rulings, and (iii) to grant him

---

[38] *Declaration of Kenneth L. Baum, Esq., in Support of Joint Motion of Educational Credit Management Corporation and Navient Solutions, LLC, to Dismiss Adversary Proceeding Pursuant to Fed. R. Civ. P. 41(b)* (the "Baum Declaration"), AP ECF No. 421-2.

[39] The email is annexed to the Baum Declaration as Exhibit A.

[40] The emails are annexed to the Baum Declaration as Exhibit B.

[41] *Memorandum in Further Support of Joint Motion of Educational Credit Management Corporation and Navient Solutions, LLC, To Dismiss Adversary Proceeding Pursuant To Fed. R. Civ. P. 41(b)*, AP ECF No. 433.

[42] *Order*, AP ECF No. 424.

leave to (a) amend the Complaint, (b) reopen discovery, and (c) file motions for summary judgment

motion and/or recusal.[43] In doing so, Plaintiff purported to pursue his claims of tax fraud.

Plaintiff contends that Reed Auerbach and Jamie Gorelick formulated a scheme (the

alleged "Auerbach-Gorelick Scheme") pursuant to which Institutions throughout the United States

are using student loan assets to illegally subsidize weapons manufacturing by Raytheon and

Northrop. Pursuant to the Auerbach-Gorelick Scheme, Institutions allegedly overcharged student

borrowers and used the increased principal amounts of student loans to raise funding (the "Student

Loan Funds") to subsidize Raytheon's and Northrop's weapons sales to Saudi Arabia, and to avoid

taxation for these sales by laundering the payments from Saudi Arabia through the Institutions'

endowment funds. April 2025 Order at 17.[44] Plaintiff says that Auerbach and Gorelick organized

---

[43] *Motion for Reconsideration and Other Relief,* AP ECF No. 426; *Motion to Present the Auerbach Gorelick Plan in Court with IRS Criminal Division and Chief Judge of Southern District Present*, AP ECF No. 432; *Motion for Stay of Dismissal to Plead Special Matter – Rule 9 Civil Procedure, Notice of FOIL Filing, Request for Subpoenas*, AP ECF No. 433; *Addendum to Motion for Special Matter, Stay, Request for Subpoenas, Adding Defendants*, AP ECF No. 434; *Motion to Compel ECMC to Admit Concealed Representation of Raytheon and Filing Intervention on False Grounds in Withholding the Pertinent Facts from this Court in this Proceeding. Executing Withholding of Pertinent Facts as an Overt Action to Block Dischargeability of Loans from the Borrower and the Court, Commit Fraud Upon the Court. Motion to Court to Declare Failure of Compliance with Discovery by Navient, ECMC in Concealing, Withholding Raytheon Information and Contracts,* AP ECF No. 454; *Motion for Summary Judgment for Offering a False Instrument for Filing in Order to Hide Dischargeability – Fraud on the Court Scheme as Defined by 18 U.S. Code 157 – also known as the Bankruptcy Fraud Statute,* AP ECF No. 475; *Addendum to Prior Motion- Motion for Fraud Upon the Court Determination and Criminal Referral for False Instrument Filing, Impersonation. Blocking Trial and Motion to Vacate ECMC's approved Motion to Intervene, Motion to Recall the US Department of Education,* AP ECF No. 482; *Motion for Stay and Motion to Add Defendants,* AP ECF No. 484*; Motion for Stay and New Fraud Evidence and to Add Defendants*, AP ECF No. 488**.**

[44] *See Memorandum Decision and Order Resolving Motions Filed by Plaintiff, Educational Credit Management Corporation and Navient Solutions, LLC* (the "April 2025 Order"), AP ECF No. 527. Plaintiff asserts the Auerbach-Gorelick Scheme calls for Institutions to:

    i.    overcharge students far beyond the cost of attendance and thereby raise the principal amounts charged to students,

    ii.    restrict the award of grants to students,

    iii.    force students to incur large amounts of student loan indebtedness,

    iv.    package the student loans into transferable securities,

    v.    funnel the loan proceeds to offshore accounts without alerting the Internal Revenue Service and in violation of the Internal Revenue Code,

and perpetrated the scheme with the assistance of a number of executives for Raytheon and The Carlyle Group. *Id.* at 18.[45] He says his Student Loan Debt (and the debts of millions of other student loan borrowers) is dischargeable in bankruptcy because under that scheme, the Institutions are not applying Student Loan Funds for education purposes. *Id.* at 21.

Accordingly, Plaintiff sought to litigate the merits of his claims that (i) the Auerbach-Gorelick Scheme exists, (ii) Lafayette is party to the scheme, (iii) the Student Loans are not "qualified education loans" excepted from discharge under section 523(a)(8) of the Bankruptcy Code based upon Lafayette's alleged use of the Student Loan Funds to underwrite Raytheon's and Northrop's alleged illegal munitions sales, and (iv) that he is entitled to damages. Plaintiff sought leave to name additional defendants to the Complaint and to conduct broad third-party discovery relating to the Auerbach-Gorelick Scheme. He also sought miscellaneous forms of relief against ECMC and Navient, and asserted that the Court is party to the alleged scheme and must recuse itself from the adversary proceeding.

### *Court Denies Plaintiff's Motions and Denies Rule 41(b) Motion Without Prejudice*

The Court denied Plaintiff's motions/requests:

> (i) for leave to amend the Complaint to add claims for fraud upon the Court and against additional defendants, April 2025 Order at 22-25,

---

vi.     use the proceeds to subsidize contract sales of military grade munitions manufactured by Raytheon and Northrop to Saudi Arabia, and

vii.    receive payment for the munitions from Saudi Arabia through college and university endowment funds.

April 2025 Order at 17 (citations omitted).

[45] Plaintiff identifies the following individuals as "key operatives" who were hired by Raytheon and The Carlyle Group to propel the Auerbach-Gorelick Scheme: Victoria Nuland, Robert Kagan, Merrick Garland, David Rubenstein, Glenn Youngkin, Wayne Abernathy, Jared Kushner, Craig Annis, Jerome Powell, Arthur Rothkopf, President Biden and President Trump. April 2025 Order at 18.

(ii) to subpoena various witnesses and reopen discovery in the adversary proceeding, *id*. at 26-29,

(iii) to compel ECMC to admit that in student loan discharge cases, they are representing the interests of Raytheon, *id*. at 29-31,

(iv) for summary judgment that ECMC and Navient, in conjunction with Raytheon and The Carlyle Group have offered false documents in this adversary proceeding to hide their scheme to commit fraud on the Court, *id*. at 31-33, and

(v) for the Court to recuse itself from the case, *id*. at 33-36.

The Court also denied Defendants' Rule 41(b) Motion, without prejudice. *Id.* at 36-37. In so ruling, in recognition of the Plaintiff's *pro se* status, the Court provided Plaintiff with another opportunity to cure his defaults under the Scheduling Orders. The Court directed, as follows:

1. The parties shall submit a proposed Joint Pre-Trial Order and a Joint Exhibit Book with exhibits pre-marked, on or before May 8, 2025.

2. A final pre-trial conference will be held on May 22, 2025 at 2:00 p.m. (ET) via Court Solutions.

*Id.* at 37. Plaintiff failed to comply with the April 2025 Order. *See* ECMC Letter[46] (representing that ECMC sent an email to Plaintiff requesting his input on the Joint Pre-Trial Order and Joint Exhibit Book and that Plaintiff failed to respond to the email or otherwise provide input to the order).

## The Rule 41(b) Show Cause Order

In the wake of Plaintiff's default under the April 2025 Order, the Court issued the Rule 41(b) Show Cause Order directing Plaintiff to appear before the Court and show cause why the Court should not dismiss this adversary proceeding pursuant to Rule 41(b) for Plaintiff's failure to prosecute the action and failure to comply with the Scheduling Orders and the April 2025 Order

---

[46] *Letter to the Court dated May 8, 2025* (the "ECMC Letter"), AP ECF No. 529.

(the "Show Cause Hearing"). The Court further directed that Plaintiff file any written response to the Rule 41(b) Show Cause Order.

### *Plaintiff Defaults Under The Rule 41(b) Show Cause Order*

Plaintiff did not respond to the Rule 41(b) Show Cause Order, and remains in breach of the April 2025 Order, as he refuses to provide Defendants with his input on the Joint Pre-Trial Order and Joint Exhibit Book. By email to Chambers and counsel, Plaintiff (i) advised that due to family issues, he was unable to attend the Show Cause Hearing, and requested a "short adjournment" of the hearing, and (ii) advised that he "[has] been focused on formulating a response" and "within the next day" he will be "filing motions." *See* Rescheduling Order at 1-2.[47]

The Court adjourned the Show Cause Hearing to May 30, 2025, and extended Plaintiff's time to submit any response to the Rule 41(b) Show Cause Order to on or before May 27, 2025. *Id.* at 3. The Court directed ECMC and Navient to submit any response to the reply on or before May 29, 2025. *Id.* The Court further adjourned the May 22 Hearing to June 5, 2025.[48] Plaintiff did not respond to the Rule 41(b) Show Cause Order. He remains in default under that order.

### *Court Denies Plaintiff's "New Motions"*

Instead, on May 27, 2025, Plaintiff filed his "New Motions"[49] in which he purports to assert the following claims for relief:

(i) Motion for Relief From/Vacate the April 2025 Order,

---

[47] *See Order Rescheduling May 22 Hearing On the Court's Show Cause Order* (the "Rescheduling Order"), AP ECF No. 532.

[48] *Amended Order Rescheduling May 22 Hearing On the Court's Show Cause Order*, AP ECF No. 533.

[49] *New Motions Submission: Motion for Emergency Stay, Motion for Relief of Recent Orders, Motion to Vacate Orders, Motion for Recusal, Motion to Submit Fraud on Court With Navient and Raytheon Fraud Findings and Raytheon Auerbach Whistleblower Complaint Under False Claims Act, Submission of Criminal Complaint, Motion for Leave/Suspension of Adversary Proceeding to File Whistleblower Complaint* (the "New Motions"), AP ECF No. 536.

(ii) Motion for Recusal,

(iii) Motion to Submit Evidence,

(iv) Motion for Leave to File Criminal Complaint and Whistleblower Complaint, and

(v) Motion for Emergency Stay.

*See generally* New Motions. ECMC and Navient submitted a joint response in opposition to the New Motions.[50]

On June 5, 2025, the Court held a hearing on these matters (the "June 5 Hearing"). At the hearing, the Court inquired why Plaintiff had not complied with the Scheduling Orders, and asked if Plaintiff intended to adhere to the Court's orders and participate in the trial and extended, "for the last time," Plaintiff's time to cure his defaults and directed Plaintiff to submit his input to the proposed Joint Pre-Trial Order and Joint Exhibit Book by June 13, 2025. Thereafter, the Court further adjourned the proceedings to June 20, 2025. *See* June 5 Minute Order.[51] During the hearing, the Court advised that Plaintiff's failure to comply by June 13 would indicate to the Court that Plaintiff is refusing to go forward to trial.

Plaintiff, again, failed to adhere to the Court's directives. In a letter dated June 16, 2025, counsel for ECMC advised the Court that neither ECMC or Navient received any response from Plaintiff to the proposed Pre-Trial Order and Exhibit Book. *See* June 16 Letter.[52] Thereafter, the

---

[50] *Joint Response of Navient Solutions, LLC and Educational Credit Management Corporation's Response to Plaintiff's Motion for Emergency Stay, Motion for Relief of Recent Order, Motion to Vacate Orders, Motion for Recusal, Motion to Submit Evidence for Fraud on Court with Navient and Raytheon Fraud Findings and Raytheon Auerbach Whistleblower Complaint Under False Claims Act, Submission of Criminal Complaint, Motion for Leave/Suspension of Adversary Proceeding to File Whistleblower Complaint*, AP ECF No. 537.

[51] *Minutes of Proceedings* (the "June 5 Minute Order"), AP ECF No. 538.

[52] *Letter Confirming Plaintiff's Non-Compliance* (the "June 16 Letter"), AP ECF No. 540.

Court *sua sponte* adjourned the proceedings scheduled for June 20 to July 11, 2025.[53] Nonetheless, Plaintiff did not submit his input to the proposed Joint Pre-Trial Order and Joint Exhibit Book to ECMC or Navient. Plaintiff did not otherwise attempt to show cause for his noncompliance with the June 5 Minute Order, April 2025 Order, Scheduling Orders, and Rule 41(b) Show Cause Order. Plaintiff remains in default of the Court's orders. By order dated August 7, 2025,[54] the Court denied the New Motions as meritless.

## LEGAL PRINCIPLES

Rule 41(b) states:

> If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it. Unless the dismissal order states otherwise, a dismissal under this subdivision (b) . . . operates as an adjudication on the merits.

Fed. R. Civ. P. 41(b); *see Tenesca v. Gemelli Rest. Grp. Inc.*, No. 19-CV-10976, 2021 WL 4041105, at *2 (S.D.N.Y. Sept. 3, 2021) ("[T]he usual sanction for failure to prosecute under Rule 41(b) is dismissal with prejudice.") (citing Fed. R. Civ. P. 41(b)). "Although the text of Fed. R. Civ. P. 41(b) expressly addresses only the case in which a defendant moves for dismissal of an action, it is unquestioned that Rule 41(b) also gives the district court authority to dismiss a plaintiff's case *sua sponte* for failure to prosecute." *LeSane v. Halls Sec. Analyst, Inc.,* 239 F.3d 206, 209 (2d Cir. 2001) (citing *Link v. Wabash R.R. Co.,* 370 U.S. 626, 630 (1962)); *see also Martens v. Thomann*, 273 F.3d 159, 179-80 (2d Cir. 2001) ("A district court also has the power [under Rule 41(b)] to dismiss for failure to prosecute *sua sponte*." (citation omitted)).

---

[53] *Notice of Adjournment*, AP ECF Nos. 541, 543, 545.

[54] *Memorandum Decision and Order Denying Plaintiff's New Motions Submission* (the "New Motions Decision"), AP ECF No. 556.

Rule 41(b) does not define "failure to prosecute." However, it "can evidence itself either in an action lying dormant with no significant activity to move it or in a pattern of dilatory tactics." *In re Madoff Sec. Int'l Ltd.*, No. 09-12998, 2024 WL 2309717, at *2 (Bankr. S.D.N.Y. May 21, 2024) (quoting *Lyell Theatre Corp. v. Loews Corp.*, 682 F.2d 37, 42-43 (2d Cir. 1982)). In short, "[t]his power to dismiss . . . may be exercised when necessary to achieve orderly and expeditious disposition of cases." *Freeman v. Lundrigan*, No. 95-CV-1190, 1996 WL 481534, at *1 (N.D.N.Y. Aug. 22, 1996). While dismissal is a harsh remedy, "the authority to invoke it for failure to prosecute is vital to the efficient administration of judicial affairs and provides meaningful access for other prospective litigants to overcrowded courts." *Pena v. Zazzle Inc.*, 587 F. Supp. 3d 109, 113 (S.D.N.Y. 2022) (quoting *Lyell*, 682 F.2d at 43); *see also McLean v. City of New York*, No. 04-CV-8353, 2007 WL 415138, at *4 (S.D.N.Y. Feb. 6, 2007) ("[The] court should not have to beg the parties before it to litigate the cases they initiate."). Moreover, "[w]hile the Second Circuit has cautioned that *pro se* plaintiffs should be granted special leniency regarding procedural matters, courts in this district have recognized that even *pro se* litigants must prosecute claims diligently, and dismissal with prejudice is warranted where the Court gives warning." *Zeigler v. Annucci*, No. 23-CV-707, 2025 WL 1056904, at *2 (S.D.N.Y. Apr. 8, 2025) (cleaned up and internal citations omitted).

The decision whether to dismiss a complaint for failure to prosecute under Rule 41(b) is within the Court's discretion. *See Minnette v. Time Warner*, 997 F.2d 1023, 1027 (2d Cir. 1993); *accord Peart v. City of New York*, 992 F.2d 458, 461 (2d Cir. 1993). In exercising that discretion, the Court considers the following five factors:

> (1) the duration of the plaintiff's failures, (2) whether plaintiff had received notice that further delays would result in dismissal, (3) whether the defendant is likely to be prejudiced by further delay, (4) whether the district judge has taken care to strike the appropriate balance between alleviating court calendar

congestion and protecting a party's right to due process and a fair chance to be heard, and (5) whether the judge has adequately assessed the efficacy of lesser sanctions.

*Shannon v. General Electric Co.*, 186 F.3d 186, 193-94 (2d Cir. 1999); *see also Fezzani v. Bear, Stearns & Co. Inc.*, 527 F. App'x 89, 92 (2d Cir. 2013). "[N]o one factor is dispositive," and the determination is based on the "record as a whole." *Lewis v. Rawson*, 564 F.3d 569, 576 (2d Cir. 2009) (citing *United States ex rel. Drake v. Norden Systems, Inc.,* 375 F.3d 248, 254 (2d Cir. 2004)).

## ANALYSIS

The "primary rationale" for dismissal pursuant to Rule 41(b) is "the failure of plaintiff in his duty to process his case diligently." *Pena*, 587 F. Supp. 3d at 113 (quoting *Lyell*, 682 F.2d at 43). That is plainly applicable here. Without limitation, Plaintiff has failed to comply with any of the Court's Scheduling Orders, or to respond to the Rule 41(b) Motion and the Rule 41(b) Show Cause Order. Instead, Plaintiff persists needlessly multiplying baseless litigation in pursuing claims dismissed by the Court and matters not relevant to the adversary proceeding. Application of the *Shannon* factors weighs in favor of dismissing Plaintiff's case, with prejudice.

### The Duration of Plaintiff's Failures

"There are two aspects of this factor: (1) that the failures were those of the plaintiff; and (2) that these failures were of significant duration." *Jackson v. City of New York,* 22 F.3d 71, 75 (2d Cir. 1994). Both elements are present here, as Plaintiff knowingly and intentionally failed to comply with any of the Scheduling Orders and defaulted under both the Rule 41(b) Motion and Rule 41(b) Show Cause Order. Moreover, "[t]he duration factor is of limited significance where [as here] a party deliberately disobeys court orders." *Peart,* 992 F.2d at 461. The impetus for dismissal derives from the willfulness of the party's actions rather than the time period that has

elapsed as a result of those actions. *Feurtado v. City of New York,* 225 F.R.D. 474, 478 (S.D.N.Y. 2004).

Plaintiff has disobeyed the Court's orders and multiplied litigation by filing meritless motions that reassert claims and theories previously rejected by the Court. As summarized above, the Court denied Plaintiff's requests for discovery related to his tax fraud allegations, denied his motions to amend the Complaint to add damage claims, and denied his requests to reopen discovery to investigate the alleged Auerbach-Gorelick Scheme. Notwithstanding these rulings, Plaintiff continued to file motions raising the same issues—repackaged under different labels but substantively identical to those already rejected. *See, e.g.*, First Omnibus Motion; Second Omnibus Motion; Third Omnibus Motion; New Motions. The Court's rulings made clear that the only issues germane to this adversary proceeding are those arising under section 523(a)(8) of the Bankruptcy Code. Plaintiff's refusal to accept those rulings, and his insistence on litigating matters outside the scope of this proceeding, shows the first factor is satisfied here given Plaintiff's intentional and willful disregard of the Scheduling Orders, the Rule 41(b) Motion and Rule 41(b) Show Cause Order.

## Notice That Further Delays Might Result in Dismissal

"The Second Circuit requires that the plaintiff receive adequate notice that the case could be dismissed due to inaction." *Folk v. Rademacher,* No. 00-CV-199S, 2005 WL 2205816, at *4 (W.D.N.Y. Sept. 9, 2005) (citing *Martens,* 273 F.3d at 180-81). In the April 2025 Order, the Court denied the Rule 41(b) Motion without prejudice but warned Plaintiff that he must comply with the Court's orders and participate in the pre-trial process. The Court stated that dismissal for failure to prosecute would be appropriate if Plaintiff continued to fail to participate in these proceedings. In entering the Rule 41(b) Show Cause Order, the Court advised Plaintiff that it would dismiss the

adversary proceeding under Rule 41(b) if he did not show grounds for the Court not to do so. He ignored that order. Application of this factor weighs in favor of dismissing the adversary proceeding, with prejudice. *See Nolan v. Primagency, Inc.*, No. 07 Civ. 134, 2008 WL 1758644, at *3 (S.D.N.Y. Apr. 16, 2008) ("The Second Circuit has held that where a court puts a plaintiff on notice that the court is considering dismissal, and a plaintiff fails to file a document explaining the failures and outlining why the action should not be dismissed, this element has been met.") (citing *Shannon,* 186 F.3d at 194-95)); *accord Europacific Asset Mgmt. Corp. v. Tradescape, Corp.*, 233 F.R.D. 344, 353 (S.D.N.Y. 2005) ("A court's prior warning of dismissal, and subsequent inaction by a plaintiff, weighs in favor of dismissal.").

## Whether Defendants Are Likely To Be Prejudiced By Further Delay

"Prejudice to defendants resulting from unreasonable delay may be presumed, but in cases where delay is more moderate or excusable, the need to show actual prejudice is proportionately greater." *Lyell Theatre,* 682 F.2d at 43 (citations omitted); *see also Beauford v. Doe #1,* No. 04 Civ. 7533, 2007 WL 549432, at *1 (S.D.N.Y. Feb. 16, 2017) ("The Court can presume that the defendant[ ] ha[s] been prejudiced and will continue to be by further delay where as here the plaintiff has already been unresponsive for a long period of time.") Plaintiff's complete failure to comply with the Scheduling Orders is neither excusable nor moderate. Nor is his failure to respond to the Rule 41(b) Motion and Rule 41(b) Show Cause Order. The Court presumes prejudice to the Defendants, and finds that the third *Shannon* factor weight in favor of dismissal.

## Whether Plaintiff Has Been Accorded A Fair Chance To Be Heard

In assessing the fourth *Shannon* factor, the Court considers the type of delay caused by Plaintiff. This factor favors a plaintiff when the delay is "silent and unobtrusive rather than vexatious and burdensome," meaning the plaintiff simply "did not make submissions required by

the court" instead of "swamp[ing] the court with irrelevant or obstructionist filings." *Brown v. Gen. Nutrition Companies, Inc.,* 356 F. App'x 482, 487 (2d Cir. 2009) (quoting *Lucas v. Miles*, 84 F.3d 532, 535 (2d Cir.1996)).

Application of this factor cuts against Plaintiff. He did not merely ignore the Court's orders throughout the course of this case. Unlike cases in which a plaintiff was "silent and unobtrusive" Plaintiff has swamped "the court with irrelevant or obstructionist filings." *Brown*, 356 F. App'x at 487. He multiplied litigation by filing meritless motions in the wake of the Court's orders. In entering the Scheduling Orders, and *sua sponte* extending Plaintiff's time to comply with orders, the Court accorded Plaintiff every opportunity to be heard at trial of the adversary proceeding. He rejected all of those opportunities. Instead, he responded by filing additional meritless motions. The New Motions sought the same relief previously denied—including leave to file a fraud-upon-the-court claim, to submit evidence of the alleged Auerbach-Gorelick Scheme, and for the Court to recuse itself. *See* New Motions. The Court denied these motions as meritless. *See* New Motions Decision. Plaintiff showed that he has no intention of proceeding to trial on the issues properly before the Court. Rather, he has used every extension of time as an opportunity to further multiply litigation on claims that are not germane to this adversary proceeding. At minimum, he has plainly been accorded a fair opportunity to participate at a trial on the merits of his Complaint.

Plaintiff's failure to litigate this matter cannot be construed as the denial of the right to present his case. *Henderson v. Levy*, 15-CV-802, 2019 WL 1410867, at * 4 (W.D.N.Y. Mar. 1, 2019); *see also Dodson v. Runyon*, 957 F.Supp. 465, 470 (S.D.N.Y. 1997) ("any claim that plaintiff's due process rights were violated thus cannot prevail because the delay and resultant dismissal of plaintiff's case are of his own making."). This factor weighs solidly in favor of dismissal, with prejudice.

**The Efficacy Of Lesser Sanctions**

As to the fifth *Shannon* factor, dismissal with prejudice is the appropriate sanction. Although "dismissal with prejudice is a harsh remedy to be utilized only in extreme situations," *Lyell*, 682 F.2d at 42 (citation and internal quotation marks omitted), a case may be dismissed where "there are no lesser sanctions . . . that are suitable," *Coss v. Sullivan Co. Jail Adm'r*, 171 F.R.D. 68, 72 (S.D.N.Y. 1997). That is the case here. "The Court has no reason to suspect that Plaintiff would be responsive if lesser sanctions or court orders were imposed. Given that Plaintiff has . . . failed to respond to orders of this Court, lesser sanctions would be useless." *Ctr. for Monitoring Impact of Peace, Inc. v. Ctr. for Monitoring Impact of Peace, R.A.,* No. 06 CIV 2390, 2010 WL 3958823, at *3 (S.D.N.Y. Sept. 24, 2010) (citing *Feurtado*, 225 F.R.D. at 480 (S.D.N.Y. 2004) ("[R]epeated violation of orders of this Court leads to the inexorable conclusion that no sanction short of dismissal would effectively address [plaintiff's] conduct.") (citations omitted)); *Smith v. Human Res. Admin.,* No. 91 Civ. 2295, 2000 WL 307367, at *3 (S.D.N.Y. Mar. 24, 2000) ("[L]esser sanctions are not appropriate . . . [because c]ourt orders and direction have not prompted plaintiff to move her case forward."). Moreover, as Plaintiff has continuously failed to comply with deadlines and Court orders, there is little indication that monetary sanctions would persuade Plaintiff's participation. Monetary sanctions are usually not appropriate for a plaintiff proceeding *pro se* or *in forma pauperis. Henderson*, 2019 WL 1410867, at *4.

## CONCLUSION

Based on the foregoing, the Court will dismiss the adversary proceeding, with prejudice. However, the Court will afford Plaintiff a final opportunity to comply with the Court's direction that he proceed to trial in this adversary proceeding. The Court directs, as follows:

> 1. On or before February 16, 2026, at 5:00 p.m. (ET), Plaintiff shall provide to ECMC and Navient his comments/contributions to the Joint Pre-Trial Order

and Joint Exhibit Book with exhibits pre-marked. ECMC shall file a status letter with the Court on February 17, 2026, at 11:00 a.m. (ET).

2. On or before February 20, 2026, at 5:00 p.m. (ET), the parties shall file the Joint Pre-Trial Order and Joint Exhibit Book with exhibits pre-marked with the Court.

3. On February 25, 2026, at 10:00 a.m. (ET), the Court will conduct a final pre-trial conference on via Court Solutions.

**Plaintiff's unexcused failure to comply with this order will result in the dismissal of the adversary proceeding, with prejudice, pursuant to Rule 41(b).**

IT IS SO ORDERED.

Dated:  January 30, 2026
        New York, New York

/s/ *James L. Garrity, Jr.*
Honorable James L. Garrity, Jr.
United States Bankruptcy Judge